UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) ) ) | C.A. No. 05-10017-RWZ |
| Plaintiff and Defendant-in-Counterclaim, | ) ) ) | |
| v. | ) ) | |
| LYCOS, INC., | ) ) | DEFENDANT LYCOS, INC.'S OPPOSITION TO COMPUTER SALES INTERNATIONAL, INC.'S MOTION TO DISMISS LYCOS' AMENDED COUNTERCLAIM |
| Defendant and Plaintiff-in-Counterclaim, | ) ) ) | |
| and | ) ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) ) ) | |
| Trustee Process Defendant | ) | |

INTRODUCTION

Computer Sales International, Inc.'s ("CSI") Rule 12(b)(6) motion (the "Motion") makes two fundamental errors. First, it does not accept the allegations of Lycos, Inc.'s ("Lycos") amended counter-claim (the "Amended Counterclaim") as true, as it must; instead, it relies on its own presentation of the "facts" which go beyond and dispute certain allegations of Lycos' Amended Counterclaim. Second, it relies on a choice-of-law provision incorporated in the several lease schedules and in the Sales Agreement when Lycos' fundamental claims for fraudulent and negligent misrepresentation and for violation of Massachusetts General Laws c. 93A arose *before* execution of those contracts. Moreover, the choice-of-law provision contained in the standard

form lease agreement drafted by CSI covers – by its own terms – only "construction and interpretation" of that agreement, not Lycos' tort claims.[1]

Once the Court applies Massachusetts law and accepts as true the facts alleged in Lycos' Amended Counterclaim, the Motion must be denied.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must "accept as true all the factual allegations in the [Amended Counterclaim] and construe all reasonable inferences in favor of [Lycos]." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).[2]  It may grant the Motion only if "it appears to a certainty that [Lycos] would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001).  CSI has not demonstrated that here.

## FRAMEWORK FOR ANALYZING CHOICE-OF-LAW

Before analyzing the sufficiency of the Amended Counterclaim, the Court must determine what state's substantive law applies to each of Lycos' causes of action.  CSI asserts that Missouri law applies to all claims because the contracts in question contain a choice-of-law provision for Missouri.  *See* CSI's Memorandum in Support of its Motion to Dismiss dated March 10, 2005 ("CSI's 3/10 Memo") at 8, fn. 4.  Lycos' claims are not, however, covered by this choice-of-law provision for at least two reasons.  First, Lycos has alleged that the "rolled-up" equipment lease

---

[1]  In its Amended Counterclaim, Lycos has asserted claims against CSI for fraudulent and negligent misrepresentation in the inducement (Counts I, II and IV), a claim for unconscionability (Count III), a claim under c. 93A, §§ 2 and 11 (Count V), claims in quasi-contract (Counts VI and VII),  and claims for declaratory relief (Counts VIII and IX).

[2]  Accordingly, CSI's Statement of Relevant Facts in its March 10, 2005 memorandum and the Statement of Undisputed Facts in March 31, 2005 memorandum must be ignored to the extent they contain any information not appearing in Lycos' counterclaim.  *Gouin v. Gouin*, 249 F.Supp.2d 62, 67 (D. Mass. 2003) (The standard to be applied when deciding motions to dismiss counterclaims under Rule 12(b)(6) is the same as the same as the standard in ruling on a motion to dismiss a complaint).

schedules – each of which the parties agree is a separate contract[3] – and the Sales Agreement, were fraudulently and negligently induced.[4] The First Circuit has held that failure to disclose information during the negotiation of the contract, "concerns the validity of the *formation* of the contract . . . [and thus] cannot be categorized as one involving the rights or obligations arising under the contract. Hence, the [fraud] claim falls *outside* the contract's choice-of-law provision." *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Sys. Co.*, **986 F.2d 607, 611 (1st Cir. 1993) (emphases added).** The Court thus allowed the plaintiff to proceed with its claims for fraud and violations of M.G.L. c. 93A. Similarly, the Massachusetts Supreme Judicial Court has held that a forum selection clause does not apply to wrongs committed *before* the parties entered into a contractual relationship, including allegations of pre-contract violations of M.G.L. c. 93A. *Jacobson v. Mailboxes, Etc. U.S.A., Inc.*, **419 Mass. 572, 579, 646 N.E.2d 741, 745-46 (1995).** Accordingly, Lycos' claims for fraudulent and negligent misrepresentation, and violation of M.G.L. c. 93A, fall *outside* the choice-of-law provisions and are governed by Massachusetts law. If, as a result of the fraudulent and/or negligent misrepresentations, the contracts are rescinded, Lycos' claims in quasi-contract would also be governed by Massachusetts law.

Second, the contracts' the choice-of-law provision does not cover Lycos' tort claims. Analysis of which state's law applies to a particular dispute is resolved using the choice-of-law analysis of the forum state – in this case, Massachusetts. *Reicher v. Berkshire Life Ins. Co. of America*, **360 F.3d 1, 6 (1st Cir. 2004).** Under Massachusetts law, the first step in a multi-step analysis "is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions" – here, Massachusetts and Missouri. *Id.* Without examining each cause

---

[3] CSI's 3/10 Memo at 5, ¶ 4 and Exhibit A to Amended Complaint, § 1 ("Each Equipment Schedule shall constitute a separate lease on the terms and conditions stated therein . . .")

[4] Amended Counterclaim, ¶¶ 51-61 and 64-68.

of action individually, it is sufficient to observe that at least one cause of action in the Amended

Counterclaim – Count V for violation of M.G.L. c. 93A, – presents a clear conflict between

Massachusetts and Missouri laws concerning unfair or deceptive acts or practices, where (among

other significant differences) the former permits actions between businesses while the latter applies

only to pure consumer transactions.[5]  Therefore, the Court must proceed to the next step in this

analysis: to examine the language of the choice-of-law provision to determine its scope.

The choice-of-law provision CSI drafted and included in its standard form Master Lease

Agreement provides:

> GOVERNING LAW: THIS MASTER LEASE AND ALL EQUIPMENT
> SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN
> CONNECTION HEREWITH SHALL BE GOVERNED BY, AND
> CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE
> OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF
> CONFLICTS OR CHOICE-OF-LAW.

