# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) | C.A. No. 05-10017-RWZ |
| | ) | |
| Plaintiff and Defendant-in-Counterclaim, | ) | |
| | ) | |
| v. | ) | |
| | ) | DEFENDANT LYCOS, INC.'S |
| LYCOS, INC., | ) | LOCAL RULE 56.1 STATEMENT |
| | ) | IDENTIFYING THOSE FACTS IN CSI'S |
| Defendant and Plaintiff-in-Counterclaim, | ) | STATEMENT OF UNDISPUTED MATERIAL |
| | ) | FACTS THAT LYCOS' DISPUTES |
| and | ) | |
| | ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) | |
| | ) | |
| Trustee Process Defendant | ) | |

Defendant and Plaintiff-in-Counterclaim, Lycos, Inc. ("Lycos") submits this statement identifying those facts contained in Computer Sales International, Inc.'s ("CSI") Statement of Undisputed Facts incorporated in its Memorandum of Law in Support of its Motion for Summary Judgment as to its Complaint and its Motion to Dismiss or for Summary Judgment as to the Amended Counterclaim of Defendant Lycos, Inc. ("CSI's Statement") that Lycos disputes for purposes of the above-referenced motions for summary judgment (the "Motions").[1]

Lycos notes that CSI's Statement does not comply with the requirements of Local Rule 56.1 for several reasons.  First, it does not even allege that the facts contained therein are all

---

[1]  In addition to those facts disputed herein, Lycos reserves the right to contest at trial any and all of the facts contained in the CSI's Statement of Undisputed Facts, regardless of whether it has disputed them herein.

"material" to resolution of the summary judgment motions.  Indeed, many paragraphs simply contain procedural history and are not material to its resolution at all.  *See, e.g.*, ¶¶ 1, 4, 7, 8, 9.

This memorandum is divided into two parts: Section I lists the paragraphs from the Statement that contain facts disputed by Lycos, and the reasons therefor, and Section II lists a legal conclusion that are not "facts" and are disputed.

## I.    Disputed Facts

**Paragraph 4 – CSI's Assertion:**

When it filed its Verified Complaint, CSI obtained an *ex parte* attachment of Lycos' bank account at trustee-defendant Bank of America in the amount of $310,000.  *See* Order of January 5, 2005 Allowing Plaintiff's Motion for *Ex Parte* Approval of Attachment on Trustee Process.  In response, Lycos did not seek to dissolve the attachment, but instead filed an answer denying liability, and a counterclaim seeking to retroactively void its obligations not only under Equipment Schedules 100 and 200, but also under (a) all the other equipment schedules that it entered into with CSI pursuant to the Master Lease from 1996 to 2002, *and* (b) the July 2003 Sales Agreement that it signed.  *See* Answer and Counterclaim of Defendant Lycos, Inc., filed February 5, 2005.

**Paragraph 4 – Lycos' Response:**

As to the second sentence, Lycos does not seek to void retroactively its obligations under all the equipment schedules that it entered into with CSI.  It seeks to void only the schedules entered into on and after the first "roll-up," as well as the Sales Agreement.  *See* Lycos' Amended Answer and Counterclaim, Prayers for Relief, and damages.

**Paragraph 10 – CSI's Assertion:**

Then, although Lycos admitted through counsel that it ordered and knew the cost of the Equipment at the time it was purchased by CSI, *see* Second Affidavit of Jeffrey Rousseau ("Second Rousseau Aff." at Exh. 1), it refused to agree to a stipulation to that effect unless CSI agreed to other extraneous language that was either untrue or made no sense to CSI.  This extraneous language seemed primarily intended to help Lycos "argue around" the fact that it knew the cost of

the Equipment when it ordered it.  *Id*.  CSI was not comfortable agreeing to this language, however, and as a result, the parties have filed no stipulation on this issue.  *Id*.

## Paragraph 10 – Lycos' Response:

Lycos admits that it knew the cost of each individual piece of equipment at the time that equipment was purchased, and the aggregate cost of the equipment placed on an initial lease schedule, but denies that it knew the aggregate cost of any specific group of equipment. Affidavit of Brian Lucy ("Lucy Aff."), ¶ 9.  In addition, while Lycos does not know what language CSI considered "untrue" or "nonsensical," Lycos admits that it would not agree to a Stipulation that contained inaccurate or misleading information, and that the language of the draft Stipulation under discussion was inaccurate and misleading because it implied incorrectly that Lycos knew the cost of the equipment in the aggregate.  Affidavit of Mark Blais ("Blais Aff."), ¶¶ 4-6.

