UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **COMPUTER SALES INTERNATIONAL, INC.,** | ) | C.A. No. 05-10017-RWZ |
| | ) | |
| **Plaintiff and Defendant-in-Counterclaim,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT LYCOS, INC.'S** |
| **LYCOS, INC.,** | ) | **OPPOSITION TO COMPUTER SALES** |
| | ) | **INTERNATIONAL, INC.'S** |
| **Defendant and Plaintiff-in-Counterclaim,** | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | **ON LYCOS' AMENDED COUNTERCLAIM** |
| and | ) | |
| | ) | |
| **BANK OF AMERICA f/k/a FLEET BANK,** | ) | |
| | ) | |
| **Trustee Process Defendant.** | ) | |

## INTRODUCTION

At its core, this is an action about a company, Computer Sales International, Inc. ("CSI"), which deftly gained the trust and confidence of the Lycos, Inc. ("Lycos") over several years of a close business relationship and shamelessly (to use the same word CSI used to describe Lycos' counterclaims) used that trust and confidence to take advantage of its loyal business partner. Indeed, CSI's motion for summary judgment is most notable for what it does not do – specifically deny that it reaped an unconscionable profit from Lycos by use of a complex leasing strategy of "roll-ups" to obscure the relationship between the total amount of the rental payments made by Lycos for thousands of pieces of equipment over the span of many years and the original cost of that equipment, such that the true impact of those "roll-ups" and the windfall gained by CSI was not discovered until after the millions of dollars in

damage was already done.  Rather, CSI *shamelessly* adopts the position that regardless of the unconscionable profits it reaped, "gotcha" is fair in business.

What CSI misses in its boasting, however, is that under applicable law, all is not (unlike in love and war) fair in business.  Even between two businesses, the law mandates that those, like CSI, who engage in fraudulent and deceptive business practices can and must be held accountable.

CSI is not entitled to prevail on its Motion for Summary Judgment as to Lycos' Counterclaims (the "Motion") because CSI has failed to demonstrate the absence of a genuine issue of material fact concerning any of Lycos' counterclaims (in fact, there are numerous genuine issues of material fact still in dispute including, most notably, the very facts that form the crux of Lycos' claims) and, even if it had, it is not entitled to a judgment as a matter of law as to any of Lycos' claims.

## STANDARD OF REVIEW

Summary judgment is appropriate *only* if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter if law." Fed. R. Civ. P. 56(c).  CSI bears the burden "to establish the lack of a genuine, material, factual issue." *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir. 1986).  Any doubt about whether there is a genuine issue of material should be resolved *against* the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000).  And, when construing the record, this Court must do so "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano*, 218 F.3d at 5.

## ARGUMENT

I.  **CSI HAS FAILED TO ADDUCE ANY EVIDENCE DEMONSTRATING THE ABSENCE OF A GENUINE ISSUE OF MATERIAL FACT**

Not only does CSI bear the burden to establish the lack of a genuine, material, factual issue, but any doubt about whether there is a genuine issue of material fact must be resolved against CSI.  *Adickes*, 398 U.S. at 158-59; *Feliciano*, 218 F.3d at 5.[1]  When, as here, the record submitted by the moving party is insufficient to satisfy this burden, the motion must be denied.  *Adickes*, 398 U.S. at 158-59 *citing* Advisory Committee note to 1963 amendment to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."); *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).  Indeed, it is only when the movant has properly supported a motion for summary judgment that the burden shifts to the adverse party to show that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(e)).  Here, CSI's papers are so inadequate that they have failed to demonstrate the absence of a genuine issue of material fact in dispute.

According to the Motion, the factual record on which CSI relies consists of: "Lycos' own allegations, as set forth in its pleadings (including the contracts attached to and incorporated by reference into those pleadings)," and the Second Affidavit of Jeffrey Rousseau.[2]  Motion, at 1-2.  Neither of these demonstrate the absence of a factual issue.

---

[1] Massachusetts substantive law applies to the claims in this dispute, as more fully discussed in Lycos' Opposition to CSI's Motion to Dismiss, at 2-6, incorporated herein by reference.

[2] CSI also states in the Motion that it relies on the two legal memoranda it has filed in this case, the memoranda dated March 10 and 31, 2005.  It is well-settled, however, that "summary judgment cannot be granted on the basis of statements of fact in the moving party's brief even though they are uncontroverted by the non-moving party." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d*, § 2723, at 389 (1998).  *See Galindo v. Precision American Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985) ("We have long recognized that mere statements of conclusions of law or ultimate fact cannot shift the summary judgment burden

It is difficult to discern from CSI's papers precisely what in Lycos' Amended Counterclaim and the agreements appended thereto demonstrate the absence of a genuine issue of material fact. Nevertheless, the thrust of CSI's argument is that Lycos knew the original cost of the equipment it purchased from CSI, citing the Affidavit of its own Assistant General Counsel for what Lycos supposedly knew. *See* CSI's 3/31 Memo, at 13. But more importantly, Lycos has specifically alleged that it did *not* know, and should not and could not reasonably have known, the aggregate original cost of the equipment it leased from CSI. Amended Counterclaim, ¶ 49. While CSI may properly contend that Lycos' Amended Counterclaim discusses the original cost of the equipment in certain paragraphs, Lycos did not ascertain those original equipment costs until *after* it had purchased the leased equipment from CSI. *Id.*, ¶¶ 32, 48. Because CSI's legal arguments are premised on the contention that Lycos "must have known" the original equipment cost or "could have done the math" to determine the original equipment cost, and Lycos' Amended Counterclaims contradict this assertion, Lycos' Amended Counterclaims and the documents appended thereto do not demonstrate the absence of a genuine issue of material fact.

