UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **COMPUTER SALES INTERNATIONAL, INC.,** | ) ) ) | C.A. No. 05-10017-RWZ |
| **Plaintiff and Defendant-in-Counterclaim,** | ) ) ) ) | |
| v. | ) ) | |
| **LYCOS, INC.,** | ) ) ) | **AFFIDAVIT OF MARK BLAIS** |
| **Defendant and Plaintiff-in-Counterclaim,** | ) ) ) ) | |
| and | ) ) | |
| **BANK OF AMERICA f/k/a FLEET BANK,** | ) ) ) ) | |
| **Trustee Process Defendant** | ) | |

I, Mark Blais, do hereby state under oath as follows:

1.  I have been employed as an Associate General Counsel of Lycos, Inc. since January, 2005, having been admitted first to the Ohio bar in 1999, and to the Massachusetts bar in 2001. Prior to joining Lycos, I served as an Associate at Jones, Day, Reavis & Pogue in Cleveland, Ohio, and at Goodwin Procter, LLP in Boston, Massachusetts.

2.  I have personal knowledge of the facts set forth herein.

3.  I have reviewed the Second Affidavit of Jeffrey L. Rousseau filed in this action. He states in paragraph 8 thereof:

> . . . Lycos' counsel sent CSI's counsel a draft stipulation last week admitting that "Lycos knew the cost of the Equipment at the time that Equipment was ordered and paid for by CSI," which is correct. Lycos subsequently refused to sign a stipulation on this issue, however, because CSI would not agree to certain other language that Lycos was insisting be inserted into the stipulation.

4. While I have no idea how Mr. Rousseau could know Lycos' motivations for declining to sign the Stipulation, I do know that Lycos decided not to sign a Stipulation with only the above-quoted language because the language was inaccurate and could be distorted, and Lycos did not want to agree to something that was not true

5. Specifically, Lycos was concerned that because the word "Equipment" with a capital "E" had been defined earlier in the draft Stipulation to refer to *all* the equipment Lycos leased from CSI, the word "Equipment" in the above-quoted language could suggest that Lycos knew the aggregate cost of the equipment at some time. Because, upon information and belief, Lycos did not know the aggregate cost of the equipment at any time, to execute the Stipulation without clarifying language would have resulted in an inaccurate and misleading Stipulation.

6. In fact, CSI's misuse of the draft language quoted above in Mr. Rousseau's Second Affidavit and CSI's moving papers is precisely the type of distortion that Lycos anticipated and attempted to avoid by adding language to the Stipulation to make its meaning clear and truthful. When CSI refused to accept Lycos' clarifying language, Lycos had no choice but to decline to execute the draft Stipulation. Nonetheless, Lycos was at all times willing to cooperate and sign a clear and accurate stipulation.

Signed under the pains and penalties of perjury, this 28th day of April, 2005.

/s/_Mark Blais_
Mark Blais

1425061.1