UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| COMPUTER SALES INTERNATIONAL INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| LYCOS, INC., | ) C.A. No. 05-10017- RWZ |
| Defendant, | ) |
| and | ) |
| BANK OF AMERICA f/k/a FLEET BANK, | ) |
| Trustee Process Defendant. | ) |

**PLAINTIFF COMPUTER SALES INTERNATIONAL, INC.'S
3-PAGE[1] REPLY MEMORANDUM IN SUPPORT OF ITS
<u>OUTSTANDING MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT</u>**

Submitted by:

Robert J. Kaler, BBO No. 542040
Eric Neyman, BBO No. 564803
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  0211
Tel. (617) 345-7000

*Counsel for Plaintiff Computer Sales
International, Inc.*

Dated:  May 4, 2005

---

[1] At its March 15, 2005 Rule 16 conference on this matter, the Court directed plaintiff Computer Sales International, Inc. to limit any Reply Brief in support of its above-referenced motions to three (3) pages, and to file same by May 4, 2005.

-1-

1. Notwithstanding its challenge to the affidavit of CSI's official Jeff Rousseau, defendant Lycos admits, in its Local Rule 56.1 statement, the truth of all the factual assertions in plaintiff CSI's statement of undisputed facts[2] except *some* of those contained in ¶¶ 4 and 10-12.[3] In the process, it clearly states that "Lycos admits that it ordered the equipment and ***knew the cost of*** each piece of equipment at the time the equipment was ordered."[4] (Thus, the distinction drawn in several of Lycos' affidavits between "hard" costs and "soft" costs – the latter also being admittedly disclosed to Lycos on the invoices sent to it[5] – is a red herring.) Lycos' argument is not that it didn't know the cost of the equipment it leased from CSI – but rather that it did not "keep track" of or "aggregate" those costs, as its CPA financial officer puts it. *See* Affidavit of Brian Lucy ("Lucy Aff.") at p. 3, ¶9.

2. Similarly, Lycos is not saying that it didn't know what it was paying to lease the equipment, because Mr. Lucy admits that "Lycos ***did record*** and keep track of ***the monthly lease payments it made*** under the equipment leases." *Id*. at ¶10. What Lycos is opining is that it "did not maintain records" that would have allowed it to "readily" (a word used repeatedly in the Lycos affidavits) calculate the "cumulative total lease payments" it had made. *Id*. at ¶ 11.

3. Lycos own pleadings, however, *see* Verified Complaint, and the affidavit of its expert Susan Franklin, evidence that Lycos has always had sufficient records in its possession to

---

[2] *See* Memorandum of Law in Support of Plaintiff Computer Sales International's Motion for Summary Judgment as to its Complaint and Plaintiff's Motion to Dismiss or for Summary Judgment as to the Amended Counterclaim of Defendant Lycos, Inc., filed March 30, 2005, at pp. 1-9.

[3] *See* Local Rule 56.1 ("Material facts of record set forth in the statement [of undisputed facts] required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); *See also* Lycos' Local Rule 56.1 Statement, at pp. 2-4 (contesting only portions of ¶¶ 4, 10, 11, and 12 of CSI's Rule 56.1 statement).

[4] *See* Defendant Lycos, Inc.'s Local Rule 56.1 Statement Identifying Those Statements in CSI's Statement of Undisputed Material Facts That Lycos Disputes, 4-30-05 ("Lycos' Local Rule 56.1 Statement") at pp. 3-4.

[5] *See* Affidavit of Deborah Bibbo, filed April 30, 2005, at ¶ 5(a) ("Virtually all the invoices contained a 'soft' cost charge for shipping and handling.").

determine, with respect to particular items of equipment, **(a)** what the equipment cost, **(b)** what Lycos paid to lease it, and **(c)** the relationship between those two figures:

> 21.  At the request of Lycos, I was asked to perform an analysis to ascertain how easy or difficult it would be to determine the relationship between the original equipment cost for certain pieces of equipment and the amount paid [under the leases] for that equipment." In April of 2005, I reviewed certain of Lycos' books and records and performed this analysis on two (2) Digital Servers: Prioris 1200 MP Base Systems ("Specified Equipment"). **Based on the invoices, I determined that the OEC [original equipment cost] for the Specified Equipment was $39,458.** * * *
>
> 22.  … the complexity presented by the three "rolls" resulted in my taking two hours *to establish the relationship* between the OEC of the Specified Equipment…and the total amount Lycos had paid for that equipment.
>
> 28.  …*the total rent it paid for the Specified Equipment … was $76,722*, for equipment that had an OEC of $39,458. Thus, the payments for the Specified Equipment, after having been rolled over multiple times…*resulted in rents totaling 194% of the OEC*.

