UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10017-RWZ

COMPUTER SALES INTERNATIONAL, INC.

v.

LYCOS, INC.

and

BANK OF AMERICA f/k/a FLEET BANK

MEMORANDUM OF DECISION

December 6, 2005

ZOBEL, D.J.

In December 1996, Lycos, Inc. ("Lycos"), a Massachusetts internet service company, and Computer Sales International, Inc. ("CSI"), a Missouri computer-leasing company, entered into a Master Lease Agreement ("the agreement" or "the MLA"), whereby CSI agreed to lease technology equipment to Lycos. (Compl. Ex. 1). Under the agreement, Lycos agreed to select the vendor and equipment it wished to purchase and to negotiate price directly with the vendor; CSI would purchase the equipment and then lease it to Lycos. The MLA set forth general terms and conditions and provided that the parties would enter into separate and additional leases, known as "equipment schedules," for the lease of particular equipment. The numerous equipment schedules into which Lycos and CSI eventually entered incorporated the MLA's provisions and also contained their own specific provisions, including a list of the items being leased

under that schedule, rental rates, and term dates.

Between December 1996 and April 2002, Lycos and CSI entered into approximately 80 equipment schedules with terms of 24 or 36 months. According to Lycos, CSI subsequently consolidated, or "rolled up," some of the equipment schedules. Under the roll-up process, equipment schedules would be terminated, assigned a new equipment schedule number, and given a new lease term and rental payment schedule. Some equipment from one schedule might be rolled up with some equipment from another schedule, with remaining equipment from the two original schedules being rolled onto yet other schedules. Lycos alleges that some schedules were rolled up even though Lycos had already fully paid for the equipment on those schedules and that certain equipment was rolled several times. Under the rolled-up schedules, Lycos's monthly rental payments were lower and the terms of its leases generally longer than under the original equipment schedules. The total amount that Lycos owed for a particular piece of equipment was, however, often significantly higher after it was rolled up than it had been under the original equipment schedule.

In July 2003, Lycos and CSI entered into a Sales Agreement, whereby Lycos agreed, in addition to continuing to make monthly lease rental payments until its leases had terminated, to pay approximately $3.8 million. In exchange, Lycos would, at the time the leases ended, become owner of the equipment. (Compl. Ex. 10).

In November 2004, Lycos stopped paying its bills. After sending Lycos a notice of default on December 8, 2004, and a formal declaration of default on December 23, 2004, and after receiving no response from Lycos, CSI filed suit on January 5, 2005,

claiming breach of the MLA, certain equipment schedules, and the July 2003 Sales Agreement, and seeking damages of approximately $300,000 as well as injunctive relief permitting CSI to repossess equipment covered by the Sales Agreement.  In response, Lycos filed an answer and counterclaim on February 4, 2005, subsequently amended, in which it conceded that it had not made payment, but offered several affirmative defenses and additionally counterclaimed against CSI.  Specifically, Lycos alleges that CSI fraudulently and negligently misrepresented the financial impact of the rolled-up schedules and failed to disclose that Lycos would end up paying a much higher total amount under the rolled-up schedules than it would have paid under the original equipment schedules.  Lycos's amended counterclaim asserts (1) CSI's fraudulent and negligent misrepresentation in the inducement of the rolled-up lease schedules and the Sales Agreement (Counts I, II, and IV); (2) unconscionability in the July 2003 Sales Agreement (Count III); (3) unfair and deceptive business acts and practices in violation of Mass. Gen. Laws ch. 93A (Count V); (4) money had and received by CSI (Count VI); and (5) unjust enrichment (Count VII).  It seeks damages, disgorgement of any overpayment, and a declaratory judgment that it has no further payment obligations to CSI and that it is the owner of the equipment falling under the Sales Agreement.

Presently before me are: (1) CSI's motion to dismiss or for summary judgment as to Lycos's counterclaim; (2) CSI's motion for summary judgment on its complaint; and (3) Lycos's motion to strike certain affidavits as well as CSI's verified complaint pursuant to Fed. R. Civ. P. 56(e).

