UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) | C.A. No. 05-10017-RWZ |
| Plaintiff and Defendant-in-Counterclaim, | ) ) ) | |
| v. | ) ) | |
| LYCOS, INC., | ) ) ) | **LYCOS' OPPOSITION TO CSI'S MOTION FOR RECONSIDERATION OF ORDER OF DECEMBER 6, 2005** |
| Defendant and Plaintiff-in-Counterclaim, | ) ) ) | |
| and | ) ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) ) ) | |
| Trustee Process Defendant | ) | |

## INTRODUCTION

CSI's Motion for Reconsideration of Order of December 6, 2005 (the "Motion") is nothing more than an attempt to reargue issues this Court has already rejected (argument 1 and perhaps 2) or to present new arguments it could have made in its Motion to Dismiss or for Summary Judgment as to Lycos' Counterclaim (argument 3 and perhaps 2). As set forth more fully below, it is well established that a party may not use a motion for reconsideration to argue issues already made to a court, or to present new arguments that could have been, but were not, made in the first instance. As such, the Motion fails to set forth a permissible basis for reconsideration and should be summarily denied.

Even if the Court were to reach the merits of CSI's arguments, not only has CSI failed to demonstrate that the Court has made a "manifest error of law," as is required to prevail, but its

- 2 -

arguments are contrary to binding precedent in this jurisdiction, precedent on which this Court properly relied in denying CSI's Motion to Dismiss or for Summary Judgment.

I. **THIS COURT SHOULD NOT RECONSIDER ARGUMENTS PREVIOUSLY MADE AND REJECTED, OR WHICH CSI FAILED TO MAKE, IN SUPPORT OF ITS MOTION TO DISMISS OR FOR SUMMARY JUDGMENT.**

While CSI fails to denominate its Motion as one under Rule 59(e) or 60(b), the distinction is immaterial for purposes of disposing of the Motion. Under these rules, a disappointed litigant may not "advance a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). Similarly, it may not repeat *old* arguments that have been previously considered and rejected. *National Metal Finishing Co. v. BarclaysAmerican Commercial, Inc.*, 899 F.2d 119, 124 (1st Cir. 1990) (emphasis added). Further, to prevail under Rule 59(e), the moving party must "either clearly establish a manifest error of law or [] present newly discovered evidence." *Marie v. Allied Home Mortgage*, 402 F.3d 1, 7 n.2 (1st Cir. 2005).[1] Perhaps for these reasons, motions for reconsideration are "extraordinary remedies" that are "typically denied." *Vega v. Hernandez*, 382 F.Supp. 31, 35 (D. P.R. 2005) citing 8 Wright & Miller, *Federal Practice and Procedure*, §§ 2810.1 at 128 (2d ed. 1995); *accord, Marie*, 402 F.3d at 7 n.2 ("We note that it is very difficult to prevail on a Rule 59(e) motion."). CSI's Motion falls into this "typical" category.

---

[1] Because CSI presents no "newly discovered evidence" to the Court with the Motion, it must clearly establish a manifest error of law to prevail.

## II. CSI'S FIRST ARGUMENT - THAT LYCOS COULD NOT REASONABLY HAVE RELIED ON CSI'S HALF-TRUTHS - IS SIMPLY A REGURGITATION OF THE PRINCIPAL ARGUMENT IT MADE IN MOVING TO DISMISS COUNT I OF LYCOS' COUNTERCLAIM.

CSI seizes on an immaterial misstatement by the Court concerning Lycos' reliance on Mr. Stenberg's e-mail as a basis for entering into the rolled-up lease schedules to reassert[2] what the Court observed was CSI's "principal contention" in support of its Motion to Dismiss or for Summary Judgment: "that Lycos cannot, as a matter of law, claim reasonable reliance, which is an element of both fraudulent and negligent misrepresentation under Massachusetts law." Decision at 8.[3]

In its memorandum in support of the Motion (the "Reconsideration Memorandum"), CSI clothes this contention in slightly different dress:

> [t]he 'magnitude of the consequences' of the roll-ups was for Lycos' business and legal officials to determine – not for CSI to explain[4] . . . If the law permitted sophisticated businesses to claim,[5] after they entered into a contract, that they should be allowed to void their own transactions on grounds that particular negative aspects were not fully appreciated by them at the time they signed their contracts, and should have been disclosed to them by other contracting parties – who spoke only of the positive aspects of the deals – the result would hopelessly confound almost every company's ability to ever make a deal favorable to itself on anything.

