**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) | |
| Plaintiff and Defendant-in-Counterclaim, | ) | |
| v. | ) | C.A. No. 05-10017-RWZ |
| LYCOS, INC., | ) | |
| Defendant and Plaintiff-in-Counterclaim, | ) | |
| and | ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) | |
| Trustee Process Defendant | ) | |

**LYCOS' REPLY TO CSI'S OPPOSITION TO LYCOS' MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIM**

Defendant and Plaintiff-in-Counterclaim, Lycos, Inc. ("Lycos") submits this reply to CSI's Opposition to Lycos' Motion for Leave to File a Second Amended Answer and Counterclaim (the "Opposition") in which CSI argues that Lycos' Motion for Leave (the "Motion") is untimely and futile. As neither of these bases hhas any merit when considered under the applicable standard of review, and because leave to file an amendment to a counterclaim should be liberally granted at this early stage of the case, this Court should grant the Motion.

As a threshold matter, CSI fails to adhere to the applicable standard of review governing its futility argument or otherwise demonstrate that any of the four counts Lycos seeks to add fail

to state a claim. The word "futility," in the context of a motion for leave to amend, "means that the complaint, as amended, fails to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Accordingly, in reviewing the Opposition – which is in effect a motion to dismiss under Fed. R. Civ. P. 12(b)(6) – this Court must "accept as true all the factual allegations in the [Second Amended Answer and Counterclaim ("SAAC")] and construe all reasonable inferences in favor of [Lycos]." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). It may grant CSI's "motion to dismiss" only if "it appears to a certainty that [Lycos] would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001).

Unfortunately, CSI does not address the four counts of Lycos' SAAC seriatim nor does it base its "motion to dismiss" on the facts alleged in the SAAC. As such, CSI's Opposition is difficult to follow for purposes of responding to the issue at hand, i.e., whether Lycos has stated viable claims in its SAAC. CSI also ignores the fact that this Court has already decided that Massachusetts law applies to Lycos' tort claims. *See* Memorandum of Decision dated December 6, 2005, Dkt. Entry No. 46 ("Memorandum"), at 4-6.

Instead, CSI repeats its practice of making factual assertions in a motion to dismiss that are (a) outside the four corners of Lycos' counterclaim; (b) irrelevant to disposition of the Motion; (c) unsupported by any evidence; (d) inflammatory; and (e) misleading.[1] Lycos will not respond in this Reply to the spurious contentions set forth in CSI's Opposition.

[1] *E.g.,* Dkt. Entry No. 25. As the Court may recall, CSI also submitted a summary judgment motion supported by one affidavit, an affidavit from a Vice President of CSI who did not even allege that he had personal knowledge of the facts set forth therein. Dkt. Entry No. 24.

With respect to CSI's untimeliness argument, the facts and law governing this Motion demonstrate conclusively that it has been filed well within a reasonable time period. The Motion was filed eight and a half months *before* the end of fact discovery, twelve days *before* CSI took Lycos' 30(b)(6) deposition, *before* CSI took any other depositions, *before* any expert discovery has been taken, and at least twelve months *before* trial. CSI is in no way prejudiced by the timing of this Motion; it has more than sufficient time to take discovery relevant to Lycos' additional claims.

Accordingly, for the reasons set forth above and more fully below, the Motion should be allowed.

## I. CSI'S "FUTILITY" ARGUMENT FAILS BECAUSE EACH OF THE FOUR COUNTS LYCOS SEEKS TO ADD STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

### A. Count V States a Claim for Declaratory Relief that Schedules 93 and 94 Were Secured Loans Rather than True Leases.

"In determining whether a lease is a true lease, the form or title chosen by the parties is not determinative." *In re Fleming Companies*, 308 B.R. 693, 696 (Bankr. D. Del. 2004) (applying Missouri law[2]). "Whether a document is a security agreement as opposed to a lease . . . is dependent on certain factors extrinsic to the document and not capable of control by words in the document. Although many of these documents have language to indicate they are leases and not security agreements, each of them would be a security agreement, not a lease, if, for example, it were written for a term that exhausted the entire economic life of the goods leased."

