UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>LYCOS, INC., )<br>Defendant, )<br>)<br>BANK OF AMERICA f/k/a FLEET BANK, )<br>)<br>Trustee Process Defendant. )<br>) | C.A. No. 05-10017- RWZ |

**ASSENTED-TO MOTION FOR LEAVE TO FILE SUR-REPLY
IN CONNECTION WITH LYCOS' "MOTION FOR LEAVE
TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIM"**

Pursuant to Local Rule 7.1(B)(3), plaintiff Computer Sales International, Inc., now known as CSI Leasing ("CSI"), seeks leave to file a brief sur-reply (attached hereto as Exhibit A) in further opposition to Lycos, Inc.'s ("Lycos") Motion for Leave to File a Second Amended Answer and Counterclaim ("Motion"). In further support of this request, CSI states as follows:

1.    On Friday, April 14, 2006, Lycos filed and served the Motion.

2.    On April 24, 2006, CSI filed its Opposition to the Motion.

3.    On May 10, 2006, Lycos obtained leave of Court and filed a lengthy 19-page Reply to the Motion. This Reply raised numerous new arguments not raised in the Motion.

4.    CSI seeks leave to file the attached sur-reply to respond to the new points raised in the Reply and to clarify the issues.

5.    This sur-reply will be of assistance to the Court in understanding the legal issues in dispute and in determining which of those issues need be decided in order to rule on the

Motion.

      6.    Counsel for Lycos has assented to the relief requested herein.

WHEREFORE, CSI seeks an order from the Court granting it leave to file the enclosed sur-reply.

|  |  |
|---|---|
| | COMPUTER SALES INTERNATIONAL, INC.<br>By its attorneys,<br><br>/s/ David Himelfarb<br>Robert J. Kaler, Esq., BBO No. 542040<br>rkaler@ghlaw.com<br>Edward W. Little, Esq., BBO No. 628985<br>elittle@ghlaw.com<br>David Himelfarb, BBO No. 649596<br>dhimelfarb@ghlaw.com<br>Gadsby Hannah LLP<br>225 Franklin Street<br>Boston, MA  0211<br>Tel. (617) 345-7000 |
| Dated:  May 10, 2006 | |

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I, David Himelfarb, counsel for CSI, hereby certify pursuant to Local Rule 7.1(A)(2) that on this 10th day of May 2006 I conferred with counsel for Lycos to attempt to resolve or narrow the issues raised in this motion.  As a result of that conference, counsel for Lycos has assented to the relief requested herein.

                                                             /s/ David Himelfarb
                                                             David Himelfarb

## CERTIFICATE OF SERVICE

I, David Himelfarb, hereby certify that I caused a true copy of the foregoing motion to be served on counsel for Lycos through the Court's ECF system and by first class mail, postage prepaid, this 10th day of May 2006.

                                                             /s/ David Himelfarb
                                                             David Himelfarb

UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| COMPUTER SALES INTERNATIONAL INC., )<br>Plaintiff, )<br>v. )<br> )<br>LYCOS, INC., )<br>Defendant, )<br> )<br>BANK OF AMERICA f/k/a FLEET BANK, )<br>Trustee Process Defendant. )<br> ) | *** *Oral Argument Requested* ***<br><br>C.A. No. 05-10017- RWZ |

**SUR-REPLY OF COMPUTER SALES INTERNATIONAL,
INC. TO "LYCOS' MOTION FOR LEAVE TO FILE
SECOND AMENDED ANSWER AND COUNTERCLAIM"**

Plaintiff Computer Sales International, Inc. ("CSI") respectfully submits this sur-reply to respond to certain new – but ultimately faulty – arguments made by defendant Lycos, Inc. ("Lycos") in its Reply to its Motion for Leave to File Second Amended Answer and Counterclaim ("Reply").[1] In particular, this sur-reply:

- rebuts Lycos' argument that Massachusetts' usury law applies by pointing to respected treatises, settled case law, and applicable legal doctrine, such as the "rule of validation" – all of which require the application of Missouri law in cases such as this;

- corrects Lycos' incorrect reliance on case law which applied an earlier version of the UCC; and

- provides the Court with relevant case law which Lycos failed to cite in its Reply that directly refutes the central argument underlying Lycos' usury claim – *i.e.*, that under Missouri law the leases in question are somehow really security interests.

---

[1]  In the interests of brevity, CSI will not address all of the arguments made by Lycos, but rather incorporates the arguments from its Opposition herein by reference.

