UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10017-RWZ

COMPUTER SALES INTERNATIONAL, INC.

v.

LYCOS, INC.

and

BANK OF AMERICA f/k/a FLEET BANK

MEMORANDUM OF DECISION

July 11, 2006

ZOBEL, D.J.

Plaintiff Computer Sales International ("CSI") moves for reconsideration of this court's December 6, 2005 order, which, inter alia, denied in part and allowed in part CSI's motion for summary judgment as to Lycos's counterclaim.  See Computer Sales Int'l, Inc. v. Lycos, Inc., No. 05-10017, 2005 WL 3307507, at *7 (D. Mass. 2005) ("Lycos").

The first ground upon which CSI claims error is a passage in the order referring to a March 2002 email from Paul Stenberg, CSI's representative.  The parties agree that this email was sent after the parties entered into the rolled-up leases, but before they entered into the July 2003 Sales Agreement, thus foreclosing the possibility that Lycos could have relied upon that email when deciding whether or not to enter into the roll-ups.  (Summ. J. Tr. 36-37; Lycos's Opp. 11).  Although the order did state that

Lycos alleged that the email had fraudulently or negligently induced Lycos to enter into the rolled-up leases, it also included in that sentence the Sales Agreement. See Lycos, 2005 WL 3307507, at *3. This statement is not grounds for reconsideration. First, it was made in the course of summarizing Lycos's position; it was not a substantive discussion of the merits by the court. Second, the court explicitly addressed precisely this issue in the order:

> Finally, as to Lycos's allegation that CSI misrepresented the original cost of the equipment, CSI argues that Lycos could not have relied on Stenberg's March 2002 email because it had entered into some of the rolled-up schedules prior to that date. This argument is without merit, since Lycos has alleged that CSI's misrepresentations induced it to enter into not only the equipment schedules, but also the Sales Agreement, which was executed in July 2003.

Lycos, 2005 WL 3307507, at *5 (emphasis added).

Second, CSI argues that Missouri law rather than Massachusetts law should apply to the Sales Agreement, although it apparently concedes that Massachusetts law applies to the Master Lease Agreement. Its argument relies on the language of the choice-of-law provision in the Sales Agreement, which includes matters of "validity" within its scope. Because Lycos's claims of fraudulent inducement concern the Agreement's "validity," CSI contends that the clause should apply. CSI correctly notes that other courts have found that claims of fraudulent inducement fall within the scope of contractual choice-of-law provisions that cover matters of validity. See, e.g., Woodling v. Garrett Corp., 813 F.2d 543, 551-52 (2d Cir. 1987) (choice-of-law clause covering matters of "validity, effect and enforceability" included within its scope claims of material misrepresentation); see also Composiflex, Inc. v. Advanced Cardiovascular

Sys., Inc., 795 F. Supp. 151, 157 (W.D. Pa. 1992) (clause covering "matters of validity, construction, effect or performance" included within its scope tort claims).

Because Massachusetts courts have not addressed this precise question,[1] it is not clear that they would accept the contractual choice of law.[2]  First, Massachusetts courts have repeatedly held that claims of fraudulent inducement do not fall within the scope of contractual choice-of-law provisions.  See, e.g., Kitner v. CTW Transport, Inc., 762 N.E.2d 867, 871-72 (Mass. App. 2002); Laboeuf v. Bigliazzi, No. 000048B, 2001 WL 881469, at *7 (Mass. Super. 2001).  These decisions generally hold that giving effect to a choice-of-law provision before determining the validity of the entire agreement would be illogical.  Cf. New Medico Assocs. v. Kleinhenz, No. 90 C 6782, 1991 WL 105600, at *2 (N.D. Ill. 1991).  Second, Massachusetts courts have tended to interpret contractual choice-of-law provisions more narrowly than other states' courts; thus, Massachusetts courts have found that claims of fraudulent inducement fall outside the scope of such provisions where other jurisdictions conclude the opposite.  Compare In re Allegheny Int'l, Inc., 954 F.2d 167, 178 (3d Cir. 1982) (choice-of-law clause providing that agreement would be "governed by and construed in accordance with" Pennsylvania law applied to claim of fraudulent inducement), with First Sec. Bank, N.A.

---

[1] One Massachusetts Appellate Division decision concerned a forum-selection clause that included in its scope matters of "validity," but the court's analysis asked whether California courts would honor such a clause.  See New England Technical Sales Corp. v. SEEQ Technology, Inc., No. 9377, 1996 WL 671454, at *3 (Mass. App. Div. 1996).  In any event, the court concluded that "in actions for precontract misrepresentations and for fraud in the inducement," the clause would not apply.  Id.

[2] Choice-of-law questions are decided under the choice-of-law rules of the forum state.  See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004).

v. Northwest Airlines, Inc., No. 95-12103, 2001 WL 92175, at *3 & n.8 (under Massachusetts law, choice-of-law clause providing that agreement would be "governed" by Minnesota law did not apply to tort claim).

 Finally, and most significantly, CSI's choice-of-law argument appears to arise solely from a desire to bar Lycos's chapter 93A claim. Yet it is far from clear that Massachusetts courts would interpret any choice-of-law clause in a manner that would bar 93A claims. The provision at issue purports to govern "the Agreement," as opposed to the rights and obligations of the parties. (Lycos's Amended Answer and Counterclaim, Ex. I, ¶ 9.C). The Supreme Judicial Court has held that such clauses "do[] not purport to bar the application of G.L. c. 93A to the parties' dealings in Massachusetts." Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 580 n.9 (1995). Indeed, under Jacobson, if an agreement "purported to contract away any claims under G.L. c. 93A," Massachusetts courts might "decline to enforce the provision on public policy grounds." Id.; see also BNY Fin. Corp. v. Fitwel Dress Co., No. Civ. A 95-4785A, 1997 WL 42518, at *4 (Mass. Super. 1997). In light of existing caselaw and the consequent uncertainty, reconsideration is not mandated or appropriate.

 CSI argues lastly that even if the choice-of-law clause contained in the Sales Agreement does not govern, the court should still apply Missouri law under Massachusetts's functional choice-of-law rules. See Reicher, 360 F.3d at 5 (choice-of-law rules of forum state apply). Whether or not CSI is headquartered or incorporated in Massachusetts, the choice-of-law analysis remains the same. It is undisputed that CSI's account representative for Lycos, Mr. Stenberg, worked in Massachusetts and

4

regularly met and communicated with Lycos employees in Massachusetts. The communications and representations that form the basis of Lycos's counterclaim were made in Massachusetts. Most of the equipment leased by Lycos from CSI was delivered to and used by Lycos in Massachusetts. And indeed, it was CSI who filed this lawsuit in Massachusetts, rather than Missouri. All of these factors support the court's conclusion that a functional choice-of-law analysis requires the application of Massachusetts law to claims not covered by the choice-of-law clause contained in the Sales Agreement.

    Accordingly, CSI's motion for reconsideration (Docket #47) is denied.

    07/11/06                          /s/ Rya W. Zobel
     DATE                           RYA W. ZOBEL
                                       UNITED STATES DISTRICT JUDGE