UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL INC., <br><br>  Plaintiff, <br> v. <br><br> LYCOS, INC., <br><br> Defendant, <br> and <br><br> BANK OF AMERICA f/k/a FLEET BANK, <br><br> Trustee Process Defendant. | C.A. No. 05-10017- RWZ |

**STATUS REPORT
OF PLAINTIFF COMPUTER SALES INTERNATIONAL, INC.
IN PREPARATION FOR JULY 27, 2006 STATUS CONFERENCE**

Plaintiff CSI Leasing, Inc. f/k/a Computer Sales International, Inc. ("CSI") respectfully submits this brief status report in preparation for today's Status Conference in this case.

**I.    NATURE OF THE CASE**

This is an action to recover a $310,000 account receivable which is owed to the plaintiff CSI under the last two of a long series of computer equipment leases (the "Equipment Leases") that CSI entered into with the defendant Lycos, Inc. over a period of almost eight (8) years, and which the parties extended and consolidated (or "rolled up") several times during that eight year period. *See* Verified Complaint.

Lycos has filed a counterclaim seeking to avoid liability, and to pursue damages against CSI, based on the theory that it overpaid under the Equipment Leases (although it admittedly agreed to the Leases, and paid only what was required under them), because its total lease

payments wound up totaling far more than the original cost of the equipment being leased, largely because of the repeated extensions. In this regard, Lycos argues that it was "defrauded" because (i) CSI never disclosed to it that it was paying too much, and (ii) it never realized it was paying too much because it was unable to keep track of the aggregate original cost of the equipment it was leasing.

Lycos also argues that in July of 2003, it was fraudulently induced to purchase the equipment that it then possessed under its lease agreements with CSI – again because, supposedly, it could not determine the original cost of that equipment, was misled by an earlier email from CSI overstating that cost, and could not compare the aggregate original cost of the equipment to what it had paid in total under the leases, and was then agreeing to pay to buy the equipment. See Amended Counterclaim at pp. 20, 45 (Lycos alleges that it agreed to purchase the equipment in 2003 only because "CSI did not tell Lycos that Lycos had already paid substantially more than the total cost of the equipment.").

## II.     THE MARCH 15, 2005 STATUS CONFERENCE

On March 15, 2005, this Court held a Rule 16 conference in this case. During that conference, CSI pointed out that a key fact relevant to the Lycos counterclaim was that Lycos knew the original cost of the Equipment because *it had ordered it*. Lycos counsel responded with a variety of arguments to the effect that although Lycos had known the original equipment cost of each piece of equipment at the time it was first purchased and leased, Lycos had never kept track of the aggregate original equipment cost – supposedly because it had no reason to do so, and because it was too confusing to do so because there had been so many lease extensions that only CSI knew the "aggregate" original equipment cost.

Lycos reiterated these arguments in response to CSI subsequent Motions to Dismiss or for Summary Judgment as to the Lycos counterclaims, which were denied in December of 2005. Discovery then proceeded earlier this year.

### III.   DISCOVERY TO DATE

Through the discovery it has conducted to date, CSI has obtained basic accounting records from Lycos, its outside auditors DeLoitte & Touche, and the leasing consultant, "Leaseforum," that represented Lycos in the negotiations for the purchase of the leased equipment in July of 2003. CSI has also conducted a Rule 30(b)(6) deposition of Lycos on the subject of, *inter alia*, what information and records Lycos has actually had and maintained, over the past decade, concerning the aggregate original cost of the equipment it leased from CSI – in other words, what Lycos has known, and when it has known it, about that issue.

These internal accounting records, and the records of Lycos' outside auditors, have revealed that ***Lycos did keep track*** of the aggregate original equipment cost of ***all*** the equipment it leased from CSI. In fact, when Lycos and CSI agreed to extend (or "roll up") several of the Equipment Leases, and when Lycos subsequently agreed to purchase the equipment covered by those leases, Lycos had ***detailed computerized records*** of the aggregate original cost of that equipment, often broken down by category, schedule, and equipment location. Those records of aggregate original equipment cost are consistent with what CSI's records show. Thus, it is now clear that the claims of ignorance underlying Lycos' counterclaim are not well founded.

Furthermore, discovery has also revealed that the principal motivation for Lycos to purchase the leased CSI equipment in July of 2003 was so that it could convert the leases in question from operating leases to capital leases, thereby improving the reported earnings before interest, taxes, depreciation and amortization ("EBITDA") of its parent Terra Lycos. Full

spreadsheet presentations on this issue reveal that Lycos knew full well that it would have to pay more than the equipment was worth to buy it and accomplish the conversation, but had no alternative because it was not in a position to return the equipment, and in any event had gained substantial benefits from leasing it as a result of treating those leases, from an accounting standpoint, as "operating leases" – which had kept the debt associated with them off of its balance sheet for years. Discovery has also revealed that Lycos in fact paid less than the industry standard figure of 10% of original equipment cost to accomplish the buyout of the CSI Equipment Leases in the Summer of 2003, and that the price was in no way unreasonable under the circumstances.

## IV. DISCOVERY DISPUTES

Against the backdrop of these revelations, Lycos has begun pursuing a series of unreasonable, repeated, and multiplying discovery demands against CSI designed to try to gather information to support alternative "usury" and "unfair sales practices" theories – anything to preserve its counterclaim. At the same time, Lycos and its lease consultant Leaseforum have refused to produce the more accurate (and time-dated) electronic versions of the accounting records that prove they knew the original equipment cost of all the equipment that Lycos leased from CSI all along.

The result is a standstill in discovery, where (1) CSI cannot obtain the electronic versions of relevant records that it needs to conclude discovery, and therefore has moved to compel their production from both Lycos and Leaseforum; and (2) despite CSI's best efforts to be cooperative, Lycos has again and again and again pursued unreasonable demands for utterly irrelevant material to be produced, and in some cases created anew, by CSI, and has moved to compel on those issues – without offering reciprocal production of its own records.

One solution to this impasse may be for the parties to be ordered to meet and confer, stipulate on reciprocal exchanges within 20 days, and thereafter submit a joint memorandum outlining any unresolved matters to the Court for resolution at that time. Alternatively, a single hearing could be scheduled on all the parties various outstanding discovery motions.

In either event, some level of direction from the Court would be helpful to ensure reciprocity and basic fairness in the parties' discovery burdens, some reasonable limitations on what is becoming endless, and largely irrelevant, discovery demands, and some mechanism for resolving the multiple discovery motions that are pending. There is also a motion to amend filed by Lycos in which it is seeking to add a usury claim that CSI respectfully submits does not lie in this case. That motion has been fully briefed, and a hearing on it may be helpful to the Court.

>Respectfully submitted,
>
>COMPUTER SALES INTERNATIONAL, INC.
>By its attorneys,
>
>/s/ Robert J. Kaler
>Robert J. Kaler, Esq., BBO No. 542040
>Edward W. Little, Esq.
>McCarter & English LLP
>225 Franklin Street
>Boston, MA  0211
>Tel. (617) 345-7000

Dated: July 27, 2006

B0473516v1