UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL INC., )<br>              Plaintiff, )<br>v. )<br>               )<br>LYCOS, INC., )<br>              Defendant, )<br>               )<br>BANK OF AMERICA f/k/a FLEET BANK, )<br>              Trustee Process Defendant. ) | ***Oral Argument Requested*** <br><br> C.A. No. 05-10017- RWZ |

**COMPUTER SALES INTERNATIONAL, INC.'S
MOTION TO AMEND COMPLAINT
<u>BASED ON NEW EVIDENCE UNCOVERED IN DISCOVERY</u>**

Plaintiff Computer Sales International, Inc. a/k/a CSI Leasing, Inc. ("CSI") respectfully moves this Court, pursuant to Fed. R. Civ. P. 15(a), for leave to amend its complaint herein against defendant Lycos, Inc. ("Lycos") based on new evidence uncovered in discovery that could not have been previously obtained by CSI.

The proposed amendment, consisting of five (5) pages to be added to the end of the complaint, is attached hereto as Exhibit 1, and arises out of new evidence that is going to be presented at trial anyway as part of CSI's defense to Lycos' multimillion dollar counterclaims, because it concerns the very transactions that are the subject of those counterclaims, and of the claims set forth in CSI's original complaint.

In support of this motion, CSI respectfully submits herewith Computer Sales International, Inc.'s Memorandum of Law in Support of Its Motion to Amend Complaint Based on New Evidence Uncovered in Discovery, and the Affidavit of Counsel Attaching Relevant Discovery Materials in Support of CSI, Inc.'s Motion to Amend Complaint.

These filings demonstrate, and the docket herein confirms, that after this action was commenced on January 5, 2005, there was an approximately one-year hiatus during which no discovery was conducted because various motions to dismiss by CSI were being presented to and decided by the Court. Those motions were decided ten (10) months ago in an Order dated December 6, 2005. An initial status conference with the Court concerning discovery was then held on January 10, 2006, and discovery was tentatively set to conclude a year later on January 31, 2007.

As the record submitted herewith makes clear, CSI has diligently pursued discovery since that time, in the face of considerable obstacles, and has finally uncovered critical evidence that supports several additional claims that it has against Lycos arising out of the same transactions pled in the Complaint. This motion requests leave, under Fed. R. Civ. P. 15, to add a five-page amendment to CSI's complaint asserting those claims – claims that could not have been asserted in good faith when the complaint was first filed, and that arise out of new evidence uncovered in very recent discovery proceedings.

Specifically, it is only in the last week, through deposition testimony, that CSI has obtained the evidence necessary to withstand an argument by Lycos that the proposed amendments would be a nullity, and as set forth in complete detail in the memorandum and affidavit filed herewith, CSI has diligently pursued that evidence for months in the face of repeated objections by Lycos and its consultants (which in each case had to be resolved either by negotiation with those parties, which was always attempted, or motion practice before the Court, which in some cases had to occur).

In short, CSI is not in any way guilty of undue delay, bad faith, or dilatory conduct. To the contrary, it has painstakingly gathered the evidence necessary to prove, compellingly, that the

amended claims (against Lycos only) that it is requesting leave to add are valid, which it was duty-bound to do before seeking to assert them. That evidence **(a)** is already going to be offered at trial as part of CSI's defense to Lycos' $20 million counterclaim (Lycos has finally, only last week, answered CSI's contention interrogatories, and has stated that it is now claiming $18-20 Million in damages); **(b)** arises out of the exact same transactions that are the subject of the original complaint and the counterclaim, and **(c)** gives rise to simple, direct claims that are most sensibly litigated in this action, rather than in another separate action.

