UNITED STATES DISTRICT COURT
For the District of Massachusetts

|   |   |   |
|---|---|---|
| COMPUTER SALES INTERNATIONAL INC., <br> Plaintiff, <br> **v.** <br> LYCOS, INC., <br> Defendant, <br> BANK OF AMERICA f/k/a FLEET BANK, <br> Trustee Process Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-10017- RWZ |

**COMPUTER SALES INTERNATIONAL, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO AMEND COMPLAINT BASED
ON NEW EVIDENCE UNCOVERED IN DISCOVERY**

Plaintiff Computer Sales International, Inc. ("CSI") respectfully submits this memorandum of law, and the accompanying Affidavit of Counsel Attaching Relevant Discovery Materials in Support of CSI, Inc.'s Motion to Amend Complaint ("Affidavit of Counsel"), in support of its Motion to Amend Complaint Based on New Evidence Uncovered in Discovery, dated October 30, 2006, filed herewith (the "Motion to Amend").

**SUMMARY OF ARGUMENT**

The Motion to Amend requests leave under Fed. R. Civ. P. 15 to add a five-page amendment to CSI's complaint asserting several claims against Lycos, the existing defendant, that could not have been asserted in good faith when the complaint was first filed, and that arise out of new evidence, uncovered in very recent discovery proceedings, that **(a)** is already going to be offered at trial as part of CSI's defense to Lycos' $20 million counterclaim; **(b)** arises out of the exact same transactions that are the subject of the original complaint and the counterclaim,

and **(c)** gives rise to simple, direct claims that are most sensibly litigated in this action, rather than in another separate action.

The docket herein confirms that after this action was commenced on January 5, 2005, there was an approximately one-year hiatus during which no discovery was conducted because various motions to dismiss by CSI were being presented to and decided by the Court. Those motions were decided ten (10) months ago in an Order dated December 6, 2005. An initial status conference with the Court concerning discovery was then held on January 10, 2006, and discovery was tentatively set to conclude a year later on January 31, 2007.

As the records submitted herewith makes clear, *see* Affidavit of Counsel, CSI has diligently pursued discovery since that time, in the face of considerable obstacles, and has finally uncovered critical evidence that supports several additional claims that it has against Lycos arising out of the same transactions pled in the Complaint. This motion requests leave, under Fed. R. Civ. P. 15, to add a five-page amendment to CSI's complaint asserting those claims, which could not have been asserted in good faith when the complaint was first filed, and that arise out of new evidence uncovered in very recent discovery proceedings.

It is only in the last week, through deposition testimony, that CSI has obtained the evidence necessary to withstand an argument by Lycos that the proposed amendments would be a nullity, and as the record filed herewith shows, CSI has diligently pursued that evidence for months in the face of repeated objections by Lycos and its consultants -- which in each case had to be resolved either by negotiation with those parties, which was always attempted, or motion practice before the Court, which in some cases had to occur.

In short, CSI is not in any way guilty of undue delay, bad faith, or dilatory conduct. To the contrary, it has painstakingly gathered the evidence necessary to prove, compellingly, that the

amended claims it is requesting leave to add are valid, which it was duty-bound to do before seeking to assert them.  That evidence **(a)** is already going to be offered at trial as part of CSI's defense to Lycos' $20 million counterclaim (Lycos has finally, only last week, answered CSI's contention interrogatories, and has stated that it is now claiming $18-19 Million in damages) because it goes to Lycos' lack of good faith and lack of reasonable reliance on what it alleges were misrepresentations by CSI; **(b)** arises out of the exact same transactions that are the subject of the original complaint and the counterclaim, and **(c)** gives rise to simple, direct claims that are most sensibly litigated in this action, rather than in another separate action.

