UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LYCOS, INC., ) <br> ) <br> Defendant, ) <br> ) <br> BANK OF AMERICA f/k/a FLEET BANK, ) <br> ) <br> Trustee Process Defendant. ) <br> ) | C.A. No. 05-10017-RWZ |

**SUPPLEMENTAL STATUS REPORT
OF PLAINTIFF COMPUTER SALES INTERNATIONAL, INC.
<u>SETTING FORTH IMPORTANT FACTS</u>**

Lycos has submitted, as an Exhibit 1 to its November 17th status report, the self-serving letters of lawyers for three subpoenaed parties (each closely aligned with Lycos), all of whom bitterly resisted producing some of the most important evidence in this case – and finally did so only after CSI either stated it would move to compel, or actually did so. These letters do not support Lycos's demand for a discovery master; rather, they evidence the difficulties that CSI overcame in discovering that Lycos's multimillion dollar counterclaims in this case – which are causing enormous damage to innocent people – have been *completely fabricated*, and ought to be dismissed. CSI's brief but important response is as follows:

    **1.** Avnet, whose lawyer wrote the first letter in Exhibit 1 to Lycos's status report, was a leasing consultant paid by Lycos to advise Lycos on managing its leases with CSI during a period in which Lycos now claims it was supposedly being "defrauded" by

CSI. CSI subpoenaed Avnet because Lycos's records showed that in the Fall of 2000, Avnet gave Lycos a huge computer database – which Lycos now claims it has "lost" – containing detailed information on the CSI leases that Lycos has previously claimed, in this case, it did not have at that time (when it obviously did).

2. Avnet first ignored the subpoena, then delayed for weeks in responding to it, was granted repeated extensions, and then finally promised to produce responsive material to CSI prior to key depositions that CSI had scheduled of the former Lycos employees who had worked with Avnet. On the eve of those depositions, however, during a period when it was in direct communication with Lycos, Avnet abruptly informed CSI that it would not produce the material until a date *after* the depositions. CSI protested that the material had been promised in time for the depositions, but to no avail. This orchestrated delay, in blatant breach of a binding agreement between CSI and Avnet's counsel, **was not coincidental** As Exhibit 1 to the Lycos Status Report finally reveals, Avnet's counsel was communicating directly with Lycos in-house counsel at the time, and in the epitome of cheek, was describing CSI's protests about Avnet's deliberate reneging on the production agreement as "rude and unprofessional," when they were neither.

3. When the Avnet material finally was delivered late, it was found to contain valuable information that would have been very useful in the depositions of the Lycos witnesses, who repeatedly claimed "not to recall" what Avnet had provided to them, or what was in the Avnet database, concerning the CSI leases (despite being shown documents establishing that they worked closely with Avnet for months). The information itself showed, however, that Avnet had provided Lycos with extensive data concerning the CSI leases that Lycos has inaccurately claimed, in this case, it did not have at the time.

4. Lycos' auditors Deloitte Touche, whose attorney wrote the second letter in Exhibit 1 to the Lycos's status report, similarly delayed for months in responding to CSI's

subpoena (again during a period when Deloitte was in direct communication with Lycos's attorneys), and finally produced records of its work for Lycos only after CSI advised that it would have to move to compel production of those records if they were not released. When finally produced, those records showed that Lycos knew the original cost of the equipment it had leased from CSI all along – contrary to its claims in this case.

**5.** LeaseForum and its principals Susan Franklin and John Kirk, whose attorney wrote the third letter attached as Exhibit 1 to the Lycos status report, are Lycos's paid experts in this case, as well as listed fact witnesses. LeaseForum similarly delayed for months (while in constant communication with Lycos) before producing any material or witnesses in response to CSI's subpoenas -- finally producing needed electronic records only after a motion to compel was filed and decided by the Court. LeaseForum's records, when finally produced, showed that Lycos not only knew all along the original cost of the equipment it leased from CSI, but that Lycos was planning to coerce CSI into lowering Lycos lease payments, through threats of bogus litigation and bad publicity, even as Lycos was reaffirming its promises to pay those leases, in full, in a written Sales Agreement with CSI that it signed on August 8, 2003.

**6.** These difficulties that CSI has had in enforcing its subpoenas to entities closely allied with Lycos have followed a pattern in which CSI's repeated requests for compliance were consistently met with mirror-image claims by Lycos and the subpoenaed parties that CSI was somehow "threatening" them. Up to now, none of this has been brought to the Court's attention because those parties were ultimately forced to produce the relevant records, and in only one case was assistance from the Court required. For Lycos to now use the self-serving correspondence of the lawyers for those parties to try to support its claim for a discovery master, however, is ironic, because what they evidence is the problems that <u>CSI</u>, <u>not</u> <u>Lycos</u>, has encountered in gathering the key evidence in this case.

**7.** Again, Lycos should not be rewarded with a master when it can present no evidence that one is needed, and self-serving letters from third parties closely aligned with Lycos, who strenuously resisted CSI's discovery requests but eventually were forced, over their objections, to produce records highly incriminating as to Lycos, does not constitute such evidence. All it constitutes is evidence that Lycos, with millions at stake, is very, very desperate to conceal the fact that its counterclaims – which again are causing serious damage to innocent people – are utterly frivolous.

## Conclusion

Lycos's attempt to goad the Court into appointing a discovery master remains an effort to expand discovery beyond all relevant bounds in the hope that Lycos can uncover something that it can use to embarrass or gain some leverage against CSI – all because it has uncovered no evidence of any fraud perpetrated by CSI against it. This case, however, should remain under the supervision of this Court, and any issues as to the proper scope of such discovery should be decided by this Court – which has a far better grasp of the issues at this point than even the best master could achieve in the time remaining for discovery.

Respectfully submitted,

COMPUTER SALES INTERNATIONAL, INC.
By its attorneys,

/s/ Robert J. Kaler
Robert J. Kaler, BBO # 542040
Edward W. Little, Jr., BBO # 628985
McCARTER & ENGLISH, LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000

DATED: November 19, 2006

-5-

## CERTIFICATE OF SERVICE

I hereby certify that I have this 19th day of November 2006, served the above upon the following persons via the Court's CM/ECF notification at the email addresses indicated below:

Thomas O. Bean, Esq. (tbean@mwe.com)
Peter M. Acton, Esq. (pacton@mwe.com)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
(617) 535-4000

/s/ Robert J. Kaler
Robert J. Kaler