UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC., A/K/A CSI LEASING, INC. | ) ) ) | |

COMPUTER SALES INTERNATIONAL,
INC., A/K/A CSI LEASING, INC.
          Plaintiff,

    V.

LYCOS, INC.,
          Defendant,
and

BANK OF AMERICA
f/k/a FLEET BANK,

          Trustee-Defendant.

C. A. No. 05-10017-RWZ

LEAVE TO FILE GRANTED BY
ORDER OF DECEMBER 1, 2006,
DOCKET NO. 120

## AMENDED COMPLAINT

Plaintiff Computer Sales International, Inc. ("CSI") hereby commences the above-captioned action, and alleges as follows pursuant to Fed. R. Civ. P. 8:

### Nature of Action

1.    This is an action to collect an account receivable of over $300,000, and for breach of contract, brought by plaintiff CSI, a St. Louis-based computer leasing company, against Lycos, Inc. ("Lycos"), a Massachusetts based internet service company.

### Parties

2.    Plaintiff CSI is a corporation duly organized and existing under the laws of the state of Delaware with its principal place of business at 9990 Old Olive Street Road, Suite 101, St. Louis, Missouri 63141.

ME1 952743v.2

3.    Defendant Lycos, Inc. is a corporation duly organized and existing under the laws of the state of Virginia with a principal place of business at 100 Fifth Avenue, Waltham, Massachusetts.

4.    Trustee-defendant Bank of America f/k/a Fleet Bank ("Fleet Bank") is a national banking association authorized to conduct business in Massachusetts, having a usual place of business in Boston Massachusetts.

### Jurisdiction and Venue

5.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 in that the amount in controversy, exclusive of interest and costs, exceeds $75,000, and the dispute is between is citizens of different states.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because defendant Lycos resides in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### Facts

7.    CSI, based in St. Louis, Missouri, is engaged in the business of purchasing computer equipment and then leasing that equipment to its customers pursuant to written leases that contain clauses making the customers unconditionally responsible for all lease payments once they have accepted the equipment.  These types of clauses, known as "hell or high water" provisions, are specifically enforceable under the Uniform Commercial Code (as adopted in both Missouri and Massachusetts), and are critical to the equipment finance leasing industry, because they require the lessee to make payments under the lease "come hell or highwater," without regard to defenses that the lessee might wish to assert against the vendor of the equipment or the lessor.  The enforceability of these clauses is what enables equipment financing companies such as CSI to themselves obtain financing to engage in these kinds of transactions.

-3-

8.    In a typical CSI leasing transaction, the customer selects the computer equipment that it wants to purchase from a vendor, and negotiates the prices of the equipment directly with that vendor.  Then, a list of the items of equipment, and the prices that the vendor has quoted to the customer for that equipment, is provided to CSI.  If CSI determines that it is willing to purchase that equipment for lease it to the customer, the customer typically issues a purchase order for the equipment to the vendor, but assigns that purchase order to CSI, which pays for the equipment once the customer has accepted it in writing, and then leases it to the customer for a specified term at a specified rent.

9.    In this regard, CSI typically enters into "master leases" in which CSI and the customer agree in advance that CSI will purchase certain types of computer equipment, to be selected by the customer and listed on so-called "equipment schedules."  The master leases contain the basic terms and conditions that will cover all the transactions, and further state that each equipment schedule is deemed to be a separate and independent lease incorporating both its own specific provisions (including a listing of the specific items of equipment being leased pursuant to that equipment schedule with rental rates and term dates), and the provisions of the master lease.

10.    Defendant Lycos was founded in the 1990's as an internet start up company.  In its early years, Lycos selected, and CSI purchased and then leased to Lycos, millions of dollars worth of IT equipment for Lycos to use in its business.  The terms and conditions governing CSI's lease of that equipment to Lycos were set forth in a series of contracts that were entered into by CSI and Lycos from 1996 through 2003, and are described in relevant part below.

### The Master Lease

11.    In December of 1996, CSI and Lycos entered into a master lease (the "Master Lease") which provided that, from time to time, CSI and Lycos would execute so-called

-4-

"equipment schedules," each of which would be considered a separate and independent lease incorporating by reference all the terms contained in the Master Lease, and pursuant to which CSI would lease certain IT equipment to Lycos on specified terms and conditions. A true copy of the Master Lease between CSI and Lycos is attached hereto as Exhibit 1.

12.     Thereafter, CSI and Lycos entered into series of equipment schedules, pursuant to the Master Lease, providing for the lease by Lycos of large quantities of computer equipment.

**Equipment Schedule 100**

13.     One of these equipment schedules was entered into by CSI and Lycos in January of 2002, amended by CSI and Lycos in May of 2002, and identified as "Equipment Schedule No. 100 dated as of December 12, 2001" (as amended, "Equipment Schedule 100").

14.     A true copy of Equipment Schedule 100 is attached hereto as Exhibit 2. Among other things, Equipment Schedule 100 incorporated by reference all the terms contained in the Master Lease, identified the specific items of equipment to be leased, specified the lease terms and expiration dates, and set forth the monthly lease rental payment that Lycos would make to CSI for the equipment listed in that schedule, expressed as a fraction of the cost of the referenced equipment.

15.     Thereafter, pursuant to the Master Lease and Equipment Schedule 100, Lycos evidenced its acceptance of the equipment listed on Equipment Schedule 100 in a written certificate of acceptance executed by both Lycos and CSI in June of 2002 (the "Schedule 100 Certificate of Acceptance").

16.     A true copy of the Schedule 100 Certificate of Acceptance is attached hereto as Exhibit 3. Among other things, the Schedule 100 Certificate of Acceptance confirmed that Lycos monthly rental payment under the Equipment Schedule 100 lease would be $6,082.29, and that the term of the Equipment Schedule 100 lease would expire April 30, 2005.

17.    Beginning in or about July of 2002, CSI began invoicing Lycos, approximately six weeks in advance of the date each payment was due, for each $6,082.29 monthly payment obligation that Lycos had under Equipment Schedule 100, and until approximately thirty (30) days ago, Lycos had always made those payments (though in some cases late).

### Lycos' Equipment Schedule 100 Default

18.    In accordance with its aforesaid invoicing practice, CSI sent invoices to Lycos in September and October of this year for the payments of $6,082.29 each that would be due to CSI on November 1, 2004 and December 1, 2004, respectively, under Equipment Schedule 100. True copies of those invoices (the "Schedule 100 Invoices") are attached hereto as Exhibit 4.

19.    Without justification or legal excuse, Lycos failed and refused to pay the amounts set forth in the Schedule 100 Invoices, which were the correct amounts owed by Lycos to CSI under Equipment Schedule 100, on or before the dates they were due.  Since then, despite repeated written demands for payment sent by CSI to Lycos, Lycos has failed and refused to pay any portion of these amounts.

### Equipment Schedule 200

20.    Another one of the equipment schedules entered into by CSI and Lycos pursuant to the Master Lease was executed by CSI and Lycos in January of 2002, amended by them in May of 2002, and identified as "Equipment Schedule No. 200 dated as of December 12, 2001" (as amended, "Equipment Schedule 200").

21.    A true copy of Equipment Schedule 200 is attached hereto as Exhibit 5.  Among other things, Equipment Schedule 200 incorporated by reference all the terms contained in the Master Lease, identified the specific items of equipment to be leased, specified the lease terms and expiration dates, and set forth the monthly lease rental payment that Lycos would make to

CSI for the equipment listed in that schedule, expressed as a fraction of the cost of the referenced equipment.

22.    Thereafter, pursuant to the Master Lease and Equipment Schedule 200, Lycos evidenced its acceptance of the equipment listed on Equipment Schedule 200 in a written certificate of acceptance executed by both Lycos and CSI (the "Schedule 200 Certificate of Acceptance").

23.    A true copy of the Schedule 200 Certificate of Acceptance is attached hereto as Exhibit 6.  Among other things, the Schedule 200 Certificate of Acceptance confirmed that Lycos monthly rental payment under the Equipment Schedule 200 lease would be $43,954.35, and that the term of the Equipment Schedule 200 lease would expire April 30, 2005.

24.    Beginning in or about July of 2002, CSI began invoicing Lycos, approximately six weeks in advance of the date each payment was due, for each $43,954.35 monthly payment obligation that Lycos had under Equipment Schedule 200, and until approximately thirty (30) days ago, Lycos had always made those payments (though in some cases late).

### Lycos' Equipment Schedule 200 Default

25.    In accordance with its aforesaid invoicing practice, CSI sent invoices to Lycos in September and October of this year for the payments of $43,954.35 each that would be due to CSI on November 1, 2004 and December 1, 2004, respectively, under Equipment Schedule 200. True copies of those invoices (the "Schedule 200 Invoices") are attached hereto as Exhibit 7.

26.    Without justification or legal excuse, Lycos failed and refused to pay the amounts set forth in the Schedule 200 Invoices, which were the correct amounts owed by Lycos to CSI under Equipment Schedule 200, on or before the dates they were due.  Since then, despite repeated written demands for payment sent by CSI to Lycos, Lycos has failed and refused to pay any portion of these amounts.

### CSI's Notices of Default to Lycos

27.     When Lycos failed to make the payments that it owed CSI under Equipment Schedule 100 and Equipment Schedule 200 (collectively, "Equipment Schedules") and the Master Lease, CSI exercised its rights under the Master Lease to declare a default, and sent Lycos the required formal notice of default on December 8, 2004.  A true copy of the notice of default (the 12/8/04 Notice of Default") is attached hereto as Exhibit 8.

28.     In the 12/8/04 Notice of Default, CSI notified Lycos of Lycos' failure to make the contractually required lease payments, and advised Lycos that if it failed to cure that default within ten days after its receipt of the 12/8/04 Notice of Default (which was deemed, under the Master Lease, to have been received three days after it was sent), then CSI had the right to declare the entire remaining amounts under the Master Lease and Equipment Schedules immediately due and payable, to repossess the equipment covered by the relevant Equipment Schedules, and to recover interest on those amounts, and any attorneys fees it incurred.

29.     Thereafter, Lycos failed to cure or even respond to the 12/8/04 Notice of Default. Accordingly, on December 23, 2004, CSI declared a formal Event of Default pursuant to the Master Lease and Equipment Schedules, and sent Lycos the required formal notice of an event of default (the "12/23/04 Notice of Event of Default") on that date.  A true copy of the 12/23/04 Notice of Event of Default is attached hereto as Exhibit 9.

### CSI Declaring Immediately Due Lycos' Lease Payment Obligations

30.     In the 12/23/04 Notice of Event of Default, CSI properly declared all the remaining payments under the Master Lease and Equipment Schedules immediately due and payable pursuant to Section 15.1(b) of the Master Lease, and specified the total amount due and owing by Lycos as a result of the acceleration, which was $301,050.34.  In determining that

amount due, CSI calculated the appropriate interest on the past-due rental payments, and discounted the amount of the remaining rental payments as required by the Master Lease.

31.    Upon CSI's issuance of the 12/23/04 Notice of Event of Default, all of Lycos' past due payments, and all of Lycos' remaining monthly payment under Equipment Schedules 100 & 200, became immediately due and payable.  These consisted of **(a)** six payments of $6,082.29 each under Equipment Schedule 100, covering the months of November 2004, December 2004, January 2005, February 2005, March 2005 and April 2005 payment – a subtotal of $36,493.74; and **(b)** six payments of approximately $43,954.35 each under Equipment Schedule 200 (discounted to present value), covering the months of November 2004, December 2004, January 2005, February 2005, March 2005 and April 2005 payment – a subtotal of approximately $263,726.10.

### *Legal Claims*

### <u>COUNT I</u>
### (Breach of Master Lease and Equipment Schedules)

32.    Plaintiff CSI hereby incorporates by reference as though fully set forth herein, all of the other allegations contained in this complaint.

33.    By virtue of the foregoing, defendant Lycos owes CSI over Three Hundred Thousand Dollars (U.S.$300,000.00) under the Master Lease and Equipment Schedules.

34.    Defendant Lycos has breached the Master Lease and Equipment Schedules by failing to pay CSI the amounts it owes CSI under the Master Lease and Equipment Schedules.

35.    As a result of Lycos' aforesaid breaches of contract, CSI has been damaged in the amount of at least Three Hundred Thousand Dollars (U.S.$300,000.00), plus interest thereon, and the costs of litigating this action, including reasonable attorneys fees.

WHEREFORE, plaintiff CSI prays for judgment in its favor against defendant Lycos in the amount of at least Three Hundred Thousand Dollars (U.S.$300,000.00), plus interest thereon and costs, including reasonable attorneys fees, appropriate prejudgment relief to ensure payment of same, including an attachment on trustee process of the goods, effects or credits of Lycos held on account by trustee-defendant Fleet Bank, and such other and further relief as is just and proper.

## COUNT II
### (Breach of Sales Agreement)

36.    Plaintiff CSI hereby incorporates by reference as though fully set forth herein, all of the other allegations contained in this complaint.

37.    In August of 2003, CSI and Lycos entered into a purchase and sale agreement for the sale by CSI to Lycos of all the equipment covered by the Master Lease and Equipment Schedules.  A true copy of that agreement (the "Sales Agreement") is attached hereto as Exhibit 10.

38.    In the Sale Agreement, CSI and Lycos expressly agreed that the Master Lease and Equipment Schedules would remain in full force and effect until their specified expiration dates, and that Lycos would make all the remaining payments to CSI that it was required to make under, *inter alia*, Equipment Schedule 100 and Equipment Schedule 200, and that title to the equipment would remain with CSI until all such payments were made.

39.    CSI and Lycos further agreed, in the Sales Agreement, that if Lycos defaulted in its obligation to make all the remaining payments that it was required to make under, *inter alia*, Equipment Schedule 100 and Equipment Schedule 200, CSI would have the right to repossess all equipment that was the subject of the Sales Agreement, and recover from Lycos all its damages and expenses, including reasonable attorneys' fees..

MEI 952743v.2

40.     Defendant Lycos has breached the Sales Agreement by failing to pay CSI the amounts it owes CSI under the Master Lease and Equipment Schedules.  As a result of Lycos' aforesaid breaches, CSI has the contractual right to repossess all equipment that was the subject of the Sales Agreement, and recover all its damages and expenses, including reasonable attorneys' fees.

41.     Also as a result of Lycos' aforesaid breaches of the Sales Agreement, CSI has been damaged in the amount of at least Three Hundred Thousand Dollars (U.S.$300,000.00), plus interest thereon, and the costs of litigating this action, including reasonable attorneys fees.

WHEREFORE, plaintiff CSI prays for judgment in its favor against defendant Lycos in the amount of at least Three Hundred Thousand Dollars (U.S.$300,000.00), plus interest thereon and costs, including reasonable attorneys fees, appropriate prejudgment relief, under the available Massachusetts state court attachment procedures, to ensure payment of same, and appropriate injunctive relief permitting it to repossess all equipment that was the subject of the Sales Agreement, requiring Lycos to surrender possession of that equipment to CSI, and such other and further relief as is just and proper.

## COUNT III
### (Fraud)

42.    Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations of its original complaint in this case, which are the numbered paragraphs 1 through 41 set forth above exactly as they are set forth in CSI's original complaint.

43.    Lycos' representations in the Sales Agreement, as alleged in ¶38 of CSI's original complaint set forth above, that the Master Lease and Equipment Schedules would remain in full force and effect until their specified expiration dates, that Lycos would make all the remaining payments to CSI that Lycos was required to make thereunder, and that title to the equipment would remain with CSI until all such payments by Lycos were made, were false and fraudulent at the time they were made.

44.    Specifically, Lycos misrepresented to CSI in writing, in paragraph 4 on page 2 of the Sales Agreement attached to CSI's original complaint as Exhibit 10, and attached hereto as Exhibit 10, that

> [t]he Leases, solely with respect to monthly rental (set forth on Exhibit 1) shall continue in force and effect and Lessee [Lycos] shall pay to Lessor [CSI] the number of monthly rental payments remaining (plus applicable taxes, if any) beginning with the payment due for the month of August 2003, and continuing to and including the Final Rent Payment Date set forth on Exhibit 1 ("Remaining Rental Payments").

Those specific representations were false and fraudulent at the time they were made by Lycos on August 8, 2003 (the date Lycos signed the Sales Agreement), because at that time, Lycos did not intend for the referenced Leases to remain in full force and effect, or to pay in full the monthly rental payments due under them. To the contrary, at the time it made the aforesaid representations on August 8, 2003, Lycos did *not* intend to pay the aforesaid amounts, and intended instead to try to coerce CSI to reduce or eliminate those payments, and if possible to

refund others it had already made, after the Sales Agreement was signed. In fact, by August 8, 2003, Lycos had already begun working, and having its consultants work, on a so-called "Phase II" plan for "setting up a negotiation to reduce Lycos' remaining future payment obligations to CSI" under the Sales Agreement, as evidenced by the email communication dated August 8, 2003 from John Kirk to Lycos' official Julie Callagee, which Mr. Kirk has just identified, in his October 24, 2006 deposition, as an email that he indeed wrote and sent on August 8, 2003.

45.    In addition, at the time Lycos executed the Sales Agreement on August 8, 2003 and thereafter, Lycos did not disclose to CSI, although it had a duty to do so under law and generally accepted commercial and industry standards (in order, *inter alia*, to make its aforesaid representations in the Sales Agreement not misleading), its concealed intention for the Leases not to remain in full force and effect, for it not to pay the aforesaid amounts due under them in full, and for it to thereafter attempt to coerce CSI to negotiate with it so as "to reduce Lycos' remaining future payment obligations to CSI" under the Sales Agreement, and to refund other payments it had already made. This constituted unlawful fraudulent concealment by Lycos.

46.    CSI reasonably relied to its detriment on Lycos' aforesaid fraudulent misrepresentations and concealment by, *inter alia*, (a) entering into the Sales Agreement on August 11, 2003, which it would not have entered into but for Lycos' aforesaid fraudulent misrepresentations and concealment, (b) agreeing, in the Sales Agreement, to an almost one million dollar reduction in its originally quoted purchase price for the equipment, and (c) agreeing, in the Sales Agreement, to sell Lycos large quantities of equipment that CSI had no obligation to sell to Lycos -- instead of requiring Lycos to return the equipment to CSI at the conclusion of the terms of the Leases as required by the Leases. As a result of its reasonable

reliance on Lycos aforesaid fraudulent misrepresentations and concealments, CSI has suffered substantial damages.

### COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

47.    Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations set forth in its original complaint in this case, and all those set forth herein and above.

48.    After CSI had signed the Sales Agreement in early August 2003 in reliance on the aforesaid misrepresentations in it by Lycos, Lycos willfully and repeatedly failed to make the aforesaid Lease payments that it had agreed to make in the Sales Agreement, attempted to coerce CSI to reduce Lycos' payment obligations under the aforesaid Leases and to refund other payments that Lycos had already made to CSI under the Leases, and made groundless claims against CSI.

