UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL INC.  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>LYCOS, INC.,  )<br>)<br>Defendant,  )<br>)<br>BANK OF AMERICA f/k/a FLEET BANK,  )<br>)<br>Trustee Process Defendant.  )<br>) | C.A. No. 05-10017- RWZ |

**MEMORANDUM OF LAW IN SUPPORT OF
COMPUTER SALES INTERNATIONAL, INC.'S MOTION TO DISMISS PORTIONS
OF LYCOS' RECENT "ANSWER" TO CSI'S AMENDED COMPLAINT WHICH
PURPORT TO SET FORTH "USURY" AND OTHER NEW COUNTERCLAIMS**

In its *fourth* attempted iteration of a Counterclaim in this case, defendant Lycos, Inc. ("Lycos") has taken advantage of the Court-approved filing of a limited five-page amendment to CSI's Complaint (which was based entirely on new facts uncovered by CSI in discovery), to attempt to assert, under the guise of answering CSI's amendment, a whole new universe of counterclaims,[1] not in any way related to CSI's amendment, that could have been but were not pled at the outset of this case, and that include usury claims that that this Court **has already ruled Lycos cannot assert.** See Order of July 28, 2006 (denying Lycos' Docket No. 62 Motion to Amend).

---

[1] See Docket No. 122 ("Answer to CSI's Amended Complaint and Counterclaim of Lycos, Inc.," filed December 14, 2006) at pp. 8-46.

ME1 6034586v.1

The plaintiff herein, Computer Sales International, Inc. ("CSI") has now moved this Court, pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(f), and the "law of the case" doctrine, to dismiss and/or strike those newly added portions of "Lycos's Answer to CSI's Amended Complaint and Counterclaim of Lycos, Inc.," dated December 14, 2006 (Docket No. 122) -- on grounds that:

(1)   the "law of the case" doctrine prohibits Lycos' renewed attempt to introduce usury claims that have already been disallowed, *see, e.g., In re Stone & Webster, Inc. Securities Litig.*, 2006 WL 1738348 (D. Mass. June 23, 2006) (Zobel, J.)(held that amendments that were previously rejected by the Court in denying an earlier motion to amend could not later be added);[2]

(2)   usury claims do not lie in this situation anyway, for the reasons that CSI argued earlier this year, *see* Docket Nos. 64, 68, and as the Massachusetts state and federal courts have both held;[3] and

---

[2]   The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)). *See also Scottish Air Int'l v. British Caledonian Group, PLC*, 152 F.R.D. 18, 25 (S.D.N.Y. 1993) ("The law of the case doctrine is ... applied where a court is asked to reconsider its own prior rulings...."); *Bieneman v. City of Chicago*, 662 F. Supp. 1297, 1299 (N.D. Ill. 1987) (rejecting an effort to replead dismissed claims under the law of the case doctrine).

[3]   *Human Resources Development Press, Inc. v. IKON Office Solutions Company, Inc.*, 2006 WL 149043, *7 (D. Mass. Jan. 12, 2006) ("section 49 was not intended to protect leases of personal property ... [T]he transformation of the lease into a loan ***would be patently untenable as a matter of law***...."); *Allegheny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc.*, 21 Mass. App. Ct. 155, 159-61 (1986) (holding that the Massachusetts usury statute does not apply to leases); *Peck v. Coffman*, 1995 WL 809892 (Mass. Super. June 19, 1995) ("The usury statute, by its own language, ***does not apply*** to transactions other than loans of money or property.")

(3) Lycos should not be permitted, without leave of Court, to add new counterclaims, ***unrelated to the recently allowed amendment to CSI's Complaint***, that could have been but were not pled by Lycos before, would require significant new analysis and discovery, and that seek to apply entirely new legal theories (*e.g.* Uniform Commercial Code, M.G.L. c. 231, §85J, etc.) to facts that were known to Lycos at the outset of this case. *See Colm Nolan v. City of Yonkers*, 92 Civ. 6067, 1996 U.S. Dist. LEXIS 3221 (S.D.N.Y. 1996) ("defendants ***did not*** have a right to assert new counterclaims ***unrelated to the amendment*** in their answers to the Second Amended Complaint in the same way they had the right to assert counterclaims in their original answer."), *citing Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706, 712-13 (S.D.N.Y. 1982). *See also* 3 James W. Moore, et al., Moore's Federal Practice, Civil, § 15.17[6] (3rd Ed. 1997) ("Normally, a party responding to an amended pleading must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading.").