Master Lease Agreement, § 18,6, attached to Lycos' Amended Counterclaim as Exh. A.  The

choice-of-law provision in the Sales Agreement similarly provides:

> GOVERNING LAW:  This Agreement, including all matters of construction,
> validity, performance and enforcement, is governed by the laws of the State of
> Missouri, without giving effect to the principles of conflicts or choice-of-law.

Sales Agreement, § 9(D), attached to Lycos' Amended Counterclaim as Exh. I.  Given the

narrowness of this language, it is not surprising that the Massachusetts Appeals Court in *Kitner v.*

*CTW Transport, Inc.*, 53 Mass. App. Ct. 741, 762 N.E.2d 867 (2002), construed and rejected the

application of a similar choice-of-law provision to a plaintiff's claims for intentional and negligent

---

[5]  *Compare* **Mass. Gen. Laws c. 93A, § 11 (authorizing business-to-business claims)** *with* **Mo. Rev. Stat. § 407.025.1 (limiting causes of action to any person who purchases merchandise "primarily for personal, family or household purposes")**, *Antle v. Reynolds*, **15 S.W.3d 762, 766 (Mo. App. Ct. 2000) ("The purpose of the Merchandising Practices Act is to supplement common law fraud remedies in** *consumer transactions* **'to preserve fundamental honesty, fair play and right dealings' in such transactions.") (emphasis added).**

misrepresentation and violations of M.G.L. c. 93A. [6]  It described such language as "expressly self-limiting."  53 Mass. App. Ct. at 746, 762 N.E.2d at 871-72.  Indeed, there is no suggestion that CSI's choice-of-law provision "would also cover tortious conduct or unfair acts."  Id.  See Trent Partners and Assocs., Inc. v. Digital Equipment Corp., 120 F. Supp. 2d 84, 97 n.12 (D. Mass. 1999) (finding that the "the choice-of-law provision . . . merely provides that the Agreement itself shall be 'governed and construed' under Massachusetts law, not that all claims or disputes arising from the Agreement should be settled under Massachusetts law"); First Security Bank, N.A. v. Northwest Airlines, Inc., 2001 WL 92175 at *3, n.8 (D. Mass. 2001) (Stearns, J.) (the choice-of-law provision "specifically limits itself to matters 'governed by' the lease, that is, the contract claims").[7]  To the extent there is any ambiguity as to the breadth of CSI's choice-of-law provision, it must be construed against CSI as the drafter of its standard form language. Merrimac Valley Nat'l Bank v. Baird, 372 Mass. 721, 723-24, 363 N.E.2d 688, 690-91 (1997).

As the choice-of-law provision covers only contract-based claims, the next step in the Court's analysis is to "characterize" Lycos' claims.  Trent Partners, 120 F. Supp. 2d at 95.  "[I]f the greater focus of the plaintiff's claims falls outside the contract," then the Court should not enforce the choice-of-law provision.  Bay State Anesthesia, Inc. v. Mallinckrodt, Inc., 2002 U.S. Dist. LEXIS 23694 at *2-*3 (D. Mass. 2002) (Zobel, J.), citing Jacobson, 419 Mass. at 579.

---

[6]  The choice of law provision in Kitner provided: "This Agreement is being executed and delivered and is intended to be performed in the State of . . . , and the substantive laws of the State of . . . shall govern the identity, construction, enforcement and interpretation of this Agreement . . . unless the laws of another state require such application to this Agreement or parts thereof."  53 Mass. App. Ct. at 745, 762 N.E.2d at 871 (last ellipsis in original).  While the agreement in Kitner does contain a clause acknowledging the possibility of another state's law applying to the contract when necessary, the choice-of-law provision in CSI's contracts implicitly acknowledges the possibility of another state's law applying to matters not involving "construction and interpretation" of those contracts.

[7]  To the extent that the lone, unreported District of Massachusetts case cited by CSI, McAdams v. Massachusetts Mutual Life Ins. Co., 2002 U.S. Dist. LEXIS 9944 (D. Mass. 2002), uses a different inquiry, its holding improperly contravenes binding state court decisions such as Jacobson and Kitner; it is also against federal authority cited above.

Only when the essential elements of tort claims consist of contract violations and can be reduced to nothing more than "embroidered" contract claims may such claims be governed by a contract's choice-of-law provision. *Northeast Data*, **986 F.2d at 609-10.** As set forth in each section below, that is not the case here where Lycos' claims are fundamentally tort claims.

Finally, to the extent that Lycos' tort claims are not governed by the choice-of-law provisions, the Court must then determine whether Massachusetts or Missouri law applies, using Massachusetts choice-of-law principles. Massachusetts employs a "functional choice-of law approach" which dictates that the "law of the state that has the more significant relationship to the parties and the underlying circumstances will be applied." *Stathis v. National Car Rental Sys., Inc.*, **109 F. Supp. 2d 55, 56 (D. Mass. 2000).** In general, "it is more than likely that it is the law of the place of the tort which will be controlling . . ." *Pevoski v. Pevoski*, **371 Mass. 358, 360, 358 N.E.2d 416, 417 (1976).**

Here, where both parties were resident in Massachusetts,[8] and the conduct and the injury to Lycos occurred in Massachusetts,[9] Massachusetts substantive law applies to Lycos' tort claims. *Cosme v. Whitin Mach. Works, Inc.*, **417 Mass. 643, 647-50, 632 N.E.2d 832, 835-36 (1994)** (Massachusetts law applies where both plaintiff and defendant resided in Massachusetts and the conduct giving rise to plaintiff's injury arose in Massachusetts).[10]

---

[8] **Mr. Stenberg of CSI operated out of Needham, Massachusetts, and Lycos is located in Waltham, Massachusetts. Amended Counterclaim, ¶¶ 4 and 18.**

[9] **Amended Counterclaim, ¶¶ 39-42.**

[10] **Massachusetts applies the factors set forth in both §§ 6 and 145 of the Restatement (Second) of Conflict of Laws.** *Id.*; *Romani v. Cramer, Inc.*, **992 F. Supp. 74, 77-78 (D. Mass. 1997). Section 145, cmt. e provides that the state where the plaintiff and defendant are located "is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there."**

<u>ARGUMENT</u>

I.     **LYCOS HAS STATED CLAIMS FOR FRAUDULENT AND NEGLIGENT
       <u>MISREPRESENTATION (COUNTS I-II, IV)</u>**

 In Counts I-II and IV of the Amended Counterclaim, Lycos alleges that CSI fraudulently

and/or negligently induced Lycos to enter into several of the "rolled up" lease schedules and the

Sales Agreement – each of which, as noted earlier, is a separate and independent contract.