## Paragraph 11 – CSI's Assertion:

The pleadings themselves, however, and Lycos own proposed drafts of the stipulation, as well as the Second Rousseau Aff. (filed herewith) and its exhibits, show that it is genuinely undisputed that Lycos ordered the Equipment, and knew the cost of the Equipment at the time it was ordered.  *See* Lycos Original Counterclaim at p. 14, ¶27 ("Schedule 67E governed the lease of equipment with an original equipment cost of $1,091,002").  *See also* Second Rousseau Aff. at Exh. 1.  In fact, under the agreed Master Lease and equipment schedules, Lycos was required to (and did) select, negotiate the price for, and order that equipment from vendors that it chose.  *See* Verified Complaint at 8, and Exhibit 1.  *Lycos then confirmed its approval of each purchase price in writing, and authorized CSI to pay it.*  *See* Second Rousseau Aff. at pp. 2-3. Examples of Lycos' written approvals of each purchase price, for the very Equipment Schedule 67E that Lycos uses as an example in its counterclaim, are attached as Exhibit 1 to the Second Rousseau Aff.  *Id.*

<u>Paragraph 11 – Lycos' Response:</u>

Lycos admits that it ordered the equipment and knew the cost of each piece of equipment at the time the equipment was ordered.  Lycos denies, however, that it knew, at any time, the aggregate cost of the equipment that it leased from CSI.  Lucy Aff., ¶ 9.

<u>Paragraph 12 – CSI's Assertion:</u>

As a result, Lycos has no basis for claiming that it did not know the cost of the Equipment, and obviously no basis for claiming that it did not know what it was paying to lease the Equipment – since its payment obligations were set forth in the contracts it signed.  *See* Second Rousseau Aff. at p. 2, ¶ 3.  It is also undisputed that the Master Lease, the equipment schedules, the Sales Agreement, and all the other acknowledgement and acceptance documents that Lycos signed in connection with its multiyear leases and eventual purchase of the Equipment were signed by authorized representatives of Lycos, and in many cases reviewed by its legal department.  *See* Second Rousseau Aff. at pp. 4-5.

<u>Paragraph 12 – Lycos' Response:</u>

Lycos denies that it has "no basis for claiming that it did not know the cost of the equipment."  Lucy Aff., ¶¶ 9, 11.  CSI has been "cute" by using a capital "E" in the word equipment, and not defining whether it refers to individual pieces of equipment at lease inception or all the equipment Lycos leased in the aggregate.  Blais Aff., ¶ 5.  As noted above, Lycos admits it knew the cost of the individual pieces of equipment at lease schedule inception, but denies that it knew the aggregate cost of all the equipment at any time.  Lucy Aff., ¶ 9.  Lycos also denies that it could have readily calculated the aggregate cost of the equipment.  Franklin Aff., ¶¶ 8, 11, 16; Lucy Aff., ¶ 17, particularly when there were thousands of purchase orders and invoices issued over time, and when costs other than the "hard" costs for the equipment were often included therein.  Affidavit of Deborah Bibbo, ¶¶ 4-5.

## II.    Disputed Legal Conclusions

### Paragraph 1 – CSI's Assertion:

Plaintiff Computer Sales International, Inc. ("CSI"), a privately held St. Louis-based computer leasing company, commenced this action on January 5, 2005 seeking to collect an account receivable of $301,050 from defendant Lycos, Inc. ("Lycos"), a publicly traded Massachusetts-based internet service company. *See* Verified Complaint at 1.  Lycos owes this money to CSI under two computer equipment leases, designated Equipment Schedules 100 and 200 that Lycos entered into with CSI in January of 2002 to effectuate its lease of certain computer equipment from CSI.  *Id*. at 4-7.

### Paragraph 1 – Lycos' Response:

For the reasons set forth in the affirmative defenses in its Answer and the claims

asserted in its Amended Counterclaim, Lycos denies that it owes $301,050 to CSI.

LYCOS, INC.,

By its attorneys

Dated:  April 29, 2005              _____//s//_____
                                    **Thomas O. Bean (BBO# 548072)**
                                    **Erik P. Bartenhagen (BBO# 640003)**
                                    **NUTTER, McCLENNEN & FISH, LLP**
                                    **World Trade Center West**
                                    **155 Seaport Boulevard**
                                    **Boston, Massachusetts 02210**
                                    **(617) 439-2000**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for plaintiff, Robert J. Kaler, Gadsby Hannah LLP, 225 Franklin Street, Boston, MA 02110, by hand on April 29, 2005.

_____//s//_____
**Erik P. Bartenhagen**

1422726.2