As for the Second Affidavit of Jeffrey Rousseau, it must be stricken because Mr. Rousseau does not even allege that he has personal knowledge of the facts set forth therein and, indeed, could not have personal knowledge of those facts. *See* Motion to Strike, at 2-4. Additionally, he

---

to the nonmovant.") Thus, bald allegations in a brief do not suffice to demonstrate the absence of a genuine issue of material fact.

To the extent CSI were also to rely on the "facts" contained in those memoranda and the purported underlying support for those facts contained in its Verified Complaint or the First Affidavit of Jeffrey Rousseau, it would still not be able to demonstrate the absence of a genuine issue of material fact. As set forth in Lycos' Motion to Strike, filed herewith, CSI's Verified Complaint and the First Affidavit of Jeffrey Rousseau should not be considered in ruling on CSI's Motion because they are not "based on personal knowledge *and* do not show that the affiant is competent to testify to the matter stated" therein. *Hernandez-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 35 (1st Cir. 2005).

has failed to make the affirmative showing required by Rule 56(e) that he is competent to testify as to the matters contained in his affidavit.  *Id.*, at 4-5.

Once Mr. Rousseau's Second Affidavit is stricken, there will be no "record evidence" on which CSI may make the threshold showing of the absence of a genuine issue of material fact. Accordingly, the Motion must be denied as to all claims.

II.   **CSI IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON LYCOS' COUNTERCLAIMS**

Even if CSI could demonstrate the absence of a genuine issue of material fact in dispute, the Motion must be denied because CSI is not entitled to judgment as a matter of law on *any* of Lycos' counterclaims.  With respect to the M.G.L. c. 93A claim, CSI argues only that it is entitled to judgment because the agreements contain a choice-of-law provision for Missouri law, and the viability of Lycos' M.G.L. c. 93A claim hinges on the viability of its common law claims for fraudulent and negligent misrepresentation.  *See* CSI's 3/31 Memo, at 18-19.  CSI is wrong. *See* Lycos' Opposition to CSI's Motion to Dismiss ("Opp. to Mot. to Dismiss"), at 2-6, 17-22.

Similarly, CSI argues that Lycos' negligent misrepresentation claim fails because of the economic loss rule, the integration clauses in the relevant agreements, and because, under Missouri law, CSI owed no duty to Lycos.  *See* CSI's 3/31 Memo at 17-18, citing its 3/10 Memo, at 16-18.  Again, CSI is wrong as a matter of law.  *See* Opp. to Mot. to Dismiss, at 10-14.

Finally, with respect to Lycos' "fraud in the inducement" claim, as noted above, the "nub" of CSI's argument on Lycos' fraud claim is that Lycos "could have done the math" to determine the original cost of the equipment Lycos leased from CSI, and the amounts it was paying CSI to lease and then buy that equipment.  *See* CSI's 3/31 Memo, at 11-13.  It then argues that, as a result, Lycos could not reasonably have relied on CSI's failure to disclose material information

and, as such cannot state a cause of action for fraudulent misrepresentation. Even assuming the cases cited by CSI stand for the proposition for which they are cited, they are inapposite here where the defrauding party's statements *induced* the defrauded party not to examine independently the statements. See **Opp. to Mot. to Dismiss, at 7-9.** Accordingly, CSI is not entitled to summary judgment as a matter of law on its fraud claim.

Because CSI is not entitled to summary judgment on Lycos' fraud claims, it is not entitled to summary judgment on those claims that are viable (at least in part) because the fraud claims survive: the M.G.L. c. 93A claim, the quasi-contract claims, and the declaratory judgment claims. See **Opp. to Mot. to Dismiss, at 16-17, 23-24.**

### III. THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING WHETHER LYCOS KNEW THAT THE TOTAL LEASE PAYMENTS EXCEEDED THE AGGREGATE ORIGINAL COST OF THE EQUIPMENT

Notwithstanding Mr. Rousseau's and CSI's contention that it is "indisputable that Lycos knew the cost of the Equipment it was leasing from CSI, and knew what it was paying to lease and then purchase that Equipment, when it signed the relevant documents," Lycos disputes those very same contentions to the extent they suggest that Lycos knew the cost of the equipment, or any group of the equipment, in the aggregate. See **Lycos' Local Rule 56.1 Statement in Response to CSI's Statement of Undisputed Facts, ¶¶ 10-12 and Affidavits filed in support thereof.** Lycos also disputes that it knew, at any particular point in time, the total lease payments it had made on account of the equipment leased from CSI. **Affidavit Brian Lucy ("Lucy Aff."), ¶ 10.**