Affidavit of Susan Franklin at ¶¶ 21-22, 29 (emphasis added). Also, because Lycos admittedly kept track of its monthly lease payments for all the equipment, and had invoices from which it could add up the total cost of all the equipment it had leased, it could also determine that its total extended lease payments (for which it did not account on its balance sheet) exceeded the total original cost of the equipment. *See* Lucy Aff. at ¶¶ 2-11.

4.  Nevertheless, as Lycos admits, it is claiming "misrepresentations" by CSI as to these specific facts (which, as shown above, it already knew and/or had the means to determine):

> "the misrepresentations alleged in Lycos' counterclaim [are] … **[1]** a *false* statement concerning **the *original* cost** of the lease equipment and **[2]** the *misleading* half-truth that the 'roll-ups' would decrease Lycos' monthly payments without revealing the full financial impact of the 'roll-ups' in terms of **the amounts to be paid by Lycos *relative to* the original equipment cost**."

Defendant Lycos, Inc.'s Opposition to CSI's Motion to Dismiss Lycos' Amended Counterclaim, at 8 (emphasis added). Relating the amounts it was going to have to pay under the CSI leases to

the original cost of the equipment, however, was something that Lycos had the discretion, ability, and expert advice to do before it entered into the transactions that it now claims it did not understand. *See, e.g.,* Franklin Affidavit at ¶¶12, 18-20 (admitting she was engaged by Lycos to advise on the CSI leases *prior* to the July 2003 Sales Agreement).

5. The crux of CSI's motions is that as a matter of law, Lycos cannot now blame CSI for its failure to do this comparison between the original cost of the leased equipment and the total amount of its lease payments by constructing a claim for "misrepresentation" or "nondisclosure" of these facts by CSI. In this regard, Lycos' reliance on the line of Massachusetts cases holding that a fraudulent misrepresentation claim is not precluded just because the plaintiff might have uncovered the fraud had it conducted an "investigation," *see* Lycos' Opposition at 8-9, is misplaced in this case because the plaintiffs in those cases ***never knew*** the key facts – even though they could have discovered them through further investigation.

6. In this case, ***Lycos did know***, but now simply claims it failed to "keep track of" or "aggregate" the information in its own possession. It cannot fail to do this and still claim "reasonable reliance," under Missouri or Massachusetts law – and merely pleading that it "reasonably relied" on CSI's alleged misrepresentations or nondisclosures is not enough – even on a Rule 12(b) motion,[6] let alone on summary judgment – where the record shows that the plaintiff had actual records of what it claims it was deceived about, and where its CPA admits that he knew Lycos' lease payments would go up when it extended the leases. Lucy Aff. at ¶15.

For these reasons, and those set forth in its prior filings, CSI's motions should be allowed.

---

[6] *See DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 54 (1st Cir. 1999) ("The governing precept. . . is that while the plaintiff's 'facts' must be accepted as alleged, this does not automatically extend to 'bald assertions, subjective characterizations and legal conclusions.' "); *Omni-Wave Electronics Corporation v. Marshall Industries*, 127 F.R.D. 644, 648 (D. Mass. 1989) ("legal conclusions or conclusory allegations do not benefit from th[e] presumption of truthfulness" 2A Moore's Federal Practice 12.07 (2d ed. 1986).").

-4-

        Respectfully submitted,

        COMPUTER SALES INTERNATIONAL, INC.
        By its attorneys,

        /s/ Robert J. Kaler_____
        Robert J. Kaler, Esq., BBO No. 542040
        Gadsby Hannah LLP
        225 Franklin Street
        Boston, MA  0211
        Tel. (617) 345-7000

Dated: May 4, 2005