I.   Choice of Law

The Court must first resolve a choice-of-law dispute. Referring to choice-of-law provisions contained in the MLA and the Sales Agreement (see Compl. Ex. 1 ¶ 18.6; Compl. Exh 10 ¶ 10.C), CSI maintains that the Court should apply Missouri law. Lycos contends that Massachusetts law applies. Choice-of-law disputes are resolved under the choice-of-law rules of the forum state. See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). Because a conflict exists between Missouri and Massachusetts law, at least as to Lycos's 93A claim,[1] and because resolution of that conflict may be dispositive of the claim, the Court must determine which state's substantive law applies. See id. at 5.

Notwithstanding the choice-of-law provisions in the parties' agreements, I find that Massachusetts law applies to Lycos's claims. The choice-of-law provisions at issue are limited to disputes arising out of the contracts. The MLA states that the MLA and all equipment schedules "shall be governed by, and construed and interpreted under" Missouri law. (Compl. Ex. 1 ¶ 18.6). Similarly, the Sales Agreement, "including all matters of construction, validity, performance and enforcement," is governed by the law of Missouri. (Compl. Ex. 10 ¶ 10.C). Under Massachusetts law, such language limits the scope of a choice-of-law provision to disputes arising out of the agreements themselves. See Kitner v. CTW Transport, Inc., 762 N.E.2d 867, 871-72 (Mass. App. Ct. 2002) (characterizing nearly identical provision as "expressly self-limiting" and

---

[1]Missouri's unfair and deceptive practices law is limited to consumer transactions. See Mo. Rev. Stat. § 407.025.1.

finding it did not cover tortious conduct).  Counts I, II, IV, and V of Lycos's counterclaim concern allegations of fraudulent or negligent misrepresentation in the inducement of certain agreements, specifically, the equipment schedules and the Sales Agreement. While "embroidered" contract claims or 93A claims essentially sounding in contract fall within the purview of choice-of-law provisions governing contracts, see, e.g., Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609, 610 (1st Cir. 1993), claims raising allegations of fraud or misrepresentation do not, see id. at 611.  Particularly where a claim "concerns the validity of the formation of the contract, it cannot be categorized as one involving the rights or obligations under the contract," and therefore is not subject to the contract's choice-of-law provision.  Id.; cf. Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741, 745-46 (Mass. 1995) (forum-selection clause does not apply where claims allege misleading conduct that induced the agreement; such pre-contract violations of 93A fall outside the choice-of-law provisions).

Furthermore, although some of Lycos's other claims sound in quasi-contract or contract (for example, unconscionability and unjust enrichment), the Court looks to the "predominant claims" and their "'principal focus.'"  Bay State Anesthesia v. Mallinckrodt, Inc., No. 02-11174, 2002 WL 31761286, at *1 (D. Mass. Dec. 6, 2002) (citing Jacobson, 646 N.E.2d at 746).  Here, the "bulk of [Lycos's] allegations involve conduct . . . unrelated to the contract's terms."  Id. at *1.  The "principal focus" of Lycos's counterclaim is CSI's allegedly tortious conduct in inducing Lycos to enter into the rolled-up schedules and July 2003 Sales Agreement; it is predominantly concerned

with allegedly tortious behavior falling outside of the choice-of-law provision, and the choice-of-law provision therefore does not apply.

Because the choice-of-law provisions do not apply, Massachusetts's choice-of-law rules dictate which state's laws do apply. See Reicher, 360 F.3d at 5. Massachusetts employs a "functional choice of law approach." Id. (internal quotation marks omitted). Because both parties reside in Massachusetts and the conduct at issue occurred in Massachusetts, I will apply Massachusetts law, to the extent that Massachusetts and Missouri law conflict. See, e.g., Stathis v. National Car Rental Sys., Inc., 109 F. Supp. 2d 55, 56 (D. Mass. 2000).