---

[2] CSI's stated reason for filing the Motion is the "admission" by Lycos' counsel that the roll-ups preceded the Sales Agreement. Reconsideration Memorandum at 2-3. This so-called admission was nothing new. Lycos advised the Court of this fact in its Memorandum in Support of its Opposition to CSI's Motion to Dismiss or for Summary Judgment at 11, part 3.

[3] The Court presumably relied, in reaching this conclusion, on the three pages of argument in CSI's Memorandum in Support of its Motion to Dismiss or for Summary Judgment at 11-14, and the arguments at 3-4 of CSI's Reply Memorandum in support if its Motion to Dismiss or for Summary Judgment.

[4] CSI makes much of Lycos' counsel's acknowledgement that Lycos knew that its leasing costs would go up "modestly." Dismissal Memorandum at 3, 5. An increase from lease payments totaling an amount *less* than 100% of the original cost of the equipment, to a total cost, which CSI has admitted, of 165% of original equipment cost, is not a "modest" increase. *See* Transcript, filed with the Dismissal Motion at 22.

[5] CSI repeatedly contends that Lycos was a "sophisticated" business. *See, e.g.*, Reconsideration Memorandum at 4. Lycos notes that, at the time it signed the Master Lease Agreement, it was a less than 18-month old internet "start-up," and that at no time during the parties' relationship did it have expertise in equipment leasing. CSI knew or should have known this. Regardless, the Court properly decided that the question of Lycos' sophistication is not dispositive of its claims; it is simply a fact for the jury to weigh. Decision at 8.

Reconsideration Memorandum at 5-6.  As a matter of substance, however, this is the same argument CSI made in support of its Motion to Dismiss or for Summary Judgment and that the Court rejected: that Lycos could not reasonably have relied on CSI's half-truths.  *See* Memorandum dated March 31, 2005  (Docket No. 25) ("Dismissal Memorandum") at 11-14.  Indeed, CSI cites in the Reconsideration Memorandum many of the same cases it cited in the Dismissal Memorandum. *Compare* Reconsideration Memorandum at 4 and n.1, citing *Collins*, *Kuwaiti Danish Computer*, *Pizzeria Uno*, and *Celtic Development,* with Dismissal Memorandum at 12, citing same.  As the argument is at best a recharacterization of an old argument, the Motion must be denied on that basis alone.  *National Metal Finishing*, 899 F.2d at 124.

    CSI would fare no better if the Court were to reach the merits of its argument as its reliance on the Stenberg e-mail is nothing more than a red-herring and a mischaracterization of Lycos' claims.  Lycos has not and does not claim that it was defrauded into entering into the "rollovers" based on the Stenberg e-mail; it concedes that the Stenberg e-mail was sent after the rollovers were entered.[6]  As contained in several paragraphs of its Amended Counterclaim, Lycos alleges that it relied on CSI's half-truths about the impact of the "roll-overs" in entering into those rollovers, and that it could not reasonably have determined that those half-truths provided false or incomplete information before entering into those rollovers.  *See* Amended Counterclaim ¶¶ 24, 32, 39-41.  Moreover, Lycos alleges in its Amended Counterclaim facts sufficient to show that CSI owed a duty of disclosure to Lycos as a result of the trust and confidence Lycos reposed in it, as induced by CSI.  *Id.* ¶¶18-20, 49.  Based on these allegations and applicable law, the Court properly concluded that reliance is generally a question of fact for

---

[6] Lycos does, however, contend that the Stenberg e-mail caused it to continue paying CSI under the rollovers and that Lycos' lack of knowledge as to the falsity of the e-mail caused it to enter into more leases with CSI; specifically, the leases on which CSI seeks to collect in this action.

- 4 -

a jury,[7] and that CSI's half-truths about the impact of the roll-overs on Lycos were not "palpably false and thus did not trigger any duty to investigate on Lycos' part." Decision at 8-9, *citing Sheehy v. Lipton Indus., Inc.*, 507 N.E.2d 781, 785 (Mass. App. Ct. 1987) and Amended Answer and Counterclaim ¶¶ 24 and 32. Thus, on the merits, CSI has failed to demonstrate a manifest error of law; indeed, there is no basis for this Court to reconsider its Decision on Count I.