[2] The Master Lease contains a provision stating that it shall be "GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE-OF-LAW." SAAC, Ex. A, ¶ 18.6. As revised section 1-201(37) of the Uniform Commercial Code has been adopted in both Massachusetts and Missouri, Lycos will accept for purposes of disposition of the Motion that Missouri law applies to a determination of whether Schedules 93 and 94 are "true leases" or secured loans.

2 White and Summers, *Uniform Commercial Code* 565 (4th ed. 1995 & Supp. 1998). Thus, CSI's quotation in boldface type from its Master Lease which says "[t]his Master Lease is intended to be a true lease. . .", as well as its heavy reliance on Lycos' financial treatment of Schedules 93 and 94 as operating leases, is without legal import in analyzing whether Schedules 93 and 94 are, as a matter of law, true leases. *See* Opp'n at 10. Instead, revised section 1-201(37) of the Uniform Commercial Code, as adopted in Missouri, does not consider the parties' intent and instead focuses on the objective "economic realities" of the transaction. *In re Hoskins*, 266 B.R. 154, 159-60 (Bankr. W.D. Mo. 2001).

1. Schedules 93 and 94 Were Secured Loans as a Matter of Law.

Under revised section 1-201(37), "[w]hether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and . . . the original term of the lease is equal to or greater than the remaining economic life of the goods . . ." Mo. Rev. St. c. 400.1-201(37). If a transaction meets these two requirements, the transaction is a secured loan as a matter of law. *Fleming*, 308 B.R. at 696; *Hoskins*, 266 B.R. at 159-60.[3]

(a) The consideration Lycos was required to pay CSI for the right to possession and use of the goods under Schedules 93 and 94 was an obligation for the term of those schedules not subject to termination by Lycos.

[3] Given the foregoing objective tests, CSI's suggestion that "[u]nder Lycos' theory, if any lessee, either an equipment lessee or a real estate lessee, at some point determined that it has paid more than the property is worth, it could bring a claim for usury" (Opposition at 8), borders on the silly. The Uniform Commercial Code does not even apply to real estate leases except to the extent goods become fixtures.

As to the first requirement under 1-201(37), not only has Lycos alleged that it "did not have the right under the Schedules 93 and 94 to return the equipment under those schedules before the end of the lease terms without being obligated to make the monthly rental payments through the end of the lease terms,"[4] but the Master Lease makes it plain that Lycos was required to make the monthly rental payments under Schedules 93 and 94 for the full twenty-four or thirty-six month terms of those schedules:[5]

> Lessee's obligation to pay the Monthly Rental and all other sums due hereunder shall be unconditional and shall not be subject to any setoff, abatement, counterclaim, recoupment, defense, *cancellation*, repudiation, rejection of equipment, revocation of acceptance of equipment or any other right that Lessee may have against Lessor.

SAAC, Ex. A, ¶ 5 (emphasis added); *see also* SAAC ¶ 86. This clause alone satisfies the first requirement under 1-201(37). *In re Triplex Marine Maintenance*, 258 B.R. 659, 669 (Bankr. E.D. Tex. 2000) (finding first requirement was satisfied where contract contained a "hell or high water" clause). CSI admitted as much by arguing earlier in this case in its Memorandum in Support of its Motion to Dismiss Lycos' Counterclaim:

> These types of clauses, known as 'hell or high water' provisions, are specifically enforceable under the Uniform Commercial Code and are critical to the equipment finance leasing industry, because *they require the lessee to make payments under the lease 'come hell or high water,' without regard to defenses that the lessee might wish to assert against the lessor, and without any right of recoupment*.

CSI's Mem. of Law in Supp. of Plaintiff Computer Sales International, Inc.'s Mot. to Dismiss Def. Lycos Inc.'s Countercl. (Dkt. Entry No. 16) at 3, ¶ 1 (emphasis added). CSI now conveniently seeks to change the interpretation of the Master Lease that it previously advanced to this Court. This about-face is disingenuous.

---

[4] SAAC ¶ 86.

[5] SAAC ¶ 84.