Upon careful scrutiny, it becomes apparent that Lycos' "new" usury argument is nothing more than a repackaged version of its unconscionability claim which the Court previously dismissed. Relying on no new evidence or new law, Lycos seeks to plead a claim for usury by employing certain contorted logic which quite simply strains credulity. Indeed, in order for Lycos' usury claims to be legally sufficient, the Court must reach the following illogical conclusions:

- that an agreement called a lease, with all of the standard characteristics of a lease (*e.g.*, lease payments made in exchange for the right to use certain property but not to acquire title to the property), which Lycos agreed were leases, represented to its investors were leases, and reflected on its balance sheet as leases, are not leases at all, but rather security interests;

- that a security interest is really a loan;

- that its leases *qua* security interests *qua* loans are usurious even though they have no stated principal or interest amounts; and

- that even though the parties agreed to apply Missouri law to their lease agreements, this choice of law provision should not apply to Lycos' usury claim because that claim supposedly sounds in tort, even though no case in Massachusetts has ever recognized usury as a tort and even though the prevailing case law (which Lycos does not even address in its Reply, much less try to distinguish) requires the application of a contract's choice of law provision to usury claims.

In assessing the validity of Lycos's proposed counterclaims, this Court need not and should not check logic, reason, express contractual provisions, and settled legal principles at the door. Rather, the Court should, in all fairness, recognize these claims for what they are – inapplicable legal theories that the parties and the Court should not have to expend valuable time and resources addressing any further.

## ARGUMENT

**I.     SETTLED LAW REQUIRES THE COURT TO APPLY MISSOURI USURY LAW**

When deciding the instant motion, the Court's first inquiry should be which state's usury law applies because, if it finds that Missouri's usury law applies, then no further analysis is required – no usury claim can lie and the Court need not determine whether the leases are really security agreements, whether those security agreements are really loans, or what the terms of those supposed loans would be. Presently, there is no dispute in this case that the relevant contract between the parties, the Master Lease, contains the following provision:

> THIS MASTER LEASE AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW.

Master Lease § 18.6 (all caps in original). Case law, established legal doctrines, and respected treatises all dictate that a provision such as this should be given effect when deciding usury claims. For instance, the venerable Williston on Contracts instructs:

> With regard to usury and the conflicts of laws, the general rule is that the validity of a note depends on the law of the place where it is payable… However, ***the parties may agree otherwise***, and generally ***the law to be applied is that intended by the parties***.

9 Williston on Contracts § 20:43 (4th ed.). Likewise, the equally regarded Corpus Juris Secondum provides:

> Generally, the parties' contractual stipulation of governing law will be given effect in determining whether the parties' contract is usurious, provided the state whose law is chosen has a sufficient connection with the contract…. The rule that the parties' contractual stipulation of governing law will be given effect as long as the state whose law is chosen has a sufficient connection with the transaction, has been applied even though application of the parties' choice of state usury law renders the interest provision in the contract usurious.

47 C.J.S. Interest & Usury § 172. The numerous cases that have explored the issue have made similar findings. *See, e.g., Woods-Tucker Leasing Corp. of Georgia v. Hutcheson-Ingram Development Co.*, 642 F.2d 744 (5th Cir. 1981); *Davidson Oil Country Supply Co., Inc. v.*

*Klockner, Inc.*, 908 F.2d 1238, 1248 (5th Cir. 1990) ("Because the UCC governs this case, the choice of law provision contained in that Code must be applied… Because DOCS has no usury defense under the applicable New York law … we affirm the trial court's holding that Klockner prevails on the usury claim …."); *In re Integrated Resources, Inc. Real Estate Ltd. Partnerships Securities Litig.*, 851 F. Supp. 556, 564-65 (S.D.N.Y. 1994) (agreements which provided that they would be "governed by New York law" requires application of New York's usury laws).

***Lycos does not cite a single case or authority either contradicting this case law or mandating a different result***. Instead, Lycos throws up a variety of illogical and inapplicable arguments to avoid the settled legal rules. For example, Lycos argues that even though it agreed that its Equipment Schedules would be governed by and construed and interpreted under Missouri law, the Court should apply Massachusetts law because a usury claim goes not to the terms of the contract but to its validity. This doublespeak cannot avoid the simple reality that a usury claim attacks the alleged interest rate (*i.e.*, the terms) of the contract, and thus falls squarely within the parties' choice of law provision. In fact, this issue has basically already been decided by ***this Court*** in its earlier published opinion, *CSI v. Lycos*, 2005 WL 3307507 (D. Mass. Dec. 6, 2005).