Allowance of these amendments will cause no undue prejudice[1] to Lycos, because **(a)** no definite discovery deadline has yet been set -- only a tentative date of January 31, 2007, more than three months away, that CSI will not oppose extending as necessary; **(b)** Lycos has only taken four (4) depositions -- all of CSI personnel who can be re-produced for further questioning in Boston on request; **(c)** the proposed amendments consist of only five pages of pleading supported by evidence which is already going to be offered at trial anyway as part of CSI's defense to Lycos' $20 million counterclaim (*ie*. the claims do not require the presentation of

---

[1] As the federal courts have repeatedly held, the test for allowing an amendment which states a valid legal claim is not whether the opposing party would be prejudiced -- because it is always prejudiced to some degree in that the amendment is being sought by its opponent -- but whether there is ***undue prejudice*** to the opposing party that outweighs the law's interest in having a case decided in its entirety on the merits in one proceeding, and the moving party's legitimate interest in presenting its case in full in that proceeding. *See Alberto-Culver Co. v. Gillette Co.*, 408 F. Supp. 1160, 1162 (N.D. Ill. 1976) ("Almost every amendment of a complaint results in some prejudice to the defendant. … The test in each case then, must be whether ***undue*** prejudice would result. … **Only where the prejudice outweighs the moving party's right to have the case decided on the merits should amendment be prohibited**."); *American Broadcasting Co., Inc. v. Maljack Productions, Inc.*, 1998 WL 325209, *3 (N.D. Ill. June 9, 1998) ("As nearly every motion to amend will result in some prejudice to the non-moving party, the test is whether there is ***undue*** prejudice to the non-moving party.") (citation in original) (citing *United States v. Hougham*, 364 U.S. 310, 316 (1960)); *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D. Ill. 1979) ("Generally, almost every amendment to a complaint results in some prejudice to the defendant, either in the form of additional counts or new discovery resulting in delay. The test in each case is whether ***undue*** prejudice will result.") (emphasis added).

additional evidence); **(d)** no trial date has yet been set, and any need for any additional pretrial proceedings relating to the amendments can therefore be addressed before a trial date is set; **(e)** *Lycos itself has just produced to CSI, within the last ten days, 42,000 responsive electronic files concerning the issues in this case which have been sought for months*, are critically relevant to the issues, and in some cases were apparently printed out by Lycos back in July of this year, but not produced until now; and **(f)** Lycos has only just this week answered CSI's contention interrogatories, after being granted several extensions of time, and in those answers *it has identified thirty (30) witnesses as having knowledge of its claims*, most of whom will almost certainly need to be deposed, and has increased its damages claims to almost $20 Million (before the trebling of damages that it is seeking under M.G.L. c. 93A – *ie.* to $60 Million).

In other words, this is a major, complex case in which considerable discovery by both sides remains to be accomplished, and the proposed amendments, which are relatively simple in their theory, do not threaten to unduly complicate this case, because it is already complicated as a result of the magnitude and complexity of Lycos' own claims, which are still being discovered.

Under these circumstances, it cannot fairly be said that there would be "undue prejudice" to any party in the allowance of the straightforward amendments now being requested by CSI, and both the letter and spirit of Fed. R. Civ. P. 15(a) warrant their allowance – particularly as they arise out of new evidence to which CSI had no access before, and are the first and only amendments to its pleading that CSI has sought in this case.

The amended claims, by their terms, assert fraud, breach of implied convenant of good faith and fair dealing, abuse of process, and violation of M.G.L. c. 93A claims against Lycos – arising specifically out of the new evidence just obtained relating to Lycos' actions and

intentions at the time it executed the parties' August 2003 Sales Agreement (already attached to CSI's original complaint), and thereafter.

### Request for Oral Argument

CSI respectfully requests oral argument on this motion if the Court considers that it would be helpful, and estimates that 30 minutes would be sufficient to cover the issues involved.

### Prayer for Relief

WHERFORE, for all of the foregoing reasons, and based on the facts set forth in the affidavit and supporting memorandum field herewith, plaintiff Computer Sales International, Inc. a/k/a CSI Leasing, Inc. prays that this motion be allowed.