Allowance of these amendments will cause no undue prejudice[1] to Lycos, because **(a)** no definite discovery deadline has yet been set -- only a tentative date of January 31, 2007, more than three months away, that CSI will not oppose extending as necessary; **(b)** Lycos has only taken four (4) depositions -- all of CSI personnel who can be re-produced for further questioning in Boston on request; **(c)** the proposed amendments consist of only five pages of pleading supported by evidence that is already going to be offered at trial anyway as part of CSI's defense

---

[1] As the federal courts have repeatedly held, the test for allowing an amendment which states a valid legal claim is not whether the opposing party would be prejudiced -- because it is always prejudiced to some degree in that the amendment is being sought by its opponent -- but whether there is ***undue prejudice*** to the opposing party that outweighs the law's interest in having a case decided in its entirety on the merits in one proceeding, and the moving party's legitimate interest in presenting its case in full in that proceeding. *See Alberto-Culver Co. v. Gillette Co.*, 408 F. Supp. 1160, 1162 (N.D. Ill. 1976) ("Almost every amendment of a complaint results in some prejudice to the defendant. … The test in each case then, must be whether ***undue*** prejudice would result. … **Only where the prejudice outweighs the moving party's right to have the case decided on the merits should amendment be prohibited**."); *American Broadcasting Co., Inc. v. Maljack Productions, Inc.*, 1998 WL 325209, *3 (N.D. Ill. June 9, 1998) ("As nearly every motion to amend will result in some prejudice to the non-moving party, the test is whether there is ***undue*** prejudice to the non-moving party.") (citation in original) (citing *United States v. Hougham*, 364 U.S. 310, 316 (1960)); *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D. Ill. 1979) ("Generally, almost every amendment to a complaint results in some prejudice to the defendant, either in the form of additional counts or new discovery resulting in delay. The test in each case is whether ***undue*** prejudice will result.") (emphasis added).

to Lycos' $20 million counterclaim (*ie.* the claims do not require the presentation of additional evidence); **(d)** no trial date has yet been set, and the need for any additional pretrial proceedings relating to the amendments can therefore be addressed before a trial date is set; **(e)** ***Lycos itself has just produced to CSI, within the last ten days, 42,000 responsive electronic files concerning the issues in this case which have been sought for months***, are critically relevant to the issues, and in some cases were apparently printed out by Lycos back in July of this year, but not produced until now; and **(f)** Lycos has only just last week answered CSI's contention interrogatories, after being granted several extensions of time, and in those answers it has identified ***thirty (30) witnesses*** as having knowledge of its claims, most of whom who will almost certainly need to be deposed, and has increased its damages claims to almost $20 Million (before the trebling of damages that it is seeking under M.G.L. c. 93A – *ie.* to $60 Million).

In other words, this is a major, complex case in which considerable discovery by both sides remains to be accomplished, and the proposed amendments, which are relatively simple in their theory, do not threaten to unduly complicate this case, because it is already complicated as a result of the magnitude and complexity of Lycos' own claims, which are still being discovered. Under these circumstances, it cannot fairly be said that there would be "undue prejudice" to any party in the allowance of the straightforward amendments now being requested by CSI. *See* Footnote 1, *supra*.

In this regard, the standard for considering whether to grant leave to amend a Complaint is well-settled. Under Fed. R. Civ. P. 15(a), "leave shall be freely given" where the proposed amendment would not be futile (*ie.* where a legal claim is stated), where there has been no undue delay, bad faith, or dilatory conduct on the part of the plaintiff (such as repeated failure to cure deficiencies by amendments previously allowed), and where allowance of the amendments

would cause no undue prejudice to the defendants. *See One Beacon Ins. Co. v. Electrolux & Sears Roebuck & Co.*, 223 F.R.D. 21, 24 (D. Mass. 2004) ("Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive.").

This rule reflects an underlying policy that disputes should be decided on their merits, not arbitrarily, *see Foman v. Davis*, 371 U.S. 178, 181-81 (1962), and that leave to amend should be "freely given," particularly when a proposed amendment is based on newly discovered evidence. *See, e.g., Hoellering v. Nordyne, Inc.*, 202 F.R.D. 259, 261 (W.D. Mo. 2002) ("Because the additional defense that Nordyne wishes to include could not have reasonably been added prior to the deadline contained in the Scheduling Order, and because Nordyne acted promptly after discovering the evidence, the Court will grant Nordyne leave to amend its answer.").