49.    By virtue of all of its aforesaid acts and omissions, Lycos breached the implied covenant of good faith and fair dealing imposed on it by operation of law when it entered into the Sales Agreement, and CSI has suffered and is suffering substantial damages as a result.

### COUNT V
### (Abuse of Process)

50.    Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations set forth in its original complaint in this case, and all those set forth herein and above.

51.    As part of its aforesaid plan not to make the Lease payments that it represented in the Sales Agreement it would make, and for it to thereafter attempt to coerce CSI to negotiate with it so as "to reduce Lycos' remaining future payment obligations to CSI" under the Sales Agreement, and to refund other payments it had already made, Lycos used legal process for an ulterior and illegitimate purpose, after it signed the Sales Agreement, in an improper and

unlawful attempt to coerce CSI to agree to reductions in the Lease payments that Lycos had specifically agreed to make when it signed the Sales Agreement with full knowledge of the relevant facts.

52.     This use of legal process for an ulterior and illegitimate purpose included, but was not limited to, Lycos commencing a baseless action in the Massachusetts Superior Court for Middlesex County in December of 2003 entitled *Lycos, Inc. v. Computer Sales International, Inc.*, Civil Action No. 03-5057, and then using that lawsuit to attempt to coerce CSI to agree to negotiate a reduction in the amount of Lease payments that Lycos had to make under the Sales Agreement, and to refund payments it had already made under the Leases.  Thereafter, Lycos made further groundless claims in this case for the same ulterior and illegitimate purpose.

53.     Lycos' aforesaid actions constitute an illegal and perverted use of legal process for an improper purpose, and they have caused substantial damages to CSI.

### COUNT VI
### (M.G.L. c. 93A)

54.     Plaintiff CSI hereby incorporates by reference, as though fully set forth herein, the allegations set forth in its original complaint in this case, and those set forth herein and above.

55.     Lycos aforesaid acts and omissions, individually and in their totality, occurred primarily and substantially in Massachusetts, and constitute unfair and deceptive trade practices, in violation of M.G.L. c. 93A, that have caused CSI to suffer substantial loss of money and property.

WHEREFORE, as to each of the above counts, plaintiff CSI prays for judgment in its favor against defendant Lycos in the amount of its actual damages as proven at trial, plus interest thereon and costs, including reasonable attorneys fees, punitive damages under the applicable Missouri law governing outrageous conduct motivated by improper motive or reckless

indifference, treble damages and attorneys fees under M.G.L. c. 93A, and such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff CSI hereby demands its right to trial by jury on all issues in this case as to which it is entitled to trial by jury.

Respectfully submitted,

COMPUTER SALES INTERNATIONAL, INC. a/k/a CSI LEASING, INC.,

By its attorneys,

[s] Robert J. Kaler
Robert J. Kaler, BBO No. 542040
Edward W. Little, BBO No. 628985
David Himelfarb, BBO No. 649596
McCARTER ENGLISH, LLP
225 Franklin Street
Boston, MA  02110
Tel. (617) 345-7000

Dated:  December 4, 2006



**EXHIBIT 1**

# CSI

## MASTER LEASE AGREEMENT NUMBER  144874

| | | |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC. | | In California: CSI Leasing, Inc. |
| 10845 Olive Boulevard | MAILING ADDRESS: | In Florida: CSI Computer Sales, Inc. |
| St. Louis, Missouri  63141 | Post Office Box 16264 | |
| (314) 997-7010 | St. Louis, MO 63105 | |

MASTER LEASE AGREEMENT dated as of **December 4, 1996** by and between COMPUTER SALES INTERNATIONAL, INC. (hereinafter called "Lessor") having its principal office and place of business at 10845 Olive Boulevard, St. Louis, Missouri 63141, and

LYCOS, INC.

(hereinafter called "Lessee") having its principal office and place of business at

293 Boston Post Road West

Marlboro, Massachusetts  01752

IN CONSIDERATION of the mutual agreements hereinafter set forth and the payment of rent as herein provided for, the parties hereto agree as follows:

### 1. LEASE AGREEMENT

Lessor hereby leases to Lessee and Lessee hereby leases from Lessor all of the equipment and other tangible personal property described in each of the Equipment Schedules which are executed from time to time by Lessor and Lessee pursuant to this Master Lease. Each Equipment Schedule shall constitute a separate lease on the terms and conditions stated therein and, to the extent not inconsistent with the Equipment Schedule, on the terms and conditions stated in the Master Lease which shall be incorporated by reference in the Equipment Schedule. The term "Equipment" as used herein shall mean, with respect to any Equipment Schedule, the Equipment described therein. The term "Unit" as used herein shall mean an individual machine on an Equipment Schedule or an individual feature when such feature is leased separately from a machine. The term of this Master Lease shall begin on the date set forth above and shall continue in effect so long as any Equipment Schedule entered into pursuant to this Master Lease remains in effect.

### 2. TERM

2.1  COMMENCEMENT DATE:  The commencement date ["Commencement Date"] for each Unit of Equipment will be the date on which such Unit is installed by the manufacturer or other installer, except that, in the event there is a delay in the installation of a Unit and such delay is attributable to Lessee, then the Commencement Date for such Unit shall be five [5] working days following the date upon which Lessee has been given notice that such Unit is available for installation. If requested by Lessor, Lessee will promptly execute and deliver to Lessor a certificate confirming the Commencement Date(s).

2.2  INITIAL TERM:  The "Initial Term" of an Equipment Schedule shall mean the period beginning on the Commencement Date of the Unit having the latest Commencement Date of the Units on such Equipment Schedule if such Commencement Date is the first day of a month, and otherwise, the Initial Term shall begin on the first day of the month immediately following the month in which such latest Commencement Date falls. The Initial Term of an Equipment Schedule shall continue for the number of months specified therein and shall automatically be extended for successive four month periods thereafter at the same Monthly Rental unless and until terminated by either party giving the other party not less than 120 days prior written notice. Any termination (i) must relate to all of the Equipment described on the Equipment Schedule to which the notice applies, (ii) will be effective only on the last day of the Initial Term or on the last day of any successive four month period, (iii) will be effective only if Lessee returns all of the Equipment to Lessor in accordance with the terms of the Equipment Schedule by the day after the scheduled termination date, and (iv) may not be unilaterally revoked.

### 3. MONTHLY RENTAL

Lessee shall pay to Lessor the monthly rental ["Monthly Rental"] for each Unit as set forth in the relevant Equipment Schedule. The Monthly Rental shall be payable at the above mailing address of Lessor or at such other place as Lessor may from time to time designate in a written notice to Lessee. The Monthly Rental for each Unit shall commence on the Commencement Date of such Unit and shall be due and payable in advance and without demand on the first day of each month thereafter during the term of this Lease. If the Commencement Date for a Unit is a day other than the first day of a month, Daily Rental shall be payable ["Daily Rental"] shall equal one-thirtieth of the Monthly Rental for such Unit] for each day from, and including, the Commencement Date to, but not including, the first day of the Initial Term, and such total Daily Rental amount shall be due and payable on the first day of the Initial Term.

### 4. WARRANTIES

4.1  AFFIRMATIVE WARRANTIES:  Lessor represents and warrants that:

[a]  The Equipment shall be eligible for the manufacturer's standard prime shift maintenance contract upon installation, provided Lessee requests such coverage in writing prior to installation of the Equipment.

[b]  During the term of this Master Lease, if no Event of Default has occurred, Lessee's quiet enjoyment and peaceable possession of the Equipment shall not be interrupted by Lessor or anyone claiming solely through or under Lessor.

4.2  DISCLAIMER OF WARRANTIES:  THE AFFIRMATIVE WARRANTIES SET FORTH ABOVE ARE IN LIEU OF ALL OTHER WARRANTIES OF LESSOR. LESSOR MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, FITNESS, CAPACITY OR SUITABILITY FOR

LYCOS, INC.

Master Lease No. 144874
December 4, 1996

PS/BOST.

ANY PARTICULAR PURPOSE, THE QUALITY OF THE MATERIAL OR WORKMANSHIP OF THE EQUIPMENT, OR CONFORMITY OF THE EQUIPMENT TO THE PROVISIONS AND SPECIFICATIONS OF ANY PURCHASE ORDER OR ORDERS RELATING THERETO. Without limiting the generality of the foregoing, Lessor shall not be liable to Lessee for any liability, claim, loss, damage or expense of any kind or nature [including strict liability in tort] caused directly or indirectly by the Equipment, any inadequacy thereof for any purpose, any deficiency or defect therein, whether known or unknown to Lessor. In any event, Lessor shall not be liable to Lessee for any loss of business or any other incidental or consequential loss or damage resulting from any cause whatsoever.

4.3 ASSIGNMENT OF WARRANTIES: Lessor hereby assigns to Lessee any and all manufacturer's warranties, if assignable, and any other such rights that are assignable as Lessor may have against the manufacturer of the Equipment provided, however, that Lessee's sole remedy for the breach of any such warranty or right shall be against the manufacturer and not Lessor.

4.4 SELECTION: Lessee acknowledges, represents and warrants that it has made the selection of the Equipment based on its own judgment and expressly disclaims any reliance upon statements made by the Lessor. The Equipment is being leased for commercial and business purposes only, and will not be leased for consumer, personal, home, or family purposes.

## 5. NET LEASE

Each Equipment Schedule constitutes a net lease. Lessee shall be solely responsible for all costs and expenses of every nature arising out of the possession, use, and operation of the Equipment. Lessee's obligation to pay the Monthly Rental and all other sums due hereunder shall be absolute and unconditional and shall not be subject to any setoff, abatement, counterclaim, recoupment, defense, cancellation, repudiation, rejection of Equipment, revocation of acceptance of Equipment or any other right that Lessee may have against Lessor. Except as expressly provided for herein, neither this Master Lease, nor any Equipment Schedule, shall terminate nor shall the obligations of Lessee be affected by reason of any defect in, damage to, or any loss or destruction of the Equipment or any Unit from any cause whatsoever, or the interference with the use thereof by any private person, corporation, or governmental authority or as a result of any war, riot, insurrection or Act of God. It is the express intention of Lessor and Lessee that all Monthly Rental payable by Lessee under each Equipment Schedule shall be, and continue to be, payable in all events throughout the term thereof.

## 6. TAXES

6.1 PAYMENT OF TAXES: Lessee covenants and agrees to pay to the appropriate taxing authority, and discharge before the same become delinquent, all taxes, fees, or other charges of any nature whatsoever, without pro-ration, together with any related interest or penalties ["Impositions"] now or hereafter imposed, assessed or payable during the term of the relevant Equipment Schedule including any extension thereof [or an imposition relating to a record date or status date that fell within the term of the relevant Equipment Schedule including any extension thereof or is otherwise associated with Lessee's leasing, possession or use of the Equipment] against Lessor, Lessee or the Equipment by any federal, state, county or local government or taxing authority upon or with respect to [i] the Equipment or any Unit, [ii] upon the leasing, ordering, purchase, sale, ownership, use, operation, return or other disposition thereof, [iii] the Monthly Rental or any other sums due hereunder with respect to any Equipment Schedule, or [iv] the leasing of the Equipment [excepting only federal, state and local taxes measured by the net income of Lessor or any franchise tax upon Lessor measured by Lessor's capital, capital stock or net worth]. Because the payment due date or reimbursement date for an Imposition may occur after the expiration or termination of the term of the relevant Equipment Schedule, it is understood and agreed that Lessee's liability for such Impositions shall survive the expiration or termination of the term of the relevant Equipment Schedule.

6.2 BILLING: Lessee shall, to the extent permitted by law, cause all Impositions to be billed to Lessee. Lessee shall, at its expense, timely file all forms and returns and timely do all things required to be done in connection with the levy, assessment and payment of any Impositions, and Lessee hereby appoints Lessee as Lessor's attorney-in-fact where necessary for such purposes. Lessee shall submit written evidence to Lessor of the payment of all Impositions required to be paid by Lessee hereunder promptly after such payment. Notwithstanding the foregoing, Lessor, in its sole discretion, may pay any Imposition itself or file any forms or returns with respect thereto. If Lessor pays any Imposition, Lessee shall, when billed, reimburse Lessor for such payment.

6.3 CONTEST: Lessee may contest any Imposition by appropriate legal proceedings provided the nonpayment of such Imposition thereof, or such proceedings, will not, in the opinion of counsel for Lessor, adversely affect the title, property interest or rights of Lessor in the Equipment and provided further that, if requested by Lessor, Lessee has given to Lessor security, sufficient in form and amount, in Lessor's reasonable judgment, to fully satisfy the amount of the contested Imposition.

## 7. DELIVERY AND RETURN

Lessor shall arrange for delivery, and Lessee shall pay, when billed, all delivery expenses [including, without limitation, transportation costs and the cost of in-transit insurance] associated with the delivery of each Unit from its previous location to the location specified in the relevant Equipment Schedule. Lessee shall inspect each Unit upon delivery, identify any observable damage prior to accepting delivery, and note any such damage on the bill of lading. Costs of repair which are not recoverable from the carrier because of Lessee's failure to properly inspect for observable damage shall be borne and promptly paid by Lessee. Lessee shall provide a suitable place for installation of the Equipment with all appropriate facilities as specified by the manufacturer. Lessee shall arrange and Lessee shall pay for the installation of each Unit [if Lessee wishes to have the Equipment installed by an installer other than the manufacturer or some other party approved in writing by Lessor, then Lessee shall accept the Equipment "as is" and Lessor's warranty set forth in Paragraph 4.1 (a) shall not apply]. Upon the termination of Lessee's right to possession of any Unit [by expiration of the term of the relevant Equipment Schedule or otherwise], Lessee shall, in accordance with Lessor's instructions and at Lessee's expense [including without limitation transportation costs and costs of in-transit insurance] return the Unit to such location within the Continental United States as shall be designated by Lessor. Lessee shall reimburse Lessor for all expenses paid by Lessor associated with return of the Unit when billed. Lessee shall return each Unit in the same operating order, repair, condition and appearance as when received, excepting only normal wear and tear, and with all engineering changes prescribed by the manufacturer prior to the termination of Lessee's right of possession incorporated in the Unit. Lessee, at its expense, shall make any repairs necessary in order to certify the Equipment as eligible for the manufacturer's prime shift maintenance contract upon its return and shall have the Unit certified as eligible for the same. At the time the Equipment is returned, Lessee shall provide a letter from the manufacturer certifying such maintenance eligibility.

## 8. CARE OF EQUIPMENT

8.1 USE AND MAINTENANCE: Lessee shall, at its expense, maintain the Equipment in good operating order, repair, and condition. Lessee shall not use the Equipment for any purpose other than that for which it was designed. Prior to the delivery date and before any action is taken to install the Equipment, Lessee shall make a written request to the manufacturer for continued coverage of the Equipment under one of the manufacturer's standard maintenance agreements, and shall, at its expense, enter into and maintain in force such maintenance agreement for each Unit and provide Lessor with a copy of such agreement. IF LESSEE FAILS TO MAKE THE PROPER WRITTEN REQUEST TO THE MANUFACTURER FOR COVERAGE UNDER ONE OF THE MANUFACTURER'S STANDARD MAINTENANCE

AGREEMENTS, THEN LESSEE SHALL ACCEPT THE EQUIPMENT "AS IS" AND LESSOR'S WARRANTY SET FORTH IN PARAGRAPH 4.1(A) SHALL NOT APPLY. In no event, however, shall Lessee be required to enter into such a contract for any Unit so long as that Unit is under a manufacturer's warranty which provides substantially similar coverage.

8.2 ALTERATIONS AND ATTACHMENTS: With the prior written consent of the Lessor, Lessee may, at its expense, make alterations or add attachments to the Equipment which are removable and which do not interfere with the normal and satisfactory operation or maintenance of the Equipment or Lessee's ability to obtain the maintenance contract required in Section 8.1 above. Upon the termination of Lessee's right to possession of any Unit, any alterations or attachments to such Unit shall become the property of Lessor unless removed at Lessee's expense prior to such termination. Lessor shall have the right, following termination of Lessee's right to possession of any Unit, to remove any attachments or alterations made by Lessee to such Unit and dispose of the same without any liability therefor to Lessee and Lessee shall pay the costs of such removal when billed.

8.3 INSPECTION: Lessee shall make the Equipment available to Lessor, Secured Party [hereinafter defined] and Assignee [hereinafter defined] or the designees of any of them during normal working hours for inspection or for any other reasonable purpose.

## 9. LOSS OR DAMAGE

9.1 RISK OF LOSS: Lessee shall be responsible for and hereby assumes the entire risk of the Equipment being lost, damaged, destroyed, stolen, or otherwise rendered unfit or unavailable for use from the date of delivery to Lessee to the date of return to Lessor.

9.2 OCCURRENCE OF LOSS: If any Unit is lost, damaged, destroyed, stolen, or otherwise rendered unfit for use, Lessee shall give to Lessor immediate notice thereof, and this Master Lease and the applicable Equipment Schedule shall continue in full force and effect without any abatement in the Monthly Rental. Lessee shall determine within fifteen (15) days after the date of the occurrence of damage whether such Unit can be repaired. In the event Lessee determines that such Unit can be repaired, Lessee, at its expense, shall cause such Unit to be promptly repaired. If a Unit is lost, destroyed or stolen or if Lessee determines that a damaged Unit cannot be repaired, Lessee shall, at Lessor's direction, within thirty [30] days of such event either replace the Unit with an identical Unit, the title to which shall thereupon vest in Lessor and which thereafter shall be considered the Unit subject to the Equipment Schedule with no abatement in the Monthly Rental or, in Lessor's sole discretion, pay to Lessor an amount equal to the Stipulated Loss Value of the Unit determined as of the date of payment in accordance with the Stipulated Loss Value Schedule attached to the applicable Equipment Schedule together with all unpaid Monthly Rental which is due and payable through the date of payment. Upon such payment, Lessee's obligation to pay further Monthly Rental for such Unit shall cease.

## 10. INSURANCE

10.1 PROPERTY INSURANCE: Throughout the term of each Equipment Schedule, Lessee shall, at its expense, maintain in full force and effect "all risk" extended coverage, fire and casualty insurance for the Equipment. Such insurance shall provide for coverage in an amount equal to ~~the greater of the Stipulated Loss Value or~~ the replacement cost of the Equipment at the time of loss. Lessor shall be named as the Loss Payee on such policy. In addition, the policy shall, by means of a standard mortgage clause, name the Secured Party and Assignee as additional insureds and loss payees as their interest shall appear. Such policy shall provide that it may not be canceled or materially altered unless thirty [30] days prior written notice is given to all parties named therein. Upon Lessor's written request, Lessee shall provide Lessor with a Certificate of Insurance evidencing such insurance coverage. If, within two weeks after Lessee's receipt of such request, Lessee has not provided Lessor with a satisfactory Certificate, then Lessor may, at Lessor's option, obtain such insurance until Lessee provides the Certificate, and Lessee shall reimburse Lessor for the cost of such insurance when billed.