These arguments are correct, and CSI's motion should be granted for the reasons set forth herein and in CSI's motion.

## ARGUMENT

I. **LYCOS CANNOT RE-INJECT "USURY" CLAIMS INTO ITS COUNTERCLAIM AS THE COURT HAS ALREADY DISALLOWED THOSE CLAIMS, AND, AS CSI ARGUED EARLIER THIS YEAR, USURY CLAIMS DO NOT LIE HERE**

   A. **The Usury Claims That Lycos Seeks to Add in Its Answer to CSI's Amended Complaint Have Already Been Disallowed by This Court in Denying Lycos' Previous Motion to Add Those Claims**

Under the "law of the case" doctrine, Lycos should not be permitted to re-assert its usury counterclaims because this Court has already refused Lycos motion to amend to add such claims. *See* Order of July 28, 2006. Under the "law of the case" rule, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same

case." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) (*citing Arizona v. California*, 460 U.S. 605, 618 (1983)). *See also Scottish Air Int'l v. British Caledonian Group, PLC*, 152 F.R.D. 18, 25 (S.D.N.Y. 1993) ("The law of the case doctrine is ... applied where a court is asked to reconsider its own prior rulings...."). While the doctrine is discretionary, the rule is that a Court should not depart from a prior holding unless it is convinced that the prior holding was "clearly erroneous and would work a manifest injustice." *Harlow*, 432 F.2d at 55. *See also Scottish Air Int'l*, 152 F.R.D. at 25 ("the law of the case counsels against reconsideration absent 'compelling circumstances,' including an intervening change of law, the availability of new evidence, or to correct a clear error or prevent manifest injustice.'") (citation omitted); *United States v. Moran*, 393 F.3d 1 (1st Cir. 2004) (discussing the limited circumstances under which a court should reconsider its past decisions).

The reasons for the "law of the case" rule are varied. First, the doctrine "affords litigants a high degree of certainty as to what claims are - and are not - still open for adjudication." *Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002)  Second, the doctrine "furthers the abiding interest shared by both litigants and the public in finality and repose." *Id.* Third, "it promotes efficiency; a party should be allowed his day in court, but going beyond that point deprives others of their days in court, squanders judicial resources, and breeds undue delay." *Id.* "Fourth, the doctrine increases confidence in the adjudicatory process: reconsideration of previously litigated issues, absent strong justification, spawns inconsistency and threatens the reputation of the judicial system." *Id.*

Indeed, courts routinely apply the law of the case doctrine to prevent a party from reasserting a claim that had previously been rejected in the case. For instance, *In re Stone & Webster, Inc. Securities Litig.*, 2006 WL 1738348 (D. Mass. June 23, 2006) (Zobel, J.), plaintiffs

sought to amend their complaint to add amendments that were previously rejected in connection with an earlier motion to amend. This Court noted that it was bound by the court's earlier rulings absent a showing of "significant new evidence, a change in controlling law, or manifest injustice." *Id.* Finding that no such showing had been made, the Court concluded, "to the extent that plaintiffs' Second Motion raises the same arguments and seeks leave to make the same amendments as the First Motion, it is denied."

Similarly, in *Carroll v. City of Quincy*, 441 F. Supp. 2d 215 (D. Mass. 2006), a defendant attempted to relitigate a statute of limitations defense in a summary judgment motion. The court rejected the defense, noting that the issue had been raised in a prior motion to dismiss and was rejected, and thus the defense was barred by the law of the case and would not be disturbed absent a showing that the earlier ruling was either clearly erroneous or would work a manifest injustice. *Id.* at 220.