Amended Counterclaim, ¶¶ 51-61, and 65-68.

  **A.** *Massachusetts Law Applies to Lycos' Claims for Misrepresentation in the
   <u>Inducement of the Lease Schedules and the Sales Agreement</u>*

 As noted above, the First Circuit and the Supreme Judicial Court have held that claims for

fraud in the inducement fall *outside* the contract's choice-of-law provision.  *Northeast Data*

*Systems*, **986 F.2d at 611;** *Jacobson,* **419 Mass. at 579, 646 N.E.2d at 745-46.  Moreover,**

regardless of whether the substantive laws of Massachusetts and Missouri conflict with respect to

the elements of claims for fraudulent and negligent misrepresentation, it is clear that such claims

have nothing to do with the subjects covered by the choice-of-law provision: "construction and

interpretation" of the agreements.  Therefore, Massachusetts law applies.

  **B.** *Lycos Has Pleaded All Necessary Elements Of Both Fraudulent And Negligent
   Misrepresentation, And CSI's Assertion That Lycos Cannot Plead Reasonable
   <u>Reliance As A Matter Of Law Is Unfounded</u>*

   **1.** **Lycos' Amended Counterclaim Sufficiently Pleads All Elements Of Both
    Misrepresentation Claims, Including Reliance**

 Although not set forth clearly in its Motion, CSI appears to be challenging the sufficiency

of Lycos' assertion of only one of the elements of a claim for fraudulent and negligent

misrepresentation: reasonable reliance.[11]  *See* CSI's 3/10 Memo, at 12.  CSI argues that the

---

[11] In its Amended Complaint, Lycos has alleged all five elements of a claim for fraudulent
misrepresentation: (1) a misrepresentation of material fact; (2) made with the intent to induce another to act; (3) made

misrepresentations alleged in Lycos' counterclaim – a false statement concerning the original equipment cost of the lease equipment and the misleading half-truth that the "roll-ups" would decrease Lycos' monthly payments without revealing the full financial impact of the "roll-ups" in terms of the amounts to be paid by Lycos relative to the original equipment cost – were capable of being discovered or ascertained by Lycos through its own investigation and therefore Lycos' reliance on these misrepresentations was not reasonable, such that its claim fails as a matter of law. *See id.* at 11-16. This argument is without merit.

It is well-settled in Massachusetts that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation." *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 81, 575 N.E.2d 70, 76 (1991). Moreover, "if the [defendant's] representations are such as to induce the [plaintiff] not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the [defendant's] assurances, his failure to ascertain the truth through investigation does not preclude recovery" under fraudulent misrepresentation. *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 446, 333 N.E.2d 421, 429 (1975). This principle is particularly applicable where the misrepresentation derives from the utterance of a half-truth designed to induce action or inaction by the plaintiff. *V.S.H. Realty v. Texaco, Inc.*, 757 F.2d 411, 415 (1st Cir. 1985) (the duty existing on the utterance of a half-truth "is so strong that the deceived party is

---

with knowledge of its untruth or with reckless disregard of the falsehood; (4) made with the intent that it should be acted upon and it was; and (5) resulting damages. (Amended Complaint, ¶¶ 49-61). *See Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth.*, 357 Mass. 40, 44, 255 N.E.2d 793, 796 (1970). Similarly, Lycos has alleged the four elements of a claim for negligent misrepresentation: (1) a misrepresentation of material fact; (2) made with the intent to induce another to act; (3) made with failure to exercise reasonable care or competence in obtaining or communicating the information; (4) causing justifiable reliance on that information; and (5) resulting damages. (Amended Complaint ¶¶ 49-50, 65-68). *See Kitner,* 53 Mass. App. Ct. at 749, 762 N.E.2d at 874. While these two torts share some elements, the main difference between the two is that liability for negligent misrepresentation "does not require a showing that the defendant even knew that the statements made were false or that the defendant actually intended to deceive the plaintiff." *Id.*

not charged with failing to discover the truth"). Thus, a Court may dismiss a complaint for failure to plead reasonable reliance *as a matter of law* only when the statement relied upon is "preposterous or palpably false." *Zimmerman*, 31 Mass. App. Ct. at 81, 575 N.E.2d at 76.[12] Otherwise, "the reasonableness of a party's reliance ordinarily constitutes a question of fact for the jury." *Rodi v. Southern New England School of Law*, 389 F.3d 5, 16 (1st Cir. 2004).

Here, Lycos' pleading with respect to its reasonable reliance included the following:

> Because of, among other things, CSI's movement of hundreds of pieces of equipment from one lease schedule to another, the complexity of those "roll-ups," CSI's misrepresentations, partial disclosures, and omissions, Lycos' trust and confidence in CSI, and the fact that expertise was required to discover the original equipment cost of equipment rolled up multiple times and the total impact of the "roll-ups," Lycos should not and could not have reasonably have been expected to discover the impact of the roll-ups prior to that time. *Indeed, CSI's successful effort to gain the trust of Lycos' personnel was designed to and did induce Lycos personnel not to seek to discover the foregoing.*

Amended Counterclaim, ¶ 49 (emphasis added). Because the "half truths" and falsehoods provided by CSI were not "preposterous or palpably false," and CSI's conduct induced Lycos not to investigate the veracity of such "half truths" and falsehoods, Lycos' counts for fraudulent and negligent misrepresentation cannot be dismissed on the ground that Lycos "could have ascertained" the false nature of CSI's misrepresentations. *See* CSI's Memorandum in Support of Motion to Dismiss or For Summary Judgment dated March 31, 2005 ("CSI's 3/31 Memo"), at 13. Indeed, as set forth in the above paragraph, Lycos has pleaded that it could *not* reasonably have discovered CSI's misrepresentations. Amended Counterclaim, ¶ 49.[13]

---

[12] **Missouri law is similar.** *See, e.g.*, *D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, LLP*, 129 S.W.3d 25, 32 (Mo. App. Ct. 2004) ("Although a party must exercise care and prudence for his own welfare, the rule has no application to a case in which the speaker makes a distinct and specific representation to induce action, and that does induce action. That the hearer stands on equal footing with the speaker or has equal knowledge or equal means for obtaining the information is of no consequence.").