This is not a matter of ignorance or incompetence on Lycos' part. As set forth more fully in the Affidavit of Susan Franklin, an expert in the leasing industry who assisted Lycos in negotiating the purchase of the leased equipment from CSI, "for a variety of reasons including the fact that equipment leased pursuant to operating leases is not required to be listed on the lessee's

balance sheet, lessees typically do not maintain accounting records reflecting the original cost of the equipment leased." Affidavit of Susan Franklin ("Franklin Aff."), ¶ 8. Ms. Franklin further states that "it would be atypical for a lessee to be readily able to determine the total amount of rent it had paid under a group of lease schedules relative to the original cost of the equipment leased. . . . this determination becomes exceedingly more difficult as the lease portfolio matures and would likely be exacerbated significantly when lease schedules are 'rolled' one or more times." *Id.*, ¶ 11. Indeed, it took Ms. Franklin two hours to ascertain the relationship between the original equipment cost and the rent paid on just two of the thousands of pieces of equipment Lycos leased. *Id.*, ¶ 22. When she made that calculation, she determined that Lycos had paid, as a result of the "rolls" of the equipment, 194% of the equipment's original equipment cost *Id.*, ¶¶ 21-29. And then, even after paying almost double the OEC to lease the two pieces of equipment, *Lycos was obligated to return the equipment to CSI or pay more to purchase it*. See **Lycos' Amended Counterclaim, Ex. A, ¶ 7.** c

Lycos' position – that it did not know, and could and should not reasonably have been expected to know, the extent to which the lease payments exceeded the original cost of the equipment – is based not only on the Affidavit of Ms. Franklin, but on, among other things, the following facts supported by Affidavits of current and former Lycos employees:

- Lycos leased thousands of pieces of equipment from CSI pursuant to thousands of invoices. CSI's Statement of Undisputed Facts, ¶ 2; Affidavit of Deborah Bibbo ("Bibbo Aff."), ¶ 4.

- While Lycos knew the cost of each piece of equipment at each lease schedule inception, it did not keep track of, and had no reason to keep track of, the aggregate cost of the equipment it leased from CSI over several years. Lucy Aff., ¶ 9.

- Even if Lycos had kept track of the aggregate cost of the equipment, that aggregate cost would not have reflected the actual "hard" cost of the equipment, because the invoiced

- amounts included "soft costs" such as shipping and handling, software, and maintenance and support.  *Id.*, ¶¶ 7, 9; Bibbo Aff., ¶ 5.

- The complexity of the "roll-ups" (i.e., thousands of pieces of equipment, numerous "rolls," etc.), along with CSI's failure to include the OEC on all of their lease schedules – unlike the vast majority of lessors – would have made determination of the OEC that much more difficult.  Lucy Aff., ¶ 17; Bibbo Aff., ¶¶ 5-6; *see also* Franklin Aff., ¶ 16.

- Lycos did not keep track of, and had no reason to keep track of, the total payments it had made on account of the equipment leased by CSI.  Lucy Aff., ¶ 10.

- Lycos would have had difficulty, if it had been possible at all, to calculate the total payments Lycos had made on account of the CSI leases because Lycos made those payments to CSI and multiple financial institutions to which CSI had assigned the stream of payments, and Lycos had made payments to CSI for personal property taxes on the leased equipment.  *Id*., ¶¶ 10-11.

- Lycos was induced by CSI's representative, Paul Stenberg, not to investigate the impact of the "roll-ups" on Lycos' lease obligations to CSI.  *Id.*, ¶¶ 12-16; and

- Lycos was induced by CSI's representative, Paul Stenberg, not to investigate the total amount Lycos had paid on account of the leases of equipment from CSI relative to the total cost of the equipment leased from CSI.  *Id*.

As evidenced by the thrust of CSI's arguments in its memorandum in support of its Motion, the foregoing disputes are material to resolution of each and all of Lycos' Amended Counterclaims.  CSI is therefore not entitled to summary judgment on such claims.

WHEREFORE, Lycos respectfully requests that the Court enter an Order:

1. Denying CSI's Motion for Summary Judgment as to Lycos' Counterclaim; and

2. Granting Lycos such other relief as may be appropriate and just.

LYCOS, INC.

By its attorneys,

Dated: April 29, 2005

/s/ Thomas O. Bean
Thomas O. Bean (BBO# 548072
Erik P. Bartenhagen (BBO# 640003)
NUTTER, McCLENNEN & FISH, LLP
World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2000

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for plaintiff, Robert J. Kaler, Gadsby Hannah LLP, 225 Franklin Street, Boston, MA 02110, by hand on April 29, 2005.

/s/ Erik P. Bartenhagen
Erik P. Bartenhagen

1422719.3