II. CSI's Motion to Dismiss or for Summary Judgment as to Lycos's Amended Counterclaim

CSI moves to dismiss or, in the alternative, for summary judgment as to all counts of Lycos's counterclaim. On the motion to dismiss, I must accept as true all factual allegations contained in Lycos's amended counterclaim and construe all reasonable inferences in its favor, granting the motion only if "it appears to a certainty that [Lycos] would be unable to recover under any set of facts." Fed. R. Civ. P. 12(b)(6); see State St. Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 87 (1st Cir. 2001). On the motion for summary judgment, I must draw all reasonable inferences in Lycos's favor, granting the motion only if there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); see Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

    A.    Fraudulent and Negligent Misrepresentation

Counts I, II, and IV of Lycos's counterclaim allege fraudulent and negligent misrepresentation in the inducement of both the rolled-up equipment schedules and the Sales Agreement.  First, Lycos asserts that CSI failed to disclose that under the roll-up schedules, Lycos would pay more than 100% of the equipment value over the life of the lease, and that Lycos had already paid more than the original cost of some of the leased equipment.  (Lycos Amended Answer and Counterclaim ¶ 24).  Second, Lycos alleges that CSI's representative Paul Stenberg, in a March 2002 email response to an inquiry from Lycos, affirmatively misrepresented the original cost of the equipment, thereby misleading Lycos as it decided whether to enter into the rolled-up schedules and, eventually, the Sales Agreement.  (Id. ¶¶ 39-42).  CSI responds that it had no duty to disclose additional information to Lycos and that Lycos had all of the information it needed to determine how much it was paying in relation to the equipment cost.  CSI further contends that Lycos knew the original cost of the equipment and, as a sophisticated business, could easily have "done the math" to determine how much it was paying in comparison.

      1.    Duty

CSI's argument that it was under no duty to disclose the full financial impact of the rolled-up schedules is unavailing.  Massachusetts law is clear that "a party who discloses partial information that may be misleading" — such as the representations allegedly made by CSI to Lycos — "has a duty to reveal all of the material facts he knows to avoid deceiving the other party." V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 414 (1st Cir. 1985); see Zimmerman v. Kent, 575 N.E.2d 70, 76 (Mass. App. Ct.

1991) ("The recipient of a fraudulent misrepresentation of fact is justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation."). Lycos's allegations of partial and misleading disclosures by CSI therefore sufficiently allege that CSI had a duty to disclose.

      2.     Reliance

CSI's principal contention is that Lycos cannot, as a matter of law, claim reasonable reliance, which is an element of both fraudulent and negligent misrepresentation under Massachusetts law. See Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth., 255 N.E.2d 793, 796 (Mass. 1970); Kitner, 762 N.E.2d at 874. Reliance is generally a question of fact for the jury, see Rodi v. Southern New England School of Law, 389 F.3d 5, 16 (1st Cir. 2004); Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1031 (Mass. 2004), though in some circumstances a party's reliance on oral statements may be deemed unreasonable as a matter of law in light of contradictory written statements, see id. Given that reliance is generally a question of fact, Lycos's status as a sophisticated business — while relevant to the reasonableness of its reliance on CSI's alleged misrepresentations — does not alone condemn its fraud claim. See Sheehy v. Lipton Indus., Inc., 507 N.E.2d 781, 785 (Mass. App. Ct. 1987) (plaintiff might be found at trial to have been too sophisticated a businessman to have relied on defendant's statements, but summary judgment for defendant on that basis was inappropriate).

Furthermore, while CSI is correct that in Massachusetts a party may not claim reasonable reliance where the party could have discovered the falsity through

investigation, that rule applies only where the statement at issue was "preposterous or palpably false." Id. (internal quotation marks omitted); accord Kuwaiti Danish Computer Co., 781 N.E.2d 787, 795 (Mass. 2003) (distinguishing between "falsity that was readily apparent" and that which "could only be uncovered by way of 'investigation'"). Lycos has alleged that it "could not reasonably have discovered" the effect of the roll-ups "because of the movement of equipment from schedule-to-schedule over multiple roll-ups." (Lycos Amended Answer and Counterclaim ¶ 24). Lycos further alleges (1) that the manner in which equipment from certain schedules was rolled-up onto other schedules was complex and not clearly reported, and (2) that it had to hire an expert-leasing consultant to determine the true financial impact of the rolled-up schedules. (Id. ¶ 32). These allegations sufficiently establish that the relied-upon statements were not palpably false and thus did not trigger any duty to investigate on Lycos's part.