III. **THIS COURT SHOULD NOT CONSIDER CSI'S ARGUMENT THAT MISSOURI LAW APPLIES TO LYCOS' ALLEGATIONS CONCERNING CSI'S FRAUD IN THE INDUCEMENT (COUNT II) AND, EVEN IF IT DOES, THE ARGUMENT IS CONTRARY TO LAW.**

In its Dismissal Memorandum, CSI argued that Missouri law applies to construction of the contract documents. *See* Decision, at 4 and Dismissal Memorandum at 11, n. 6. CSI even quoted the language from the Sales Agreement, on which it now relies, in arguing that Missouri law governs the "validity" of that agreement. Dismissal Memorandum at 11, n.6. CSI did not, however, focus on the word "validity" as a basis for applying Missouri law to Lycos' claims for fraud in the inducement. *See generally id.* If CSI's argument on reconsideration is yet another regurgitation of an argument it made previously, reconsideration should be denied for the reasons set forth above. If it is a new argument, the Motion must be denied because CSI should not "be allowed to switch from theory to theory like a bee in search of honey." *Cochran*, 328 F.3d at 11. *See F.D.I.C. v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) ("Rule 59(e) motions are 'aimed at *re*consideration, not initial consideration.'" (citation omitted) (emphasis in original)). Regardless of which it is, this Court should not consider the merits of CSI's argument.

Moreover, the Court should also not consider the argument on the merits because CSI has failed to point to any conflict or difference in outcome between Missouri and Massachusetts law

---

[7] *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 16 (1st Cir. 2004); *Marram v. Kobrick Offshore Fund, Ltd.*, 809 N.E.2d 1017, 1031 (Mass. 2004).

- 5 -

BST99 1485852-4.057077.0012

on Lycos' fraudulent misrepresentation claim.  *See* Reconsideration Memorandum at 6-9.[8]

When the parties do not point to any conflict, a federal court should, as this Court has done, apply the law of the state in which it sits.  *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993).

Even ignoring its procedural deficiencies, CSI's argument fails on the merits.  CSI contends, citing only cases from outside the jurisdiction, that because the choice-of-law clause in the Sales Agreement states that Missouri law governs the "validity" of the Sales Agreement and, because a claim of fraud in the inducement goes to the validity of the agreement, Lycos' claims for fraud in Count II should be governed by Missouri law.  Reconsideration Memorandum at 6-9. CSI's position not only fails to demonstrate that the Court made a manifest error of law, but it is also a position that is fraught with errors of law.

The Court in *Northeast Data Systems, Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607 (1st Cir. 1993) (Breyer, J.), construed a choice-of-law provision *broader* than that contained in the Sales Agreement.  The clause in that case read: "The Agreement *and* the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of California."  *Id*. at 609 (emphasis added).[9]  In other words, not only was the contract to be construed in accordance with California law, but the rights and obligations of the parties to

---

[8] Indeed, the same duty of disclosure exists under Missouri law.  *See, e.g.*, *Osterberger v. Hites Construction Co.*, 599 S.W.2d 221, 227 (Mo. App. Ct. 1980) ("[W]e have found that partial information may be as misleading and deceptive as active misrepresentation, and we have imposed a duty to disclose material facts where the defendant has invited plaintiff's confidence by making only a partial disclosure.")

[9] The courts in other jurisdictions, cited by CSI, which concluded that torts allegedly committed before the contract was formed, were covered by the choice of law provision, also contained clauses, *unlike* the one here, that referred to the parties "rights and obligations."  *See, e.g., Woodling v. Garrett Corporation*, 813 F.2d 543, 551 (2d Cir. 1987); *Corestates Bank, N.A. v. Signet Bank*, 1996 U.S. Dist. LEXIS 12673, n.3.  Moreover, under New York law, the precise language of a choice-of-law provision is critical in determining its scope, as "a choice-of-law provision indicating that the *contract* will be governed by a certain body of law does not dispositively determine that law which will govern a claim of *fraud* arising incident to the contract."  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).

the contract were to be governed by California law. The First Circuit nevertheless held that claims for fraud in the inducement fell *outside* this choice-of-law provision. *Id*. at 611.