CSI further misreads its own documents by arguing that this first requirement under section 1-201(37) is not satisfied because Lycos had the right to terminate Schedules 93 and 94 upon 60 days written notice. Opp'n at 12. As CSI well knows, that right arose only *after* Lycos had made all the rent payments required under the initial 24 or 36-month term of those Schedules, and the schedule was "on four month extension." *Id.*; Addendum A to Ex. A to SAAC. Thus, Lycos was required to make all of the monthly payments until the initial term of the schedule expired, thereby satisfying the first requirement of 1-201(37).[6]

(b) The original term of Schedules 93 and 94 is equal to or greater than the remaining economic life of the goods on those schedules.

Lycos has also satisfied the second requirement under 1-201(37). Contrary to CSI's contention that "Lycos fails to contend that the original term of the lease exceeded the remaining economic life of the goods, [7] Lycos alleged in the SAAC as follows:

> Pursuant to Schedules 93 and 94, Lycos agreed to make monthly payments to CSI for an initial term of 24 and 36 months, respectively. *As the equipment had depreciated in value from 100% of its original equipment cost to less than 10% thereof at the time the equipment rolled onto Schedules 93 and 94, these twenty-four and thirty-six month schedules exceeded the remaining economic life of the equipment listed on them.* Indeed, at the time the Sales Agreement was executed, CSI knew that equipment was worth so little that it would have been willing to sell it to Lycos for only $350,000, less than 1% of the original cost of that equipment.

SAAC ¶ 84 (emphasis added).

As such, because Lycos has alleged under 1-201(37) that (a) it was required to make all payments through the end of the initial term of Schedules 93 and 94, and (b) the length of the

---

[6] The First Circuit has recognized an exception to this "hell or high water" obligation if a lessee was induced by fraud to enter into a lease. *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 70 (1st Cir. 2005) (an exception to the enforceability of "hell or high water" clauses exists "for cases of fraud," where the "the victim is entitled to the remedies of default, including cancellation.")

[7] Opp'n at 12.

terms of Schedules 93 and 94 exceeded the economic life of the equipment on them, it has stated a claim that Schedules 93 and 94 were secured loans rather than true leases.

2. The "Economic Realities" of Schedules 93 and 94 Demonstrate that They Are Secured Loans, not True Leases.

Not only were Schedules 93 and 94 disguised secured loans as a matter of law, but the specific terms of the Master Lease demonstrate that these schedules were in fact secured loans. *See Fleming*, 308 B.R. at 697; *Hoskins*, 266 B.R. at 161. As noted above, Missouri law focuses on the "economic realities" of the transaction to determine whether it was a true lease or a disguised secured loan. The factors Missouri courts consider in making such a determination include whether:

a. the lessee is required to insure the goods in favor of the lessor,

b. the lessee bears the risk of loss or damage;

c. the lessee is to pay for taxes, repairs and maintenance,

d. the agreement establishes default provisions governing acceleration and resale;

e. the warranties that usually attend true leases are expressly disclaimed and excluded; and

f. the lessor lacks the facilities to store or retake the goods.

*In re Open Door Press, Inc.*, 142 B.R. 883, 887 (Bankr. E.D. Mo. 1992) quoting *Commercial Credit Equipment v. Parsons*, 802 S.W.2d 315, 320 (Mo. Ct. App. W.D. 1991).

Here, at least the first five factors are satisfied. The Master Lease:

a. required Lycos to insure the equipment in favor of CSI;[8]

b. required Lycos to bear all risk of loss or damage to the equipment;[9]

---

[8] SAAC, Ex. A, ¶ 10.1 ("Lessee shall, at its expense, maintain in full force and effect 'all risk' extended coverage, fire and casualty insurance for the Equipment . . . Lessor shall be named as the Loss Payee on such policy.")

c. required Lycos to pay for taxes, repairs and maintenance;[10]

d. established default provisions governing acceleration and resale;[11] and

e. disclaimed all warranties that usually attend leases.[12]

Thus, the economic realities of the transaction, in which Lycos maintained responsibility for the equipment, further reflect that Schedules 93 and 94 evidenced secured loans rather than true leases. Based on the foregoing, Lycos has stated a claim that Schedules 93 and 94 evidence secured loans and CSI's claim of futility with respect to Count V of the SAAC therefore fails.