In that Order, the Court instructed that the choice of law provision in this case applies to "disputes arising out of the agreements themselves," "'embroidered' contract claims or 93A claims essentially sounding in contract," and claims whose predominant or principal focus relate to the contract's terms. *Id.* at *2-*3. There can be no reasoned basis to find that a usury claim alleging that the contract's terms were excessive is not a claim arising under the contract and whose principal focus relates to the contract's terms. Thus, the Master Lease's choice of law provision must be applied, rendering Lycos' usury claim futile because Missouri does not

recognize business-to-business usury claims (as Lycos concedes in its proposed Second Amended Complaint and Counterclaim).

This result is further mandated by the fact that, contrary to Lycos' assertion, usurious contracts are ***not invalid or void***, but rather are ***voidable*** by the court under the court's equitable powers. *See* M.G.L. c. 271, § 49(c) ("Any loan at a rate of interest proscribed under the provisions of paragraph (a) ***may be declared void*** by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made") (emphasis added). *See Begelfer v. Najarian*, 381 Mass. 177, 187-89 (1980) (holding that a usurious contract is not void, but rather subject to the supreme judicial or superior court's equitable powers, which can include simply striking the offensive provision or reducing the rate of interest to a legally permissible rate). In fact, it is not even clear under this statute whether *this* Court even has jurisdiction to entertain a usury claim, as the law only appears to grant such powers to the SJC or a state superior court.

Similarly, Lycos' allegation in its reply that usury sounds in tort is also without merit. Notably, Lycos has absolutely no legal basis to support this claim and cites none to the Court. At best, Lycos argues that usury must be a tort because it is "wrong" and violates public policy. Reply at 11. This contention is laughable. There is no common law right to bring a usury claim in Massachusetts; rather, usury is purely a creature of statutory creation as a consumer protection statute. Moreover, unlike with torts, there is no right to damages for usury.

Lycos's desperate appeal to "public policy" to save it from its own contracts is likewise misguided. As Lycos admits, Massachusetts does not prohibit usury, but simply requires usurious transactions to be registered with the Attorney General's Office. The only reason CSI did not do this is because it had no reason to suspect that Lycos' lawyers would concoct a

baseless usury argument after Lycos refused to honor its contractual commitments. No public policy is therefore served by applying Massachusetts' usury laws in this case, particularly since the parties agreed that their contracts would be governed by Missouri law.

If anything, public policy requires the parties' choice of law provision to be honored under the maxim that parties should be free to contract without undue judicial intervention. Indeed, the Supreme Court has long since held that allowing the parties' to structure their agreements so as to apply one state's usury laws over another is not offensive to public policy, but rather promotes the public policy of freedom of contract. *See Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403 (1927) ("In support of policy upholding contractual obligations assumed in good faith, this court has adopted … the rule [that] 'If the rate of interest be higher at the place of the contract than at the place of performance the parties may lawfully contract in that case also for the higher rate.'") (citations omitted).

Lastly, under the "***rule of validation***" the Court should apply Missouri law in order to uphold a contract between "***business entities with considerable commercial experience***." *CSI*, 2005 WL 3397507 at *7 (emphasis added). Under the "rule of validation," a court will "apply the law of the jurisdiction whose usury statute would ***uphold the contract*** or impose the lightest penalty …." 47 C.J.S. Interest & Usury § 175 (emphasis added). *See also Walter E. Heller & Co. v. Chopp-Wincraft Printing Specialties, Inc.*, 587 F. Supp. 557 (S.D.N.Y. 1982). Similarly, under the Restatement (Second) of Conflict of Laws, the validity of a contract should be sustained against a charge of usury if it provides for a rate of interest that: (1) is permissible in a state to which the contract has a substantial relationship, and (2) is not greatly in excess of the rate permitted by the general usury law of the state of the otherwise applicable law. Restatement

(Second) of Conflict of Laws § 203.  Comment b to the Restatement provides the following rationale for this rule:

> A prime objective of both choice of law … and of contract law is to **protect the justified expectations of the parties**. Subject only to rare exceptions, **the parties will expect on entering a contract that the provisions of the contract will be binding upon them**. For this reason, the courts will not apply an invalidating rule to strike down the contract unless the value of protecting the justified expectations of the parties is outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied. Usury is a field where this policy of validation is particularly apparent.… Upholding a contract against the charge of usury by the application of the local law of one state, which has a substantial relationship to the transaction and the parties, can hardly affect adversely the interests of another state when the stipulated interest is only a few percentage points higher than would be permitted by the local law of the other state. …

*Id.* (emphasis added).  Here, both Massachusetts and Missouri would have allowed the transactions at issue under their respective usury laws, except that Massachusetts imposes a reporting requirement for usurious loans (but expressly precludes the usury statute from applying to leases).  Because CSI had no reason to suspect that its leases would be transmogrified by Lycos' lawyers into loans after the fact, its purported failure to report the transactions under Massachusetts usury law is, at best, a theoretical one for which no legitimate public policy arguments can be made.