> Respectfully submitted,
> COMPUTER SALES INTERNATIONAL, INC.
> By its attorneys,
>
> /s/ Robert J. Kaler
> Robert J. Kaler, BBO No. 542040
> rkaler@ghlaw.com
> Edward W. Little, Jr., BBO No. 628985
> elittle@ghlaw.com
> McCarter English LLP
> 225 Franklin Street
> Boston, MA  0211o
> Tel. (617) 345-7000

Dated:  October 30, 2006

### Local Rule 7.1 Certification

I, Robert J. Kaler, hereby certify that I have conferred with opposing counsel on the subject of this motion, but have been unable to resolve or narrow the issues presented herein.

> /s/ Robert J. Kaler
> Robert J. Kaler

## Certificate of Service

    I, Robert J. Kaler, hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically and by hand this 30th day of October 2006.

                                                              /s/ Robert J. Kaler
                                                              Robert J. Kaler

## *Requested Amendment to CSI Complaint*
## COUNT III
### (Fraud)

42.     Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations of its original complaint in this case, which are the numbered paragraphs 1 through 41 set forth above exactly as they are set forth in CSI's original complaint.

43.     Lycos' representations in the Sales Agreement, as alleged in ¶38 of CSI's original complaint set forth above, that the Master Lease and Equipment Schedules would remain in full force and effect until their specified expiration dates, that Lycos would make all the remaining payments to CSI that Lycos was required to make thereunder, and that title to the equipment would remain with CSI until all such payments by Lycos were made, were false and fraudulent at the time they were made.

44.     Specifically, Lycos misrepresented to CSI in writing, in paragraph 4 on page 2 of the Sales Agreement attached to CSI's original complaint as Exhibit 10, and attached hereto as Exhibit 10, that

> [t]he Leases, solely with respect to monthly rental (set forth on Exhibit 1) shall continue in force and effect and Lessee [Lycos] shall pay to Lessor [CSI] the number of monthly rental payments remaining (plus applicable taxes, if any) beginning with the payment due for the month of August 2003, and continuing to and including the Final Rent Payment Date set forth on Exhibit 1 ("Remaining Rental Payments").

Those specific representations were false and fraudulent at the time they were made by Lycos on August 8, 2003 (the date Lycos signed the Sales Agreement), because at that time, Lycos did not intend for the referenced Leases to remain in full force and effect, or to pay in full the monthly rental payments due under them.  To the contrary, at the time it made the aforesaid representations on August 8, 2003, Lycos did *not* intend to pay the aforesaid amounts, and intended instead to try to coerce CSI to reduce or eliminate those payments, and if possible to

refund others it had already made, after the Sales Agreement was signed. In fact, by August 8, 2003, Lycos had already begun working, and having its consultants work, on a so-called "Phase II" plan for "setting up a negotiation to reduce Lycos' remaining future payment obligations to CSI" under the Sales Agreement, as evidenced by the email communication dated August 8, 2003 from John Kirk to Lycos' official Julie Callagee, which Mr. Kirk has just identified, in his October 24, 2006 deposition, as an email that he indeed wrote and sent on August 8, 2003.

45. In addition, at the time Lycos executed the Sales Agreement on August 8, 2003 and thereafter, Lycos did not disclose to CSI, although it had a duty to do so under law and generally accepted commercial and industry standards (in order, *inter alia*, to make its aforesaid representations in the Sales Agreement not misleading), its concealed intention for the Leases not to remain in full force and effect, for it not to pay the aforesaid amounts due under them in full, and for it to thereafter attempt to coerce CSI to negotiate with it so as "to reduce Lycos' remaining future payment obligations to CSI" under the Sales Agreement, and to refund other payments it had already made. This constituted unlawful fraudulent concealment by Lycos.

46. CSI reasonably relied to its detriment on Lycos' aforesaid fraudulent misrepresentations and concealment by, *inter alia*, (a) entering into the Sales Agreement on August 11, 2003, which it would not have entered into but for Lycos' aforesaid fraudulent misrepresentations and concealment, (b) agreeing, in the Sales Agreement, to an almost one million dollar reduction in its originally quoted purchase price for the equipment, and (c) agreeing, in the Sales Agreement, to sell Lycos large quantities of equipment that CSI had no obligation to sell to Lycos -- instead of requiring Lycos to return the equipment to CSI at the conclusion of the terms of the Leases as required by the Leases. As a result of its reasonable

reliance on Lycos aforesaid fraudulent misrepresentations and concealments, CSI has suffered substantial damages.

### COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

47.     Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations set forth in its original complaint in this case, and all those set forth herein and above.

48.     After CSI had signed the Sales Agreement in early August 2003 in reliance on the aforesaid misrepresentations in it by Lycos, Lycos willfully and repeatedly failed to make the aforesaid Lease payments that it had agreed to make in the Sales Agreement, attempted to coerce CSI to reduce Lycos' payment obligations under the aforesaid Leases and to refund other payments that Lycos had already made to CSI under the Leases, and made groundless claims against CSI.

49.     By virtue of all of its aforesaid acts and omissions, Lycos breached the implied covenant of good faith and fair dealing imposed on it by operation of law when it entered into the Sales Agreement, and CSI has suffered and is suffering substantial damages as a result.

### COUNT V
### (Abuse of Process)

50.     Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations set forth in its original complaint in this case, and all those set forth herein and above.

51.     As part of its aforesaid plan not to make the Lease payments that it represented in the Sales Agreement it would make, and for it to thereafter attempt to coerce CSI to negotiate with it so as "to reduce Lycos' remaining future payment obligations to CSI" under the Sales Agreement, and to refund other payments it had already made, Lycos used legal process for an ulterior and illegitimate purpose, after it signed the Sales Agreement, in an improper and

Case 1:05-cv-10017-RWZ    Document 104-2    Filed 10/30/2006    Page 4 of 5

-14-

unlawful attempt to coerce CSI to agree to reductions in the Lease payments that Lycos had specifically agreed to make when it signed the Sales Agreement with full knowledge of the relevant facts.

52. This use of legal process for an ulterior and illegitimate purpose included, but was not limited to, Lycos commencing a baseless action in the Massachusetts Superior Court for Middlesex County in December of 2003 entitled *Lycos, Inc. v. Computer Sales International, Inc.*, Civil Action No. 03-5057, and then using that lawsuit to attempt to coerce CSI to agree to negotiate a reduction in the amount of Lease payments that Lycos had to make under the Sales Agreement, and to refund payments it had already made under the Leases. Thereafter, Lycos made further groundless claims in this case for the same ulterior and illegitimate purpose.

53. Lycos' aforesaid actions constitute an illegal and perverted use of legal process for an improper purpose, and they have caused substantial damages to CSI.

## COUNT VI
### (M.G.L. c. 93A)

54. Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations set forth in its original complaint in this case, and those set forth herein and above.

55. Lycos aforesaid acts and omissions, individually and in their totality, occurred primarily and substantially in Massachusetts, and constitute unfair and deceptive trade practices, in violation of M.G.L. c. 93A, that have caused CSI to suffer substantial loss of money and property.

WHEREFORE, as to each of the above counts, plaintiff CSI prays for judgment in its favor against defendant Lycos in the amount of its actual damages as proven at trial, plus interest thereon and costs, including reasonable attorneys fees, punitive damages under the applicable Missouri law governing outrageous conduct motivated by improper motive or reckless

-15-

indifference, treble damages and attorneys fees under M.G.L. c. 93A, and such other and further relief as is just and proper.

                                                Respectfully submitted,

                                                COMPUTER SALES INTERNATIONAL, INC. a/k/a CSI LEASING, INC.,

                                                By its attorneys,

                                                [s] Robert J. Kaler
                                                Robert J. Kaler, BBO No. 542040
                                                Edward W. Little, BBO No. 628985
                                                David Himelfarb, BBO No. 649596
                                                McCARTER ENGLISH, LLP
                                                225 Franklin Street
                                                Boston, MA  02110
                                                Tel. (617) 345-7000

Dated:  October 27, 2006