In this case, as is discussed in complete detail in the Statement of Relevant Facts section below, and in the Affidavit of Counsel filed herewith, CSI has acted expeditiously and in good faith, and is seeking to amend based on new and surprising information obtained in discovery to which it had no access when the complaint was filed.

**DETAILED STATEMENT OF RELEVANT FACTS
SUPPORTING ALLOWANCE OF THE AMENDMENT**

1.      Although this action was commenced on January 5, 2005, there was an approximately one-year hiatus thereafter during which no discovery was conducted because various pre-discovery motions to dismiss by CSI were being presented to and decided by the Court. Those motions were decided ten (10) months ago in an Order dated December 6, 2005. Although CSI filed a motion for reconsideration of that Order on December 21, 2005 (which was subsequently denied), CSI did not delay in initiating discovery, but rather promptly served its

initial Rule 26 disclosures, and a comprehensive Rule 34 document request, on Lycos on December 29, 2005.  *See* Affidavit of Counsel at ¶ 1.

2. An initial status conference with the Court concerning discovery was then held on January 10, 2006, and given the fact that Lycos had by then filed a $14 Million Counterclaim discovery was tentatively set to conclude a year later on January 31, 2007.  The week after that conference, on January 18, 2006, CSI promptly served deposition subpoenas *duces tecum* on a leasing consultant company called Leaseforum, and its President Susan Franklin, seeking production of all documents and electronic records relevant to Lycos and CSI, because CSI knew Susan Franklin had represented Lycos in its negotiations with CSI concerning an August 2003 lease buy-out that was the subject of several of Lycos' claims against CSI.  *Id.* at ¶ 2

3. Lycos' responses to CSI's document requests were originally due on January 30, 2006, but were delayed as a result of a dispute over whether the parties' protective order should limit the use of discovery materials to litigating this case, as CSI claimed, or whether they should be useable for other purposes, as Lycos claimed.  Lycos filed a motion on that issue on February 15, 2006, CSI responded on February 28, 2006, and on March 3, 3006, the Court resolved that issue, clearing the way for the parties' document exchanges to begin.  *See* Affidavit of Counsel at ¶ 3, Exh. 3 (Court Order of March 3, 2006 stating, *inter alia*, "as to the use of discovery to be produced, I accept the limitations proposed by CSI").

4. Leaseforum and Susan Franklin's production of records in response to CSI's aforesaid January 18, 2006 subpoenas was due on February 6, 2006, and the subpoenas called for those witnesses' depositions to go forward on February 10, 2006.  On January 27, 2006, however, counsel for those witnesses served a Rule 45(d) objection letter on CSI, objecting to the subpoenas, and stating that "absent resolution of these objections, my clients will not further

respond to the Subpoenas unless required to do so by Court Order." *See* Affidavit of Counsel at ¶ 4 (Objection Letter of Leaseforum Counsel), at p. 2.

5.  In an effort to avoid involving the Court, CSI at that point negotiated with counsel for Leaseforum and Ms. Franklin for almost two months in an attempt to resolve the issues presented by the witnesses' objections, and to their later expressed concerns about "confidentiality" of the records sought by the subpoenas. Their confidentiality concerns were resolved by the Court on March 16, 2006 when it signed and formally issued the Order on Confidential Information that it had already approved on March 3, 2006, but that counsel for the witnesses required to be issued as a formal Order before they would produce any records. *See* Affidavit of Counsel at ¶ 5.