10.2 LIABILITY INSURANCE: During the term of this Master Lease, Lessee, at its expense, shall maintain reasonable, commercial general liability and property damage insurance with respect to the use, possession and operation of the Equipment in an amount not less than one million dollars for each occurrence.

## 11. INDEMNIFICATION

Lessee shall and does hereby indemnify and hold Lessor, any Assignee, and any Secured Party, harmless from and against any and all claims, costs, reasonable attorneys' fees, expenses, damages, and liabilities [including those resulting from the application of strict liability doctrines or statutes] arising out of Lessee's selection, possession, leasing, operation, control, use, maintenance, delivery, or return of the Equipment. Notwithstanding the foregoing, Lessee shall not be required to indemnify a party for any claim resulting from acts of that party which constitute willful misconduct or gross negligence.

## 12. ASSIGNMENT, SUBLEASE OR RELOCATION BY LESSEE

UPON AT LEAST THIRTY [30] DAYS PRIOR WRITTEN NOTICE TO LESSOR, LESSEE MAY ASSIGN OR SUBLEASE A UNIT TO ANY PARTY, OR RELOCATE A UNIT TO ANY LOCATION, WITHIN ANY STATE OF THE CONTINENTAL UNITED STATES, PROVIDED THAT LESSOR, ASSIGNEE, AND SECURED PARTY, IN SUCH PARTIES' SOLE DISCRETION, SHALL HAVE APPROVED SUCH ASSIGNEE, SUBLESSEE, OR LOCATION, AND PROVIDED FURTHER THAT [i] ALL COSTS OF ANY NATURE WHATSOEVER [INCLUDING ANY ADDITIONAL IMPOSITIONS AND ANY ADDITIONAL EXPENSES ASSOCIATED WITH FILING NEW PRECAUTIONARY UNIFORM COMMERCIAL CODE FINANCING STATEMENTS] RESULTING FROM ANY RELOCATION, ASSIGNMENT OR SUBLEASE SHALL BE BORNE BY LESSEE; [ii] ANY ASSIGNMENT OR SUBLEASE SHALL BE MADE EXPRESSLY SUBJECT AND SUBORDINATE TO THE TERMS OF THIS LEASE; AND [iii] LESSEE SHALL ASSIGN ITS RIGHTS UNDER SUCH ASSIGNMENT OR SUBLEASE TO LESSOR, ASSIGNEE, OR SECURED PARTY AS ADDITIONAL COLLATERAL AND SECURITY FOR LESSEE'S OBLIGATIONS HEREUNDER. In the event of a relocation, assignment, or sublease, Lessee and its assignee or its sublessee shall cooperate with Lessor in taking all reasonable measures to protect the title of Lessor or Assignee and the interest of any Secured Party to and in the Equipment. No relocation, assignment, or sublease shall relieve Lessee of its primary obligations under the relevant Equipment Schedule and this Master Lease.

## 13. ASSIGNMENT BY LESSOR

Lessor shall have the right to assign as security its interest or grant a security interest in any or all of the Equipment Schedules which may from time to time be executed and the Units described in any such Equipment Schedule to a security assignee ["Secured Party"]. Lessor shall also have the right to sell or otherwise dispose of any or all of the Units described in any Equipment Schedule, subject to the prior right of Lessee in such Units, and to assign its interest as Lessor under such Equipment Schedule, to any assignee ["Assignee"]. Any such assignment shall not in any way release Computer Sales International, Inc. from liability for performance of the Lessor's obligations hereunder. Lessee acknowledges that any assignment by Lessor will not materially change Lessee's duties or obligations under the Equipment Schedule nor materially increase the burden or risk imposed on Lessee. Lessee hereby consents to and shall acknowledge such assignment or assignments as shall be designated by written notice to Lessee by Lessor. Lessee further covenants and agrees that:

[a] Any such Secured Party or Assignee shall have and be entitled to exercise any and all discretions, rights and powers of Lessor under the Equipment Schedule in which it has an interest, provided that a Secured Party or Assignee shall not be obligated to perform any of the obligations of Lessor other than Lessor's obligations under Paragraph 4.1 [b].

[b] Lessee shall pay directly to the Secured Party or Assignee all Monthly Rental and all other sums due upon receipt of notice of any assignment and of instructions to do so; and

[c]  After an assignment to a Secured Party or Assignee, Lessee's obligations hereunder including its obligation to pay the Monthly Rental and any and all other amounts payable under the Equipment Schedule by Lessee shall be absolute and unconditional and shall not be subject to any abatement, reduction, recoupment, defense, setoff, or counterclaim available to Lessee against Lessor for any reason whatsoever.

[d]  Only one executed counterpart of any Equipment Schedule shall be marked "Original"; any other executed counterparts shall be marked "Non-original" or "Copy". No security interest in any Equipment Schedule may be created through the transfer and possession of any counterpart other than the "Original", nor shall any sale, assignment or transfer of any interest in an Equipment Schedule be effective or be binding upon Lessee through the transfer and possession of any counterpart other than the "Original".

## 14.  EVENTS OF DEFAULT

The occurrence of any one or more of the following events ["Events of Default"] shall constitute a default under the relevant Equipment Schedule:

[a]  Lessee fails to pay the Monthly Rental, or any other amount due hereunder, on or before the date the same is due and such failure continues for a period of ten [10] days after receipt of written notice thereof from Lessor;

[b]  any financial statements or information or any other representation or warranty given to Lessor proves to have been materially false or misleading as of the date it was given by or on behalf of Lessee;

[c]  Lessee fails to observe or perform any other term, condition, obligation, agreement or covenant set forth herein, and such failure continues for a period of ten [10] days after receipt of written notice thereof from Lessor;

[d]  Lessee assigns or attempts to assign this Master Lease or any Equipment Schedule, or removes, transfers, encumbers, sublets or parts with possession of any Unit, attempts to do any of the foregoing, or suffers or permits any of the foregoing to occur except as expressly permitted herein;

[e]  Lessee ceases doing business as a going concern, or it or its shareholders take any action looking to its dissolution or liquidation;

[f]  the entry of an order for relief under the United States federal bankruptcy laws or the entry of any other decree or order by a court having jurisdiction in the premises adjudging the Lessee a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Lessee under the United States federal bankruptcy laws or any other applicable federal or state law, or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator [or other similar official] of the Lessee or of any substantial part of its property, or the ordering, the winding up or liquidation of its affairs, and the continuance of any such decree or order unstayed and in effect for a period of 60 consecutive days;

[g]  the commencement by the Lessee of a voluntary case under the United States federal bankruptcy laws, or the institution by the Lessee of proceedings to be adjudicated a bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against it, or the filing by it of a petition or answer or consent seeking reorganization, an arrangement with creditors or an order for relief under the United States federal bankruptcy laws or any other applicable federal or state law, or the consent by it to the filing of any such petition or to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator [or other similar official] of the Lessee or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts as they become due, or, to the knowledge of the Lessor, the taking of corporate action by the Lessee in furtherance of any such action.

## 15.  REMEDIES

15.1 EXPRESS REMEDIES:  If an Event of Default occurs, Lessor may, at its option, do any or all of the following:

[a]  proceed by appropriate court action or actions either at law or in equity to enforce performance by Lessee of the relevant Equipment Schedule, and the covenants and terms of this Master Lease to the extent it pertains to such Equipment Schedule, and to recover from Lessee any and all damages or expenses, including reasonable attorneys' fees, which Lessor shall have sustained or incurred by reason of the Event of Default or on account of Lessor's enforcement of its remedies hereunder, or

[b]  by notice to Lessee, declare immediately due and payable all monies to be paid by Lessee during the Initial Term [or any extended term then in effect] of the Equipment Schedule, as liquidated damages, and not as a penalty, and Lessor shall have the right, to the extent permitted by law, to [i] recover all monies so declared due and payable, discounted to the date of payment at the rate of 4% per annum, or one-half of the then-prevailing prime interest rate charged by principal New York banks, whichever is less, as liquidated damages, and not as a penalty; [ii] recover all other amounts which are due or which become due under the Equipment Schedule; [iii] terminate Lessee's right to possession [but not Lessee's obligations under this Lease] and to retake immediate possession of the Equipment without any process of law and for such purpose Lessor may enter upon premises where the Equipment may be located and may remove the same therefrom without notice, and without being liable to Lessee therefor, except that Lessor shall be liable for damages resulting from the negligence of Lessor, Lessor's assignee or their respective agents and representatives in any such entry or repossession; [iv] recover all expenses, including reasonable attorneys' fees, which Lessor shall have incurred or may incur by reason of the Event of Default or on account of Lessor's enforcement of its remedies hereunder; and [v] pursue any other remedy permitted by law or equity.  The possibility of a re-lease or resale under Paragraph 15.2 shall not excuse prompt payment in full by Lessee under this Paragraph 15.1.

15.2 RE-LEASE OR RESALE:  Lessor shall make a reasonable, good faith effort to retake possession of the Equipment and, if Lessor succeeds in retaking possession of any Unit, Lessor shall sell or lease each Unit with the privilege of becoming the purchaser thereof, at public or private sale, for cash or on credit.  Lessee's share of the proceeds of any such sale or lease ["Lessee's Share"] shall be the lesser of [x], the amount by which the Re-Lease Proceeds or the Resale Proceeds of such Unit exceed the Remarketing Costs of such Unit, and [y], the amount payable to Lessor pursuant to Paragraph 15.1 [b][i] above with respect to such Unit.  Lessor shall credit Lessee's Share against all amounts owed by Lessee to Lessor under Paragraph 15.1 or otherwise and the remainder of Lessee's share, if any, shall be paid to Lessee.  EXCEPT AS SET FORTH IN THIS PARAGRAPH, LESSEE HEREBY WAIVES ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY REQUIRE LESSOR TO MITIGATE ITS DAMAGES OR MODIFY OR LIMIT ANY OF LESSOR'S RIGHTS OR REMEDIES STATED HEREIN.  In applying this provision, the following definitions shall apply:

[a]  The "Re-Lease Proceeds" of a Unit shall mean the present value [discounted to the date of payment using the interest rate at which Lessor has non-recourse financing or a non-recourse financing commitment with respect to the re-lease] of the monthly rental payments for the Unit under a re-lease to a third party, taking into account only those monthly rental payments under the re-lease which are payable on or before the last day of the Initial Term or the last day of any extended term then in effect with respect to the Unit under the Equipment Schedule.  If the re-lease is not financeable, the Re-Lease Proceeds shall be the monthly rental payments for such period as received.

[b]  The term "Resale Proceeds" of a Unit shall mean the amount by which the proceeds of any sale of the Unit exceed the Lessor's estimate of the fair market value of the Unit at the end of the Initial Term or at the end of any extended term then in effect with respect to the Unit under this Master Lease.

[c]  The term "Remarketing Costs" of a Unit shall mean all expenses incurred directly or indirectly by Lessor in re-leasing or selling the Unit and in obtaining a financing commitment in the case of a re-lease of a Unit, including, without limitation, reasonable fees and commissions [including a reasonable fee to Lessor] incurred in locating a buyer, a subsequent lessee or a financing

commitment, attorneys' fees, the cost of recovering the Unit from the Lessee and transportation, installation, refurbishing, reconditioning and storage charges.

15.3 NO WAIVER:  The waiver by Lessor of any breach of any obligation of Lessee shall not be deemed a waiver of a breach of any other obligation or of any subsequent breach of the same or any other obligation.  The subsequent acceptance of rental payments hereunder by Lessor shall not be deemed a waiver of any prior existing breach by Lessee regardless of Lessor's knowledge of such prior existing breach at the time of acceptance of such rental payments.

15.4 CUMULATION:  To the extent permitted by law, the above remedies shall be deemed cumulative and may be exercised successively or concurrently.

## 16.  PERFORMANCE AND EXECUTION

Lessee represents and warrants to Lessor [i] that the execution and performance of this Master Lease and each Equipment Schedule have been duly authorized by Lessee and that upon execution by Lessee and Lessor this Master Lease and each Equipment Schedule will constitute a valid obligation binding upon, and enforceable against, Lessee in accordance with the terms of the Master Lease and each Equipment Schedule; [ii] that neither the execution of this Master Lease or any Equipment Schedule nor the due performance thereof by Lessee will result in any breach of, or constitute any default under or violation of, Lessee's certificate or articles of incorporation, Lessee's by-laws or any agreement to which Lessee is a party or by which any interest of Lessee may be affected; [iii] that Lessee is in good standing in its state of incorporation and in the states where any Unit is to be located; [iv] the persons executing this Master Lease and each Equipment Schedule on behalf of Lessee have been duly authorized to do so; and [v] that any and all financial statements and other information with respect to Lessee heretofore furnished by Lessee to Lessor in connection with negotiations concerning one or more Equipment Schedules were, when furnished, and remain at the time of execution of any Equipment Schedule, true and without any misleading omissions, excepting any changes which have been disclosed in a written notice to Lessor.

## 17.  ADDITIONAL DOCUMENTATION

Lessee shall promptly deliver to Lessor the documentation listed below which may from time to time be requested by Lessor.  If such a request is made prior to the delivery of any Unit, receipt of such documentation shall be a condition precedent to Lessor's obligation to deliver such Unit:

[a]  financial information including, without limitation, a copy of Lessee's balance sheet and income statement for Lessee's three prior fiscal years, certified by independent certified public accountants and such other current financial information representing the financial condition and operations of Lessee as Lessor may from time to time reasonably request;

[b]  a certificate of the resolutions of the Board of Directors of Lessee duly authorizing or ratifying this Master Lease or any Equipment Schedule executed hereunder;

[c]  a certificate of incumbency setting forth names and signatures of those persons authorized to execute this Master Lease or any Equipment Schedule on behalf of Lessee;

[d]  landlord's and/or mortgagee's waiver, in form and substance satisfactory to any Assignee or Secured Party, from any landlord or mortgagee of any premises upon which any Unit is located;

[e]  an opinion of counsel for Lessee as to the matters set forth in Paragraph 16, [i through iv] above, and as to such other matters as Lessor may reasonably request; and

[f]  such document confirming the execution of the Lease necessary or desirable to effect an assignment, to perfect an interest of Lessor, a Secured Party or Assignee, or for such other purpose relating to the Master Lease and/or any Equipment Schedule or to an assignment as Lessor may reasonably request.  Lessee hereby appoints Lessor as Lessee's agent to prepare, execute and file in Lessee's name precautionary Uniform Commercial Code financing statements in connection with each Equipment Schedule showing the interest of Lessor, and any Assignee or Secured Party in the Equipment as appropriate.

## 18.  GENERAL

18.1 TITLE:  This Master Lease is intended to be a true lease and not a lease intended as security or lease in the nature of a security interest. Lessee shall, at its expense, protect and defend Lessor's title to the Equipment and the interest of any Assignee or Secured Party against all persons claiming against or through Lessee. Lessee shall keep and maintain the Equipment and this Master Lease free and clear of all liens and encumbrances [other than those placed on the same by Lessor and the liens for current taxes not yet payable].

18.2 FIXTURES:  Lessee will not affix any Unit of the Equipment to any real property if, as a result thereof, the Unit will become a fixture under applicable law.

18.3 ENTIRE AGREEMENT:  This Agreement [together with all schedules and attachments hereto] constitutes the entire agreement between Lessor and Lessee, and no provision hereof may be amended or modified except in writing signed by Lessor and Lessee. NO PROVISION OF THIS AGREEMENT MAY BE WAIVED EXCEPT IN WRITING SIGNED BY THE PARTY FROM WHOM SUCH WAIVER IS SOUGHT, AND ANY SUCH WAIVER SHALL BE EFFECTIVE ONLY IN THE SPECIFIC INSTANCE AND FOR THE SPECIFIC PURPOSE GIVEN.

LESSEE'S INITIALS : 

18.4 NOTICES:  All notices hereunder shall be in writing and shall be delivered in person or sent by registered or certified mail, to the address of the party contained herein, and shall be deemed received three [3] days after deposit in the United States mail with postage prepaid.  Either party may change its address for notice purposes by notifying the other party in the manner aforesaid of such change. Lessee shall also send copies of all notices sent to Lessor, to Secured Party, or Assignee [if any].

18.5 SEVERABILITY:  Any provision hereof prohibited by, or unlawful or unenforceable under, any applicable law of any jurisdiction shall be ineffective as to such jurisdiction without invalidating the remaining provisions of this Agreement, and any such prohibition in any jurisdiction shall not invalidate such provision in any other jurisdiction; and to that end the provisions of any such applicable law may be waived, they are hereby waived by Lessee and Lessor to the full extent permitted by law.

18.6 GOVERNING LAW: THIS MASTER LEASE AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW.  NO RIGHTS OR REMEDIES REFERRED TO IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE WILL BE CONFERRED ON LESSEE UNLESS EXPRESSLY GRANTED IN THIS MASTER LEASE OR AN EQUIPMENT SCHEDULE. This Master Lease and Equipment Schedules are subject to acceptance by Lessor at its home office.

18.7 PERFORMANCE OF LESSEE'S OBLIGATIONS:  If Lessee shall fail to make any payment or perform any act required by this Master Lease or any Equipment Schedule, Lessor may at Lessee's expense, but shall not be obligated to, make such payment or perform such act without notice to or demand upon Lessee and without waiving or releasing any obligation or default.  Lessee shall, when billed, reimburse Lessor for any expense incurred hereunder by Lessor in performing Lessee's obligations.  LESSEE MAY NOT ASSIGN ITS RIGHTS OR OBLIGATIONS, EXCEPT AS SPECIFICALLY PROVIDED IN PARAGRAPH 12 OF THIS MASTER LEASE.

18.8 SURVIVAL:  All representations, warranties, indemnities, and covenants contained in this Master Lease and in any Equipment Schedule, which by their nature would continue beyond the termination, cancellation or expiration of the Lease, including, by way of illustration only and not limitation, those in Paragraphs 6, 10, 11 and 18, shall continue in full force and effect and shall survive

notwithstanding the full payment of all amounts due hereunder or the termination of Lessee's right to possession of any Unit.

18.9 HEADINGS: Headings and captions are for convenience of reference only and shall not be construed as part of the Lease.

18.10 OVERDUE PAYMENTS: Any Monthly Rental due Lessor under this Master Lease, if not paid by the fifth day of the month in which payment became due, shall accrue interest until paid at a rate equal to one and one-half percent per month, or the maximum rate permissible by law, whichever is lower. Any other amounts payable to Lessor by Lessee under this Master Lease are due and payable within fifteen [15] days after the billing date, and, if not paid on or before such due date, shall accrue interest from the due date until paid at a rate equal to one and one-half percent per month, or the maximum rate permitted by law, whichever is lower.