In *Didzbalis v. Sheridan Transp. Co.*, 2003 WL 21035178 (S.D.N.Y. May 7, 2003), a party similarly sought to reassert cross-claims that had previously been disallowed when the court denied an earlier motion for leave to amend the pleadings. The court held that, under the law of the case doctrine, there was "no reason for reconsidering my prior decision." *Id.* at *1. *See also Resolution Trust Corp. v. Fleischer*, 890 F. Supp. 972 (D. Kan. 1995) (denying claims in a summary judgment motion on the basis that the claims were previously rejected by the court in connection with an earlier motion to strike pursuant to the law of the case doctrine); *Scottish Air Int'l*, 152 F.R.D. at 29 (denying plaintiff's renewed attempt to include allegations that were previously disallowed under the law of the case doctrine); *Bieneman v. City of Chicago*, 662 F. Supp. 1297, 1299 (N.D. Ill. 1987) (rejecting an effort to replead dismissed claims under the law of the case doctrine).

In this case, the issue of Lycos' entitlement to pursue usury claims in this case -- despite the fact that it has reported publicly for years that none of its transactions with CSI were loans, and that all its leases were true leases -- has already been decided, and those claims were disallowed. It is not appropriate, fair, or consistent with the law of the case doctrine, for Lycos to attempt to resurrect them now. For these reasons, the usury and usury-related claims in Lycos' recent "Answer to CSI's Amended Complaint and Counterclaim of Lycos, Inc.," filed December 14, 2006 (Docket No. 122), which appear at pages 35-41 of that pleading as new Counts VIII, IX, X, and XI, should be properly stricken and dismissed.

**B.   The Usury Claims That Lycos Seeks to Add in Its Answer to CSI's Amended Complaint in Any Event Do Not Lie Here**

As CSI pointed out in detail in its memoranda (Docket Nos. 64, 69) opposing Lycos motion to amend its counterclaim to add usury claims seven months ago (Docket No. 62), usury claims simply do not lie here, and an amendment adding them would in any event be a nullity. *See* Docket No. 64 at 1 ("Usury clearly does not lie here, ... and the attempt to introduce it at this stage of the case should be denied as futile and untimely (if such a claim had been timely pled last year, ... CSI would have been entitled to have it dismissed at that time along with Lycos' "unconscionability" count, which was dismissed").

Nevertheless, Lycos' new counterclaims purport to add substantially the same four counts that Lycos sought to amend to its counterclaim earlier this year (albeit with different numbers): Count VIII (Declaratory Relief–Schedules 93 and 94 Each Evidence a Loan and Security Agreement); Count IX (Declaratory Judgment as to Whether Missouri or Massachusetts Law Governing Lycos' Claim that Schedules 93 and 94 are Usurious and Violative of 93A); Count X (Usury, M.G.L. c. 271, § 49), and Count XI (M.G.L. c. 93A, §§ 2 and 11. While the end result of these several counts is basically to again try to add a single usury claim to this action, Lycos is

ME1 6034586v.1

required to use multiple counts and contorted and flawed logic to reach this result because the settled rule in Massachusetts – which Lycos does not dispute – *is that leases are not subject to the Massachusetts usury law*.

### 1. Leases Are Not Subject to M.G.L. c. 271, § 49

As CSI pointed out earlier this year, the Massachusetts usury law, which is a criminal statute, is set forth at M.G.L. c. 271, § 29. "The law is designed to protect the necessitous debtor from outrageous demands by lenders." *Begelfer v. Najarian*, 381 Mass. 177, 182 (1980). The law provides, in pertinent part:

> Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury ....
>
> (c) Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made.
>
> (d) The provisions of paragraph (a) to (c), inclusive, shall not apply to any person who notifies the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be proscribed under the provisions of paragraph (a) providing any such person maintains records of any such transaction....