[13] None of the cases cited at pages 11-13 in CSI's 3/31 Memo involve fraud claims where the defrauded party alleges it was induced not to investigate. Furthermore, many if not all of these cases cited by CSI can be

### 2.    CSI Owed Lycos a Duty to Make Full Disclosure

CSI suggests that it had no duty to disclose information to Lycos, and that this is fatal to Lycos' fraudulent and negligent misrepresentation claims.  *See* CSI's 3/10 Memo at 12, 17.  CSI is wrong.  "A duty of disclosure may . . . arise on the uttering of a half-truth, where a defendant has affirmatively prevented the plaintiff from discovering the truth on his own, . . . or where the plaintiff is in a position of dependence on the defendant."  *In re Fidelity/Apple Securities Litigation*, 986 F. Supp. 42, 49 (D. Mass. 1997).  *See V.S.H. Realty*, 757 F.2d at 414-15 ("There is much case law in Massachusetts supporting the proposition that a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party.").[14]

Here, Lycos has alleged that CSI: (a) uttered half truths by telling Lycos that entering into the "roll-ups" would reduce Lycos' monthly lease costs without revealing that over time Lycos would pay considerably more than 100% of the value of the equipment or that Lycos had already paid amounts well in excess of the original equipment cost on some of the leased equipment (Amended Complaint, ¶ 24); (b) affirmatively and purposely prevented Lycos from discovering the true nature of CSI's "roll-up" scheme (*Id.* at ¶¶ 41-42, 49-50); and (c) induced and gained the confidence of Lycos employees, thus putting Lycos in a dependent position (*Id.* at ¶¶ 18-20).

---

distinguished based on what the Supreme Judicial Court has recognized as "a distinction between a falsity that could only be uncovered by way of 'investigation' and a falsity that was readily apparent or 'obvious.'"  *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 468, 781 N.E.2d 787, 795 (2003).  Review of the cases cited by CSI reveals that they all involve the latter category of "obvious" falsities where no "investigation" was required and a "cursory review" of the contract or other plain written language would have revealed the untruth, and therefore it is not surprising that courts frequently find lack of reasonable reliance as a matter of law in such situations.  Here, however, Lycos has alleged that the half-truths and falsehoods made by CSI required much investigation to uncover, in which case the "the deceived party is not charged with failing to discover the truth."  *V.S.H.*, 757 F.2d at 415.

[14]  The same duty of disclosure exists under Missouri law.  *See, e.g.*, *Osterberger v. Hites Construction Co.*, 599 S.W.2d 221, 227 (Mo. App. Ct. 1980) ("[W]e have found that partial information may be as misleading and deceptive as active misrepresentation, and we have imposed a duty to disclose material facts where the defendant has invited plaintiff's confidence by making only a partial disclosure.").

Thus, Lycos has pleaded facts sufficient to create a duty on CSI's part to make full disclosure to Lycos.

> 3. **Lycos' Misrepresentation Claims Are Not Based Solely The March 18, 2002 Stenberg Email**

CSI seizes on the March 18, 2002 date of Paul Stenberg's email and argues that no contract entered into before that date can be subject to Lycos' claims of misrepresentation in the inducement. *See* CSI's 3/10 Memo at 14-15. It is self-evident that the Sales Agreement – executed in July, 2003 – was entered into by the parties *after* Mr. Stenberg's March, 2002 email. Amended Counterclaim, ¶¶ 44, 46. Furthermore, Lycos has alleged additional half-truths and partial disclosures reaching back well before Mr. Stenberg's email that support Lycos' misrepresentation claims as to the lease schedules. *Id.* at ¶ 24.

> 4. **Lycos' Misrepresentation Claims Are Not Barred By The Agreements' Integration Clause Or The Lease Schedules' "Hell or High Water" Clause**

CSI argues that Lycos' misrepresentation claims fail because the Master Lease Agreement and the Sales Agreement both contain integration clauses precluding the other party from relying on information "outside the contract," and a "hell or high water clause" that obligates Lycos to pay regardless of fraud. *See* CSI's 3/10 Memo at 3, 18. Again, CSI is wrong as a matter of law.

As to Lycos' claims for fraudulent misrepresentation, "it is the law of Massachusetts that even sophisticated businessmen must deal with each other honestly and may not induce contractual relations by material misrepresentations" and therefore "a party may not escape liability for misrepresentation by resort to" an integration clause. *VMark Software, Inc. v. EMC Corp.*, 37 Mass. App. Ct. 610, 619, 642 N.E.2d 587, 594 n.11 (1994); *see also Bates v. Southgate*, 308 Mass. 170, 182, 31 N.E.2d 551, 558 (1941) (holding that "contracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where

fraud inducing the contract is shown. . . .").[15]  Indeed, Lycos' claims are, for the most part, based on a failure to disclose, not affirmative misrepresentations.  The integration clause would not bar a claim for fraud or negligence based on a failure to disclose.  Similarly, the First Circuit recently held that a lease's "hell or high water clause" would not preclude claims for fraud.  *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, **400 F.3d 62, 70 (1ˢᵗ Cir. 2005) (an exception to the enforceability of "hell or high water" clauses exists "for cases of fraud," where "the victim in entitled to the remedies of default, including cancellation").**

As for Lycos' claim for negligent misrepresentation, the Supreme Judicial Court held, subsequent to *Sound Technologies, Inc. v. Hoffman*, **50 Mass. App. Ct. 425, 432-34, 737 N.E.2d 920, 925-26 (2000), on which CSI relies, that it is error to dismiss such a claim based on an integration clause pursuant to Rule 12(b)(6).**  *Marram v. Kobrick Offshore Fund, Ltd.*, **442 Mass. 43, 59-61, 809 N.E.2d 1017, 1031-32 (2004) (while courts have dismissed negligent misrepresentation claims based on an integration clause, they have done so "generally only after some record has been established on a motion for summary judgment or after trial").**  Moreover, as noted above, Lycos' claims are, for the most part, based on a failure to disclose, not affirmative statements that might be precluded by an integration clause.  CSI has not established any "record" in this case to refute Lycos' negligent misrepresentation claim.  Indeed, it has not even denied that claim.