For similar reasons, CSI's reference to the existence of integration clauses in the MLA and the Sales Agreement is unavailing. While an integration clause may preclude a party from claiming reliance on prior oral representations that contradict the explicit terms of an agreement, see Turner v. Johnson & Johnson, 809 F.2d 90, 97 (1st Cir. 1986), it does not prevent a party from seeking to avoid an agreement by pleading that it was fraudulently induced to enter into the agreement, see Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 76 (D. Mass. 2004); accord Pizzeria Uno v. Independence Mall Group, No. 94-5546, 1995 WL 419932, at *5 (Mass. Super. July 13, 1995).[2]

---

[2]CSI cites Pizzeria Uno for the proposition that an integration clauses bars a complaining party from alleging reasonable reliance on representations outside the agreement. Pizzeria Uno expressly recognized, however, that the rule does not apply

9

Indeed, under Massachusetts law, it is well settled that clauses "attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown." Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941); accord VMark Software, Inc. v. EMC Corp., 642 N.E.2d 587, 594 n.11 (Mass. App. Ct. 1994). With respect to Lycos's claim of fraudulent misrepresentation, therefore, the integration clauses are irrelevant.[3]

As to Lycos's negligent misrepresentation claim, the Supreme Judicial Court has held that because reliance is an issue of fact, courts should not dismiss claims of negligent misrepresentation solely on the basis of an integration clause because "without any factual record developed through discovery, [courts] cannot conclude that, as a matter of law, no factual scenario exists under which the plaintiff might establish a claim of negligent misrepresentation [despite the merger clause]." Marram, 809 N.E.2d at 1031-32. Thus, although the merger clause may ultimately bar Lycos's negligent misrepresentation claim, see Sound Techniques, Inc. v. Hoffman, 737 N.E.2d 920, 925-26 (Mass. App. Ct. 2000), dismissal solely on the basis of the merger clause would be inappropriate.

Finally, as to Lycos's allegation that CSI misrepresented the original cost of the

---

where the plaintiff claims fraud in the inducement. Id. The court explicitly found that "regardless of the existence of the integration clause," the plaintiffs could not claim reasonable reliance because the statements at issue "simply do not sound like the kind of promises a sophisticated tenant would rely on." Id. at 7 (emphasis added).

[3]The same analysis applies with respect to the "hell or highwater" clause contained in the agreements. See Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 70 (1st Cir. 2005).

equipment, CSI argues that Lycos could not have relied on Stenberg's March 2002 email because it had entered into some of the rolled-up schedules prior to that date. This argument is without merit, since Lycos has alleged that CSI's misrepresentations induced it to enter into not only the equipment schedules, but also the Sales Agreement, which was executed in July 2003.

Lycos's fraudulent and negligent misrepresentation claims thus sufficiently plead reliance. Further development of the record might well reveal that Lycos's failure to discern the financial impact of the rolled-up leases was, in light of its status as a sophisticated business and in light of the information it did have, unreasonable. See Huculak, 783 N.E.2d at 839 (whether the plaintiff exercised due diligence and was justified in placing confidence in the defendant is question of fact); Sheehy v. Lipton Indus., Inc., 507 N.E.2d at 785. Lycos's allegations as to reasonable reliance are, however, sufficient to withstand a motion to dismiss.

### 3. Economic Loss Doctrine

CSI also raises a specific objection to Lycos's negligent misrepresentation claim, arguing that its dismissal is required by the economic loss rule. Although in Massachusetts purely economic losses are generally unrecoverable in tort, see Cummings v. HPG Int'l, Inc., 244 F.3d 16, 24 (1st Cir. 2001) (citing FMR Corp. v. Boston Edison Co., 613 N.E.2d 902, 903 (Mass. 1994)), courts have carved out an exception for claims of negligent misrepresentation, see Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1134 (Mass. 1982). This exception has sometimes been characterized as limited to claims of negligent misrepresentation in the provision of