The choice-of-law provision in the Sales Agreement is considerably narrower than that construed in *Northeast Data Systems*. It provides:

> GOVERNING LAW: This Agreement, including all matters of construction, validity, performance and enforcement, is governed by the laws of the State of Missouri, without giving effect to the principles of conflicts or choice-of-law.

Sales Agreement, § 9(D), attached to Lycos' Amended Counterclaim as Ex. I. In other words, the choice-of-law provision concerns *only* the Agreement, and not the broader "rights and obligations" of the parties thereto. Furthermore, the dependent clause, "*including* all matters of construction, validity, performance and enforcement,"[10] merely provides examples of specific matters that are *sub-sets* of the word "Agreement." These examples, as a matter of contract construction and grammar, cannot expand the meaning of the word "Agreement" to include matters beyond the Agreement. In fact, if the Court puts the choice-of-law provision in *Northeast Data Systems*, without the broad language concerning the parties' rights and obligations, side-by-side with the choice-of-law provision in the Sales Agreement, without the exemplary language -- which adds no substance -- the clauses are virtually identical:

| *Northeast Data Systems* | *Sales Agreement* |
|---|---|
| The Agreement . . . shall be governed by and construed in accordance with the laws of California. | The Agreement . . . is governed by the laws of the State of Missouri, without giving effect to the principles of conflicts or choice-of-law. |

Thus, not only has CSI failed to demonstrate a manifest error of law, but because the broader choice-of-law provision in *Northeast Data Systems* did not govern claims of fraud in the inducement, *a fortiori* the choice-of-law provision in the Sales Agreement does not either.

---

[10] Emphasis added.

Finally, CSI's argument is premised on the mistaken belief that fraud in the inducement affects the *validity* of a contract; it does not. Contracts induced by fraud are "voidable, not void." *Shaw's Supermarkets, Inc. v. Delgiacco*, 410 Mass. 840, 842, 575 N.E.2d 1115, 1117 (1991); *accord*, *John Hancock Mutual Life Insurance Company v. Banerji*, 62 Mass. App. Ct. 906, 815 N.E.2d 1091, 1095 (2004) ("Contracts induced by fraudulent misrepresentations are not void *ab initio* . . .") A party who justifiably relies on the misrepresentations may "elect" to avoid the contract. *Banerji*, 815 N.E.2d at 1095. Thus, fraud in the inducement may render a contract unenforceable[11] or rescindable,[12] or give rise to a remedy in tort, but it does not affect the validity or invalidity of the contract. *See* 1 *Corbin on Contracts*, §1.6 at 18 (1993) (Contracts induced by fraud have a "considerable degree of legally operative effect – that is, 'validity'".) Accordingly, regardless of whether Missouri law governs the "validity" of the Sales Agreement, it does not govern Lycos' claims for fraud in the inducement.

IV.   **THIS COURT SHOULD NOT CONSIDER CSI'S "CHOICE-OF LAW" ANALYSIS PRESENTED FOR THE FIRST TIME ON RECONSIDERATION.**

In its third argument, CSI again seizes on what is, if it is an error, another *im*material error: the Court's statement that CSI "resides" in Massachusetts. Reconsideration Memorandum at 9, citing Decision at 6. It is not clear whether the Court intended the word "resides" to mean that (a) CSI's principal place of business was in Massachusetts or that CSI was incorporated in Massachusetts, or (b) CSI had offices and its account representative for Lycos resident in Massachusetts. The latter is indisputably true. Amended Counterclaim ¶¶ 5, 18, 39, 41. Accordingly, if that were the Court's intent, this argument fails for having a faulty premise. But, even if the Court intended the former, the mistake is immaterial for two reasons.

---

[11] *Commerce Bank & Trust Company v. Hayeck*, 46 Mass. App.Ct. 687, 709 N.E.2d 1122, 1126 (1999) *quoting Boston Five Cents Sav. Bank v. Brooks*, 309 Mass. 52, 55, 34 N.E.2d 435 (1941).

[12] *Banerji*, 815 N.E.2d at 1095.