B. In Count VI, Lycos States a Claim for Declaratory Relief that Massachusetts Law Governs Its Usury Claims.

In Count VI, Lycos seeks a declaration that Massachusetts law governs Lycos' usury claim. SAAC ¶¶ 95-103. In its Opposition, CSI counters that Missouri law should govern the usury claim because of the choice of law provision in the Master Lease. As set forth more fully below, the Master Lease's choice of Missouri law does not govern this claim for three reasons:

- a claim of usury goes to the validity of a contract, and the choice of law provision drafted by CSI, by its plain terms, does not govern determinations as to the validity of its "lease" contracts;
- the choice of law provision governs only contract disputes, not torts, and Lycos' usury claim sounds in tort; and
- even if the Court were to reject both of the foregoing arguments, because Missouri does not bar usury in business-to-business loans while Massachusetts makes usury in such loans a crime, Missouri law offends an important

---

[9] *Id*. ¶ 9.1 ("Lessee shall be responsible for and hereby assumes the entire risk of the Equipment being lost, damaged, destroyed, stolen or otherwise rendered unfit or unavailable for use from the date of delivery to Lessee to the date of return to Lessor.")

[10] *Id.* ¶¶ 6.1, 8.1.

[11] *Id*. ¶ 14.

[12] *Id*. ¶ 4.2.

Massachusetts public policy. Accordingly, the contract's choice of law should not be respected as to Lycos' usury claims.

1. The Choice of Law Provision is Inapplicable to Lycos' Usury Claims because the Master Lease's Choice of Law Provision does not Govern Claims that go to the *Validity* of the "Lease" Contracts.

Massachusetts' usury law permits a court to *void* a loan made at a rate of interest in excess of twenty percent per annum. M.G.L. c. 271, § 49(c). As Lycos has alleged that Schedules 93 and 94 were usurious, and thus should be voided, Lycos' claim goes to the legal validity of those schedules. *See In re Rolfe*, 25 B.R. 89, 94 (Bankr. D. Mass. 1982) (finding unenforceable and voiding usurious provision in contract).

A plain reading of the choice of law provision in the Master Lease reveals that it does not govern determinations as to the validity of those schedules. That provision, which was drafted by CSI and contained in its standard form Master Lease, provides:

> GOVERNING LAW: THIS MASTER LEASE AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE-OF-LAW.

(capitals in original). CSI apparently knew that its standard language did not govern the validity of its "leases," and included different choice-of-law language in the Sales Agreement the parties executed years after signing the Master Lease. The language in that agreement states as follows:

> GOVERNING LAW: This Agreement, including all matters of construction, *validity*, performance and enforcement, is governed by the laws of the State of Missouri, without giving effect to the principles of conflicts or choice-of-law.

Sales Agreement, § 9(D), attached to the SAAC as Ex. I (emphasis added). Thus, because Lycos' usury claim concerns the validity of Schedules 93 and 94, and the choice of law provision in the Master Lease does not govern determinations as to the validity of those Schedules, the choice of law provision does not apply to Lycos' usury claim. *See also Merrimac Valley Nat'l*

*Bank v. Baird*, 372 Mass. 721, 723-24, 363 N.E.2d 688, 690-91 (1997) (To the extent there is any ambiguity as to the breadth of a choice-of-law provision, it must be construed against the drafter of its standard form language.)

2. Usury is a Tort and the Master Lease's Choice of Law Provision Does Not Govern Torts.

Analysis of which state's law applies to a particular dispute is resolved using the choice-of-law analysis of the forum state – in this case, Massachusetts. *Reicher v. Berkshire Life Ins. Co. of America*, 360 F.3d 1, 5-6 (1st Cir. 2004).

(a) There is a conflict between Massachusetts and Missouri law.

Under Massachusetts law, the first step in a multi-step analysis is to determine whether an actual conflict exists between the substantive laws of Massachusetts and Missouri. *Id.* Missouri does not allow a claim for usury in business-to-business loans while Massachusetts does.[13] So, there is a conflict.