In sum, despite Lycos' desperate efforts to disavow the language of the contracts it duly entered into, the Court should hold Lycos, a "business entit[y] with considerable commercial experience," liable for the contractual obligations it willingly entered into.

## II.     LYCOS' REPLY MISSTATES THE LAW

While CSI is comfortable relying on the arguments in its Opposition brief as to why the leases at issue are true leases and not security agreements, it is important to clear up one misconception created by Lycos in its Reply.  In its Reply, Lycos – apparently admitting that Missouri law applies to the issue of whether the leases here are true leases or disguised security

interests – represents to the Court that the "economic realities" courts in Missouri consider in determining whether a transaction is a security interest include provisions as to: (a) insurance; (b) risk of loss; (c) payment of taxes, repairs, and maintenance; (d) acceleration and resale provisions; (e) disclaiming of warranties; and (f) an inability to retake the goods.  *See* Reply at 5. In arguing as to the applicability of these factors, Lycos cites two cases, *In re Open Door Press, Inc.*, 142 B.R. 883, 887 (Bankr. E.D. Mo. 1992) and *Commercial Credit Equip. v. Parsons*, 820 S.W. 2d 315, 320 (Mo. Ct. App. W.D. 1991) (Lycos gives the wrong citation for the *Parsons* case).

These cases, however, interpreted **an earlier version of Mo. Rev. St. §400.1-201(37)** which is **no longer the law** and which was not in effect at the time Lycos entered into Equipment Schedules 93 and 94.  Under the present version of §400.1-201(37), it is expressly noted that "A transaction **does not create a security interest** merely because it provides that … (b) the lessee assumes **risk of loss** of the goods, or agrees to **pay taxes**, **insurance**, filing, recording, or registration fees, or **service or maintenance costs** with respect to the goods …."  *Id.* (emphasis added).  Thus, these "economic realities" do not lend the support that Lycos claims.  Rather, the existence of these "economic realities" expressly **do not** turn valid leases into security interests. Thus, Lycos' argument in this respect is without merit as well.

**III.  EQUIPMENT SCHEDULES 93 AND 94 ARE TRUE LEASES UNDER MISSOURI LAW**

Lastly, it is important to point out that Lycos fails to mention in its Reply that the Missouri Supreme Court has held that when an agreement provides "no absolute obligation … to purchase, pay for, or assume title to the equipment at any time prior to exercise of the option to purchase" the agreement is to be deemed a true lease.  *See RCA Corp. v. State Tax Comm'n*, 513 S.W.2d 313, 316 (Mo. 1974).  *See also Carlson v. Tandy Computer Leasing*, 803 F.2d 391 (8th

Cir. 1986) (applying *RCA* and finding that the "paramount attribute of a lease, [is] retention of title in the lessor").² Because the instruments at issue here – as in *RCA* and *Tandy* – used "lease language" to indicate an intent to create a lessor/lessee relationship, and because the leases did not grant to Lycos any right to title over the property at issue, then **under Missouri law the instruments are true leases**. And as CSI already discussed in its Opposition, because true leases are not subject to Massachusetts' usury statute, no usury claim can be properly pled.

## CONCLUSION

For all of the foregoing reasons, Lycos' Second Amended Answer and Counterclaim is untimely and futile and should not be allowed.

Respectfully submitted,

COMPUTER SALES INTERNATIONAL, INC.
By its attorneys,

/s/ David Himelfarb
Robert J. Kaler, BBO No. 542040
rkaler@ghlaw.com
Edward W. Little, Jr., BBO No. 628985
elittle@ghlaw.com
David Himelfarb, BBO No. 649596
dhimelfarb@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  0211
Tel. (617) 345-7000

Dated:  May 10, 2006

## Certificate of Service

I, David Himelfarb, hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this by hand this 10nd day of May 2006.

/s/ David Himelfarb
David Himelfarb

---

² Both of these cases are discussed extensively in the *Open Door Press* case Lycos cites in its Reply, so it was clearly aware of them.