6.  The witnesses' other objections to the subpoenas remained unresolved, but on March 17, 2006, Leaseforum and Susan Franklin made a partial production of 1,822 pages of hard copy documents. A month later, on April 19, 2006, they produced an additional 81 pages of hard copy documents, and a 32-page Privilege Log listing over 2,000 documents that their counsel advised were being withheld based on claims of "attorney-client privilege" and "work product immunity" by Lycos – although many did not appear to be communications with attorneys at all. One of the documents listed as being withheld, purportedly on grounds of "attorney-client privilege" and "work product," was an August 8, 2003 email from John Kirk to Julie Callagee, bates numbered 11873 and described as "E-mail prepared because of the prospect of litigation regarding payments by Lycos to CSI." *See* Affidavit of Counsel at ¶ 6.

7.  As it turned out, an August 8, 2003 email had already been produced by Lycos to CSI on March 24, 2006, but only as a tiny part of a 23,000 page production of documents by Lycos. By the end of April, 2006, CSI had diligently reviewed that production, discovered the

document, and questioned the recipient of that email, Julie Callagee, about it in a Rule 30(b)(6) of Lycos in which Ms. Callagee was the corporate designee, on April 26, 2006. *Id.* at ¶ 7.

8. In order to determine the extent to which that email would actually support further affirmative tort claims against Lycos, however (such as fraud, breach of implied covenant, abuse of process, etc.), it was deemed necessary to ***(1) obtain electronic records from Leaseforum and Susan Franklin detailing the actual dates when certain hardcopy spreadsheets*** produced by those witnesses had been created, ***(2) obtain testimony from John Kirk*** confirming that he actually wrote the email on August 8, 2003, the date the Sales Agreement was signed; and ***(3) obtain testimony from Susan Franklin and John Kirk*** concerning precisely what their first phase of work for Lycos prior to the execution of the August 8, 2003 Sales Agreement had consisted of – which would reveal what they and Lycos knew, and when they knew it, about the financial implications of Lycos' prior extensions of its leases with CSI, prior to the August 8, 2003 email. *See* Affidavit of Counsel at ¶ 8.

9. Accordingly, on May 15, 2006, less than 3 weeks after the deposition of Julie Callagee in which she admitted she had received Mr. Kirk's email on August 8, 2003, CSI issued a deposition subpoena *duces tecum* to John Kirk of Leaseforum to produce records on May 30, 2006 and appear for a deposition on June 2, 2006. On May 23, 2006, however, Mr. Kirk's counsel (the same attorney who was representing Leaseforum and Ms. Franklin) served another Rule 45(d) objection letter on CSI objecting to the production of further records, and referring to Leaseforum's previous productions. *See* Affidavit of Counsel at ¶ 9.

10. CSI promptly responded to that objection letter on May 24, 2006, pointing out that it needed the electronic versions of the records that Leaseforum had previously produced, and asking that they be produced. In June, counsel for Ms. Franklin, Mr. Kirk, and Leaseforum

declined to do so.  Because the electronic versions of these spreadsheets were needed to pin down critical information relating to when certain Leaseforum financial spreadsheets had been prepared, CSI then filed, in July 2006, a motion to compel production of those and other materials from these witnesses.  *See* Docket Nos. 76, 80.  The witnesses opposed that motion, and it was heard by the Court, and granted with conditions, on August 22, 2006.  At that time, the witnesses were ordered to produce electronic versions of specifically identified spreadsheet records within ten (10) days.  *See* Affidavit of Counsel at ¶ 10.

11. Thereafter, on September 1, 2006, Leaseforum, Ms. Franklin, and Mr. Kirk finally produced the electronic versions of their spreadsheets, but did not produce the electronic version of an analysis done by Leaseforum that was regarded by CSI as one of the most revealing on the relevant issues.  This spreadsheet, bates numbered AR 000744 – AR 000750, had no date on the hard copy, but determining when it was created was considered critical to determining whether Lycos and its consultants knew the information on it prior to Lycos signing the Sales Agreement on August 8, 2003 – which in turn was considered important to determining whether CSI had tort claims against Lycos for fraud, breach of implied covenant of good faith, abuse of process, etc., arising out of Lycos subsequent conduct.  *See* Affidavit of Counsel at ¶ 11.