18.11 CONSENT OR APPROVAL: With respect to any provision herein which calls for the consent or approval of a party, such consent or approval shall not be unreasonably withheld.

18.12 SUBSTITUTION OF EQUIPMENT: If, at any time during the term of an Equipment Schedule, Lessor's right to lease the Equipment expires, Lessor shall promptly provide identical substitute Equipment, and all expenses of such substitution, including de-installation, installation and transportation expenses, shall be borne by Lessor.

18.13 DELIVERY FOR EXAMINATION: Submission of the form of this Master Lease for examination shall not bind Lessor in any manner, and no obligations shall arise until this instrument is signed by both Lessor and Lessee.

18.14 TERMS IN EQUIPMENT SCHEDULES: If the provisions of any Equipment Schedule are inconsistent with the provisions of this Master Lease, then the provisions of such Equipment Schedule shall control.

LESSOR:
COMPUTER SALES INTERNATIONAL, INC.

BY:

TITLE:     E. WILLIAM CILLULA
           CHIEF OPERATING OFFICER & CFO

DATE:
                JAN 1 0 1997

LESSEE:
LYCOS, INC.

BY:

TITLE:     COO

DATE:     12/20/96

(Please initial page 5, section 18.3)

ML 4/96

ADDENDUM ONE TO MASTER LEASE AGREEMENT NO. 144874

This Addendum One to Master Lease Agreement No. 144874 (the "Lease") is dated as of December 4, 1996 and is entered into by and between COMPUTER SALES INTERNATIONAL, INC. ("Lessor") and LYCOS, INC. ("Lessee").

Notwithstanding anything to the contrary contained in the Lease between the parties hereto, dated on even date herewith, and in consideration of the mutual promises, covenants, and conditions contained in the Lease and contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1. **Controlling Terms:** This Addendum One shall become a part of the Lease and shall be read together with the Lease as one single document. To the extent that there shall be any conflict as between the terms and provisions contained in the Lease and those contained herein, the terms and provisions set forth herein shall control.

2. **Section 2.2 Initial Term:** In line 6, delete "120" and insert "60."

3. **Section 15.1 Express Remedies:** In subsection [b][i], delete "4%" and insert "6%."

4. **Section 15.2 Re-lease or Resale:** In line 7, after "PARAGRAPH," insert "AND TO THE EXTENT PERMITTED BY LAW."

IN WITNESS WHEREOF, the parties hereto have executed this Addendum One to Master Lease No. 144874, as of the date set forth below.

COMPUTER SALES INTERNATIONAL, INC.

BY: _____
TITLE: E. WILLIA . CILLULA
CHIEF OPERATING OFFICER & CFO

DATE: JAN 1 0 1997

LYCOS, INC.

BY: _____

TITLE: CHIEF OPERATING OFFICER

DATE: DECEMBER 20, 1996

PS/Bost.

144874-00Addm1(lrc)

# FIRST AMENDMENT TO MASTER LEASE NO. 144874

This Amendment to Master Lease Agreement No. 144874 (the "Master Lease") is dated February 28, 2001, and is between COMPUTER SALES INTERNATIONAL, INC. ("Lessor") and LYCOS, INC. ("Lessee").

Lessor and Lycos, Inc., a Delaware corporation, as lessee previously entered into the Master Lease and various Equipment Schedules thereunder for the lease of computer equipment. Lycos, Inc. subsequently merged with another company and the parties want to amend the Master Lease, and each Equipment Schedule thereunder, to change the lessee accordingly. In consideration of the foregoing and the promises and covenants contained in this Amendment, the parties agree to amend the Master Lease and each Equipment Schedule on the terms and conditions set forth below:

1. The Lessee is changed to LYCOS, INC., a Virginia corporation, which assumes all the obligations under the Master Lease and all current Equipment Schedules thereunder.

2. All other terms and conditions of the Master Lease and each Equipment Schedule remain unchanged and in full force and effect.

The parties have executed this Amendment as of the date set forth below.

COMPUTER SALES INTERNATIONAL, INC.     LYCOS, INC.

By: _Lorraine S Cherrick_            By: _Brian D Lyf_

Title: _SVP + Gen'l Counsel_         Title: _CFO_

Date: _3/28/01_                      Date: _3/16/01_

144874-000.a1rev(pw).doc
PHS/BOST

ORIGINAL



**CSI**

## COMPUTER SALES INTERNATIONAL, INC.

9990 Old Olive Street Road, Suite 101
St. Louis, Missouri 63141
(314)997-7010

### EQUIPMENT SCHEDULE NO. ONE HUNDRED Dated as of December 12, 2001

LESSOR:                                    LESSEE:    **LYCOS, INC.**
                                                      400-2 Totten Pond Road
**COMPUTER SALES INTERNATIONAL, INC.**                Waltham, Massachusetts 02154-2000

Lessor and Lessee named above hereby agree that, except as modified or superseded by this Equipment Schedule or any Addenda hereto, all of the terms and conditions of the **Master Lease Agreement No. 144874** dated December 4, 1996, are hereby incorporated herein and made a part hereof:

1. Equipment:

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | NEW/ USED | MONTHLY LEASE RATE FACTOR PER UNIT |
|-----|--------------------|-----------------------------|-------------|----------|-----------|-------------------------------------|
|     |                    |                             |             |          |           |                                     |

A DETAILED LIST OF EQUIPMENT IS SET FORTH ON THE ATTACHED EXHIBIT "A" WHICH CONSISTS OF ONE (1) PAGE.

| EQUIPMENT LOCATION: | TO BE PROVIDED BY LESSEE ON INSTALLATION |
|---------------------|-------------------------------------------|

2. Monthly Lease Rate Factor for all Units:  **See Addendum One**
3. Initial Term:  **Thirty-six (36) months**
4. Anticipated Installation Date:  **December 1, 2001 through March 31, 2002**
5. Addendum One hereto is incorporated herein by this reference.  [X] (check box if applicable)
6. A photocopy of this Equipment Schedule, and any exhibits or addenda hereto, may be filed as a precautionary Uniform Commercial Code Financing Statement to evidence Lessor's interest in the Equipment.
7. At Lessor's option, this Equipment Schedule shall not be effective unless signed by Lessee and returned to Lessor on or before **December 19, 2001.**

COMPUTER SALES INTERNATIONAL, INC.   LESSEE: LYCOS, INC.

By: ___E. WILLIAM GILLULA___        By: _____
                                        PRESIDENT & COO

Title: _____        Title: ___CFO___

Date: ___JAN 0 8 2002___            Date: ___1/3/02___

PHS/LEBNJ
144874-100(aad)

# ORIGINAL

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE ONE HUNDRED TO MASTER LEASE 144874

| QTY | DESCRIPTION | NEW/ USED | MONTHLY LEASE RATE FACTOR PER UNIT |
|---|---|---|---|
| * | HP, Lexmark Laser Printers<br>Networking Equipment<br>and Telecommunications Equipment<br>Midrange Servers | NEW | .0294 times Unit cost |
| * | Desktop PC's and PC Servers, with a<br>processor speed of 1Ghz<br>Monitors<br>Other Printers | NEW | .02992 times Unit cost |
| * | Miscellaneous standalone hardware, with<br>its own serial number, e.g. Copiers,<br>Scanners, FAX Machines, Clone PC's | NEW | .032 times Unit cost |
| * | Miscellaneous hardware, without its own<br>serial number or a relation to other Units<br>on this Lease, e.g. Cards, Memory,<br>Modems | NEW | .032 times Unit cost |

Initialed by:    Lessor _____

Lessee _BDC_____

PHS/LEBNJ
144874-100(aad)

 

# ORIGINAL

### ADDENDUM ONE TO EQUIPMENT SCHEDULE NO. ONE HUNDRED
### MASTER LEASE AGREEMENT NO. 144874

This Addendum One to "Equipment Schedule One Hundred, Master Lease Agreement No. 144874" (the "Lease"), is dated as of December 12, 2001, and is entered into, by and between COMPUTER SALES INTERNATIONAL, INC. ("Lessor") and LYCOS, INC. ("Lessee").

Notwithstanding anything to the contrary contained in the Lease between the parties hereto, dated on even date herewith and with respect to certain computer equipment (the "Equipment"), and in consideration of the mutual promises, covenants, and conditions in the Lease and contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.    **Controlling Terms:**  This Addendum One shall become a part of the Lease and shall be read together with the Lease as one single document. To the extent that there shall be any conflicts as between the terms and provisions contained in the Lease and those contained herein, the terms and provisions set forth herein shall control.

2.    **Lessor's Purchase of Equipment:**

a) Lessor will purchase the Equipment directly from the vendor(s) designated by Lessee.

b) The Total Cost of the Equipment is not to exceed $500,000.00.  If Lessee wants this Lease to cover costs greater than $500,000.00, Lessor, in its sole discretion, may pay the additional costs.

c) Lessor is not liable for any failure or delay in delivery caused by the manufacturer, vendor or any other party or condition not within Lessor's control.

*3.    **Quantities; Monthly Rental:**

a) This Equipment Schedule covers all machines of the type(s) listed that are installed at Lessee's facilities between December 1, 2001 and March 31, 2002, inclusive.  At this time, Lessee is unable to specify exactly how many Units will be installed; therefore, the "quantity" column has been left blank.  As Lessee determines the quantities of Equipment it requires, Lessee shall have the applicable vendor send to Lessor invoices which will reference this Lease and which will specify machine type(s), quantities, equipment location(s), sales price, serial number(s) and installation date(s) of the Units ordered by Lessee. Upon receipt of each properly prepared invoice, Lessor shall remit the sales price to the vendor.

b) Monthly Rental per Unit will equal the "Monthly Lease Rate Factor" for that Unit, which is specified in the Equipment Schedule or on Exhibit "A", multiplied by the Unit's cost. On April 1, 2002, or as soon thereafter as is reasonably practicable, Lessee shall execute a Certificate of Acceptance for all installed Equipment, which Certificate verifies the actual quantities of machines; and the Monthly Rental per Unit and the total Monthly Rental for the Equipment Schedule, both of which will be expressed as dollar amounts.

4.    **Initial Term:**  The thirty-six (36) month Initial Term shall start on April 1, 2002, and expire on March 31, 2005.  Lessee shall pay to Lessor Daily Rental as set forth in Section 3 of the Master Lease, for each Unit of Equipment for each day from, and including, its installation date through, but not including, April 1, 2002.  Daily Rental shall be due in a lump sum on April 1, 2002.



# ORIGINAL

5.    **Stipulated Loss Value**:  Because the actual quantities of Equipment are unknown at this time, a specific dollar amount Base Value cannot be listed on the Stipulated Loss Value Schedule.  Instead, "Equipment Cost" has been specified so that, at the time of a loss, the Stipulated Loss Value shall be equal to the cost of the Unit times the applicable percentage.  The parties agree, however, that a specific dollar amount Base Value will be set forth in the Certificate of Acceptance referred to above.

6.    **Interest Rate Contingency**:  The Lease Rate Factors (the "Rate Factors") specified in this Lease are based upon the yield to maturity of U.S. Treasury notes maturing in February 2005 (the "Treasury Yield"); the Treasury Yield is currently 3.94%.  Lessor intends to obtain a fixed-rate, non-recourse loan, using only the Equipment and the Lease as collateral (the "Loan").  If, at the time the Loan is closed, the *then current* Treasury Yield exceeds 3.94%, then the Rate Factors shall be increased by .0001 for each 25 basis points by which the *then current* Treasury Yield exceeds the current Treasury Yield of 3.94%.  The Rate Factors will be increased only until the *then current* Treasury Yield exceeds the current Treasury Yield by 300 basis points.  Any increases in the Treasury Yield in excess of 300 basis points will have no further effect on the Rate Factors.  Increases of the Treasury Yield by increments of less than 25 basis points will have no effect on the Rate Factors.

7.    **Serial Number Substitution**:

a) As provided in section 9 of the Master Lease Agreement, Lessee may replace any Unit with an identical or improved specification machine (a "Substitute Unit") as a result of a warranty replacement or other mechanical defect, or a casualty loss situation.  Lessee must notify Lessor of the replacement serial number and configuration of the Substitute Unit as required by section 9 of the Master Lease Agreement.

b) In addition to the circumstances set forth in (a) above, upon expiration of the Initial Term, Lessee may choose to return desktop PC, laptop PC, or PC monitor units with serial numbers other than those listed in the Certificate of Acceptance only upon the following conditions: the Substitute Units must be (1) of an identical or improved configuration as the Units being replaced, (2) in the condition required by section 7 of the Master Lease Agreement, and (3) owned by Lessee.  Lessee must give Lessor written notice of the serial numbers of the Substitute Units along with a detailed list of which serial numbers they are replacing prior to their return to Lessor or else Lessor may decline to accept Substitute Units.  Lessee hereby represents and warrants to Lessor that, upon delivery of any Substitute Units to Lessor, Lessee will be the absolute owner of the Substitute Units; the Substitute Units will be free and clear of all liens, charges and encumbrances; and Lessee will have full right, power and authority to transfer to Lessor title to the Substitute Units.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum One to Equipment Schedule No. One Hundred, Master Lease No. 144874, as of the date set forth below.

COMPUTER SALES INTERNATIONAL, INC.        LYCOS, INC.

By:  ~~E. WILLIAM GILLULA~~                By: _____
         PRESIDENT & COO

Title: _____            Title: CFO

Date:  JAN 0 8 2002                       Date: 1|3|02

HS/LEBNJ
144874-100(aad)

ORIGINAL



# COMPUTER SALES INTERNATIONAL, INC.

9990 Old Olive Street Road, Suite 101
St. Louis, Missouri 63141
(314)997-7010

LESSEE: LYCOS, INC.

STIPULATED LOSS VALUE SCHEDULE TO EQUIPMENT SCHEDULE NUMBER:  ONE HUNDRED

MASTER LEASE AGREEMENT NUMBER:  144874

BASE VALUE: Equipment Cost

| MONTHLY PAYMENTS MADE | STIPULATED LOSS VALUE (PERCENT OF BASE VALUE) | MONTHLY PAYMENTS MADE | STIPULATED LOSS VALUE (PERCENT OF BASE VALUE) | MONTHLY PAYMENTS MADE | STIPULATED LOSS VALUE (PERCENT OF BASE VALUE) |
|---|---|---|---|---|---|
| 0 | 110.0% | 13 | 90.1% | 25 | 71.8% |
| 1 | 108.5 | 14 | 88.6 | 26 | 70.3 |
| 2 | 106.9 | 15 | 87.1 | 27 | 68.8 |
| 3 | 105.4 | 16 | 85.6 | 28 | 67.2 |
| 4 | 103.9 | 17 | 84.0 | 29 | 65.7 |
| 5 | 102.4 | 18 | 82.5 | 30 | 64.2 |
| 6 | 100.8 | 19 | 81.0 | 31 | 62.6 |
| 7 | 99.3 | 20 | 79.4 | 32 | 61.1 |
| 8 | 97.8 | 21 | 77.9 | 33 | 59.6 |
| 9 | 96.3 | 22 | 76.4 | 34 | 58.1 |
| 10 | 94.7 | 23 | 74.9 | 35 | 56.5 |
| 11 | 93.2 | 24 | 73.3 | 36 and thereafter | 55.0 |
| 12 | 91.7 | | | | |

In the event of a loss of less than all of the Equipment listed on the above Equipment Schedule, the Stipulated Loss Value shall be allocated to the Units lost in the same proportion as the Monthly Rental per Unit for the lost Units bears to the Monthly Rental for all Units listed on the Equipment Schedule.

Initialed by Lessor: _____

        Lessee: BDC _____

PHS/LEBNJ
144874-100(aad)

ORIGINAL

### FIRST AMENDMENT TO EQUIPMENT SCHEDULE ONE HUNDRED
### TO MASTER LEASE NO. 144874

This First Amendment to Equipment Schedule No. One Hundred to Master Lease No. 144874, is dated April 17, 2002, and is between COMPUTER SALES INTERNATIONAL, INC. ("Lessor") and LYCOS, INC. ("Lessee").

The parties previously entered into Equipment Schedule No. One Hundred, Master Lease No. 144874 (the "Lease") for the lease of certain units of computer equipment ("Equipment"). Lessee wants to extend the installation date of the Equipment on the Lease and decrease the Total Cost of the Lease. In consideration of the foregoing and the promises and covenants contained in this First Amendment, the parties agree to amend the Lease on the terms and conditions set forth below:

1. The Anticipated Installation Date is extended through April 30, 2002. All references in the Lease to "March 31, 2002," "April 1, 2002," and "March 31, 2005" are changed to "April 30, 2002," "May 1, 2002" and "April 30, 2005," respectively.

2. The Total Cost of the Equipment covered by this Lease shall be reduced by $300,000.00 to $200,000.00.

3. All other terms and conditions of the Lease remain unchanged and in full force and effect.

The parties have executed this First Amendment to Equipment Schedule No. One Hundred, Master Lease No. 144874, as of the date set forth below.

COMPUTER SALES INTERNATIONAL, INC.    LYCOS, INC.

By: _____    By: _____

Title: ___E. WILLIAM GILLULA___    Title: ___CFO___
        PRESIDENT & COO

Date: ___MAY 6 2002___    Date: ___5|2|02___

PHS/LEBNJ

144874-100.a1(gd).doc

**EXHIBIT 3**



9990 Old Olive Street Road
St. Louis, MO 63141
(314) 997-7010

# CERTIFICATE OF ACCEPTANCE

This Certificate is executed pursuant to Equipment Schedule Number **ONE HUNDRED**, dated as of **December 12, 2001**, to **Master Lease Number 144874**, dated December 4, 1996, between COMPUTER SALES INTERNATIONAL, INC. (the "Lessor") and **LYCOS, INC.** (the "Lessee").

Lessee hereby certifies that the Units set forth below, as also described in the above Equipment Schedule, have been delivered and accepted by Lessee as Units of Equipment under the Master Lease Agreement on the Lease Commencement Date indicated below.

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | NEW/ USED | MONTHLY RENTAL PER UNIT |
|---|---|---|---|---|---|---|
| | | | A detailed list of Equipment is set forth on the attached Exhibit "A" which consists of 2 pages. | | | |

**EQUIPMENT LOCATION:**    SEE ATTACHED EXHIBIT "A"

LEASE COMMENCEMENT DATE: **SEE ATTACHED EXHIBIT "A"**
LEASE EXPIRATION DATE: **04/30/2005**
MONTHLY RENTAL AMOUNT: **$6,082.29**
STIP LOSS BASE VALUE: **$196,273.38**

A photocopy of this Certificate may be filed as a precautionary Uniform Commercial Code financing statement to evidence Lessor's interest in the Equipment.

COMPUTER SALES INTERNATIONAL, INC.   LESSEE: LYCOS, INC.