*Id.* The statute is notable in numerous respects relevant here. First, the statute is a criminal statute, not a civil remedy. The only civil remedy afforded by the statute is set forth in subsection (c), which provides that a usurious loan *may* be declared void by a court in equity. Thus, to the extent this statute applies in this case, and as will be shown below, it does not, Lycos's sole remedy would be to attempt to void the leases at issue. Its request for damages on grounds of usury is improper and could not be allowed.

Second, there is no *per se* policy against usury in the Commonwealth, as evidenced by subsection (d) which allows usurious loans so long as an adequate disclosure is made. *See Begelfer*, 381 Mass. at 184 ("parties [may] contract for an amount of interest greater than twenty per cent so long as the lender complies with the registration and record-keeping requirements of G.L. c. 271, § 49"). Thus, at best, Lycos seeks to apply a reporting provision of the usury statute.

Third, and perhaps most importantly, the statute on its face only applies to "loans." *See Peck v. Coffman*, 1995 WL 809892 (Mass. Super. June 19, 1995) ("The usury statute, by its own language, does not apply to transactions other than loans of money or property."); *Allegheny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc.*, 21 Mass. App. Ct. 155, 159-61 (1986) (holding that the usury statute does not apply to leases); *Human Resources Development Press, Inc. v. IKON Office Solutions Company, Inc.*, 2006 WL 149043, *7 (D. Mass. Jan. 12, 2006) ("section 49 was not intended to protect leases of personal property ... in which no loan terms are evident.... [T]he transformation of the lease into a loan would be patently untenable as a matter of law....").

The *Human Resources Development Press, Inc.* case is particularly instructive. There, IKON and its financing arm, IKON Financial Services, entered into two contracts with Human Resources Development Press, Inc. ("HRDP"), for the lease of two commercial grade copiers. HRDP argued that the leases were usurious under M.G.L. c. 271, § 49. The court rejected the claim. First, the court noted that c. 271, § 49 "is designed to prevent overbearing lenders from taking advantage of poorly situated borrowers" whereas the case at hand involved "commercial leases for equipment which only addressed price, term, breach, assignment and remedies. Nowhere in the leases was there any mention of a 'loan' or 'principal' or, for that matter, 'interest.'" *Id.* at *6 (citation omitted).

ME1 6034586v.1

Thus, the court concluded, for plaintiff's contention that its leases were really loans in disguise to have effect, "Plaintiff would have the court torture both the facts and the law." *Id.* Indeed, the court found it would be impossible to apply § 49 to the leases at issue because there would be no realistic way "to even estimate, let alone precisely calculate, the amount of any 'interest' supposedly charged ..." and the court declined Plaintiff's invitation to "engage in conjecture to establish the 'usurious interest rate' ..." by trying to "determine the fair market rental value of the equipment and then guess the amount allocated to 'principal' and 'interest.'" *Id.* Such an exercise, the court noted, "is speculation at its worst." *Id.* In sum, the court concluded that, "[g]iven the mathematical contortions which Plaintiff suggests, it is clear why ... section 49 does not apply to commercial leases."

Because the transactions at issue in this case are on all fours with those in the *Human Resources Development Press, Inc.* case, this Court should also find that the agreements at issue are leases not subject to the Massachusetts usury statute. As in *Human Resources Development Press*, there is no way for the Court to find any transaction usurious because there is no way to determine which part of the leases here would constitute principle and which parts would constitute interest (this information is obviously not contained anywhere on the lease documents given that there was no contemplation in those documents that the parties' were entering into anything but leases) and any estimates that Lycos may try to make in this regard can be nothing but rank speculation.

Clearly, turning leases into loans subject to the Massachusetts usury statute would have a serious detrimental effect on the law of leasing, which is why the courts have consistently declined to do so. Under Lycos's theory, if any lessee, either an equipment lessee or a real estate lessee, at some point determined that it has paid more in rent than the property is worth, it could

bring a claim for usury. As the courts have repeatedly recognized, this approach is clearly *not* the intent of the usury statute, and would impose obligations hereto unknown in this Commonwealth. In fact, even calling these transactions loans strains credulity because the leases, by their terms, make no provision for Lycos to take ownership of the equipment.