---

[15]  **Missouri law is the same.**  *See, e.g.*, *Essex v. Getty Oil Co.*, **661 S.W.2d 544, 549 (Mo. App. Ct. 1983) ("The effect of a written contract is to merge all prior negotiations into the contract which may not then be varied or contradicted by parol evidence. This rule, however, has no application where it is claimed that fraudulent representations induced the party to enter into the contract.").**

5.    **Facts Not Contained In Lycos' Amended Counterclaim Should Not Be Considered In A Motion To Dismiss Pursuant To Rule 12(b)(6)**

Finally, CSI's motion to dismiss is replete with factual assertions which, in sum, seek to convince the Court that the factual nondisclosures and misrepresentations by CSI were easily ascertainable by Lycos (i.e., Lycos "simply never 'did the math'"), that Lycos must have known the cumulative cost of the equipment because Lycos is "a large, sophisticated business," and that the lease schedules themselves contained all of the information necessary for Lycos to determine the veracity of CSI's statements.  CSI's 3/10 Memo, ¶¶ 8-9 at 6-7, 11-15.  These "facts" contradict Lycos' allegations, and therefore may not be considered on a motion to dismiss.  Thus, this Court must accept as true in ruling on CSI's motion to dismiss that: (a) Lycos was unaware of both the aggregate original equipment cost and the significant premium CSI had obtained through the "roll-ups," (b) expertise was required to discover the nature and scope of CSI's misrepresentations, (c) CSI relies on its customers' lack of expertise and its intentional failure to disclose basic and relevant facts in order to obtain its ill-begotten profits, and (d) Lycos did not discover – and then only through the analysis of an expert leasing consultant – the true nature of CSI's "roll up" scheme.  *See* Lycos' Amended Counterclaim at ¶¶ 48-50.  As a result, Lycos has pleaded all required elements of its misrepresentation claims.

C.    *Lycos' Claim For Negligent Misrepresentation Stemming From The Provision Of Services Is Not Barred By The "Economic Loss" Doctrine*

CSI makes one argument specific to Lycos' negligent misrepresentation claim: that it is barred by operation of the "economic loss" doctrine.  *See* CSI's 3/10 Memo at 17-18.  This argument is not only wrong, it is disingenuously presented.  CSI properly cites to one sentence in this Court's opinion in *Gavett v. Roto-Rooter Services Company*, **2001 WL 1688896, *7 (D. Mass. 2001) (Zobel, J.)** for the general proposition that purely economic losses "are unrecoverable in tort

and strict liability actions in the absence of personal injury and property damage." CSI then blatantly ignores the very next sentence in *Gavett* which states: "Massachusetts law, however, has carved out an exception to the economic loss doctrine for negligent misrepresentation claims stemming from the provision of services." *Id. citing Cummings v. HPG Int'l, Inc.*, **244 F.3d 16, 4 (1ˢᵗ Cir. 2001)** and *Danca v. Taunton Sav. Bank*, **382 Mass. 1, 9-11, 413 N.E.2d 1099, 1102-03 (1982) (misrepresentations in mortgage documents).** [16]

Lycos has asserted a negligent misrepresentation claim against CSI arising from misrepresentations made during negotiation of CSI's proposed lease of equipment. As the negligent misrepresentation in *Danca* concerned misrepresentations made in mortgage documents – a finance transaction – and the negligent misrepresentation here occurred during the negotiation of a lease/finance transaction, the negligent misrepresentation here, in this Court's words, "stemmed from the provision of services." [17]

---

[16] **Missouri similarly permits claims for economic loss arising from negligent misrepresentations.** *See B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, **724 S.W.2d 669, 673 (Mo. App. Ct. 1987)** ("We have examined the cases cited by [defendant] in support of its assertion that damages for economic loss cannot be recovered under any tort theory, absent personal injury, damage to property other than that sold, or violent occurrence . . . [and] conclude, however, that a negligent misrepresentation action is in a different category from, and is not resolved by, the cases cited by [defendant], and that [plaintiff] has stated a claim for negligent misrepresentation.").

[17] Indeed, the SJC has held that the exception to the economic loss doctrine for claims of negligent misrepresentation applies to *all* negligent misrepresentation claims, and not just those involving services. *Nota Construction Corp. v. Keyes Assocs., Inc.*, **45 Mass. App. Ct. 15, 20, 694 N.E.2d 401, 405 (1998);** *see also Cummings v. HPG International, Inc.*, **244 F.3d 16, 19-20 (1ˢᵗ Cir. 2001)** (acknowledging the divergent rulings in *Danca* and *Nota*, observing that the former made the exception limited to cases involving "the provision of services" while the latter "flatly states, without drawing distinctions, that an exception to the economic loss doctrine permits recovery for economic losses resulting from negligent misrepresentation," and declining to predict the course of Massachusetts law).

II.     <u>LYCOS HAS STATED A CLAIM FOR UNCONSCIONABILITY (COUNT III)</u>

Because the substantive laws of Massachusetts and Missouri are identical for all relevant purposes with respect to Lycos' claims in Count III for unconscionability in the Sales Agreement,[18] Lycos will use Massachusetts law (the forum state's law) simply for the sake of convenience and clarity.  While CSI correctly states that the issue of unconscionability is determined as a matter of law by the Court, CSI erroneously implies that, as a result, such decisions must be made at this early stage of the proceedings simply because the judge and not the jury is the fact-finder. Instead, the Court's decision is highly-fact intensive and "must be determined on a case-by-case basis . . . giving particular attention to whether . . . the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 292-93, 408 N.E.2d 1370, 1376 (1980).