services, see Gavett v. Roto-Rooter Servs. Co., No. 01-10385, 2001 WL 1688896, at *2 (D. Mass. Nov. 27, 2001), but the Massachusetts Appeals court seems to have extended the exception to all negligent misrepresentation claims, see Nota Constr. Corp. v. Keyes Assocs., 694 N.E.2d 401, 405 (Mass. App. Ct. 1998); see also Cummings, 244 F.3d at 24. In any event, the type of leasing business conducted by CSI has been characterized by Massachusetts courts as a financing service, see, e.g., Patriot Gen. Life Ins. Co. v. CFC Inv. Co., 420 N.E.2d 918, 920-21 (Mass. App. Ct. 1981), analogous to the mortgage financing service provided by the defendant bank in Danca. Lycos's claim of negligent misrepresentation in the inducement of the equipment schedules therefore survives this objection.

As to negligent misrepresentation in the inducement of the Sales Agreement, it remains unclear whether Massachusetts courts would apply the economic loss doctrine to claims of negligent misrepresentation that induced the plaintiff to purchase a product. See Superior Kitchen Designs, Inc. v. Valspar, 263 F. Supp. 140, 147 (D. Mass. 2003); Cummings, 244 F.3d at 24. Even if Massachusetts courts would bar such claims under the economic loss doctrine, see Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 96 (D. Mass. 1998), that bar would not necessarily apply in this case. Lycos's claim of negligent misrepresentation as to the Sales Agreement does not, after all, concern the products themselves, but rather the financial information that Lycos received in determining what it should pay for those products. The damages Lycos claims are thus distinguishable from damages arising from a defective product. Moreover, the bulk of the alleged misrepresentations were likely made earlier in

12

relation to specific equipment schedules that later became the subject of the Sales Agreement; after all, the terms of the Sales Agreement were based on Lycos's remaining lease obligations under the rolled-up schedules. (Lycos Amended Answer and Counterclaim ¶ 43). Thus, even if Massachusetts courts would bar claims of negligent misrepresentation arising out of the purchase of defective products, the misrepresentations upon which Lycos allegedly relied in entering both the rolled-up schedules and the Sales Agreement were sufficiently intertwined, such that barring Lycos's claim as to the Sales Agreement under the economic loss doctrine while allowing its claim as to the equipment schedules would make little sense. Accordingly, Lycos's negligent misrepresentation claim survives the economic loss doctrine.

      4.    Summary Judgment

As the record is replete with disputes about the facts underlying Lycos's misrepresentation claims, CSI's motion for summary judgment is denied as to Counts I, II, and IV.

      B.    Unconscionability (Count III)

CSI also moves to dismiss Count III of Lycos's amended counterclaim, which alleges that the July 2003 Sales Agreement was unconscionable. Under Massachusetts law, unconscionability is an issue of law for the court and is to be determined as of the time the contract was made. Zapatha v. Dairy Mart, Inc., 408 N.E.2d 1370, 1375 (Mass. 1980). Courts have found agreements unconscionable where the challenged provisions "could result in oppression and unfair surprise to the disadvantaged party." Waters v. Min Ltd., 587 N.E.2d 231, 233 (Mass. 1992). A

number of factors may inform an unconscionability determination, such as (1) "gross disparity in consideration," which, if stark enough, may "lead[] inevitably to the felt conclusion that knowing advantage was taken" of a party," id. (internal quotation marks omitted); (2) "[h]igh pressure sales tactics and misrepresentation," id.; (3) the relative sophistication of the parties, see Zapatha, 408 N.E.2d at 1377; and (4) whether the parties were represented by counsel; Waters, 587 N.E.2d at 234.  The doctrine, however, is "not typically applied to commercial dealings between business entities." Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F. Supp. 363, 375 (D. Mass. 1991).

Although Lycos has alleged certain facts that suggest the possibility of unconscionable conduct by CSI — such as a significant disparity between the original cost of the equipment and the aggregate amount Lycos owed for that equipment under the lease terms — the doctrine is inapplicable in this case.  Both parties were business entities with considerable commercial experience.  Under these circumstances, Lycos's claim is insufficient as a matter of law, and the motion to dismiss Count III is therefore allowed.