- 8 -

First, CSI highlights for the first time on reconsideration that its headquarters are in Missouri and that it is a Delaware corporation: it also argues that the equipment lease and lease roll-up contracts were prepared in Missouri, and that payments were made to CSI in Missouri. Reconsideration Memorandum at 9, 12. Even if these unverified statements are true, the Court should not reconsider its choice of law analysis. CSI had the opportunity to present a choice-of-law analysis in its three memoranda aggregating *forty-five* pages of briefing supporting its Motion to Dismiss or for Summary Judgment. *See* Docket Nos. 15, 25 (incorporating by reference the arguments in docket no. 15), and 40. It chose not to do so. It should not be given a *fourth* bite at the apple. *See World University*, 978 F.2d at 16 ("Rule 59(e) motions are 'aimed at *re*consideration, not initial consideration.'" (citation omitted) (emphasis in original)).

Moreover, the Court's choice-of-law analysis in the Decision was sound. Massachusetts employs a "functional choice-of law approach" which dictates that the "law of the state that has the more significant relationship to the parties and the underlying circumstances will be applied." *Stathis v. National Car Rental Sys., Inc.*, 109 F. Supp. 2d 55, 56 (D. Mass. 2000). In general, "it is more than likely that it is the law of the place of the tort which will be controlling . . ." *Pevoski v. Pevoski*, 371 Mass. 358, 360, 358 N.E.2d 416, 417 (1976).

Here, Lycos has alleged that:

(1)     CSI is qualified to do business in the Commonwealth and has a place of business at 197 First Street, Needham, Massachusetts; (Amended Answer and Counterclaim ¶ 5);

(2)     CSI's account representative for Lycos, Paul Stenberg, who operated out of an office in Needham, Massachusetts, communicated regularly with Lycos personnel in Waltham, Massachusetts, during the course of the parties' business relationship. (*Id.* ¶18);

(3)     Mr. Stenberg, as CSI's representative in Massachusetts,

BST99 1485852-4.057077.0012

      (a)    failed to disclose to Lycos the more than $26 million increase in aggregate payments resulting from the "roll-ups" (*Id.* ¶ 39); and

      (b)    intentionally misrepresented the total original equipment cost in an e-mail to Lycos dated March 18, 2002. (*Id.* ¶ 41); and

  (4)    At all times material and relevant to Lycos' claims, the events, transactions and occurrences described in the Amended Complaint occurred substantially and primarily within the Commonwealth of Massachusetts. Specifically, CSI's communications with Lycos were made by Mr. Stenberg while CSI was conducting business in its Massachusetts office. *Id.* ¶ 72.

Additionally, while CSI may have received Lycos' payments in Missouri, those payments were sent from Lycos in Massachusetts. Further, most if not all of the equipment leased from CSI that is the subject of this litigation was delivered to and used by Lycos in Massachusetts. (CSI filed this action in Massachusetts, rather than Missouri, presumably to enable it to seek to attach Lycos' bank account here. Now, after deciding to commence this action here and obtaining that attachment, CSI is heard to complain that the Court has not properly considered the policies of the state of Missouri.)

The fact is, substantially all of the business relationship between CSI, through Mr. Stenberg, and Lycos, was conducted in Massachusetts. Indeed, CSI has not submitted a single affidavit in an effort to provide a factual basis for the Court to reach an alternative conclusion, perhaps because it knows that the its employee with probably the greatest personal knowledge of CSI's relationship with Lycos, Mr. Stenberg, would adduce evidence that would further support the Court's conclusion that the material facts giving rise to Lycos' tort claims occurred substantially if not entirely in Massachusetts.

WHEREFORE, Lycos requests that the Court enter an Order:

1. Denying CSI's Motion for Reconsideration of Order of December 6, 2005; and

2. Granting Lycos such other relief as may be appropriate and just under the circumstances.

LYCOS, INC.,  
By its attorneys

Dated: January 4, 2006          /s/ Thomas O. Bean  
                                          Thomas O. Bean (BBO# 548072)  
                                          Peter M. Acton, Jr. (BBO# 654641)  
                                          McDERMOTT WILL & EMERY LLP  
                                          28 State Street  
                                          Boston, MA 02109

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January, 2006, I caused a true and accurate copy of the within document to be delivered by hand to Robert J. Kaler, Gadsby Hannah, LLP, 225 Franklin Street, Boston, MA 02111.

                                            /s/ Thomas O. Bean  
                                            Thomas O. Bean