(b) The scope of the choice of law provision in the Master Lease is not broad enough to cover tort claims.

The next step is to examine the language of the choice-of-law provision[14] to determine its scope and whether it is broad enough to cover tort claims. This Court decided that issue in this case

---

[13] *Compare* M.G.L. c. 271, § 49 with Mo. Rev. St. c. 408.

[14] As noted above, the choice-of-law provision CSI drafted provides:

> GOVERNING LAW: THIS MASTER LEASE AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE-OF-LAW.

SAAC, Ex. A, ¶ 18.6.

when it concluded that the choice of law provision in the Master Lease was limited in scope to contract disputes arising out of the agreements themselves. *See* Memorandum at 4-5. In its Memorandum, the Court cited *Kitner v. CTW Transport, Inc.*,[15] which it said characterized "a nearly identical [choice of law] provision as 'expressly self-limiting' and . . . did not cover tortuous conduct." Memorandum at 4-5.[16] As noted above, to the extent there is any ambiguity as to the breadth of the Master Lease's choice-of-law provision, it must be construed against CSI as the drafter of its standard form language. *Merrimac Valley Nat'l Bank*, 372 Mass. at 723-24, 363 N.E.2d at 690-91.

(c) Lycos' Usury Claim is a Tort Claim and is, Therefore, Not Governed by the Master Lease's Choice of Law Provision.

Because the choice-of-law provision covers only contract claims, the next step in the Court's analysis is to "characterize" Lycos' usury claim. *Trent Partners*, 120 F. Supp. 2d at 95. Only when the essential elements of tort claims consist of contract violations and can be reduced to nothing more than "embroidered" contract claims may such claims be governed by a contract's choice-of-law provision. *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609-10 (1st Cir. 1993).

Chapter 271 of the Massachusetts General Laws is entitled "Crimes Against Public Policy." The prohibition against usury, which appears in M.G.L. c. 271, § 49, is thus a "wrong" against public policy. "Wrongs", in the civil context, are torts. *Ankiewicz v. Kinder*, 408 Mass. 792, 795,

---

[15] 53 Mass. App. Ct. 741, 762 N.E.2d 867 (2002)

[16] *See Trent Partners and Assocs., Inc. v. Digital Equipment Corp.*, 120 F. Supp. 2d 84, 97 n.12 (D. Mass. 1999) (finding that the "the choice-of-law provision . . . merely provides that the Agreement itself shall be 'governed and construed' under Massachusetts law, not that all claims or disputes arising from the Agreement should be settled under Massachusetts law"); *First Security Bank, N.A. v. Northwest Airlines, Inc.*, 2001 WL 92175 at *3, n.8 (D. Mass. 2001) (Stearns, J.) (the choice-of-law provision "specifically limits itself to matters 'governed by' the lease, that is, the contract claims").

563 N.E.2d 684, 686 (1990). "All torts share the elements of duty, breach of that duty, and damages arising from that breach." *Id*. M.G.L. c. 271, § 49, imposes a duty on lenders in Massachusetts not to make usurious loans unless they notify the Attorney General before making such loans. Lycos alleges that CSI had such a duty because it did not notify the Attorney General of its intent to make usurious loans,[17] that it breached that duty with respect to Schedules 93 and 94,[18] and that CSI's breach of that duty caused damage to Lycos.[19] *See Begelfer v. Najarian*, 381 Mass. 177, 189, 409 N.E.2d 167, 175 (1980) (one factor to consider in determining the remedy in a usury case is the gravity of the "misconduct," thus implying that usury is a tort). Hence, Lycos' civil usury claim sounds in tort. Indeed, Lycos is not alleging that CSI "breached" Schedules 93 and 94. To the contrary, Lycos is seeking to void those schedules as "wrongs" because they were usurious.

(d) Massachusetts Law Applies to Lycos' Usury Claim.

Finally, because Lycos' tort claims are not governed by the Master Lease's choice-of-law provision, the Court must determine whether Massachusetts or Missouri law applies using Massachusetts' choice-of-law principles. Massachusetts employs a "functional choice-of-law approach" which dictates that the "law of the state that has the more significant relationship to the parties and the underlying circumstances will be applied." *Stathis v. National Car Rental Sys., Inc.*, 109 F. Supp. 2d 55, 56 (D. Mass. 2000). In general, "it is more than likely that it is the law of the place of the tort which will be controlling . . ." *Pevoski v. Pevoski*, 371 Mass. 358, 360, 358 N.E.2d 416, 417 (1976).

---

17 SAAC, ¶ 107.

18 *Id*., ¶ 109.

19 *Id*., ¶ 110.

Again, this Court has already determined that Massachusetts governs Lycos' tort claims[20] and for good reason. Where both parties have offices in and conducted their face-to-face business Massachusetts,[21] the equipment was delivered by the equipment vendors directly to Lycos in Massachusetts without CSI ever taking possession in Missouri or any other place,[22] the usurious payments were made by Lycos from Massachusetts,[23] and the conduct and the injury to Lycos occurred in Massachusetts, Massachusetts substantive law applies to Lycos' usury claim. *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 647-50, 632 N.E.2d 832, 835-36 (1994) (Massachusetts law applies where both plaintiff and defendant resided in Massachusetts and the conduct giving rise to plaintiff's injury arose in Massachusetts).[24]

3. Even if the Master Lease's Choice for Missouri Law Were to Govern Lycos' Usury Claims, that Choice Should Not be Respected Here Because Missouri Law Offends Massachusetts Public Policy.

Massachusetts courts ordinarily honor a contractual choice of law "[i]n the absence of a conflict with public policy[.]" *Northeast Data*, 986 F.2d at 610. Here, such a conflict exists. As noted above, Missouri law does not permit a usury claim in connection with a loan by one business to another business. In contrast, usury in a business-to-business loan is a crime in Massachusetts punishable by a fine and incarceration for not more than ten years. M.G.L. c. 271, § 49(a). The criminal prohibition in Massachusetts against usury reflects the important public

[20] Memorandum at 6.

[21] SAAC ¶¶ 5 and 22.

[22] *Id.* ¶ 88(D).

[23] *Id.* ¶ 21(D)

[24] Massachusetts applies the factors set forth in both §§ 6 and 145 of the Restatement (Second) of Conflict of Laws. *Id.*; *Romani v. Cramer, Inc.*, 992 F. Supp. 74, 77-78 (D. Mass. 1997). Section 145, cmt. e provides that the state where the plaintiff and defendant are located "is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there."

policy against it. *See Begelfer*, 381 Mass. at 189, 409 N.E.2d at 175 (In determining whether to void a loan, the court must consider a number of factors "including the importance of the public policy against usury"). Thus, the absence of a usury provision applicable to business-to-business loans under Missouri law conflicts with the important Massachusetts public policy against usurious loans, regardless of whether lender and are borrower are both businesses. Accordingly, the Master Lease's choice-of-law provision should not be enforced with respect to Lycos' usury claim.

Moreover, state usury law restrictions on lending practices are extensively and historically rooted in the consumer protection terrain in Massachusetts. *See Greenwood Trust Co. v. Commonwealth of Massachusetts*, 776 F.Supp. 21, 27 (D. Mass. 1991), *rev'd on other grounds*, 971 F.2d 818 (1st Cir. 1992). Out-of-state companies such as CSI should not be permitted to make loans in Massachusetts and escape civil enforcement of Massachusetts' usury laws simply by including a choice-of-law provision for their home state if that state does not permit a usury claim in a business-to-business loan.

For all of the above reasons, CSI's claim of futility with respect to Count VI of the SAAC fails.

D. Count VII States a Claim Because Lycos May Seek Avoidance of Schedules 93 and 94 and Return of the Monies it Paid.

CSI argues that Massachusetts' usury law was designed to protect the necessitous debtor from outrageous demands by lenders, and that Lycos was not such a debtor. Opp'n at 16-17. Lycos has two responses. First, the statute does not require that the party asserting a claim for usury be a "necessitous debtor." As noted above, Massachusetts, unlike Missouri, permits businesses to assert civil claims for usury. There is no requirement that the debtor company be "necessitous." Second, Lycos was, in CSI's view, a necessitous debtor at the time Schedules 93

and 94 were being discussed. CSI considered Lycos to be a bankruptcy risk and a "dot.com" that could fail like many other "dot.coms" then experiencing financial difficulty. SAAC ¶ 90. For this reason, among others, it demanded that Lycos obtain an $11 million letter of credit to secure Lycos' obligations under Schedules 93 and 94. *Id*. ¶¶ 90-91.

CSI has admitted there is a civil remedy for a borrower against a lender that makes a usurious loan: the Court may declare the loan void. Opp'n at 6; M.G.L. c. 271, § 49(c). Once the loan is declared void, the Court may – contrary to CSI's assertion – require a lender such as CSI to repay Lycos the amounts Lycos paid to CSI. *Beach Assocs., Inc. v. Fauser*, 9 Mass.App.Ct. 386, 401, 401 N.E.2d 858, 863-64 (1980) ("[it] was within the discretion of the judge, based upon all the facts, circumstances, and condition surrounding the loan, to void it, to rescind it, *to refund,* to credit any excessive interest paid, to reform the contract, or to provide any other relief consistent with equitable principles." (emphasis added)). Thus, CSI is simply wrong on the law when it claims that this Court is without authority to order CSI to refund Lycos the money Lycos has paid.

CSI's final point in this area – its citation to *Human Resources Development Press, Inc. v. IKON Office Solutions, Inc.*, 2006 WL 149043 (D. Mass. Jan. 12, 2006) – provides it with little assistance. The plaintiff in that case did not allege (a) that the "lease" was a disguised secured loan, (b) the principal amount of the loan, or (c) the amount of interest it had paid. In contrast, as set forth above, Lycos has alleged facts sufficient to state its claim that Schedules 93 and 94 were secured loans. It has also alleged the amount of principal and interest: "[a]s the value of the equipment at the time it rolled onto Schedules 93 and 94 was less than $3 million, the amount paid represented payment of *principal* of at most that amount plus at least $15.275 million in interest." SAAC ¶ 98 (emphasis added). This allegation is not, as CSI argues, mere

speculation. Rather is supported by the evidence obtained through discovery from CSI in this case. Moreover, Lycos is not asking this Court to engage in the "contortions" requested by the plaintiff in *Ikon*. It has alleged facts sufficient to state a claim and will present documentary and testimonial evidence to support those factual allegations at the appropriate time.

Accordingly, CSI's claim of futility with respect to Count VII of the SAAC fails.

E. Count VIII, Lycos' c. 93A Claim, States a Claim Upon Which Relief May be Granted.

Lycos has stated a claim under c. 93A, §§ 2 and 11 under two theories: first, based on the allegations set forth above; and second, independently of those allegations and regardless of whether the Court finds that Missouri law applies to Lycos' usury claim.

As to the former theory, 940 C.M.R. 3.16(3) states in pertinent part, "an act or practice is a violation of [G.L. c.] 93A, [§]2 if: . . .. . (3) it fails to comply with existing statutes . . . meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth . . . intended to provide consumers of this Commonwealth with protection. . . ." *See Hershenow v. Enterprise Rent-A-Car Company of Boston, Inc.*, 445 Mass. 790, 798 n.17 ("[a]n act that violates a consumer statute may be per se deceptive under G.L. c. 93A, § 2, as the regulation [940 C.M.R. 3.16(3)] implies."). Further, the First Circuit has observed that "one can commit a chapter 93A violation without behaving like a 'rascal,' if one violates consumer protection or public safety laws." *Cablevision of Boston, Inc. v. Public Improvement Comm'n of the City of Boston*, 184 F.3d 88, 106 (1st Cir. 1999). That is precisely what CSI has done here: violate a state consumer protection law against usury.

Even if, as CSI wrongly contends, no private recovery by Lycos from CSI were permissible under the state's usury statute, M.G.L. c. 271, § 49, Lycos could still recover under G.L. c. 93A, § 2 for violation of the usury statute. The Appeals Court has held that "[v]iolation

of a specific statute that does not itself permit private recovery may give rise to a private claim under c. 93A if the violation amounts to an unfair method of competition or an unfair or deceptive practice independently prohibited by G.L. c. 93A, § 2, and if recovery under 93A is compatible with the objectives and enforcement mechanisms the underlying statute contains." *Whitehall Co. v. Merrimack Distributing Co.*, 56 Mass. App. Ct. 853, 858, 780 N.E.2d 479, 483 (2002). That is the case here.

Finally, even if the Court concludes that Missouri law applies to and thus bars Lycos' usury claim in Count VII, Lycos has still stated a claim under 93A. The reason is simple: usury is a tort. "[I]f a particular defendant's unfair conduct with respect to a contract sounds in tort, 93A will apply to that contract notwithstanding a contract provision that states that contractual claims will be interpreted under another State's law. *Kitner*, 53 Mass. App. Ct. at 746-47. Accordingly, even if Missouri law were to govern Lycos' usury claim in Count VII, Lycos' 93A claim in Count VIII would survive. Thus, CSI's claim of futility with respect to Count VIII of the SAAC must fail.

## II. LYCOS FILED THE MOTION TIMELY AND ALLOWANCE OF IT WOULD NOT PREJUDGE CSI.

CSI contends that it will be prejudiced because "the parties have already brought dispositive motions, including a motion for summary judgment, and discovery in this case is well underway and must be completed by January 31, 2007." Opp'n at 17. This statement is inaccurate, misleading, and otherwise immaterial for the purposes of granting Lycos leave to file the SAAC. CSI is the only party that filed any dispositive motions in this case. *See generally,* the docket and specifically Dkt. Entry Nos. 15, 16, 21, 22, 25. It chose to do so before discovery commenced in this case. Lycos has yet to file any such motions. Nevertheless, CSI's argument in this regard is a red herring as it is not precluded from filing additional dispositive motions if it

chooses; in fact, as noted above, its argument in the Opposition as to "futility" is treated as a dispositive motion to dismiss. CSI can hardly claim prejudice when it has not lost any rights.

Moreover, discovery was stayed pending disposition of CSI's dispositive motions through December 6, 2005 when this Court issued the Memorandum denying such motions. *Id.* at Nos. 20, 46. Thus, discovery in this case is in the very early stages. The only discovery CSI identifies as having taken is the 30(b)(6) deposition of Lycos – a deposition it chose to take twelve days *after* Lycos served the Motion and eight and one-half months before the end of fact discovery. If CSI had wanted to address the issues raised by the SAAC in the 30(b)(6) deposition, it could have amended the topics in its deposition notice and/or continued the date for the 30(b)(6) deposition, especially given the ample amount of time remaining in the discovery period. Instead, CSI chose to proceed with that deposition as scheduled. It is disingenuous for CSI to now complain that it is being prejudiced because the 30(b)(6) deposition has taken place.

Furthermore, CSI has not taken any other depositions in this action and, with discovery not scheduled to end until January 31, 2007, CSI has more than eight more months to gather evidence as to allegations contained in Lycos' SAAC. This is more than sufficient time to propound written and testimonial discovery relating to those allegations.

Finally, neither party has engaged in expert discovery to date and the trial in this case will likely not be held until a year from now. Accordingly, any argument that CSI will be somehow prejudiced if the Court were to grant the Motion strains credulity.

**CONCLUSION**

For the foregoing reasons and the reasons stated in the Motion, this Court should allow the Motion.

Respectfully submitted,

LYCOS, INC.

By its attorneys,

Dated: May 8, 2006

/s/ Thomas O. Bean__________
Thomas O. Bean (BBO# 548072)
Peter M. Acton (BBO# 654641)
McDermott, Will & Emery, LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4000

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May, 2006, I caused a true and accurate copy of the within document to be delivered by hand to Robert J. Kaler, Gadsby Hannah, LLP, 225 Franklin Street, Boston, MA 02111.

/s/ Thomas O. Bean______________
Thomas O. Bean

BST99 1502021-3.057077.0012