12. Accordingly, when its requests for information about when the AR 000744–AR 000750 spreadsheet was created were not answered, CSI promptly issued another subpoena to Leaseforum on September 8, 2006, seeking a deposition of Leaseforum on September 15, 2006 concerning the timing of the creation and use of that spreadsheet.  In its motion to quash that subpoena filed on September 13, 2006, Leaseforum filed an affidavit in which it finally admitted that the AR 000744–AR 000750 spreadsheet existed, and was printed out, ***in June of 2003*** – well before Lycos entered into the August 8, 2003 Sales Agreement.  *Id.* at ¶ 12.

13. CSI still did not know exactly when that spreadsheet was created, however, or whether it was in existence when its salesman, Paul Stenberg, was alleged to have misrepresented the original cost of the equipment covered by Lycos' leases with CSI. That information could only be obtained from Susan Franklin, and in August of 2006, CSI had already begun requesting firm dates for her deposition within six weeks. On September 1, 2006, however, their counsel advised that they would be available in October. Again, rather than involve the Court in a discovery dispute, CSI's counsel agreed on dates this week – October 23-25 – for those depositions. *See* Affidavit of Counsel at ¶ 13.

14. CSI finally had the chance to begin the depositions of Ms. Franklin and Mr. Kirk in last week. Although neither one is finished, and the transcripts are not yet available, their testimony has finally established the requisite facts to support specific fraud, breach of implied covenant of good faith and fair dealing, abuse of process, and c. 93A claims by CSI against Lycos. *See* Affidavit of Counsel at ¶ 14.

15. Among other things, Ms. Franklin admitted that the critical AR000744–AR000750 spreadsheet existed, was in her possession, and in fact was in front of her, when she spoke by telephone with Mr. Stenberg in June of 2003, and allegedly was told that the Original Equipment Cost of the equipment leased by Lycos was "in the forties" [millions of dollars] and later that it was "in the sixties." Ms. Franklin has further testified that she gave Lycos certain information about the financial impact of its roll-up of certain leases more than a month prior to Lycos signing the August 8, 2003 Sales Agreement in which it reaffirmed the validity of those Leases and agreed to pay them. *See* Affidavit of Counsel at ¶ 15.

16. This testimony, combined with Mr. Kirk's testimony earlier this week that he did indeed send the August 8, 2003 "Phase II" email to Lycos on August 8, 2003, has finally created

an unquestionable good faith basis, under Fed. R. Civ. P. 11, for the amendments that CSI is now seeking to add to its Complaint. The record also clearly shows that CSI has aggressively pursued discovery of the relevant facts on this issue over the last six months, and has in no way delayed in gathering all the relevant pieces of information necessary to support the amended claims. *See* Affidavit of Counsel at ¶ 16.

17.  In this regard, the depositions of Ms. Franklin and Mr. Kirk last week have also established that Lycos has paid Leaseforum over $500,000 for work, including $15,000 per month for a dozen months, to assist it in dealing with CSI, that Leaseforum has a 20% contingent interest in the outcome of this litigation, and that Ms. Franklin submitted her affidavit in support of Lycos claims in April of 2005 while she was being paid $15,000 per month by Lycos for that service. *See* Affidavit of Counsel at ¶ 17. These facts may explain some of the difficulty that CSI has had, over the last six months, in obtaining the discovery from these witnesses (who are allied with Lycos) that has been essential to forming a good faith basis for filing the instant amendments to the complaint in this large and very complex case.

18.  In this regard, only ***ten days ago***, Lycos produced 42,000 additional electronic records responsive to CSI's December 2005 document requests, and some of those records show that they were printed off by Lycos for production back in July of this year, but not released to CSI until now. Similarly, Lycos has just this past week served its 28 pages of responses to CSI's outstanding contention interrogatories, which sought the factual basis for Lycos' claims and defenses, and an identification of the evidence supporting them. Clearly, important discovery information is still being produced and exchanged, and at this time, there is no firm discovery deadline that has yet been set (although January 31, 2007 was referenced by the Court as a tentative date earlier this year). At the same time, Lycos has only taken four depositions of CSI

personnel – all of whom CSI will produce for further deposition if Lycos considers that it needs to question them about any aspect of the currently requested amendments to its Complaint. *Id.* at ¶ 18.

19.   Finally, the claims that CSI seeks to add to its Complaint are intimately related to, and directly arise out of, the exact same nucleus of operative facts and documents that are already pled both in the Complaint and in Lycos' Counterclaim – to wit, the Leases and Sales Agreement between Lycos and CSI, and the circumstances surrounding their execution. There are no new contract documents being relied upon, for example, and the evidence supporting the requested amended claims will be offered by CSI at trial anyway in defense against Lycos' claims. *See* Affidavit of Counsel at ¶ 19.

20.   Under these circumstances, CSI is respectfully requesting leave to amend the Complaint by adding the five pages of additional pleading attached to CSI's motion to amend, asserting fraud, breach of implied convenant of good faith and fair dealing, abuse of process, and violation of M.G.L. c. 93A claims against Lycos – arising specifically out of the new evidence just obtained – and is arguing that the record shows that the standard for such amendments to be "freely granted," as contemplated by Fed. R. Civ. P. 15, has been satisfied here.

## ARGUMENT

**I.   THE STANDARD FOR GRANTING LEAVE TO AMEND A COMPLAINT, AS LONG AS THE PROPOSED AMENDMENTS STATE VALID CLAIMS, IS LIBERAL, ESPECIALLY WHEN THEY ARE BASED ON NEW EVIDENCE**

The standard for granting leave to amend a Complaint is well-settled. Under Fed. R. Civ. P. 15(a), "leave shall be freely given," particularly in cases, such as this, where there is no undue prejudice to the defendant in allowing such leave, and especially where the amendment is based on newly discovered evidence that was not available when the action was first filed. *See Eastern*

-13-

*Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*, 357 F.3d 1, 8 (1st Cir. 2004) ("Once the adversary has answered, amendment is no longer allowed as of right … but in general permission is liberally granted where there is no prejudice.") (citing *FDIC v. Consol. Mortgage and Fin. Corp.*, 805 F.2d 14, 16 (1st Cir. 1986)).  This rule reflects an underlying policy that disputes should be decided fairly, and on their merits, and not on the technicalities of pleading rules.  *See Foman v. Davis*, 371 U.S. 178, 181-81 (1962).

As the court noted in *Gonzalez-Perez v. Hosp. Interamericano de Medicina Avanzada (HIMA)*, 355 F.3d 1 (1st Cir. 2004), "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Id.* at 5-6.  *See also One Beacon Ins. Co. v. Electrolux & Sears Roebuck & Co.*, 223 F.R.D. 21, 24 (D. Mass. 2004) ("Leave to amend under Rule 15 'is freely given when justice so requires' absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive.") (internal quotations and citation omitted).

Leave to amend is considered particularly appropriate where the proposed amendment is based on newly discovered evidence.  *See, e.g., Hoellering v. Nordyne, Inc.*, 202 F.R.D. 259, 261 (W.D. Mo. 2002) ("Because the additional defense that Nordyne wishes to include could not have reasonably been added prior to the deadline contained in the Scheduling Order, and because Nordyne acted promptly after discovering the evidence, the Court will grant Nordyne leave to amend its answer.").  *See also Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279-81 (4th Cir. 1987) (denial of a motion to amend was an abuse of discretion even though the suit had already been pending three and a half years when the motion was filed three months after the

plaintiff acquired knowledge of facts upon which the new count rested whereas those facts were well known to the defendant). Such is the case here.

## II. THE STANDARD FOR GRANTING LEAVE TO AMEND A COMPLAINT HAS BEEN SATISFIED IN THIS INSTANCE

In this case, as set forth above in the Statement of Relevant Facts section, CSI has acted in the utmost good faith, and there is no undue prejudice to Lycos in allowing the amendment CSI is proposing. Moreover, this is not a case where the motion to amend is being made at the eve of trial or in an effort to thwart summary judgment. *Cf. Resolution Trust Corp. v. Gold*, 30 F.3d 252 (1st Cir. 1994) (denying leave when a motion was "proffered at the eleventh hour to fend off summary judgment"). Indeed, Lycos has not even moved for summary judgment. *See, e.g., Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("The *Gold* standard, which requires that proposed amendments have substantial merit and be supported by substantial and convincing evidence … has only been applied where the motion to amend is made *after* a defendant has moved for summary judgment…. Here plaintiffs served the motion to amend *before* defendants moved for summary judgment.") (citations omitted) (emphasis in original).

Nor is CSI's failure to bring this motion earlier a reason for denying its request, as the motion to amend is based on newly discovered evidence. As noted in Wright, Miller, Kane, *Federal Practice and Procedure: Civil 2d* § 1488, "Rule 15(a) does not prescribe any time limit with which a party may apply to the court for leave to amend" and leave has been granted following the close of discovery, after a pretrial conference, and even during trial. *See id.* (and cases cited therein).

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237 (N.D. Cal. 1997) is an instructive example on this issue. There, an answer was filed in June 1996. One year later, in July 1997, the defendant sought leave to amend his answer to add new defenses.

The plaintiff opposed the motion, arguing that the facts constituting the new defense were well-known to the defendant long before the motion was brought.  The court disagreed, noting that the new theory was not simply a new legal theory applied to known facts, but rather a new legal theory ***based on new facts that were not confirmed until a recent deposition***.  *Id.* at 1247 ("Furthermore, because the legal theory implicates Federal Rule of Civil Procedure 9(b), requiring pleading of fraud with particularity, ***[the defendant] was entitled to confirm factual allegations before amending to include the [new defense]***.")(emphasis added).  *See also Phoenix Technologies, Inc. v. TRW, Inc.*, 834 F. Supp. 148 150-51 (E.D. Pa. 1993) (no undue delay to add fraud claim when motion was made less than two weeks after taking of deposition which disclosed the fraud); *Carson v. Polley*, 689 F.2d 562, 583-85 (5th Cir. 1982) (district court abused its discretion in denying leave to amend when there was no evidence the plaintiff could have framed the claim earlier).

Here, as in *Advanced Cardiovascular Systems*, the new claims being asserted are not just new legal theories applied to known facts but new legal theories being applied to *new* facts that were only recently discovered.  In light of the heightened pleading standards under Rule 9(b), it was important for CSI to take the depositions of LeaseForum *prior* to moving to amend in order to obtain a clear understanding of the evidentiary basis for the claims being asserted, and to establish and confirm certain critical facts related to and supporting those claims.

## **CONCLUSION**

For all of the foregoing reasons, and in view of the facts set forth in the Statement of Relevant Facts section of this memorandum and the accompanying Affidavit of Counsel with attached discovery materials, CSI respectfully submits that it Motion to Amend Complaint Based on New Evidence Uncovered in Discovery should be properly allowed.

-16-

Respectfully submitted,

COMPUTER SALES INTERNATIONAL, INC.
By its attorneys,

/s/ Robert J. Kaler
Robert J. Kaler, BBO No. 542040
rkaler@ghlaw.com
Edward W. Little, Jr., BBO No. 628985
elittle@ghlaw.com
David Himelfarb
dhimelfarb@mccarter.com
McCarter English LLP
225 Franklin Street
Boston, MA  0211
Tel. (617) 345-7000

Dated:  October 30, 2006

## Certificate of Service

I, Robert J. Kaler, hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically and by hand this 30th day of October 2006.

/s/ Robert J. Kaler
Robert J. Kaler

B0486023v1