By: _____          By: _____
          ANGIE BADER
Title: VICE PRESIDENT                 Title: CFO

Date: _____June 6, 2002_____      Date: 6|27|02

PHS/BOST

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. ONE HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 4 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 78P5591 | 332026 | 12923 | NEW | $160.58 | 03/22/02 |
| | | MEMORY (1) | 256MB MEMORY | 78P5680 | | | | | |
| | | 24P3512 (1) | 1.13GHZ PROCESSOR OPTION | 78P5653 | | | | | |
| | | 33L3326 (2) | 1GB MEMORY | 78P5691 | | | | | |
| | | 37L7205 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (1) | 270W REDUNDANT POWER SUPPLY | | | | | | |
| | | 06P5736 (1) | 4MX 2CH PCI TO U160 SCSI ADAPTER | | | | | | |
| | | | | | PO NUMBER: 12923 | | | | |
| 4 | IBM 6794-37U | | NETVISTA M41 P4/2.0GHZ | KA88XY2 | 333188 | 13036 | NEW | $43.82 | 04/12/02 |
| | | DRIVE (1) | 40GB HARD DRIVE | KA88XZ1 | | | | | |
| | | MEMORY (2) | 256MB MEMORY | KA88XZ7 | | | | | |
| | | 10K3790 (1) | CDRW/DVD ROM DRIVE | KA88XZ8 | | | | | |
| | | | | | PO NUMBER: 13036 | | | | |
| | | | **EQUIPMENT LOCATION: 850 N SHORELINE BLVD, MOUNTAIN VIEW, CA 94043** | | | | | | |
| 3 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 78N3329 | 328454 | 12621 | NEW | $120.06 | 01/03/02 |
| | | MEMORY (1) | 256MB MEMORY | 78N3375 | | | | | |
| | | 33L3322 (1) | 256MB MEMORY | 78N3353 | | | | | |
| | | 33L3324 (1) | 512MB MEMORY | | | | | | |
| | | 19K0656 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (2) | 270W POWER SUPPLY | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| 1 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 78N3372 | 328454 | 12621 | NEW | $125.12 | 01/03/02 |
| | | MEMORY (1) | 256MB MEMORY | | | | | | |
| | | 33L3322 (1) | 256MB MEMORY | | | | | | |
| | | 33L3324 (1) | 512MB MEMORY | | | | | | |
| | | 19K0656 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (3) | 270W POWER SUPPLY | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| | | | | | PO NUMBER: 12621 | | | | |
| | | | **EQUIPMENT LOCATION: 660 THIRD ST, SAN FRANCISCO, CA 94107** | | | | | | |
| 1 | MISC | | ADC SCALAR 100 DLT AUTOLOADER | 8L0201719 | 331486 | 12799 | NEW | $1,619.37 | 03/07/02 |
| | | CABLE (3) | 3FT EXT SCSI CABLE | | 332450 | | | | |
| | | CABLE (3) | MULTIMODE TERMINATOR CABLE | | | | | | |
| | | GBIC (10) | MULTIMODE OPTICAL GBIC | | | | | | |
| | | ADAPTER (5) | HOST BUS ADAPTER | | | | | | |
| | | KIT (1) | RACKMOUNT KIT | | | | | | |
| | | POWER (1) | SECONDARY POWER SUPPLY | | | | | | |
| | | MAILBOX (1) | SDLT MAILBOX UPGRADE | | | | | | |
| | | COLUMN (1) | 15 SLOT SCALAR 10 DLT UPGRADE | | | | | | |
| | | DRIVE (4) | 220GB SDLT EXP DRIVE | | | | | | |
| | | CONVERTER (1) | SNC 5101 2GB FIBER CONVERTER | | | | | | |
| | | CABLE (10) | 15M OPTICAL MULTIMODE CABLE | | | | | | |
| 1 | MISC | | ADC SILKWORK 2800 BROCADE SWITCH | 515812A | 331486 | 12799 | NEW | $633.26 | 03/07/02 |
| | | | | | PO NUMBER: 12799 | | | | |
| 1 | IBM 2662-95U | | THINKPAD T22 P3/800MHZ | FXAZ805 | 91726795 | 12998 | NEW | $71.65 | 04/01/02 |
| | | | | | PO NUMBER: 12998 | | | | |

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. ONE HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 10 | IBM 2647-4MU | | THINKPAD T23 P3/1.13GHZ | 78AYH7H | 333644 | 13094 | NEW | $69.15 | 04/24/02 |
| | | | | 78ZYG1K | | | | | |
| | | | | 78ZYA4X | | | | | |
| | | | | 78ZYA1C | | | | | |
| | | | | 78ZYF3F | | | | | |
| | | | | 78ZXV8D | | | | | |
| | | | | 78ZYA4Y | | | | | |
| | | | | 78AYH8D | | | | | |
| | | | | 78ZYD5K | | | | | |
| | | | | 78ZXW8T | | | | | |

PO NUMBER: 13094

EQUIPMENT LOCATION: 100 5TH AVE, WALTHAM, MA  02451

| 2 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 23A6952 | 328098 | 12592 | NEW | $115.00 | 12/26/01 |
| | | MEMORY (1) | 256MB MEMORY | 23A6982 | | | | | |
| | | 33L3322 (1) | 256MB MEMORY | | | | | | |
| | | 33L3324 (1) | 512MB MEMORY | | | | | | |
| | | 19K0656 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (1) | 270W REDUNDANT POWER SUPPLY | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |

PO NUMBER: 12592

| 2 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 23A6958 | 328096 | 12593 | NEW | $115.00 | 12/26/01 |
| | | MEMORY (1) | 256MB MEMORY | 23A6969 | | | | | |
| | | 33L3322 (1) | 256MB MEMORY | | | | | | |
| | | 33L3324 (1) | 512MB MEMORY | | | | | | |
| | | 19K0656 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (1) | 270W REDUNDANT POWER SUPPLY | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |

PO NUMBER: 12593

| 1 | IBM 2647-4MU | | THINKPAD T23 P3/1.13GHZ | 78DB0X8 | 328239 | 12624 | NEW | $74.72 | 12/28/01 |

PO NUMBER: 12624

| 3 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 78P4963 | 331234 | 12835 | NEW | $133.94 | 03/05/02 |
| | | MEMORY (1) | 256MB MEMORY | 78P4998 | | | | | |
| | | 33L3326 (2) | 1GB MEMORY | 78P4974 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| | | 37L7205 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (1) | 270W REDUNDANT POWER SUPPLY | | | | | | |
| 4 | IBM 8669-2RX | | X SERIES 342 P3/1.13GHZ | 78P5123 | 331265 | 12835 | NEW | $161.33 | 03/06/02 |
| | | MEMORY (1) | 256MB MEMORY | 78P4968 | | | | | |
| | | 24P3512 (1) | 1.13GHZ PROCESSOR OPTION | 78P5022 | | | | | |
| | | 33L3326 (2) | 1GB MEMORY | 78P4967 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| | | 37L7205 (3) | 18.2GB HARD DRIVE | | | | | | |
| | | 37L6880 (1) | 270W REDUNDANT POWER SUPPLY | | | | | | |

PO NUMBER: 12835

| 1 | IBM 2647-4MU | | THINKPAD T23 P3/1.13GHZ | 78TRP0F | 332423 | 12969 | NEW | $68.78 | 03/29/02 |

PO NUMBER: 12969

| 1 | IBM 6794-37U | | NETVISTA M41 P4/2.0GHZ | KA88YA0 | 333154 | 13037 | NEW | $43.82 | 04/11/02 |
| | | DRIVE (1) | 40GB HARD DRIVE | | | | | | |
| | | MEMORY (2) | 256MB MEMORY | | | | | | |
| | | 10K3790 (1) | CDRW/DVD ROM DRIVE | | | | | | |

PO NUMBER: 13037

| 1 | IBM 2647-4MU | | THINKPAD T23 P3/1.13GHZ | 78ZXZ1C | 333287 | 13071 | NEW | $69.15 | 04/16/02 |

PO NUMBER: 13071

EQUIPMENT LOCATION: 400-2 TOTTEN POND RD, WALTHAM, MA  02451

SWM 314-426-6577

**EXHIBIT 4**

# CSI

## COMPUTER SALES INTERNATIONAL, INC.

PLEASE DIRECT INQUIRIES TO THE ACCOUNTS RECEIVABLE DEPARTMENT: 314-997-7010

**INVOICE NO.**  584380

LYCOS INC
100 FIFTH AVENUE
MAILSTOP 507
WALTHAM, MA 02451
ATTN:ACCOUNTS PAYABLE

REMIT PAYMENT TO

COMPUTER SALES INTERNATIONAL
PO BOX 775485
ST LOUIS, MO 63177-5485
ATTN:ACCOUNTS RECEIVABLE

| PAGE | CONTRACT NUMBER | RENTAL PERIOD | | DUE DATE | INVOICE DATE | TYPE | SALESMAN |
|------|-----------------|---------------|---|----------|--------------|------|----------|
| 1 | 144874-100 | 11/01/04 THRU 11/30/04 | | 11/01/04 | 09/24/04 | LEASE | PHS |

| CUSTOMER REFERENCE | RENT | INSURANCE | TAXES | TOTAL |
|---------------------|------|-----------|-------|-------|
| | 6,082.29 | | | 6,082.29 |
| **TOTALS** | 6,082.29 | | | 6,082.29 |
| | | | | ============ |
| | | | | Please Remit |

SWM 314-426-6677

492238

# CSI

## COMPUTER SALES INTERNATIONAL, INC.

PLEASE DIRECT INQUIRIES TO THE ACCOUNTS RECEIVABLE DEPARTMENT: 314-997-7010

LYCOS INC
100 FIFTH AVENUE
MAILSTOP 507
WALTHAM, MA 02451
ATTN: ACCOUNTS PAYABLE

**REMIT PAYMENT TO**

COMPUTER SALES INTERNATIONAL
PO BOX 775485
ST LOUIS, MO 63177-5485
ATTN: ACCOUNTS RECEIVABLE

## INVOICE NO. 587548

| PAGE | CONTRACT NUMBER | RENTAL PERIOD | | DUE DATE | INVOICE DATE | TYPE | SALESMAN |
|------|-----------------|---------------|---------|----------|--------------|------|----------|
| 1 | 12/01/04 | THRU | 12/31/04 | 12/01/04 | 10/22/04 | LEASE | PH8 |

| | CUSTOMER REFERENCE | RENT | INSURANCE | TAXES | TOTAL |
|---|---|---|---|---|---|
| 144874-100 | | 6,082.29 | | | 6,082.29 |
| **TOTALS** | | 6,082.29 | | | 6,082.29 |

Please Remit

  

ORIGINAL

# CSI

## COMPUTER SALES INTERNATIONAL, INC.
9990 Old Olive Street Road, Suite 101
St. Louis, Missouri 63141
(314)997-7010

### EQUIPMENT SCHEDULE NO. TWO HUNDRED Dated as of December 12, 2001

LESSOR:                                    LESSEE:    **LYCOS, INC.**
                                                       400-2 Totten Pond Road
**COMPUTER SALES INTERNATIONAL, INC.**                 Waltham, Massachusetts 02154-2000

Lessor and Lessee named above hereby agree that, except as modified or superseded by this Equipment Schedule or any Addenda hereto, all of the terms and conditions of the **Master Lease Agreement No. 144874** dated December 4, 1996, are hereby incorporated herein and made a part hereof:

1. Equipment:

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | NEW/ USED | MONTHLY LEASE RATE FACTOR PER UNIT |
|-----|--------------------|-----------------------------|-------------|----------|-----------|-------------------------------------|
|     |                    |                             |             |          |           |                                     |

A DETAILED LIST OF EQUIPMENT IS SET FORTH ON THE ATTACHED EXHIBIT "A" WHICH CONSISTS OF ONE (1) PAGE.

EQUIPMENT LOCATION:            TO BE PROVIDED BY LESSEE ON INSTALLATION

2. Monthly Lease Rate Factor for all Units:  **See Addendum One**
3. Initial Term:  **Thirty-six (36) months**
4. Anticipated Installation Date:  **December 1, 2001 through March 31, 2002**
5. Addendum One hereto is incorporated herein by this reference. [X] (check box if applicable)
6. A photocopy of this Equipment Schedule, and any exhibits or addenda hereto, may be filed as a precautionary Uniform Commercial Code Financing Statement to evidence Lessor's interest in the Equipment.
7. At Lessor's option, this Equipment Schedule shall not be effective unless signed by Lessee and returned to Lessor on or before **December 19, 2001.**

COMPUTER SALES INTERNATIONAL, INC.   LESSEE: LYCOS, INC.

By: _____          By: _____

Title: _____E. WILLIAM GILLULA_____   Title: ____CFO____
           PRESIDENT & COO

Date: _____JAN 0 8 2002_____          Date: ____1/3/02____

PHS/LEBNJ
144874-200(aad)

 

**ORIGINAL**

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE TWO HUNDRED TO MASTER LEASE 144874

| QTY | DESCRIPTION | NEW/ USED | MONTHLY LEASE RATE FACTOR PER UNIT |
|-----|-------------|-----------|------------------------------------|
| * | HP, Lexmark Laser Printers Networking Equipment and Telecommunications Equipment Midrange Servers | NEW | .0294 times Unit cost |
| * | Desktop PC's and PC Servers, with a processor speed of 1Ghz Monitors Other Printers | NEW | .02992 times Unit cost |
| * | Miscellaneous standalone hardware, with its own serial number, e.g. Copiers, Scanners, FAX Machines, Clone PC's | NEW | .032 times Unit cost |
| * | Miscellaneous hardware, without its own serial number or a relation to other Units on this Lease, e.g. Cards, Memory, Modems | NEW | .032 times Unit cost |

Initialed by:    Lessor _____

Lessee _BDL_

PHS/LEBNJ
144874-200(aad)

 

**ORIGINAL**

### ADDENDUM ONE TO EQUIPMENT SCHEDULE NO. TWO HUNDRED
### MASTER LEASE AGREEMENT NO. 144874

This Addendum One to "Equipment Schedule Two Hundred, Master Lease Agreement No. 144874" (the "Lease"), is dated as of December 12, 2001, and is entered into, by and between COMPUTER SALES INTERNATIONAL, INC. ("Lessor") and LYCOS, INC. ("Lessee").

Notwithstanding anything to the contrary contained in the Lease between the parties hereto, dated on even date herewith and with respect to certain computer equipment (the "Equipment"), and in consideration of the mutual promises, covenants, and conditions in the Lease and contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree as follows:

1.  **Controlling Terms:** This Addendum One shall become a part of the Lease and shall be read together with the Lease as one single document. To the extent that there shall be any conflicts as between the terms and provisions contained in the Lease and those contained herein, the terms and provisions set forth herein shall control.

2.  **Lessor's Purchase of Equipment:**

    a) Lessor will purchase the Equipment directly from the vendor(s) designated by Lessee.

    b) The Total Cost of the Equipment is not to exceed $500,000.00. If Lessee wants this Lease to cover costs greater than $500,000.00, Lessor, in its sole discretion, may pay the additional costs.

    c) Lessor is not liable for any failure or delay in delivery caused by the manufacturer, vendor or any other party or condition not within Lessor's control.

*3.  **Quantities; Monthly Rental:**

    a) This Equipment Schedule covers all machines of the type(s) listed that are installed at Lessee's facilities between December 1, 2001 and March 31, 2002, inclusive. At this time, Lessee is unable to specify exactly how many Units will be installed; therefore, the "quantity" column has been left blank. As Lessee determines the quantities of Equipment it requires, Lessee shall have the applicable vendor send to Lessor invoices which will reference this Lease and which will specify machine type(s), quantities, equipment location(s), sales price, serial number(s) and installation date(s) of the Units ordered by Lessee. Upon receipt of each properly prepared invoice, Lessor shall remit the sales price to the vendor.

    b) Monthly Rental per Unit will equal the "Monthly Lease Rate Factor" for that Unit, which is specified in the Equipment Schedule or on Exhibit "A", multiplied by the Unit's cost. On April 1, 2002, or as soon thereafter as is reasonably practicable, Lessee shall execute a Certificate of Acceptance for all installed Equipment, which Certificate verifies the actual quantities of machines; and the Monthly Rental per Unit and the total Monthly Rental for the Equipment Schedule, both of which will be expressed as dollar amounts.

4.  **Initial Term:** The thirty-six (36) month Initial Term shall start on April 1, 2002, and expire on March 31, 2005. Lessee shall pay to Lessor Daily Rental as set forth in Section 3 of the Master Lease, for each Unit of Equipment for each day from, and including, its installation date through, but not including, April 1, 2002. Daily Rental shall be due in a lump sum on April 1, 2002.



## ORIGINAL



5.    **Stipulated Loss Value**:  Because the actual quantities of Equipment are unknown at this time, a specific dollar amount Base Value cannot be listed on the Stipulated Loss Value Schedule.  Instead, "Equipment Cost" has been specified so that, at the time of a loss, the Stipulated Loss Value shall be equal to the cost of the Unit times the applicable percentage.  The parties agree, however, that a specific dollar amount Base Value will be set forth in the Certificate of Acceptance referred to above.

6.    **Interest Rate Contingency**:  The Lease Rate Factors (the "Rate Factors") specified in this Lease are based upon the yield to maturity of U.S. Treasury notes maturing in February 2005 (the "Treasury Yield"); the Treasury Yield is currently 3.94%.  Lessor intends to obtain a fixed-rate, non-recourse loan, using only the Equipment and the Lease as collateral (the "Loan").  If, at the time the Loan is closed, the *then current* Treasury Yield exceeds 3.94%, then the Rate Factors shall be increased by .0001 for each 25 basis points by which the *then current* Treasury Yield exceeds the current Treasury Yield of 3.94%.  The Rate Factors will be increased only until the *then current* Treasury Yield exceeds the current Treasury Yield by 300 basis points.  Any increases in the Treasury Yield in excess of 300 basis points will have no further effect on the Rate Factors.  Increases of the Treasury Yield by increments of less than 25 basis points will have no effect on the Rate Factors.

7.    **Serial Number Substitution**:

a) As provided in section 9 of the Master Lease Agreement, Lessee may replace any Unit with an identical or improved specification machine (a "Substitute Unit") as a result of a warranty replacement or other mechanical defect, or a casualty loss situation.  Lessee must notify Lessor of the replacement serial number and configuration of the Substitute Unit as required by section 9 of the Master Lease Agreement.

b) In addition to the circumstances set forth in (a) above, upon expiration of the Initial Term, Lessee may choose to return desktop PC, laptop PC, or PC monitor units with serial numbers other than those listed in the Certificate of Acceptance only upon the following conditions:  the Substitute Units must be (1) of an identical or improved configuration as the Units being replaced, (2) in the condition required by section 7 of the Master Lease Agreement, and (3) owned by Lessee.  Lessee must give Lessor written notice of the serial numbers of the Substitute Units along with a detailed list of which serial numbers they are replacing prior to their return to Lessor or else Lessor may decline to accept Substitute Units.  Lessee hereby represents and warrants to Lessor that, upon delivery of any Substitute Units to Lessor, Lessee will be the absolute owner of the Substitute Units; the Substitute Units will be free and clear of all liens, charges and encumbrances; and Lessee will have full right, power and authority to transfer to Lessor title to the Substitute Units.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum One to Equipment Schedule No. Two Hundred, Master Lease No. 144874, as of the date set forth below.

COMPUTER SALES INTERNATIONAL, INC.          LYCOS, INC.

By: _____          By: _____

Title: _____          Title: _____CFO_____

Date: _____          Date: _____1/3/02_____

E. WILLIAM GILLULA
PRESIDENT & COO

JAN 0 8 2002

PHS/LEBNJ

144874-200(aad)



## ORIGINAL



# *COMPUTER SALES INTERNATIONAL, INC.*

9990 Old Olive Street Road, Suite 101
St. Louis, Missouri 63141
(314)997-7010

LESSEE: LYCOS, INC.

STIPULATED LOSS VALUE SCHEDULE TO EQUIPMENT SCHEDULE NUMBER:  TWO HUNDRED

MASTER LEASE AGREEMENT NUMBER: 144874

BASE VALUE:  Equipment Cost

| MONTHLY PAYMENTS MADE | STIPULATED LOSS VALUE (PERCENT OF BASE VALUE) | MONTHLY PAYMENTS MADE | STIPULATED LOSS VALUE (PERCENT OF BASE VALUE) | MONTHLY PAYMENTS MADE | STIPULATED LOSS VALUE (PERCENT OF BASE VALUE) |
|---|---|---|---|---|---|
| 0 | 110.0% | 13 | 90.1% | 25 | 71.8% |
| 1 | 108.5 | 14 | 88.6 | 26 | 70.3 |
| 2 | 106.9 | 15 | 87.1 | 27 | 68.8 |
| 3 | 105.4 | 16 | 85.6 | 28 | 67.2 |
| 4 | 103.9 | 17 | 84.0 | 29 | 65.7 |
| 5 | 102.4 | 18 | 82.5 | 30 | 64.2 |
| 6 | 100.8 | 19 | 81.0 | 31 | 62.6 |
| 7 | 99.3 | 20 | 79.4 | 32 | 61.1 |
| 8 | 97.8 | 21 | 77.9 | 33 | 59.6 |
| 9 | 96.3 | 22 | 76.4 | 34 | 58.1 |
| 10 | 94.7 | 23 | 74.9 | 35 | 56.5 |
| 11 | 93.2 | 24 | 73.3 | 36 and thereafter | 55.0 |
| 12 | 91.7 | | | | |

In the event of a loss of less than all of the Equipment listed on the above Equipment Schedule, the Stipulated Loss Value shall be allocated to the Units lost in the same proportion as the Monthly Rental per Unit for the lost Units bears to the Monthly Rental for all Units listed on the Equipment Schedule.

Initialed by Lessor:_____

        Lessee: ℛℛℒ_____

PHS/LEBNJ
144874-200(aad)

 

**FIRST AMENDMENT TO EQUIPMENT SCHEDULE TWO HUNDRED
TO MASTER LEASE NO. 144874**

This First Amendment to Equipment Schedule No. Two Hundred to Master Lease No. 144874, is dated April 17, 2002, and is between COMPUTER SALES INTERNATIONAL, INC. ("Lessor") and LYCOS, INC. ("Lessee").

The parties previously entered into Equipment Schedule No. Two Hundred, Master Lease No. 144874 (the "Lease") for the lease of certain units of computer equipment ("Equipment"). Lessee wants to extend the installation date of the Equipment on the Lease. In consideration of the foregoing and the promises and covenants contained in this First Amendment, the parties agree to amend the Lease on the terms and conditions set forth below:

1. The Anticipated Installation Date is extended through April 30, 2002. All references in the Lease to "March 31, 2002," "April 1, 2002," and "March 31, 2005" are changed to "April 30, 2002," "May 1, 2002" and "April 30, 2005," respectively.

2. All other terms and conditions of the Lease remain unchanged and in full force and effect.

The parties have executed this First Amendment to Equipment Schedule No. Two Hundred, Master Lease No. 144874, as of the date set forth below.

COMPUTER SALES INTERNATIONAL, INC.       LYCOS, INC.

By: _____       By: _____

Title: __E. WILLIAM GILLULA__             Title: __CFO__
        PRESIDENT & COO

Date: _____MAY  6 2002_____             Date: __5|2|02__

PHS/LEBNJ

144874-200.a1(gd).doc




**EXHIBIT**

**6**

**CSI**

**COMPUTER SALES INTERNATIONAL, INC.**

9990 Old Olive Street Road
St. Louis, MO 63141
(314) 997-7010

# CERTIFICATE OF ACCEPTANCE

This Certificate is executed pursuant to Equipment Schedule Number **TWO HUNDRED**, dated as of **December 12, 2001**, to Master Lease Number 144874, dated December 4, 1996, between COMPUTER SALES INTERNATIONAL, INC. (the "Lessor") and LYCOS, INC. (the "Lessee").

Lessee hereby certifies that the Units set forth below, as also described in the above Equipment Schedule, have been delivered and accepted by Lessee as Units of Equipment under the Master Lease Agreement on the Lease Commencement Date indicated below.

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | NEW/ USED | MONTHLY RENTAL PER UNIT |
|---|---|---|---|---|---|---|
| | | A detailed list of Equipment is set forth on the attached Exhibit "A" which consists of 6 pages. | | | | |

**EQUIPMENT LOCATION:**    SEE ATTACHED EXHIBIT "A"

**LEASE COMMENCEMENT DATE: SEE ATTACHED EXHIBIT "A"**
**LEASE EXPIRATION DATE: 04/30/2005**
**MONTHLY RENTAL AMOUNT: $43,954.35**
**STIP LOSS BASE VALUE: $1,457,166.82**

A photocopy of this Certificate may be filed as a precautionary Uniform Commercial Code financing statement to evidence Lessor's interest in the Equipment.

**COMPUTER SALES INTERNATIONAL, INC.    LESSEE: LYCOS, INC.**

By: _Angie Bader_      By: _BrDg_

ANGIE BADER

Title: VICE PRESIDENT      Title: CFO

Date: June 21, 2002      Date: 7/15/02

PHS/LEBJN

 

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. TWO HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | MISC | | SCALAR 1000 DLT DRIVE | 74913-A | 109505 | 12589 | NEW | $229.24 | 03/15/02 |
| | | CABLE (1) | INTERFACE CABLE | | | | | | |
| 1 | MISC | | SCALAR 1000 DLT DRIVE | 74913-B | 109505 | 12589 | NEW | $231.88 | 03/15/02 |
| | | CABLE (1) | INTERFACE CABLE | | | | | | |
| | | | **PO NUMBER: 12589** | | | | | | |
| 2 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78Y0125 | 328341 | 12627 | NEW | $130.20 | 01/03/02 |
| | | MEMORY (1) | 256MB MEMORY | 78Y0016 | | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | | | | | | |
| | | 37L7206 (2) | 36GB HARD DRIVE | | | | | | |
| | | 22P4901 (1) | 10/100 2PORT SERVER ADAPTER | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| 2 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78Y0010 | 328341 | 12627 | NEW | $131.56 | 01/03/02 |
| | | MEMORY (1) | 256MB MEMORY | 78X9567 | | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | | | | | | |
| | | 37L7206 (2) | 36GB HARD DRIVE | | | | | | |
| | | 22P4901 (1) | 10/100 2PORT SERVER ADAPTER | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| | | 06P4792 (1) | CABLE | | | | | | |
| | | | **PO NUMBER: 12627** | | | | | | |
| 1 | NETWORK APPLIANCE | | F740 FILER SERVER | 1029099 | 72250 | 12630 | NEW | $1,332.35 | 12/28/01 |
| | | X2030B-C (1) | FC-AL ADAPTER W/ CABLE & TERM | | | | | | |
| | | X1012C-C (1) | QUAD 10/100 BASE-T ADAPTER | | | | | | |
| | | X800E (2) | POWER CABLE | | | | | | |
| | | X6506A (6) | LRC UPGRADE KIT SS FC9/9D | | | | | | |
| | | SP-221D (4) | 18GB HARD DRIVE | | | | | | |
| | | X2040B (4) | FC-AL ADAPTER W/ CABLE & TERM | | | | | | |
| | | X1900B (4) | CLUSTER SNET ADAPTER 4M CABLE | | | | | | |
| | | | **PO NUMBER: 12630** | | | | | | |
| 2 | MISC | | CACHEFLOW SA-725 | 13357 | 12012951 | 12631 | NEW | $415.90 | 12/26/01 |
| | | DRIVE (1) | 36GB HARD DRIVE | 13159 | | | | | |
| | | MEMORY (1) | 1GB MEMORY | | | | | | |
| | | CORD (1) | 115V POWER CORD | | | | | | |
| | | | **PO NUMBER: 12631** | | | | | | |
| 1 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78X9781 | 328338 | 12648 | NEW | $108.34 | 01/03/02 |
| | | MEMORY (1) | 256MB MEMORY | | | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | | | | | | |
| | | 33L3144 (5) | 256MB MEMORY | | | | | | |
| | | 37L7205 (2) | 18.2GB HARD DRIVE | | | | | | |
| | | | **PO NUMBER: 12648** | | | | | | |
| 1 | SUN XT3BES-RR-22-655 | | T3 STORAGE DEVICE 655GB | S138S0455 | 31966 | 12656 | NEW | $1,776.67 | 01/04/02 |
| | | X2632A (1) | EX000 PCI I/O BOARD | | 32124 | | | | |
| | | CONTROLLER (2) | 1GB CONTROLLER | | | | | | |
| | | X311L (1) | POWER CORD | | | | | | |
| | | X6799A (2) | PCI SINGLE FC NETWORK ADAPTER | | | | | | |
| | | | **PO NUMBER: 12656** | | | | | | |
| 7 | SUN X7005A | | 512MB MEMORY | N/A | 5265 | 12978 | NEW | $16.00 | 03/29/02 |
| 10 | SUN X1194A | | 400MHZ PROCESSOR MODULE | 079610 | 5265 | 12978 | NEW | $38.40 | 03/29/02 |
| | | | | 079659 | | | | | |
| | | | | 123788 | | | | | |
| | | | | 123761 | | | | | |
| | | | | 120726 | | | | | |
| | | | | 126180 | | | | | |
| | | | | 123924 | | | | | |
| | | | | 121270 | | | | | |
| | | | | 123928 | | | | | |
| | | | | 123912 | | | | | |

 

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. TWO HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 10 | SUN X5242A | | 36GB HARD DRIVE | 0124X00BST | 5265 | 12978 | NEW | $24.32 | 03/29/02 |
| | | | | 0124X00BL6 | | | | | |
| | | | | 0124X00C30 | | | | | |
| | | | | 0124X00FSD | | | | | |
| | | | | 0124X00C33 | | | | | |
| | | | | 0124X00C16 | | | | | |
| | | | | 0124X00C39 | | | | | |
| | | | | 0124X00F40 | | | | | |
| | | | | 0124X00BP4 | | | | | |
| | | | | 0124X00BWO | | | | | |

PO NUMBER: 12978

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 4 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78GR995 | 33926 | 12979 | NEW | $125.30 | 04/11/02 |
| | | MEMORY (1) | 256MB MEMORY | 78GT041 | 34060 | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR UPGRADE | 78GT087 | 34282 | | | | |
| | | 37L7206 (2) | 36GB HARD DRIVE | 78GT111 | | | | | |
| | | CACHE (1) | 512K CACHE | | | | | | |
| | | 06P4792 (1) | CCT TO PS/2 VGA BREAKOUT CABLE | | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | | | | | | |
| | | 06P5740 (1) | SERVERAID 4LX ADAPTER | | | | | | |
| | | 22P4901 (1) | 10/100 2PORT SERVER ADAPTER | | | | | | |

PO NUMBER: 12979

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | NETWORK APPLIANCE | | F840 FILER SYSTEM | 1022830 | 79659RI | 12980 | USED | $3,673.82 | 04/18/02 |
| | | F840-BASE-3GB (1) | F840 3GB/128 NO PROT BASE | | | | | | |
| | | X234B-C (28) | 36GB FC DISK DRIVE | | | | | | |
| | | X500-C (2) | BASE DS14 W/AC POWER SUPPLY | | | | | | |
| | | X5501A-C (2) | DS14 LS MODULE CU-CU PORT | | | | | | |
| | | X5502A-C (2) | DS14 LS MODULE OP-CU PORT | | | | | | |
| | | X5509A-C (2) | DS14 RACK MOUNTING KIT | | | | | | |
| | | X1012C-C (1) | QUAD 10/100BASE-T ADAPTER | | | | | | |
| | | X1025C-C (1) | 1000BASE-SX GB ETHERNET | | | | | | |
| | | X2044A-C (1) | 2CHANNEL OPTICAL FC ADAPTER | | | | | | |
| | | X6510A-C (2) | 5M OPTICAL CABLE-SC CONNECTOR | | | | | | |
| | | X800EF (6) | POWER CABLE | | | | | | |

PO NUMBER: 12980

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 2 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78GP684 | FT53236 | 13026 | NEW | $83.18 | 04/24/02 |
| | | MEMORY (1) | 256MB MEMORY | 78GR355 | | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR UPGRADE | | | | | | |
| | | 10K0020 (3) | 256MB MEMORY | | | | | | |
| | | 06P5754 (1) | 18.2GB HARD DRIVE | | | | | | |

PO NUMBER: 13026

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 2 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78KY629 | 34271 | 13082 | NEW | $125.30 | 04/01/31 |
| | | MEMORY (1) | 256MB MEMORY | 78KY939 | | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR UPGRADE | | | | | | |
| | | 37L7206 (2) | 36GB HARD DRIVE | | | | | | |
| | | CACHE (1) | 512K CACHE | | | | | | |
| | | 06P4792 (1) | CCT TO PS/2 VGA BREAKOUT CABLE | | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | | | | | | |
| | | 06P5740 (1) | SERVERAID 4LX ADAPTER | | | | | | |
| | | 22P4901 (1) | 10/100 2PORT SERVER ADAPTER | | | | | | |

PO NUMBER: 13082

EQUIPMENT LOCATION: 850 N SHORELINE BLVD, MOUNTAIN VIEW, CA 94043

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 7 | SUN A34-ULD1-1GGB1 | | ENTERPRISE 220R SERVER 450MHZ | 044A0B02 | | 1270 | 13080 | UNUSED | $390.40 | 04/22/02 |
| | | X1195A (2) | 450MHZ/4MB PROCESSOR OPTION | 044A0BB5 | | | | | |
| | | X5242A (2) | 36GB HARD DRIVE | 043C18DA | | | | | |
| | | X7004A (4) | 1GB MEMORY | 043C17DF | | | | | |
| | | X1034A (1) | QFE PCI CARD | 043C1815 | | | | | |
| | | | | 046C0EB0 | | | | | |
| | | | | 044A0723 | | | | | |
| 1 | SUN SG-XARY030A | | 72IN EXPANSION RACK | N/A | | 1270 | 13080 | UNUSED | $178.72 | 04/22/02 |
| | | X3858A (2) | POWER CABLE | | | | | | |
| | | X9818A (1) | FRONT DOOR | | | | | | |
| | | X9819A (1) | FAN KIT | | | | | | |

PO NUMBER: 13080

EQUIPMENT LOCATION: 4700 OLD IRONSIDES DR, SANTA CLARA, CA 94054

 

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. TWO HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | SONY | | VAIO RX680G P/2 0GHZ | S0130005352 | FJ96747 | 12763 | NEW | $61.57 | 02/26/02 |
| 1 | APPLE | | IMAC G4 700MHZ | SQT213E5JMAY | FR70078 | 12763 | NEW | $39.74 | 04/12/02 |
| | | | **PO NUMBER: 12763** | | | | | | |
| 1 | IBM 2662-95U | | THINKPAD X22 P3/800MHZ | FXY7718 | 91638912 91637033 | 12783 | NEW | $115.21 | 02/15/02 |
| | | | **PO NUMBER: 12783** | | | | | | |
| 1 | IBM 2647-4MU | | THINKPAD T23 P3/1.13GHZ | 78TPZ8H | 91715345 | 12967 | NEW | $68.77 | 03/26/02 |
| | | | **PO NUMBER: 12967** | | | | | | |
| 24 | IBM 8654-5CX | | X SERIES 135 SERVER P3/1GHZ | 78MW023 | 80532179 | 12989 | NEW | $109.91 | 04/26/02 |
| | | 10K0053 (1) | P3/1GHZ PROCESSOR UPGRADE | 78MW026 | | | | | |
| | | 06P5754 (1) | 18.2GB HARD DRIVE | 78MW029 | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | 78MW032 | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | 78MW035 | | | | | |
| | | 06P3601 (1) | 10/100 ENET SERVER ADAPTER | 78MW038 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | 78MW041 | | | | | |
| | | CABLE (1) | 7FT CAT5E BLUE PATCH CORD | 78MW044 | | | | | |
| | | CABLE (1) | 7FT CAT5E RED PATCH CORD | 78MW024 | | | | | |
| | | CABLE (1) | 7FT CAT5E WHITE PATCH CORD | 78MW027 | | | | | |
| | | | | 78MW030 | | | | | |
| | | | | 78MW033 | | | | | |
| | | | | 78MW036 | | | | | |
| | | | | 78MW039 | | | | | |
| | | | | 78MW042 | | | | | |
| | | | | 78MW045 | | | | | |
| | | | | 78MW025 | | | | | |
| | | | | 78MW028 | | | | | |
| | | | | 78MW031 | | | | | |
| | | | | 78MW034 | | | | | |
| | | | | 78MW037 | | | | | |
| | | | | 78MW040 | | | | | |
| | | | | 78MW043 | | | | | |
| | | | | 78MW046 | | | | | |
| 1 | IBM 9308-42S | | NETBAY 42 RACK CABINET | 23C1303 | 80532179 | 12989 | NEW | $128.51 | 04/26/02 |
| | | 09N4293 (8) | 7FT CONSOLE CABLE | | | | | | |
| | | 06P4792 (8) | CABLE CHAIN TECHNOLOGY CABLE | | | | | | |
| | | 37L6888 (1) | FLAT PANEL MONITOR RACK MOUNT | | | | | | |
| | | 28L4707 (1) | KEYBOARD TRAY | | | | | | |
| | | 28L3644 (4) | KEYBOARD | | | | | | |
| | | 37L6866 (5) | POWER DISTRIBUTION UNIT | | | | | | |
| | | 94G7448 (11) | TYPE C12 POWER CABLE | | | | | | |
| | | CORD (20) | 3FT CAT5E GRAY PATCH CORD | | | | | | |
| | | CORD (8) | 7FT CAT5E YELLOW PATCH CORD | | | | | | |
| | | CORD (1) | 7FT CAT5E GREEN PATCH CORD | | | | | | |
| 1 | IBM 09N4291 | | NETBAY 2X8 CONSOLE SWITCH | 2317993 | 80532179 | 12989 | NEW | $33.08 | 04/26/02 |
| 1 | IBM 9511-AG4 | | 15IN LCD MONITOR | 55HF873 | 80532179 | 12989 | NEW | $11.35 | 04/26/02 |
| 8 | CISCO WS-C2950-24 | | 24PORT 10/100 SWITCH | FAB0552Q1AF FAB0552Q1AB FAB0552Q19M FAB0552Q1AG FAB0552Q1FY FAB0552Q1AC FAB0552Q1A3 FAB0552Q1F5 | 80532179 | 12989 | NEW | $27.03 | 04/26/02 |
| | | | **PO NUMBER: 12989** | | | | | | |
| | | | **EQUIPMENT LOCATION: 100 5TH AVE, 2ND FLOOR RECEPTION, WALTHAM, MA 02451** | | | | | | |
| 9 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78X5817 | Z79618037 | 12623 | NEW | $132.02 | 01/16/02 |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | 78X6149 | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | 78X6267 | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | 78X6305 | | | | | |
| | | 37L7206 (2) | 36GB HARD DRIVE | 78X0159 | | | | | |
| | | 22P4901 (1) | 10/100 2PORT SERVER ADAPTER | 78Y1562 | | | | | |
| | | CABLE (1) | 2VGA BREAKOUT CABLE | 78Y1570 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | 78Y1573 | | | | | |
| | | | | 78Y1581 | | | | | |
| | | | **PO NUMBER: 12623** | | | | | | |

 

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. TWO HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 3 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78X9935 | 328367 | 12626 | NEW | $109.05 | 01/03/02 |
| | | MEMORY (1) | 256MB MEMORY | 78X9475 | | | | | |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | 78Y0020 | | | | | |
| | | 37L7206 (2) | 36GB HARD DRIVE | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |
| | | 09N9901 (1) | 10/100 ELINK ADAPTER | | | | | | |
| | | CABLE (1) | 4FT KVM CABLE | | | | | | |
| | | | PO NUMBER: 12626 | | | | | | |
| 4 | MISC | | FASTIRON II 4SLOT CHASSIS BUNDLE | F00064247 | 34945 | 12629 | NEW | $548.62 | 12/26/01 |
| | | POWER (1) | REDUNDANT POWER SUPPLY | F00064248 | | | | | |
| | | CABLE (1) | CONSOLE CABLE | F00064249 | | | | | |
| | | | | F00064250 | | | | | |
| | | | PO NUMBER: 12629 | | | | | | |
| 24 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78GP746 | 80206949 | 12841 | NEW | $182.09 | 03/27/02 |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | 78GP857 | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | 78GP862 | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | 78GP870 | | | | | |
| | | 33L3326 (1) | 1GB MEMORY | 78GP887 | | | | | |
| | | 06P5756 (2) | 73.4GB HARD DRIVE | 78GP918 | | | | | |
| | | 06P3601 (1) | 10/100 ENET ADAPTER | 78GP943 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | 78GP961 | | | | | |
| | | | | 78GP843 | | | | | |
| | | | | 78GP858 | | | | | |
| | | | | 78GP863 | | | | | |
| | | | | 78GP874 | | | | | |
| | | | | 78GP909 | | | | | |
| | | | | 78GP936 | | | | | |
| | | | | 78GP945 | | | | | |
| | | | | 78GP968 | | | | | |
| | | | | 78GP855 | | | | | |
| | | | | 78GP860 | | | | | |
| | | | | 78GP869 | | | | | |
| | | | | 78GP878 | | | | | |
| | | | | 78GP916 | | | | | |
| | | | | 78GP941 | | | | | |
| | | | | 78GP949 | | | | | |
| | | | | 78GP979 | | | | | |
| 1 | IBM 9308-42S | | NETBAY 42 ENTERPRISE RACK | 23C0671 | 80206949 | 12841 | NEW | $353.86 | 03/27/02 |
| | | 09N4293 (8) | 7FT CONSOLE CABLE | | | | | | |
| | | 06P4792 (8) | CHAIN TECHNOLOGY CABLE | | | | | | |
| | | 09N4291 (1) | NETBAY 2X8 CONSOLE SWITCH | | | | | | |
| | | 37L6888 (1) | FLAT PANEL MONITOR RACK MOUNT | | | | | | |
| | | 28L4707 (1) | KEYBOARD TRAY | | | | | | |
| | | 37L6866 (5) | RACK POWER DISTRIBUTION UNIT | | | | | | |
| | | 94G7448 (11) | TYPE C12 POWER CABLE | | | | | | |
| | | CORD (20) | 3FT CAT5E GRAY PATCH CORD | | | | | | |
| | | CORD (24) | 7FT CAT5E BLUE PATCH CORD | | | | | | |
| | | CORD (24) | 7FT CAT5E RED PATCH CORD | | | | | | |
| | | CORD (24) | 7FT CAT5E WHITE PATCH CORD | | | | | | |
| | | CORD (8) | 7FT CAT5E YELLOW PATCH CORD | | | | | | |
| | | CORD (1) | 7FT CAT5E GREEN PATCH CORD | | | | | | |
| | | WS-C2950-24 (8) | 24PORT 10/100 SWITCH | | | | | | |
| 1 | IBM 9511-AG4 | | 15IN FLAT MONITOR | 55FZ203 | 80206949 | 12841 | NEW | $11.35 | 03/27/02 |
| 15 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78GP821 | 80206949 | 12841 | NEW | $182.09 | 03/27/02 |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR | 78GP836 | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | 78GP920 | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | 78GP935 | | | | | |
| | | 33L3326 (1) | 1GB MEMORY | 78GP972 | | | | | |
| | | 06P5756 (2) | 73.4GB HARD DRIVE | 78GP822 | | | | | |
| | | 06P3601 (1) | 10/100 ENET SERVER ADAPTER | 78GP865 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | 78GP931 | | | | | |
| | | | | 78GP946 | | | | | |
| | | | | 78GP990 | | | | | |
| | | | | 78GP827 | | | | | |
| | | | | 78GP881 | | | | | |
| | | | | 78GP934 | | | | | |
| | | | | 78GP951 | | | | | |
| | | | | 78Y3196 | | | | | |



EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. TWO HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 1 | IBM 9308-42S | | NETBAY 42 ENTERPRISE RACK | 23C0860 | 80206949 | 12841 | NEW | $382.22 | 03/27/02 |
| | | 09N4293 (8) | 7FT CONSOLE CABLE | | | | | | |
| | | 06P4792 (8) | CHAIN TECHNOLOGY CABLE | | | | | | |
| | | 09N4291 (1) | NETBAY 2X8 CONSOLE SWITCH | | | | | | |
| | | 37L6888 (1) | FLAT PANEL MONITOR RACK MOUNT | | | | | | |
| | | 28L4707 (1) | KEYBOARD TRAY | | | | | | |
| | | 37L6866 (5) | RACK POWER DISTRIBUTION UNIT | | | | | | |
| | | 94G7448 (11) | TYPE C12 POWER CABLE | | | | | | |
| | | CORD (20) | 3FT CAT5E GRAY PATCH CORD | | | | | | |
| | | CORD (24) | 7FT CAT5E BLUE PATCH CORD | | | | | | |
| | | CORD (24) | 7FT CAT5E RED PATCH CORD | | | | | | |
| | | CORD (24) | 7FT CAT5E WHITE PATCH CORD | | | | | | |
| | | CORD (8) | 7FT CAT5E YELLOW PATCH CORD | | | | | | |
| | | CORD (1) | 7FT CAT5E GREEN PATCH CORD | | | | | | |
| | | WS-C2950-24 (8) | 24PORT 10/100 SWITCH | | | | | | |
| | | 28L3644 (8) | KEYBOARD | | | | | | |
| 1 | IBM 9511-AG4 | | 15IN FLAT MONITOR | 55FZ193 | 80206949 | 12841 | NEW | $11.35 | 03/27/02 |

PO NUMBER: 12841

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 4 | COMPAQ | | PROLIANT DL580R P3/700MHZ | D203DYT1K313 | 31829727 | 12976 | NEW | $447.60 | 04/04/02 |
| | | MEMORY (3) | 512MB MEMORY | D203DYT1K251 | | | | | |
| | | CPU (3) | P3/700 PROCESSOR OPTION | D203DYT1K421 | | | | | |
| | | MEMORY (1) | 1GB MEMORY | D203DYT1K389 | | | | | |
| | | MEMORY (1) | 2GB MEMORY | | | | | | |
| | | DRIVE (1) | 18.2GB HARD DRIVE | | | | | | |
| | | BOARD (3) | REMOTE INSIGHT LIGHTS-OUT BOARD | | | | | | |
| | | CARD (1) | NC3123 10/100 PCI CARD | | | | | | |
| 4 | COMPAQ | | PROLIANT DL580R P3/700MHZ | D203DYT1K106 | 31829727 | 12976 | NEW | $497.86 | 04/04/02 |
| | | MEMORY (3) | 512MB MEMORY | D203DYT1K382 | | | | | |
| | | CPU (3) | P3/700 PROCESSOR OPTION | D203DYT1K418 | | | | | |
| | | MEMORY (1) | 1GB MEMORY | D203DYT1K400 | | | | | |
| | | MEMORY (1) | 2GB MEMORY | | | | | | |
| | | DRIVE (1) | 18.2GB HARD DRIVE | | | | | | |
| | | BOARD (2) | REMOTE INSIGHT LIGHTS-OUT BOARD | | | | | | |
| | | CONTROLLER (1) | SMART ARRAY 5304/128 CONTROLLER | | | | | | |
| | | CARD (1) | NC3123 10/100 PCI CARD | | | | | | |
| 10 | COMPAQ | | PROLIANT DL360 P3/1.26GHZ | 6J23JZS17015 | 31829727 | 12976 | NEW | $212.34 | 04/04/02 |
| | | CACHE (1) | 512K CACHE | 6J23JZS18025 | | | | | |
| | | MEMORY (1) | 128MB MEMORY | 6J23JZS1E053 | | | | | |
| | | CPU (1) | P3/1.26GHZ PROCESSOR OPTION | 6J23JZS1802F | | | | | |
| | | MEMORY (2) | 1GB MEMORY | 6J23JZS1702L | | | | | |
| | | DRIVE (2) | 18.2GB HARD DRIVE | 6J23JZS1E050 | | | | | |
| | | CARD (1) | NC3123 10/100 PCI CARD | 6J22JZS1N0E9 | | | | | |
| | | BOARD (3) | REMOTE INSIGHT LIGHTS-OUT BOARD | 6J22JZS1S036 | | | | | |
| | | | | 6J22JZS1S04B | | | | | |
| | | | | 6J22JZS1N0DZ | | | | | |
| 5 | COMPAQ | | PROLIANT DL360 P3/1.26GHZ | 6J23JZS1705V | 31829727 | 12976 | NEW | $234.58 | 04/04/02 |
| | | CACHE (1) | 512K CACHE | 6J23JZS18026 | | | | | |
| | | MEMORY (1) | 128MB MEMORY | 6J23JZS1800K | | | | | |
| | | CPU (1) | P3/1.26GHZ PROCESSOR OPTION | 6J23JZS1E04X | | | | | |
| | | MEMORY (2) | 1GB MEMORY | 6J23JZS1E06E | | | | | |
| | | DRIVE (3) | 18.2GB HARD DRIVE | | | | | | |
| | | CARD (1) | NC3123 10/100 PCI CARD | | | | | | |
| | | BOARD (3) | REMOTE INSIGHT LIGHTS-OUT BOARD | | | | | | |
| | | DRIVE (1) | 36GB HARD DRIVE | | | | | | |
| 8 | COMPAQ | | STORAGEWORKS 4354R ENCLOSURE | 9J23FLY14SKA | 31829727 | 12976 | NEW | $89.06 | 04/04/02 |
| | | | | 9J23FLY1C68V | | | | | |
| | | | | 9J23FLY1C693 | | | | | |
| | | | | 9J23FLY16SWX | | | | | |
| | | | | 9J23FLY16SZ8 | | | | | |
| | | | | 9J21FLY1Z327 | | | | | |
| | | | | 9J23FLY16SXR | | | | | |
| | | | | 82J1FLY1Y2VF | | | | | |

PO NUMBER: 12976

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 2 | MISC | | BIGIRON 4000 CHASSIS | F00034908 | 41043 | 13012 | NEW | $63.92 | 04/06/02 |
| | | | | F00034909 | | | | | |
| 2 | MISC | | BIGIRON 8PORT GIG OPTICS MGMT MODULE | N/A | 41043 | 13012 | NEW | $223.92 | 04/06/02 |
| 6 | MISC | | BIGIRON 24PORT 10/100BASETX MODULE | N/A | 41043 | 13012 | NEW | $143.92 | 04/06/02 |
| 6 | MISC | | REDUNDANT POWER SUPPLY | N/A | 41043 | 13012 | NEW | $39.92 | 04/06/02 |

 

EXHIBIT "A"
LYCOS, INC.
EQUIPMENT SCHEDULE NO. TWO HUNDRED, MASTER LEASE NO. 144874

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 4 | MISC | | FASTIRON 2 72PORT 10/100 MGMT MODULE | F00026469 F00064241 F00064242 F00064243 | 41043 | 13012 | NEW | $508.70 | 04/06/02 |

PO NUMBER: 13012

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 4 | IBM 8674-11X | | X SERIES 330 SERVER P3/1.13GHZ | 78KY741 | 80607874 | 13095 | NEW | $124.15 | 04/30/02 |
| | | 25P2835 (1) | P3/1.13GHZ PROCESSOR UPGRADE | 78KZ003 | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | 78KZ036 | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | 78KZ038 | | | | | |
| | | 06P5755 (2) | 36.4GB HARD DRIVE | | | | | | |
| | | 06P3601 (1) | 10/100 ENET SERVER ADAPTER | | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | | | | | | |

PO NUMBER: 13095

EQUIPMENT LOCATION: 600 WINTER ST, WALTHAM, MA 02451

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 24 | IBM 8654-5CX | | X SERIES 135 SERVER P3/1GHZ | 78MW047 | 80610246 | 13055 | NEW | $109.91 | 04/29/02 |
| | | 10K0053 (1) | P3/1GHZ PROCESSOR UPGRADE | 78MW049 | | | | | |
| | | 06P5754 (1) | 18.2GB HARD DRIVE | 78MW050 | | | | | |
| | | 10K0020 (1) | 256MB MEMORY | 78MW055 | | | | | |
| | | 10K0022 (1) | 512MB MEMORY | 78MW056 | | | | | |
| | | 06P3601 (1) | 10/100 ENET SERVER ADAPTER | 78MW058 | | | | | |
| | | 06P5740 (1) | 4LX ULTRA 160 SCSI ADAPTER | 78MW062 | | | | | |
| | | CABLE (1) | 7FT CAT5E BLUE PATCH CORD | 78MW066 | | | | | |
| | | CABLE (1) | 7FT CAT5E RED PATCH CORD | 78MW067 | | | | | |
| | | CABLE (1) | 7FT CAT5E WHITE PATCH CORD | 78MW069 | | | | | |
| | | | | 78MW070 | | | | | |
| | | | | 78MW071 | | | | | |
| | | | | 78MW073 | | | | | |
| | | | | 78MW074 | | | | | |
| | | | | 78MW078 | | | | | |
| | | | | 78MW079 | | | | | |
| | | | | 78MW086 | | | | | |
| | | | | 78MW087 | | | | | |
| | | | | 78MW090 | | | | | |
| | | | | 78MW091 | | | | | |
| | | | | 78MW092 | | | | | |
| | | | | 78MW093 | | | | | |
| | | | | 78MW094 | | | | | |
| | | | | 78MW096 | | | | | |
| 1 | IBM 9308-42S | | NETBAY 42 RACK CABINET | 23C0307 | 80610246 | 13055 | NEW | $128.51 | 04/29/02 |
| | | 09N4293 (8) | 7FT CONSOLE CABLE | | | | | | |
| | | 06P4792 (8) | CABLE CHAIN TECHNOLOGY CABLE | | | | | | |
| | | 37L6888 (1) | FLAT PANEL MONITOR RACK MOUNT | | | | | | |
| | | 28L4707 (1) | KEYBOARD TRAY | | | | | | |
| | | 28L3644 (4) | KEYBOARD | | | | | | |
| | | 37L6866 (5) | POWER DISTRIBUTION UNIT | | | | | | |
| | | 94G7448 (11) | TYPE C12 POWER CABLE | | | | | | |
| | | CORD (20) | 3FT CAT5E GRAY PATCH CORD | | | | | | |
| | | CORD (8) | 7FT CAT5E YELLOW PATCH CORD | | | | | | |
| | | CORD (1) | 7FT CAT5E GREEN PATCH CORD | | | | | | |
| 1 | IBM 09N4291 | | NETBAY 2X8 CONSOLE SWITCH | 2318008 | 80610246 | 13055 | NEW | $33.08 | 04/29/02 |
| 1 | IBM 9511-AG4 | | 15IN LCD MONITOR | 55GZ678 | 80610246 | 13055 | NEW | $11.35 | 04/29/02 |
| 8 | CISCO WS-C2950-24 | | 24PORT 10/100 SWITCH | FAB0552Q1AK FAB0552Q1AN FAB0552Q1AP FAB0552Q1AX FAB0552Q1B0 FAB0552Q17R FAB0552Q19X FAB0552Q19Y | 80610246 | 13055 | NEW | $27.03 | 04/29/02 |

PO NUMBER: 13055

| QTY | MACHINE TYPE/MODEL | FEATURE (QUANTITY PER UNIT) | DESCRIPTION | SERIAL # | INVOICE # | PO # | NEW/ USED | MONTHLY RENTAL PER UNIT | COMMENCEMENT DATE |
|---|---|---|---|---|---|---|---|---|---|
| 2 | MISC | | FASTIRON 2 8GIG OPTICS MGMT MODULE | CH49012478 CH49012473 | 38687 | 150153 | NEW | $223.92 | 03/07/02 |
| 2 | MISC | | BIGIRON 8PORT GIG MODULE | CH01011364 CH12007139 | 38687 | 150153 | NEW | $159.92 | 03/07/02 |

PO NUMBER: 150153

EQUIPMENT LOCATION: 400-2 TOTTEN POND RD, WALTHAM, MA 02451

EXHIBIT

7

**CSI**
COMPUTER SALES INTERNATIONAL, INC.

PLEASE DIRECT INQUIRIES TO THE ACCOUNTS RECEIVABLE DEPARTMENT: 314-997-7010

INVOICE NO. 584381

REMIT PAYMENT TO

COMPUTER SALES INTERNATIONAL
PO BOX 77485
ST LOUIS, MO 63177-5485
ATTN:ACCOUNTS RECEIVABLE

LYCOS INC
100 FIFTH AVENUE
MAILSTOP 507
WALTHAM, MA 02451
ATTN:ACCOUNTS PAYABLE

| PAGE | CONTRACT NUMBER | RENTAL PERIOD | | CUSTOMER REFERENCE | DUE DATE | INVOICE DATE | | | | | TYPE | SALESMAN |
|------|-----------------|---------------|------|--------------------|----------|--------------|--|--|--|--|------|----------|
| 1 | 144874-200 | 11/01/04· THRU 11/30/04 | | | 11/01/04 | 09/24/04 | | | | | LEASE | PHS |

| | RENT | INSURANCE | TAXES | TOTAL |
|--|------|-----------|-------|-------|
| | 43,954.35 | | | 43,954.35 |
| **TOTALS** | 43,954.35 | | | 43,954.35 |
| | | | | =========== |
| | | | | Please Remit |

# CSI
## COMPUTER SALES INTERNATIONAL, INC.
PLEASE DIRECT INQUIRIES TO THE ACCOUNTS RECEIVABLE DEPARTMENT: 314-997-7010

# INVOICE NO. 587549

REMIT PAYMENT TO

COMPUTER SALES INTERNATIONAL
PO BOX 775485
St LOUIS, MO 63177-5485

ATTN: ACCOUNTS RECEIVABLE

LYCOS INC
100 FIFTH AVENUE
MAILSTOP 507
WALTHAM, MA 02451
ATTN: ACCOUNTS PAYABLE

| PAGE | RENTAL PERIOD | | DUE DATE | INVOICE DATE | TYPE | SALESMAN |
|---|---|---|---|---|---|---|
| 1 | 12/01/04 | THRU 12/31/04 | 12/01/04 | 10/22/04 | LEASE | PHS |

| CONTRACT NUMBER | CUSTOMER REFERENCE | RENT | INSURANCE | TAXES | TOTAL |
|---|---|---|---|---|---|
| 144874-200 | | 43,954.35 | | | 43,954.35 |
| **TOTALS** | | 43,954.35 | | | 43,954.35 |
| | | | | | Please Remit |





COMPUTER SALES INTERNATIONAL, INC.

9990 Old Olive Street Road
Suite 101
St. Louis, Missouri 63141
314-997-7010
1-800-955-0960
Fax 314-997-7844
www.csileasing.com



December 8, 2004

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Lycos, Inc.
100 5th Avenue
Waltham, Massachusetts 02451
Attention: Ms. Julie Callagee, Controller

RE: Equipment Schedules One Hundred and Two Hundred, Master Lease Agreement
No. 144874

Dear Ms. Callagee:

Lycos has issued a "stop payment" order on the checks for the November and December 2004 rental payments. Because Lycos has failed to make the rental payments when due, CSI is issuing this letter as a **formal notice of default** with respect to the above referenced Equipment Schedules.

In the event Lycos fails to cure the default within ten (10) days after receipt of the notice, Computer Sales International, Inc. may exercise any and all remedies available to it pursuant to the Master Lease and applicable law, including, but not limited to, declaring all remaining rental payments immediately due and payable, repossessing the equipment covered by the Equipment Schedules and assessing interest and attorneys' fees.

Very truly yours,

COMPUTER SALES INTERNATIONAL, INC.

By _Lorraine S Cherrick_
Lorraine S. Cherrick
Senior Vice President & General Counsel






**COMPUTER SALES INTERNATIONAL, INC.**

9990 Old Olive Street Road
Suite 101
St. Louis, Missouri 63141
314-997-7010
1-800-955-0960
Fax 314-997-7844
www.csileasing.com

December 23, 2004



EXHIBIT
9

VIA CERTIFIED MAIL
(Return Receipt Requested)

Lycos, Inc.
Attention: Ms. Julie Callagee, Controller
100 Fifth Avenue
Waltham, MA 02154

RE:    Equipment Schedules One Hundred and Two Hundred,
       Master Lease Agreement Number 144874

Dear Ms. Callagee:

Lycos has failed to cure or respond to the notice of default sent by CSI on December 8, 2004. Accordingly, CSI hereby declares a formal **Event of Default** pursuant to the above-referenced Equipment Schedules and Master Lease.

Pursuant to Section 15.1 (b) of the Master Lease, CSI declares immediately due and payable $301,050.34. Please be aware that CSI may now exercise any and all available remedies pursuant to the Master Lease and applicable law, including, but not limited to, repossessing the equipment, assessing further interest and recovering all attorney's fees.

Very truly yours,

COMPUTER SALES INTERNATIONAL, INC.

By: _____
    Jeffrey L. Rousseau
    Vice President and Assistant General Counsel

JLR/srm

  

# CSI                        SALES AGREEMENT NUMBER 199614

**COMPUTER SALES INTERNATIONAL, INC.**
9990 Old Olive Street Road, Suite 101
St. Louis, Missouri 63141
(314) 997-7010

**EXHIBIT**
**10**

## SALES AGREEMENT

This Sales Agreement dated July 15, 2003 (the "Agreement") is between **COMPUTER SALES INTERNATIONAL, INC.** (the "Seller") and **LYCOS, INC.,** which has a principal place of business at **100 5th Avenue, Waltham, Massachusetts 02451** (the "Buyer").

WHEREAS, Buyer, as Lessee and Seller, as Lessor have entered into various equipment schedules (the "Equipment Schedules") subject to Master Lease Agreement No. 144874 dated December 4, 1996 (the "Master Lease") (the "Master Lease" together with the "Equipment Schedule(s)" hereinafter collectively referred to as the "Lease")

WHEREAS, certain Equipment Schedules originally executed pursuant to the Master Lease were consequently terminated in their entirety, and all items of equipment leased pursuant to the terminated Equipment Schedules, were made subject to replacement Equipment Schedules listed on Exhibit 1 attached hereto and made a part hereof ("Replacement Schedules");

WHEREAS, certain Equipment Schedules listed on Exhibit 1 originally executed pursuant to the Master Lease were not revised ("Original Schedules") and they, together with the Replacement Schedules remain in full force and effect as of the date of this Agreement (the "Original Schedules" together with the such "Replacement Schedules" collectively referred to as the "Existing Schedules")

WHEREAS, Lessee desires to restructure all of the Existing Schedules detailed on Exhibit 1 to $1.00 buyout leases;

WHEREAS, a prepayment of the fair market value of all of the Equipment (as hereinafter defined) is required in order to restructure each Lease to $1.00 buyout lease;

WHEREAS, Lessor has agreed to restructure said Leases to $1.00 buyout leases for the consideration set forth below;

NOW THEREFORE, in consideration of the foregoing, Lessee and Lessor agree as follows:

1.   SALE:  For the Sales Price described in Paragraph 3 below, Buyer agrees to buy and Seller agrees to sell all but not less than all of the items of equipment leased to Buyer under the Existing Schedules listed in Paragraph 2 below and on Exhibit 1 (the "Equipment") effective on their respective termination dates, except as stated in paragraph #5 below, and on the terms and conditions contained in this Agreement.

2.   EXISTING SCHEDULES:  The Equipment is installed at Buyer's location and has been accepted for lease under Equipment Schedules 69I, 64F, 66I, 67H, Eighty-five, Eighty-six, Eighty-nine, 89A, Ninety, Ninety-three, Ninety-four, One Hundred, and Two Hundred to Master Lease Agreement No. 144874 between the parties (the "Leases").  The Existing Schedules shall terminate on the "Termination Dates" set forth below:

Equipment Schedules 69I, 64F, 66I and 67H will terminate on September 30, 2003
Equipment Schedules Eighty-five and Eighty-six will terminate on December 31, 2003
Equipment Schedules Eighty-nine, 89A, and Ninety will terminate on July 31, 2004
Equipment Schedule Ninety-three will terminate on October 31, 2003
Equipment Schedule Ninety-four will terminate on October 31, 2004
Equipment Schedule One Hundred will terminate on April 30, 2005
Equipment Schedule Two Hundred will terminate on April 30, 2005

Each Lease will terminate on its respective Termination Date, provided Buyer has then fulfilled all its obligations under the applicable Lease including, but not limited to, its obligation to timely make the Remaining Rental Payments (as defined in Section 4 below) and to pay any and all other charges arising under the Lease. Pursuant to the Leases, Buyer remains liable for any personal property tax liability, with respect to the Equipment, which

accrued or accrues during the term of the Leases. The Equipment is sold on an "AS IS, WHERE IS" basis, without any warranties of any kind, express or implied.

3.  SALES PRICE:  The Sales Price of the Equipment is $3,775,000.00 USD, plus applicable taxes, which Buyer shall pay on or before August 12, 2003 by wire transfer to the following bank and account:

> First Bank
> ABA #081009428
> For Further Credit to:  Computer Sales International, Inc.
> Account #9821914677
> Lycos, Inc.
> Sales Agreement No. 199614

Buyer shall pay on demand a late charge on such Sales Price if unpaid after it is due. The late charge rate is the lower of (i) one and one half percent (1.5%) per month, or (ii) the highest rate permitted by law.

4.  SATISFACTION OF LEASE OBLIGATIONS:  The Leases, solely with respect to Monthly Rental (set forth on Exhibit 1) shall continue in full force and effect and Lessee shall pay to Lessor the number of Monthly Rental payments remaining (plus applicable taxes, if any), beginning with the payment due for the month of August 2003, and continuing to and including the Final Rent Payment Date set forth on Exhibit 1 ("Remaining Rental Payments").

In the event of a Casualty (as defined in the Lease) or any other event impacting the Monthly Rental payable on an Existing Schedule, the Remaining Rental Payment with respect to such Existing Schedule, shall be adjusted accordingly, consistent with such event.

Seller acknowledges that receipt of the Sales Price and each of the Remaining Rental Payments in full, plus applicable taxes, if any ("Lease Satisfaction Amount"), shall fully satisfy Buyer's obligations to Seller with respect to the Leases and all obligations under the Leases shall, on the Final Rent Payment Date, cease in their entirety.

Buyer and Seller agree that this Agreement and the payment of the Lease Satisfaction Amount satisfies all monetary obligations and notice obligations of Buyer under the Leases (with the exception of notices required under Section 14 of the Master Lease), and no other payment, written or oral notification is required by Buyer in order to effectuate (a) the full satisfaction of its obligations under the Leases and (b) its ownership interest in the Equipment.

5.  SELLER RETAINS TITLE:  With respect to each Lease, Seller retains full title to the Equipment until its respective Termination Date . With respect to Equipment Schedule 85, certain items of Equipment shall on its respective Termination Date, become subject to Equipment Schedule Ninety-four. Upon receipt of the Lease Satisfaction Amount in full, without further action on the part of Buyer or Seller, title to the Equipment will automatically pass to Buyer, free and clear of all liens and encumbrances.

6.  DELIVERY:  The Equipment is already installed and accepted by Buyer pursuant to the Leases.

7.  WARRANTIES:  Seller warrants that (i) on termination of the applicable Lease, except as noted in paragraph 4 5 above, and provided Buyer has paid the full sales price hereunder, Seller will pass to Buyer title to the Equipment free and clear of all liens, claims, and encumbrances of any kind except those caused or incurred by Buyer, if any; and (ii) Seller has the full right, power and authority to sell the Equipment. OTHER THAN THE FOREGOING, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED WITH RESPECT TO THE CONDITION, DESIGN OR PERFORMANCE OF THE EQUIPMENT, ITS MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR WITH RESPECT TO PATENT INFRINGEMENT OR THE LIKE. SELLER HAS NO LIABILITY TO BUYER FOR ANY CLAIM, LOSS OR DAMAGE OF ANY KIND OR NATURE WHATSOEVER ARISING OUT OF OR IN CONNECTION WITH (i) ANY DEFICIENCY OR INADEQUACY OF THE EQUIPMENT FOR ANY PURPOSE, WHETHER OR NOT KNOWN OR DISCLOSED TO BUYER, (ii) ANY DEFECT IN THE EQUIPMENT, (iii) THE USE OR PERFORMANCE OF THE EQUIPMENT, OR (iv) ANY INTERRUPTION OR LOSS OF SERVICE OR USE OF THE EQUIPMENT, OR (v) ANY LOSS OF BUSINESS, OR ANY OTHER INCIDENTAL OR CONSEQUENTIAL LOSS OR DAMAGE, WHETHER OR NOT RESULTING FROM ANY OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, PATENT INFRINGMENT ACTIONS.

8.  TAXES:  Buyer shall pay all sales and use taxes (including interest and penalties) levied or based on the sales price or on this Agreement or the Equipment. If Buyer is purchasing for resale or if Buyer is exempt from sales/use tax, Buyer will issue to Seller an appropriate exemption certificate in form reasonably acceptable to Seller prior to

the delivery date. Personal property taxes assessable on the Equipment on or after the date of delivery will be borne by Buyer.

9. REMEDIES: If Buyer refuses or is unable to timely perform its obligations hereunder, Seller may, following the delivery date, do any or all of the following: (i) terminate the Agreement on five days notice, (ii) retain or repossess the Equipment, or (iii) recover from Buyer all damages and expenses, including reasonable attorney's fees, which Seller has incurred or may incur by reason of Buyer's failure to perform under this Agreement. Seller may retain any monies paid by Buyer to Seller prior to Buyer's nonperformance as an offset to Seller's damages and expenses.

10. MISCELLANEOUS:

A.  ENTIRE AGREEMENT: This Agreement is the entire agreement between Seller and Buyer regarding the purchase and sale of the Equipment and no representation or statement not contained in this Agreement is binding on Seller or Buyer as a warranty, or otherwise, unless in writing and executed by the party to be bound. Any purchase order Buyer issues is merely for its internal recordkeeping purposes and as a means of confirmation of Buyer's acceptance of this Agreement, and does not as supercede, modify or serve as a counter-offer to the terms and conditions in this Agreement.

B.  NOTICES: Any notice relating to this Agreement must be in writing and sent by electronic facsimile transmission, by overnight courier service or by registered or certified mail, postage prepaid, addressed to the party for which it is intended at the address set forth in the beginning of this Agreement or to such other address as either party indicates in writing. Notice is effective on the earlier of receipt or three days from the date of mailing.

C.  GOVERNING LAW: This Agreement, including all matters of construction, validity, performance and enforcement, is governed by the laws of the State of Missouri, without giving effect to principles of conflicts or choice of law.

D.  SEVERABILITY: Any provision of this Agreement prohibited by, or unlawful or unenforceable under, any applicable law or any jurisdiction will be ineffective as to the jurisdiction without invalidating the remaining provisions of this Agreement, but where the provisions of applicable law may be waived, they are waived to the full extent permitted by law.

E.  SURVIVAL: All representations, warranties and covenants contained in this Agreement continue in full force and effect and survive the sale of Equipment.

F.  SELECTION: Buyer acknowledges that it has exercised its own judgment in selecting the Equipment purchased, and this it has not relied on Seller for assistance and advice in making such selection.

G.  ASSIGNMENT: This Agreement may not be assigned by Buyer without the prior written consent of Seller.

The parties have executed this Agreement on the date written below. At Seller's option, this Agreement is not effective unless signed by Buyer and returned to Seller by August 8, 2003.

BUYER:
LYCOS, INC.

By: _____

Title: _CFO_____

Date: _8/8/03_____

SELLER
COMPUTER SALES INTERNATIONAL, INC.

By: _____

Title: _____

Date: _8/11/03_____

REVIEWED BY
TERRA LYCOS LEGAL PDK

BOC
8/8/07

| Designation | Revised 2 | Revised | Revised | Revised | Revised 5 | Revised | Revised 12 | Revised 12 | Revised 12 | Original 9 | Original | Replacement 3 | Replacement | Replacement 15 | Replacement |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No Remaining Rental Payments | 2 | | | | 5 | | 12 | 12 | 12 | 9 | | 3 | | 15 | |
| August Rent Payment Date | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | 8/1/2003 | | 8/1/2003 | |
| First Rent Payment Date | 8/1/2003 | 9/1/2003 | 8/1/2003 | 9/20/2003 | 12/1/2003 | 12/1/2003 | 7/1/2004 | 7/1/2004 | 8/1/2004 | 3/1/2005 | | 10/1/2003 | | 10/1/2004 | |
| Monthly Rental | 96,217 | 5,545 | 32,398 | 38,438 | 73,476 | 629 | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | 120,989 | | 459,825 | Steps |
| Aug-03 | 96,217 | 5,545 | 32,398 | 38,438 | 73,476 | 629 | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | 120,989 | 459,825 | | 1,048,055 |
| Sep-03 | | 5,545 | 32,398 | 36,438 | 73,476 | 629 | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | 120,989 | 459,825 | | 1,048,055 |
| Oct-03 | | | | | 73,476 | 629 | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | 111,991 | 607,822 | | 1,048,055 |
| Nov-03 | | | | | 73,476 | 629 | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | | 607,822 | | 907,054 |
| Dec-03 | | | | | 73,476 | 629 | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | | 607,822 | | 907,054 |
| Jan-04 | | | | | | | 105,548 | 16,000 | 52,463 | 6,082 | 43,954 | | 678,172 | | 901,310 |
| Feb-04 | | | | | | | 105,548 | 16,000 | 52,463 | 6,082 | 43,954 | | 678,172 | | 901,310 |
| Mar-04 | | | | | | | 105,548 | 16,000 | 52,463 | 6,082 | 43,954 | | 678,172 | | 901,310 |
| Apr-04 | | | | | | | 105,548 | 16,000 | 52,463 | 6,082 | 43,954 | | 676,172 | | 901,310 |
| May-04 | | | | | | | 105,548 | 16,000 | 52,463 | 6,082 | 43,954 | | 676,172 | | 901,310 |
| Jun-04 | | | | | | | 105,548 | 16,070 | 52,463 | 6,082 | 43,954 | | 676,172 | | 901,310 |
| Jul-04 | | | | | | | | | | 6,082 | 43,954 | | 676,172 | | 726,209 |
| Aug-04 | | | | | | | | | | 6,082 | 43,954 | | 676,172 | | 726,209 |
| Sep-04 | | | | | | | | | | 6,082 | 43,954 | | 676,172 | | 726,209 |
| Oct-04 | | | | | | | | | | 6,082 | 43,954 | | | | 50,037 |
| Nov-04 | | | | | | | | | | 6,082 | 43,954 | | | | 50,037 |
| Dec-04 | | | | | | | | | | 6,082 | 43,954 | | | | 50,037 |
| Jan-05 | | | | | | | | | | 6,082 | 43,954 | | | | 50,037 |
| Feb-05 | | | | | | | | | | 6,082 | 43,954 | | | | 50,037 |
| Mar-05 | | | | | | | | | | 6,082 | 43,954 | | | | 50,037 |
| Apr-05 | | | | | | | | | | 6,082 | | | | | 50,037 |