It is also highly disingenuous for Lycos to now claim that its leases with CSI were really loans, because it has repeatedly represented, in its accounting statements and SEC filings, that its leases with CSI were true leases.[4] Having succeeded in keeping these transactions off of its books on the grounds that they were "true leases," Lycos cannot now argue that the transactions were really loans all along.

### 2. Sometimes a Lease is Just a Lease

Recognizing that the usury statute does not apply to leases, Lycos asks the Court to exercise its discretion to declare that the documents that were entitled leases, and were treated as leases so that Lycos did not have to reflect the transaction on its balance sheet, are actually loans and security agreements under § 1-201(37) of the Uniform Commercial Code. *See* Answer to Amended Complaint and Counterclaim of Lycos (Docket No. 122), at pp. 35-38. Lycos makes this argument even though, as noted above, it expressly structured the leases to *not be loans* so it would not have to recognize them on its balance sheet and even though the Master Lease expressly states, "**This Master Lease is intended to be a true lease and not a lease intended as**

---

[4] Companies like Lycos who have taken on too much debt strive to keep transactions off their balance sheets so as to make their debt-to-equity ratios appear stronger than they really are in the eyes of the market (as anyone who has been following the Kenneth Lay/Jeffrey Skilling trial can attest to). By structuring a transaction as a lease, the transaction is kept "off balance sheet" and only has to be recorded as a monthly expense on a company's income statement, rather than as a liability on the balance sheet. If the transaction was a loan, however, the transaction would be required to show up on Lycos' balance sheet.

ME1 6034586v.1

*security or lease in the nature of a security interest.*" Master Lease ¶ 18.1 (emphasis added). This makes no sense.

Furthermore, even if the leases at issue were security agreements, which, as discussed below, is not the case, this would not necessarily make the leases loans subject to the usury statute. The purpose behind § 1-201(37) is to determine rights among competing claimants to the goods at issue. (This is why the majority of § 1-201(37) cases come up in the bankruptcy context.) Thus, while a lease that falls within the ambit of § 1-201(37) may be recharacterized as a "security interest," *nothing in § 1-201(37) provides that the transaction should further be treated as a loan.* For instance, in *Human Resources Development Press, Inc.*, the court found that while it was premature to determine whether the leases at issue were actually security agreements pursuant to § 1-207(37), it nevertheless dismissed the usury count finding that "the transformation of the lease into a loan would be patently untenable as a matter of law ...." *Id.* at *7. In other words, determining whether the leases are really security agreements is a wholly academic exercise because, either way, *they are not be loans subject to the Massachusetts usury statute.*

### 3. Missouri Law Would Apply and Disallow Lycos's Usury Claims

Missouri law, even more clearly, does not permit a cause of action for usury in business-to-business transactions such as the transactions evidenced by Schedules 93 and 94 between Lycos and CSI. *See* Mo. Rev. St. ch. 408.060 ("no corporation shall ... interpose the defense of usury in any such action, nor shall any bond, note, debt, contract or obligation of any corporation or any security therefor, be set aside, impaired or adjudged invalid by reason of the rate of interest which the corporation may have paid or agreed to pay hereon."); *Kroh Bros. Development Co. v. State Line Eighty-Nine, Inc.*, 506 S.W.2d 4, 13 (Mo. App. 1974) ("Since

State Line was admittedly a corporation, the defense of claimed usury was unavailable to it and accordingly would be unavailable to Kleb, its guarantor.").

For this reason, Lycos purports to ask, in its new counterclaims, for a declaration that Massachusetts law applies to its claims for usury. *See* Answer to CSI's Amended Complaint and Counterclaim of Lycos, Inc. (Docket No. 122) at pp. 38-39. In order to apply Massachusetts law in this case, however, Lycos would have the Court ignore entirely the parties' choice of law provision in the Master Lease which states, "THIS MASTER LEASE AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, THE LAWS OF THE STATE OF MISSOURI, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW." Master Lease § 18.6 (all caps in original).

As a usury claim seeks to attack the specific terms of a contract – *i.e.*, whether those terms exceed a given rate of interest – there can be no dispute that such a claim arises under the agreement itself rather than being unrelated to the contract or relating to issues such as formation. This being the case, the choice of law provision must be properly enforced. *See Computer Sales Int'l, Inc. v. Lycos, Inc.*, 2005 WL 3307507, *2-3 (D. Mass. Dec. 6, 2005). And under the applicable Missouri law, Lycos cannot assert a usury claim.

Moreover, even if the Court could accept Lycos's argument that the leases were really disguised security agreements subject to the UCC (which it cannot), then the UCC would have to be applied to determine the proper choice of law. Under UCC § 1-105, adopted in both Massachusetts and Missouri (*see* M.G.L. ch. 106, §1-105(1); Mo. Rev. St. ch. 400.1-105(1)), "when a transaction bears a ***reasonable relation*** to this state and also to another state or nation

the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." *Id.* (emphasis added). Here, the transaction clearly bears a reasonable relation to Missouri because that is where CSI is based and the Master Lease indicates that it is between Lycos and CSI "having its principal office and place of business at 10845 Olive Boulevard, St. Louis, Missouri 63141." *See* Master Lease at 1. Missouri's usury law, therefore, would apply.

In fact, the precise issue of which state's usury law should apply in a lease *qua* security agreement dispute was addressed in the case *Woods-Tucker Leasing Corp. of Georgia v. Hutcheson-Ingram Development Co.*, 642 F.2d 744 (5th Cir. 1981). In that case, Hutcheson-Ingram entered into a sale lease-back transaction with Woods-Tucker. The lease specifically provided that it was to be "governed by the law of the state of Mississippi." *Id.* at 746. Hutcheson-Ingram nevertheless sought to have the court apply Texas law to its usury claim because Texas law was more favorable to it. *Id.* at 747. In support of this argument, Hutcheson-Ingram pointed out that Texas had the most significant contacts to the transaction, given that Woods-Tucker had four offices in Texas, engaged in multistate leasing, and the transaction at issue was originated in Texas by a Texas company. The only Mississippi contacts were the fact that Woods-Tucker's home office was in Mississippi and the transaction at issue was approved by the home office (even though it was negotiated in Texas). *Id.* at 749. Nevertheless, the court held that, under § 1-105(1), the term ***reasonable relation*** would almost always be satisfied unless the selected jurisdiction lacked a "normal relation to the transaction." *Id.* at 751. Further, the court found that a home office easily satisfies the reasonable relation test. *Id.*

Indeed, relying on *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403 (1927), the *Woods-Tucker* court found that even if the selected choice of law was specifically intended to

evade another state's usury law, so long as the selected state bore some connection to the transaction, the choice of law provision should be upheld. *Id.* at 751 ("That the intent of their choice of law provision was to avoid the usury laws of some interested jurisdiction is immaterial they are perfectly free to do just that."). Such a reading is essential in keeping with the UCC's "underlying purpose of establishing a nationally uniform law to govern commercial transactions.... [And] [t]he Code's devotion to the principle of party autonomy, particularly in the choice of law, is but a reflection of that policy. By calling upon state courts to yield to party choices of law in multistate transactions, except where it would be unreasonable to do so, the Code attempts to achieve uniformity arising from the ability of multistate contractants to select the law that will govern their transactions in the full expectation that their choice of law will be respected by whatever court might chance to hear their dispute." *Id.* at 751.

As the court did in *Woods-Tucker*, the Court here should properly apply Missouri's law as to the usury argument because that is the law that two sophisticated business parties selected. While Lycos, part of a large multinational corporation, may attempt to convince the Court that it needs protection from the contracts its executives knowingly entered into, it can hardly be considered the necessitous debtor that the Massachusetts legislature envisioned when the usury statute was enacted. Indeed, the transaction at issue here would not even be barred by Massachusetts' usury law if it had been disclosed to the Attorney General, but CSI had no reason to expect that it was required to do so because Lycos has only claimed now for the first time, after almost two years of litigation, that the leases in dispute were not really leases at all but security agreements. Prior to that, Lycos consistently represented to CSI that it was only interested in entering into "true leases" because it did not want to reflect the leases as loans on its balance sheet.

In sum, because Missouri law applies to the parties' contracts and because that law does not allow corporations to bring usury claims, Lycos' usury claims fail as a matter of law. For these reasons, the usury and usury-related claims in Lycos' recent "Answer to CSI's Amended Complaint and Counterclaim of Lycos, Inc.," filed December 14, 2006 (Docket No. 122), which appear at pages 35-41 of that pleading as new Counts VIII, IX, X, and XI, should be properly stricken and dismissed.

## II. THE OTHER NEW COUNTS ADDED TO LYCOS RECENT COUNTERCLAIM SHOULD NOT BE PERMITTED

Similarly, Lycos should not be permitted, without leave of Court, to add new counterclaims -- unrelated to the recently allowed amendment to CSI's Complaint -- that could have been but were not pled by Lycos before, would require significant new analysis and discovery, and that seek to apply entirely new legal theories (*e.g.* Uniform Commercial Code, M.G.L. c. 231, §85J, breach of implied covenant as applied to equipment leases, etc.) to facts **that were known to Lycos** at the outset of this case. *See Colm Nolan v. City of Yonkers*, 92 Civ. 6067, 1996 U.S. Dist. LEXIS 3221 (S.D.N.Y. 1996) ("defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way they had the right to assert counterclaims in their original answer."), *citing Chrysler Corp. v. Fedders Corp.*, 540 F.Supp. 706, 712-13 (S.D.N.Y. 1982). *See also* 3 James W. Moore, et al., Moore's Federal Practice, Civil, § 15.17[6] (3rd Ed. 1997) ("Normally, a party responding to an amended pleading must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading.").

Rule 13 provides that a party that has failed to plead particular counterclaims as part of its pleadings may only add those counterclaims with leave of court. *See* Fed. R. Civ. P. 13(f) ("When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable

ME1 6034586v.1

neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment.") (emphasis added). *See also Stoner v. Terranella*, 372 F.2d 89 (6th Cir. 1967) (Rule 13(f) "provides a remedy for setting up omitted counterclaims which is separate and apart from the remedy provided in Rule 15(a) dealing with pleading amendments in general. While Rule 13(f) provides that an omitted counterclaim may be set up only by leave of court, under Rule 15 a pleading may be amended at any time within 20 days after it is served if the pleading is one to which no responsive pleading is permitted (*e.g.*, an answer only, without a counterclaim).") (internal quotation marks omitted).

While Lycos may try to argue that can amend its counterclaims as of right under Rule 15(a) because they are part of a "pleading in response" to CSI's Amended Complaint, this argument is not supported by the actual language of Rule 15(a), and would give Lycos an unfair tactical advantage - *i.e.*, it would permit it to assert counterclaims late in the case that it could easily have asserted at inception simply because CSI obtained leave to amend on the basis of newly discovered evidence.

Under Rule 15(a) a party may amend its pleading as of right "at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted … at any time within 20 days after it is served." *Id.* Neither scenario for amendments as of right apply here. This is not a situation where Lycos legitimately filed a counterclaim and is seeking to amend it within the 10 days CSI has to respond and, unlike an answer, a counterclaim is a pleading for which a responsive pleading *is* permitted (see Fed. R. Civ. P. 12(a)(2)). Moreover, Rule 15(a) specifically addresses the procedure for responding to amended pleadings. The Rule further provides, "A party shall plead in response to an amended pleading

ME1 6034586v.1

within the time remaining for response to the original pleading or within 10 days after service of the amended pleading ...." *Id.*

Thus, while there is no dispute that Rule 15(a) allows an answer to be filed in response to an amended complaint, the rule does ***not*** allow additional counterclaims to be raised at that time. Any other reading would directly conflict with the express provisions of Rule 13(f). *See Exchange Nat'l Bank of Chicago v. Abramson*, 45 F.R.D. 97, 104 (D. Minn. 1968) ("Since Rule 13(f) speaks specifically to the problem of 'omitted counterclaims', while Rule 15 is general with regard to amendments, the former controls."); *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185, 1188 (3d Cir. 1979) (rejecting attempt to add counterclaims under Rule 15 in response to an amended complaint, finding that "The trial judge observed that the counterclaim arose out of a claim that existed at the time the first complaint was filed and the defendant should have raised the matter in its original answer. Under Fed. R. Civ. P. 13(f), an omitted counterclaim may be filed at a later time only by leave of court. Since the defendant did not secure leave, the court granted plaintiff's motion to dismiss the counterclaim."). *See also* 3-15 Moore's Federal Practice - Civil § 15.17 ("Normally, a party responding to an amended pleading must 'plead in response' to the amended pleading, and must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading.").

While the scenario might be different if Lycos's counterclaims were in response to the new allegations raised by CSI in its Amended Complaint (*see* Moore's § 15.17), a review of its new counterclaims reveals that the opposite is true. Lycos is simply seeking to add new counts to its existing allegations, and to reassert previously rejected usury claims. In this circumstance, however, it has no vested right to do so. *See Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706, 713 (S.D.N.Y. 1982) (because Rule 13 applies to amended counterclaims filed in connection

with an answer to an amended complaint, "Fedders does not have a right to assert new counterclaims at this time in the same way that it had a right to assert counterclaims in its original answer."); *Nolan v. City of Yonkers*, 1996 WL 120685, at *4 (S.D.N.Y. March 19, 1996) (rejecting defendants' argument that by amending their complaint, the plaintiffs "open[ed] themselves up to any and all counterclaims that defendants chose to assert," finding instead that "defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint ...."); *Elite Entertainment, Inc. v. Khela Brothers Entertainment*, 227 F.R.D. 444, 447 (E.D. Va. 2005) ("To be sure, defendants are entitled to file an amended counterclaim 'in response to' plaintiffs' amended complaint if they wish to clarify and simplify the factual allegations contained therein or to remove claims previously alleged. ***What they may not do as of right, however, is amend their counterclaim to bring new claims never previously alleged.***")(emphasis added).

## CONCLUSION

For all of the foregoing reasons, CSI's Motion to Dismiss Portions of Lycos' Recent "Answer to CSI's Amended Complaint and Counterclaim of Lycos. Inc." (Docket No. 122) should be allowed, and Lycos be properly limited to its previously existing counterclaim (Docket No. 19).

In particular, the usury and usury-related counterclaims in Docket No. 122, which appear at pages 35-41 of that pleading as new Counts VIII, IX, X, and XI, and the other newly added claims, appearing at pages 31-33 of that pleading as new Counts IV, V, and VI (making new allegations of violation of M.G.L. c. 231, §85J, violation of M.G.L. c. 93A on account of supposedly violating c. 231, §85J, and alleged breach of implied covenant of good faith based on

Case 1:05-cv-10017-RWZ   Document 124   Filed 12/15/2006   Page 19 of 19

-19-

CSI's calculation of "stipulated loss values" in its leases with Lycos-- an issue never raised in Lycos' prior counterclaims) should be properly stricken and dismissed.

Respectfully submitted,

COMPUTER SALES INTERNATIONAL, INC.
By its attorneys,

/s/ Robert J. Kaler
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
David Himelfarb, BBO No. 649596
dhimelfarb@mccarter.com
McCarter & English LLP
225 Franklin Street
Boston, MA  0211
Tel. (617) 345-7000

Dated: December 15, 2006

### Certificate of Service

I, Robert J. Kaler, hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically this 15th day of December 2006.

/s/ Robert J. Kaler
Robert J. Kaler

ME1 6034586v.1