CSI presents a laundry list of factual issues that is neither applicable to a motion to dismiss (because they do not assume as true the allegations contained in Lycos' amended counterclaim) nor dispositive of this particular case.  *See* CSI's 3/31 Memo at 14-17.  CSI ignores case law which indicates that "gross disparity in the consideration alone may be sufficient to sustain a finding that the contract is unconscionable, since the disparity itself leads inevitably to the felt conclusion that knowing advantage was taken of one party." *Waters v. Min, Ltd.*, 412 Mass. 64, 68, 587 N.E.2d 231, 233-34 (1992) (citations omitted).  When that gross disparity is accompanied by allegations of fraud or misrepresentation, such allegations by themselves are sufficient to state a cause of action

---

[18]  Both states have adopted the same unconscionability provision of the Uniform Commercial Code (*see* M.G.L. c. 106, § 2-302; Mo. Rev. Stat. § 400.2-302), both rely on the same historic common law principles of unconscionability to supplement the Code (*see Waters*, 412 Mass. at 66 and *Liberty Financial Mgmt. Corp. v. Beneficial Data Processing Corp.*, 670 S.W.2d 40, 49-50 (both citing the historical test of an unconscionable contract as one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other")), and both utilize a more sophisticated modern test which uses a "sliding scale" to an examination of the procedural (unfair surprise) and substantive (oppressiveness) unconscionability of any given contract on a case-by-case basis (*see Zapatha*, 381 Mass. at 293 n.13 and *Liberty Financial*, 670 S.W.2d at 50).

for unconscionability.  *See id.* ("Courts may avoid enforcement of a bargain that is shown to be unconscionable by reason of gross inadequacy of consideration accompanied by other relevant factors," which includes "high pressure sales tactics and misrepresentation.").

CSI's presents the "myriad of factors" set forth in *Nasco, Inc. v. Public Storage, Inc.*, 1995 U.S. Dist. LEXIS 7815 (D. Mass. 1995), that Massachusetts courts consider in determining whether a contract is unconscionable.  *See* CSI's 3/31 Memo at 15-16.  That list includes one factor that is clearly relevant to Lycos' unconscionability claim: "whether the party seeking to enforce the challenged provision took unfair advantage of the other party's weakness, vulnerability, or dependency, or used unfair or improper means to place the other party in such position."  Lycos' allegations concerning CSI's fraudulent and negligent misrepresentations constitute the "unfair or improper means" contemplated by this factor.  Furthermore, there is one factor that has been notably omitted by CSI that the Court in *Nasco* also highlighted and which is particularly applicable here: "whether there was a gross disparity between the value of the consideration given and received."  *Id.* at *14.  Despite CSI's attempt to ignore this factor, it is clear that by alleging a "gross disparity" in the payments made to CSI above any reasonable amount, along with CSI's fraudulent misrepresentations bringing about such an unfair disparity, Lycos has sufficiently pleaded a cause of action for unconscionability.  *See* Amended Counterclaim ¶¶ 62-64.

## III.    LYCOS HAS STATED A CLAIM UNDER MASSACHUSETTS GENERAL LAWS c. 93A (COUNT V)

In Count V, Lycos has alleged that CSI has engaged in unfair and deceptive practices in violation of M.G.L. c. 93, §§ 2 and 11.  In support of its motion to dismiss, CSI argues that this claim is not viable because (a) the choice-of-law provision for Missouri law in the Master Lease

- 16 -

Agreement and Sales Agreement bars claims under M.G.L. c. 93A; and (b) none of Lycos'

common law claims is legally sufficient.[19]  *See* CSI's 3/10 Memo at 18-19.  These arguments fail.

    A.    *Massachusetts Law Applies To Lycos' Claim That CSI Has Engaged In Unfair And Deceptive Practices*

As noted above, when a plaintiff's M.G.L. c. 93A claim involves fraudulent inducement in

the formation of the contract in question, courts in Massachusetts (both federal and state) have held

that the parties' contractual choice-of-law provision does not apply to such a claim.  *Northeast*

*Data Systems,* **986 F.2d at 611;**  *Jacobson,* **419 Mass. at 579.**   Even were this not the case,

Massachusetts law indicates that whether a choice-of-law provision applies to a M.G.L.

c. 93A claim "should depend on whether contract-like or instead tort-like elements of the ch. 93A

claim predominate on the facts of the particular case."  *Computer Systems Engineering, Inc. v.*

*Qantel Corp.*, **571 F. Supp. 1365, 1370 (D. Mass. 1983),** *aff'd* **740 F.2d 59 (1ˢᵗ Cir. 1984).**  Here,

Lycos' Chapter 93A claim is tort-based – stemming from CSI's failure to disclose material

information and CSI's affirmative misrepresentations.  Accordingly, Massachusetts law and

M.G.L. c. 93A, not Missouri law, applies to Lycos' claim that CSI has engaged in unfair and

deceptive practices.[20]

---

    [19]  CSI's also argues in one sentence that its alleged conduct does not rise to the level of "rascality" required under c. 93A. CSI's 3/10 Memo at 19.  This argument is worthy of only a brief response.  As a threshold matter, the Supreme Judicial Court has stated that words such as "rascality" are "uninstructive," and that the proper analysis is on the "nature of the challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G.L c. 93A fairness determination."  *Massachusetts Employers Insurance Exchange v. Propac-Mass, Inc.*, **420 Mass. 39, 42-43, 648 N.E.2d 435, 438 (1995).**  Moreover, Lycos has alleged that CSI made intentional misrepresentations that defrauded Lycos out of at least $14 million, that CSI relies on its customers' lack of expertise and its intentional failure to disclose to induce them into enter into "roll-ups," and that it establishes a trusting relationship with its customers to induce them not to discover the impact of the roll-ups.  Amended Counterclaim, ¶¶ 44, 47, 50.  These allegations, which must be assumed to be true in ruling on the Motion, are sufficient to reflect CSI's so-called "rascality."

    [20]  Indeed, if the choice-of-law provision purported to contract away claims under M.G.L. c. 93A, it might be unenforceable as a matter of public policy.  *Jacobson v. Mailboxes, Etc. U.S.A., Inc.*, **419 Mass. 572, 579, 580, 646 N.E.2d 741, 746 n.9 (1995)** ("We need not decide whether, if the agreement purported to contract away any claims under G.L. c. 93A, we would decline to enforce the provision on public policy grounds.").

**B.**    *Irrespective of Whether Lycos' Claims for Fraudulent and Negligent Misrepresentation Survive, Lycos Has Stated A Claim Under M.G.L. c. 93A*

As set forth above, Lycos' tort-based misrepresentation claims are legally sufficient and therefore Lycos' related claim under M.G.L. c. 93A also has merit.  But even if they were not, Lycos' c. 93A claim would still be independently viable for three reasons.  First, Lycos has stated a claim under M.G.L. c. 93A, §§ 2 and 11, simply by alleging that CSI's failure to disclose facts that would have caused Lycos not to enter into the lease roll-ups and the Sales Agreement. Amended Counterclaim ¶¶ 53-54, 59-60.  This, in and of itself, is sufficient to state a claim upon which relief may be granted under M.G.L. c. 93A.  *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 778-79, 407 N.E.2d 297, 308 (1980) (a practice may be deceptive if it reasonably could be found to have caused the plaintiff to act differently than he otherwise would have acted).

Second, the standard for pleading a Chapter 93A claim based on misrepresentation is less stringent than it is for common law fraud in at least two respects.  Under M.G.L. c. 93A, §§ 2 and 11, proof of actual reliance on a misrepresentation is *not* required so long as the evidence warrants a finding of a causal relationship between the misrepresentation and the injury to the plaintiff.  *Int'l Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 850, 443 N.E.2d 1308, 1314 (1983) ("This Court has rejected the proposition that a plaintiff must show proof of actual reliance on a misrepresentation under c. 93A, § 9.  We see no reason to reach a different result under c. 93A, § 11.")  *Accord, Sebago, Inc. v. Beazer East, Inc.*, 18 F.Supp.2d 70, 103 (D. Mass. 1998) *quoting Fraser Engineering Co., Inc. v. Desmond*, 26 Mass. App. Ct. 99, 104, 524 N.E.2d 110, 113 (1988).  Here, Lycos has alleged that CSI failed to disclose material facts in inducing Lycos to enter into the "roll-ups" and the Sales Agreement, and that Lycos was injured as a result of that failure to disclose and misrepresentation.  Amended Complaint, ¶¶ 69-75.  Additionally, Lycos' M.G.L. c. 93A, § 11 claim is viable even if CSI did not have a "duty to disclose" material facts to

it. *Traffic Markings, Inc. v. P.K. Contracting, Inc.*, **2002 WL 31194874, \* 11 (D. Mass. 2002)** citing *V.S.H. Realty*, **757 F.2d at 417** ("We are not convinced . . . that V.S.H. needs to allege more than a failure to disclose a material fact to state a cause of action under chapter 93A. . . . one difference between a fraud claim and the more liberal 93A is allowance of a cause of action even in the absence of a duty to disclose.").

Finally, Lycos' allegations state a claim under the Massachusetts Attorney General's regulation, **940 C.M.R. § 3.16(2)**, a regulation promulgated by the Attorney General pursuant to his authority under Chapter 93A, § 2(c). To state a claim under that regulation, Lycos was required to allege that: (1) CSI knew that it was failing to disclose information; (2) the information it failed to disclose was a material circumstance that would have led Lycos not to enter into the "roll-ups" and/or the Sales Agreement; and (3) CSI failed to disclose the material information. *Sheehy v. Lipton Industries, Inc.*, **24 Mass. App. Ct. 188, 195, 507 N.E.2d 781, 785 (1987).** Lycos has so alleged.[21] Accordingly, Lycos has stated a claim upon which relief may be granted under the regulation.[22]

CSI argues, relying on *In re First New England Dental Centers, Inc.*, **291 B.R. 229, 241 (D. Mass. 2003)**, that the Attorney General's regulation does not apply to business-to-business transactions. *First New England* is inapposite because it relies on the Supreme Judicial Court's decision in *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, **418 Mass. 737, 640 N.E.2d 1101 (1994)**, which construes a *different* regulation in a contract action rather than a tort action. *Knapp Shoes* was, as the SJC "stressed," a contract-based action for breach of warranty. **418 Mass. at**

---

[21]    Amended Counterclaim, ¶¶ 39-47.

[22]    Massachusetts cases have not required a finding of "rascality" to impose liability under this regulation. *Brennan v. Carvel Corporation*, **929 F.2d 801, 813-814 (1st Cir. 1991).**

743, 640 N.E.2d at 1104 n.5. The Court specifically acknowledged that a tort claim for damages for physical injury might lead to a different result. *Id.*

Alternatively, *First New England* is wrongly decided because it is *expressly* inconsistent with the Attorney General's construction of a regulation he (the Attorney General) administers and *implicitly* inconsistent with the First Circuit's decision in *V.S.H. Realty* and with *Commonwealth v. Amcan Enterprises, Inc.*, 47 Mass. App. Ct. 330, 712 N.E.2d 1205 (1999).

As to the former, Lycos has alleged that the Massachusetts Attorney General construes 940 C.M.R. 3.16(2), a regulation he promulgated and enforces, to apply to business-to-business transactions. Amended Counterclaim, ¶ 37. The Attorney General enforced this regulation in business-to-business transactions *after Knapp Shoes* in *Amcan* and in a complaint attached to Lycos' Amended Counterclaims.[23] The Attorney General's interpretation of a regulation he administers is entitled to "substantial deference." *Purity Supreme*, 380 Mass. at 782, 407 N.E.2d at 310 (Court would overturn the Attorney General's interpretation of his own regulation only if that interpretation were "arbitrary, unreasonable or inconsistent with the plain terms of the rule itself"). In fact, in construing 940 C.M.R. 3.08(1)(c), a regulation that referred to, among other things, a repairman's failure to make disclosures during an in-home service call, the Court in *Knapp Shoes* determined that "[i]t is reasonably clear that, in drafting the regulation, [940 C.M.R. 3.08(2)], the Attorney General had in mind protection for consumers against unfair or deceptive acts or practices that had come to the attention of his office in connection with shoddy repairs, inadequate and misleading service contracts and the grant of worthless warranties." 418 Mass. at

---

[23] Amended Complaint, ¶ 37 and Exhibit G thereto. Apparently, the Court in *First New England*, which did not address the Attorney General's interpretation of 940 C.M.R. 3.16(2), was unaware of it.

744-45, 640 N.E.2d at 1105.  This Court, like the SJC, should defer to the Attorney General's interpretation of a statute he administers.

Even if the Court does not find the Attorney General's position clear and/or questions whether it should defer to it, the Court should follow approach in *Knapp Shoes* and ascertain the intent of the Attorney General as evidenced by the other words in and around the regulation.  418 Mass. at 744-45, 640 N.E.2d at 1105.  Section 3.16(b) of 940 C.M.R. provides a cause of action for failure to disclose information to a "buyer." [24]  The word "buyer" – which is defined by the Attorney General's regulations to include "lessees" such as Lycos[25] – is broader than the analogous word used by the Attorney General in very next section, 940 C.M.R. 3.16(3): "consumer."  Nevertheless, Chief Judge Young, who wrote *First New England*, recently asserted that "using *Knapp* to support an argument that section 3.16(3) never applies to a case brought pursuant to Mass. Gen. Laws ch. 93A, § 11 is an overly broad interpretation of the language in" [*Knapp* and *First New England.*] . . . There is no reason to assume that [940 C.M.R. § 3.16(3)] ought not to apply to claims brought pursuant to section 11 as well as to claims brought pursuant to section 9."  *J.E. Pierce Apothecary, Inc., v. Harvard Pilgrim Health Care, Inc.*, 2005 WL 845168 *21 (D. Mass. March 31, 2005).[26]  If the Attorney General had intended to limit 940

---

[24]  940 C.M.R. 3.16(2) provides as follows:

Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c. 93A, § 2 if: . . .
(2)       Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction; or
(3)       It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection; . . .

[25]  940 C.M.R. 3.01, Definition of Buyer.

[26]  The word "buyer" also contrasts with the word used in the regulation construed in *Knapp Shoes*, 940 C.M.R. 3.08: "customer."

C.M.R. 3.16(2) to business-to-*consumer* transactions, he could readily have used the word "consumers" in both sub-sections 2 and 3 of 940 C.M.R. rather than in only section 3.   The "use of different language in related [regulations] dealing with the same subject matter ordinarily indicates that different meanings were intended." *Petrucci v. Board of Appeals of Westwood*, 45 Mass. App. Ct. 818, 823, 702 N.E.2d 47, 51 n.8 (1998) (referring to related statutes rather than related regulations).   Furthermore, courts construe M.G.L. c. 93A broadly to achieve the statute's remedial purpose.  *See Murphy v. Charlestown Savings Bank*, 380 Mass. 738, 743, 405 N.E.2d 954, 957 (1980) ("treating a mortgagor as a purchaser would be consistent with our frequent observation that G.L. c. 93A deserves broad construction.")  Thus, construing 940 C.M.R. 3.16(b) to apply to business-to-business transactions is consistent with the plain language of the regulation and the remedial purpose of the statute under which the regulation was promulgated.

    *First New England* is also implicitly inconsistent with *V.S.H. Realty* and *Amcan*.  In *V.S.H. Realty*, the First Circuit found that the plaintiff had stated a cause of action upon which relief may be granted under 940 C.M.R. 3.16(2) in a business-to-business transaction, implicitly concluding that the regulation applies in business-to-business transactions. 757 F.2d at 417.  Similarly, in *Amcan*, the Massachusetts Appeals Court upheld the imposition of a million dollars in fines against a business for violating 940 C.M.R. §§ 3.05(1) and 3.16(2) for sending deceptive solicitations to businesses in Massachusetts. 47 Mass. App. Ct. 330-38, 712 N.E.2d at 1205-10.  Accordingly, this Court should conclude that 940 C.M.R. 3.16(2) applies in business-to-business transactions, and not dismiss Lycos' M.G.L. c. 93A claim.

## V.    LYCOS HAS STATED CLAIMS FOR MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT (COUNTS VI AND VII)

If Lycos were to prevail on its claim for fraud in the inducement of the rolled-up lease schedules and the Sales Agreement, those agreements would be voidable. *Nash v. Trustees of Boston University*, 946 F.2d 960, 966-67 (1st Cir. 1991). Lycos would then be entitled to elect either to: (a) rescind the lease schedules and seek restitution; *or* (b) not rescind the lease schedules and seek damages for fraud. *See Kenda Corporation, Inc. v Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 224 (1st Cir. 2003) ("Fraud in the inducement can serve both a basis for tort liability . . . and as grounds for rescinding a contract.") "Generally, an election between inconsistent remedies is made after a verdict is entered but prior to entry of judgment." *See Dopp v. HTP Corporation*, 947 F.2d 506, 515 (1st Cir. 1991). If Lycos were to elect rescission as a remedy, the lease schedules would be voided. Hence, its actions in quasi-contract would lie even if, as CSI argues, actions in quasi-contract do not lie if a contract exists. *See* CSI's 3/10 Memo, at 9-10. And, because there is no reason why Lycos should be expected to make an election at any time prior to the jury verdict, it would be improper to dismiss those claims at this time.

## V.    BECAUSE LYCOS' SUBSTANTIVE CLAIMS SURVIVE, ITS CLAIMS FOR DECLARATORY RELIEF SURVIVE (COUNTS VIII AND IX)

In Count VIII of its Amended Counterclaim, Lycos seeks a declaration that it has no further payment obligation to CSI under the Master Lease Agreement and that it is entitled to retain the equipment for which it paid more than $3.775 million under the Sales Agreement. In Count IX of its Amended Counterclaim, Lycos seeks a declaration that CSI is obligated to disgorge and return all overpayments made by Lycos as a result of the "roll-up" of various equipment schedules and Lycos' purchase of the equipment pursuant to the Sales Agreement. CSI maintains that if the substantive legal claims are deficient, the declaratory judgment action must be

dismissed. The converse is also true – if the legal claims are sufficient, the declaratory judgment counts must be maintained. As Lycos' other claims are viable for the reasons set forth above, the declaratory judgment counts should not be dismissed.

WHEREFORE, Lycos respectfully requests that the Court enter an Order:

1.    Denying CSI's Motion to Dismiss Lycos' Amended Counterclaim; and

2.    Granting Lycos such other relief as may be appropriate and just.

LYCOS, INC.,

By its attorneys

Dated:  April 29, 2005              /s/ Thomas O. Bean_____
                                   Thomas O. Bean (BBO# 548072)
                                   Erik P. Bartenhagen (BBO# 640003)
                                   NUTTER, McCLENNEN & FISH, LLP
                                   World Trade Center West
                                   155 Seaport Boulevard
                                   Boston, Massachusetts 02210
                                   (617) 439-2000


## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for plaintiff, Robert J. Kaler, Gadsby Hannah LLP, 225 Franklin Street, Boston, MA 02110, by hand on April 29, 2005.

/s/ Erik P. Bartenhagen
Erik P. Bartenhagen


1412247.4