C.      Money Had and Received and Unjust Enrichment (Counts VI and VII)

Lycos's counterclaim also seeks return of the money already paid by Lycos to CSI, under theories of money had and received and unjust enrichment.  CSI moves to dismiss these claims, arguing that such claims are unavailable where the defendant was paid pursuant to a contract.  As Lycos points out, however, were Lycos to prevail on its claim for fraud in the inducement, the agreements would be voidable.  See Nash

v. Trs. of Boston Univ., 946 F.2d 960, 966-67 (1st Cir. 1991); Yorke v. Taylor, 124 N.E.2d 912, 914-15 (Mass. 1955).  Lycos would then be entitled either to rescind the lease schedules and Sales Agreement and seek restitution, or to seek damages in tort, since fraud in the inducement may serve as a basis for either tort liability or for rescission.  See Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 224 (1st Cir. 2003).  Because the election of remedy is generally made after a verdict is entered, see Dopp v. HTP Corp., 947 F.2d 506, 515 (1st Cir. 1991), Lycos is entitled to pursue those counts of its counterclaim.  Accordingly, the motion to dismiss or for summary judgment is denied as to Counts VI and VII.

      D.      Chapter 93A (Count V)

CSI offers two challenges to the legal sufficiency of Lycos's 93A claim, neither of which has merit.  First, CSI argues that because the relevant agreements provide for the application of Missouri law, Lycos cannot allege a violation of Massachusetts law.  This argument fails in light of the Court's conclusion that the choice-of-law provisions are inapplicable and Massachusetts law applies.  Second, CSI argues that Lycos's 93A claims must fail since they are based on Lycos's common law fraud claims.  Again, since the Court has denied CSI's motions to dismiss or for summary judgment on Lycos's misrepresentation claims, this argument is moot.  Accordingly, the motion is denied as to Count V.

      E.      Declaratory Judgment (Counts VIII and IX)

In Counts VIII and IX of its amended counterclaim, Lycos seeks declaratory judgment that it has no further obligations to CSI, that it owns the equipment under the

Sales Agreement, and that CSI must disgorge overpayments made by Lycos under the rolled-up lease schedules. CSI's motion to dismiss these counts is denied, since it is based solely on the argument — already rejected by the court — that Lycos's underlying substantive claims are legally insufficient.

III.    CSI's Motion for Summary Judgment on Its Complaint

CSI has also moved for summary judgment on its complaint, contending primarily that under the "hell or highwater" clause included in the MLA, Lycos is required to make payment regardless of any defense it might raise. The clause states:

> Lessee's obligation to pay the Monthly Rental and all other sums due hereunder shall be unconditional and shall not be subject to any setoff, abatement, counterclaim, recoupment, defense, cancellation, repudiation, rejection of equipment, revocation of acceptance of equipment or any other right that Lessee may have against Lessor.

(Compl. Ex. 1, at 2). Such provisions "make[] a finance lessee's obligation to pay rent irrevocable and independent of any broken promise on the part of the lessor." Eureka Broadband Corp., 400 F.3d at 70. As explained above, however, if Lycos prevails on its fraud in the inducement claim, it will be entitled to rescind the contract, in which case the "hell or highwater" clause, like all of the other contract provisions, will be void. Moreover, as explained above, Massachusetts courts decline to give effect to clauses "attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown." Bates, 31 N.E.2d at 558; see also Eureka Broadband Corp., 400 F.3d at 70 (surmising that the policy would apply to hell-or-highwater clauses). Because material facts remain in dispute as to whether Lycos has a defense to or is entitled to rescind the agreements, summary

judgment on CSI's complaint is inappropriate, and the motion is therefore denied.

IV.     Conclusion

CSI's motion to dismiss Lycos's counterclaim (#15 on the docket) is denied as moot since it has been superseded. CSI's motion to dismiss or for summary judgment as to Lycos's amended counterclaim (#21) is denied, except for Count III (unconscionability), as to which it is allowed. CSI's motion for summary judgment on its complaint (#22) is denied. Lycos's motion to strike (#29) is denied and its motion to stay (#38) is denied as moot.

|                          |                                              |
|--------------------------|----------------------------------------------|
| _____ | /s/ Rya W. Zobel                             |
| DATE                     | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |