UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| COMPUTER SALES INTERNATIONAL INC., ) | | |
| Plaintiff, ) | | |
| **v.** ) | | |
| ) | | |
| LYCOS, INC., ) | C.A. No. 05-10017- RWZ | |
| Defendant, ) | | |
| ) | | |
| BANK OF AMERICA f/k/a FLEET BANK, ) | | |
| ) | | |
| Trustee Process Defendant. ) | | |
| ) | | |

**COMPUTER SALES INTERNATIONAL, INC.'S**
**OPPOSITION TO MOTION OF AVNET, INC., TO MODIFY SUBPOENA**

For almost five months, in close coordination with the defendant Lycos, Inc. ("Lycos"), Avnet, Inc. ("Avnet"),[1] a key leasing consultant for Lycos, and a major lessor of equipment to Lycos, has deliberately obstructed plaintiff Computer Sales International, Inc.'s ("CSI's") efforts to force it to reveal the extensive work it did for Lycos from 2000 to 2003 analyzing Lycos' leases with CSI -- work which included the creation and delivery to Lycos of massive electronic databases and reports containing detailed information on Lycos' leases with CSI that Lycos has inaccurately claimed, in this case, it did not have.

The stakes are very high for Lycos, because this information, and the testimony of the Avnet personnel who created it and delivered it to Lycos, and who worked for Lycos in Massachusetts analyzing the CSI leases, is expected to demonstrate that Lycos $20 million-plus

---

[1] Avnet is a major New York Stock Exchange company (NYSE: AVT), and is one of the world's largest distributors of computer equipment, semiconductors, microwave devices, and enterprise networking gear. *See* www.avnet.com. The company operates in 70 countries out of 280 worldwide locations, and maintains offices in Massachusetts at 10M Centennial Drive, Peabody, Massachusetts. It has 11,000 employees, and is ranked as the 212th largest company on the Fortune 500 list. *Id. See also* Affidavit of Counsel Attaching Documents, filed herewith ("Counsel Aff.") at Exh. 1.

counterclaim against CSI -- in which it alleges that it had no way of tracking its many leases with CSI, and was therefore misled by CSI into entering into various multimillion dollar transactions -- is essentially a fabrication.

Much of the information and testimony concerning the Avnet databases and reports, and Avnet's work for and communications with Lycos concerning its leases with CSI, was due to be obtained from Avnet over the past week -- with additional Avnet records, subpoenaed back in November, scheduled to be produced on December 15, 2006, and Avnet itself subpoenaed In November to appear, through knowledgeable Rule 30(b)(6) designees, this past Tuesday, December 19, 2006, at 9 AM. *See* Counsel Aff. at Exh. 2.

The timing of this week's Avnet deposition was important because the testimony from Avnet was needed in time for tomorrow's long-scheduled deposition of a key Lycos official, CFO Kevin Baillie, with whom Avnet extensively corresponded, from its Peabody, Massachusetts office, during the period it was working for Lycos. *See* Counsel Aff. at Exh. 3 (Correspondence and Report to Kevin Baillie from Avnet's Peabody, MA office). Mr. Baillie has been identified by Lycos as a key witness supporting its purported "fraud" claim against CSI, and has been scheduled to appear for deposition tomorrow for some time.

As Avnet has done before, however,[2] it first ignored the subpoena, which was served on it on November 29, 2006, and was acknowledged by its counsel on November 30th (the "November 29th subpoena") -- in the process allowing the time deadlines specified in the

---

[2] The November 29th subpoena is the *second* subpoena that CSI has served on Avnet in this case seeking records relating to its work for Lycos concerning the CSI leases. No deposition was scheduled pursuant to the first subpoena, which was served on August 2, 2006, because the production of the most important records sought by that subpoena was delayed by Avnet until after CSI's September 19, 2006 deposition of the former Lycos leasing manager, Sam Ziba, who had worked with those records, and with Avnet, with the result that Ziba could not be questioned about the records, and now (although he is represented by Lycos counsel) is resisting appearing for further deposition.

subpoena, and in the federal rules, to pass without raising any objections to it. It then first obscured its intentions with respect to how and when it would comply with the subpoena (CSI's counsel have been trying *for weeks*, to no avail, to communicate with Avnet about its compliance with the November 29th subpoena, but it was only on Monday, for the first time, that they learned that Avnet might challenge the location of the deposition or the scope of the subpoena).

Finally, *after* the deposition was unsuccessfully commenced on Tuesday of this week (with Avnet refusing to even send a legal representative), Avnet filed the instant untimely motion, *see Burroughs Corp. v. Datawire Sources, Inc.*, 1987 WL 10190 (D. Mass. April 28, 1987) ("When objections are not filed within the time provided by [Rule 45], the objections are waived.") (citing *Slauenwhite v. Bekum Maschinenfabriken GMBH*, 35 F. R. Serv. 2d 975 (D. Mass. 1983), through new counsel with no apparent involvement in or knowledge of Avnet's prior conduct. The result is that key information from Avnet that CSI needed to examine Mr. Baillie will not be available when Mr. Baillie is deposed tomorrow -- so the prejudice to CSI of Avnet failing to raise issues in a timely way is substantial.³

This is *the second time* that Avnet has done this to CSI, during periods when it was in close communication with the in-house legal department of its customer Lycos. Avnet's approach, so far as CSI can discern, has been orchestrated not by Kaja-Anne Jezycki, the new attorney who had the medical procedure cited in the affidavit of Avnet's new Massachusetts counsel, but rather by Avnet's more senior in-house legal counsel Peter Sanders, who has been

---

3   Lycos has to date resisted an agreement allowing its witnesses to be recalled for depositions, and has also indicated it will not agree to any extensions of the tentative discovery deadline in this case, and CSI needs to go forward with the deposition of Mr. Baillie tomorrow on other issues because his testimony on those issues will be the foundation for depositions of other Lycos personnel already scheduled for shortly after the first of the year).

dealing with CSI about its efforts to obtain discovery from Avnet for the last five months -- but who informed CSI, only several weeks ago, that out of his staff of more than half a dozen in-house attorneys, he was assigning the November 29th Subpoena, the one seeking actual testimony, and some additional records, to Ms. Jezycki, who as it turns out was at the time scheduled for an unspecified elective medical procedure this month.  *See* Counsel Aff. at Exh. 4.

Mr. Sanders, who has been in communication with Lycos in-house attorneys throughout the period in which CSI has been pressing Avnet to produce its records and witnesses, previously delayed Avnet's production of one of its key computer databases -- which was the subject of a previous subpoena served by CSI on Avnet on August 2, 2006 (the "August 2nd subpoena") -- until a few hours *after* CSI's September 19, 2006 deposition of the former Lycos leasing manager, Sam Ziba, who had worked with that database, and with Avnet), with the result that Ziba could not be questioned about the database, and now (although he is represented by Lycos counsel) is resisting appearing for further deposition.  *See* Counsel Aff. at Exh. 5.

This delay occurred in September even though Avnet had been specifically granted an extension to produce the database it created for Lycos with the understanding that it would be produced in time for the Ziba deposition.  *See* Counsel Aff. at Exh. 6.  Avnet simply went back on that agreement at the last moment, however, and withheld the database just long enough that it could not be used in the deposition of Mr. Ziba.  Although CSI objected to that tactic at the time, *id.* at Exh. 5, nothing could be done. (Lycos later characterized that objection as "rude" in filings with the Court suggesting that a Discovery Master was needed in this case, but records have since revealed that Avnet's counsel, Mr. Sanders, was corresponding directly with Lycos' law department about these measures at the time, and secretly forwarding to Lycos' attorneys

Case 1:05-cv-10017-RWZ    Document 128    Filed 12/20/2006    Page 5 of 15

-5-

copies of his communications to CSI advising that the production of the database would be delayed.)

Now, Avnet is trying to do the same thing again -- ignoring the time deadlines and rules for objecting to federal court subpoenas, using new local counsel with no knowledge of Avnet's prior conduct to present a less than complete picture of this situation in a sworn affidavit, concealing Mr. Sanders' role in Avnet's prior efforts to avoid complying in a timely way with both this subpoena and the August 2nd subpoena, and even refusing to state what Mr. Sanders position with Avnet is now, even though it was Mr. Sanders who informed CSI, only several weeks ago, that it should communicate with Ms. Jezycki, rather than with him, about the subpoena. *See* Counsel Aff. at Exh. 4.

In the process, the Avnet Motion, and the affidavit of its new counsel, present a thoroughly incomplete picture of the situation, and suggest that CSI simply would not postpone a deposition at the request of a lawyer who just had a medical procedure -- when the subpoena was served back in November, no request for delay was received until late last week, Avnet is a huge company with a large legal staff, Mr. Sanders assigned the matter to Ms. Jezycki knowing full well that she had scheduling issues this month, and she and Avnet failed to respond for weeks to telephone and email inquiries from CSI's counsel. This is not proper, and the argument about Ms. Jezycki's schedule is a ruse (no one from Avnet objected to the scope of the subpoena or the location of this deposition in Massachusetts at any time prior to this week). Moreover, federal caselaw, as discussed in detail below, does not support Avnet's challenge to the subpoena.

**LEGAL ARGUMENT**

As set forth in greater detail below, the Avnet Motion should be denied because it fails to establish legitimate grounds for modifying the subpoena, or for forcing CSI to travel to Avnet's

corporate headquarters in Phoenix Arizona to depose it about its work for Lycos here in Massachusetts (which in many cases was done out of its Peabody, Massachusetts office). The Avnet Motion is also untimely in the extreme, and seeks to raise objections that are deemed waived under federal law.

I.  **THE DEPOSITION OF A MULTINATIONAL CORPORATION NEED NOT BE CONDUCTED WITHIN 100 MILES OF ITS CORPORATE HEADQUARTERS**

First, the Avnet Motion mistakenly relies on Fed. R. Civ. P. 45(c)(3)(A), and a portion of Moore's Federal Practice, Moore's Fed. Prac. 3d § 45.51[2], to argue that CSI's deposition of Avnet, a large multinational company doing business and maintaining offices in Massachusetts (and therefore clearly subject to the jurisdiction of the Massachusetts courts) can be conducted only in Phoenix, Arizona. *See* Avnet Motion at 1.

These authorities do not support that argument, however, because the "witness" in this case is not an individual, but a corporation with offices here in Massachusetts at 10M Centennial Drive in Peabody, MA, less than twenty (20) miles from the location set for the deposition (downtown Boston). With a corporate witness, a deposition within 100 miles of its corporate headquarters is presumed to be appropriate, ***but it is also well-settled*** that a corporation which is present in the forum state where a litigation is pending may be required to produce its Rule 30(b)(6) designees for deposition in that jurisdiction. *See, e.g., Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989) ("Because courts retain substantial discretion to designate the site of a deposition, the presumption [regarding deposing within 100 miles of its corporate headquarters] appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other.").

In deciding where the deposition of a corporation through its designees should go forward, courts weigh numerous factors. *See, e.g., Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D.N.C. 1988). In *Turner*, for example, the Court held that:

> Ultimately, the Court must consider each case on its own facts and the equities of the particular situation. … Factors which support holding the deposition in the forum district are:
>
> (1) Counsel for the parties are located in the forum district….
>
> (2) The defendant is a large corporation whose employees often engage in travel, only one or two employees will be required to travel to the deposition, and the document production is not oppressive. …
>
> (3) Significant discovery disputes may arise and judicial economy favors resolution by the forum court or other similar concerns. …
>
> (4) The nature of the claim and the relationship of the parties are such that an appropriate adjustment of the equities favors a deposition site in the forum district….

*Id.* (citations omitted). *Accord*, *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 - 629 (C.D.Cal. 2005)("[A] number of factors … may persuade the Court to require the deposition [of a corporation whose headquarters are out of state] to be conducted in the forum district …").

As a result, corporate deponents "are frequently deposed in places other than the location of the principal place of business, especially in the forum [where the action is pending], for the convenience of all parties and in the general interests of judicial economy." *Id.* (citations omitted). Here the equities tip sharply in favor of conducting Avnet's deposition in Massachusetts for the following reasons:

 **1.** Avnet completely ignored the requirements of the subpoena (documents were supposed to have been produced on December 15th) until the times set for compliance had passed, and the deposition of Avnet's contact at Lycos, Kevin Baillie, was imminent, and did not file a motion seeking to change the location of the December 19, 2006 deposition until the

morning of the deposition -- in fact not until after the deposition had actually commenced and been suspended -- which as a matter of law is an untimely objection to a subpoena, especially one that Avnet knew about for weeks prior to the deposition, and never objected to the location of the deposition, or the scope of the subpoena, until this week.  *See* Counsel Aff. at Exh. 4.

   2.   Avnet does business and maintains an office in Massachusetts, has Massachusetts counsel, and has not offered any competent evidence establishing that Massachusetts is an unduly burdensome location for it under the circumstances, or that its Massachusetts employees, some of whom were in communicating with Lycos during the relevant time period about its leases, can appear at its deposition.  In fact, Avnet has not even identified who it is proposing that its knowledgeable witnesses would be (according to records, several are in its Massachusetts office).  In short, it is hiding the ball as much as possible.

   3.   Avnet is "a large corporation whose employees often engage in travel," and the records show that did travel to Massachusetts, repeatedly, to work for Lycos on the matters about which CSI now seeks to examine Avnet.  *See* Counsel Aff. at Exh. 7, p. 10; Exhs. 1, 3.  Avnet therefore cannot complain that having its personnel traveling to Massachusetts to give testimony concerning its work in Massachusetts for a Massachusetts company is somehow unfair or unduly burdensome.

   4.   Counsel for the parties in this case are located in Massachusetts, which is the forum for this litigation, and multiple discovery disputes have arisen (and may arise in the future) concerning discovery from Avnet, and those disputes will have to be adjudicated in this forum.

   5.   Avnet's tardiness in raising these issues, and its history of delay, obstruction, and lack of candor in dealing with CSI's subpoenas (even to this day, Avnet's local counsel is claiming privilege when asked if Peter Sanders even still works for Avnet), militate in favor of

permitting CSI's deposition of Avnet to proceed in Boston, go forward evidences its bad faith and tips the equities sharply in favor of a Massachusetts deposition.

6.	Because 45(c)(3)(A)(ii) does not apply in light of Avnet's business offices in Peabody, Massachusetts, Avnet may not rely on that provision and was required to seek a protective order pursuant to Rule 26(c)(2) prior to the date of the scheduled deposition. It failed to do this, and cannot now be heard to complain about the deposition's location. Moreover, Avnet has not submitted any declarations from its employees establishing that a Massachusetts deposition would create an undue burden - a critical omission given that Avnet would bear the burden of making this showing. *See Cadent Ltd*., 232 F.R.D. at 629 (noting that a failure to submit "declarations from its corporate officers attesting to either the expense or undue burden associated with holding plaintiff's Rule 30(b)(6) deposition" at the noticed location, the request for a protective order is "without merit").

7.	Instead, Avnet relies on the hearsay affidavit of its new counsel, recounting information provided to him by Ms. Jezycki (but refusing to disclose Peter Sanders continuing involvement at Avnet), making the unsupported allegations that "it would be a great hardship" for Avnet's knowledgeable witnesses to travel to Boston -- even though Lycos records show that those individuals traveled to Boston repeatedly while they were doing the work for Lycos concerning Lycos' leases with CSI. These witnesses, however, are not identified, and no effort has been made to demonstrate with particularity why it would be so much more difficulty for Avnet to produce them in Massachusetts now than it was when they worked for Lycos.

II.	**"MODIFICATION" OF THE CSI SUBPOENA WOULD NOT BE APPROPRIATE, AS THE SCOPE IS PROPER AND NECESSARY IN ORDER FOR CSI TO OBTAIN INFORMATION RELEVANT TO ITS DEFENSE**

As set forth in greater detail below, the scope of CSI's subpoena is proper and is targeted to uncover evidence of Lycos's knowledge, through its consultant Avnet, as to the tracking of its

equipment leases with CSI. Avnet's attempt to "modify" the subpoena is, again, part of a coordinated effort by Lycos and Avnet to obstruct CSI's discovery into these areas, and, if allowed, will prejudice CSI's ability to defend itself. The Avnet Motion also seeks to shield from discovery evidence of Avnet's communications with Lycos about its responses to CSI's subpoenas -- which is directly relevant to CSI's abuse of process and obstruction claims against Lycos (the amendment of which the Court just allowed earlier this month).

    **1.** The claim in paragraph 1 of the Avnet Motion that it should not have to produce information concerning "the identity and current home and work addresses of all persons who created, wrote, sent, received and/or held possession" of the documents it must produce because such is "not necessary for authentication of documents" misses the fact that CSI's subpoena is not solely to authenticate records. It is also to learn who at Avnet was communicating with and advising Lycos, and on what issues, so that CSI may develop its defense that Lycos knew all along about how to track the equipment it was leasing from CSI. Avnet clearly has this information in its records, CSI needs it to locate prospective witnesses on these key issues.

    **2.** Similarly, the claim in paragraph 2 of the Avnet Motion that it should not have to produce whatever information it has concerning Lycos's leases of equipment from CSI and others from 1994 to the present because the request would require Avnet to retrieve closed files from its Texas archives, and "give notice of the disclosure to the `other lessors' with whom Avnet has confidentiality agreements," makes little sense, because retrieval of documents from storage files is almost always necessary in responding to a subpoena, and the request is not for Avnet's leases, but rather for information that Avnet has concerning Lycos' leases -- which would be the subject of confidentiality agreement not with Avnet, but with Lycos -- and the Confidentiality Order in this case protects such records already, and CSI needs these records to

prove that Lycos was in no way neophyte in the business of leasing equipment when it dealt with CSI, but rather was being advised by Avnet with regard to its entire portfolio of leases.

**2(e)** Similarly, the Avnet motion is mistaken where it claims, in paragraph 2(e), that Avnet should not have to produce its communications with Lycos concerning "concerning this subpoena or the previous subpoena served on [Avnet] by CSI … and how and when [Avnet] intended to respond to it," because the Court recently allowed CSI to amend its claims to add a count for abuse of process against Lycos in connection with both this case, and a prior litigation filed against CSI by Lycos. As explained above, CSI efforts to obtain critical testimony and evidence from Avnet have been obstructed for months, during periods when Avnet has been in close communication with its customer Lycos. Obtaining discovery of those communications will be directly relevant to CSI's effort to prove that abuse of process claim -- and such communications clearly are not privileged.

**3.** Avnet misquotes item 3 of the testimonial portion of CSI's subpoena, making it sound as if CSI is seeking "all communications" between Avnet and any third parties from 1994 to the present. CSI's subpoena here is narrower, though, and seeks only to uncover communications with third parties "concerning Lycos's leasing and/or purchasing of equipment *from or through CSI*." The language omitted by the Avnet Motion makes clear that CSI is properly seeking information concerning Avnet's communications with other entities regarding Lycos's leasing and/or purchasing *from CSI* -- which is critical, in that what Avnet learned from others (during its 2000 full analysis of Lycos's leasing situation and at other times) concerning Lycos's dealings with CSI will shed light on what Lycos knew from other parties, and when it knew it, concerning its leases with CSI.

**4-5.** Aside from the routine nature of items 4 and 5 of CSI's subpoena -- essentially seeking to learn how Avnet went about responding to CSI's subpoena in order that CSI may verify that Avnet's production was complete -- the Court, as stated above, recently allowed CSI to add an abuse of process claim against Lycos concerning Lycos' conduct leading up to, and including its conduct during, the present lawsuit. Aside from learning where and how Avnet searched for responsive documents (item 4), CSI is entitled to pursue what communications, if any, Avnet had with Lycos which contributed to its delay in producing relevant evidence in this case. As it appears that only a few officials at Avnet, including Peter Sanders, were the ones communicating with Lycos concerning the subpoena, a search for these communications cannot fairly be considered "unnecessarily burdensome" to Avnet.

### III. UNDER FEDERAL LAW, AVNET'S BELATED CHALLENGE TO THE NOVEMBER 29TH SUBPOENA SHOULD BE PROPERLY DENIED AS UNTIMELY AND WAIVED

Even if Avnet's objections to the subpoena had merit (which they do not), it is well-settled that Avnet may not complain now about the scope or location of the November 29th subpoena when

(1)   Avnet was served with that subpoena on November 29, 2006, and its senior legal counsel acknowledged receipt of that subpoena on November 30, 2006;

(2)   Avnet failed to object to the subpoena within 14 days as required by Fed. R. Civ. P. 45(C)(2)(B);

(3)   Avnet simply ignored the requirement that it produce the subpoenaed records on December 15, 2006 when they were due (having failed to object to the Subpoena);

(4)   Avnet did not even advise CSI that it intended to challenge the scope of the subpoena or the location of the deposition until the day before the deposition; and

(5) Avnet waited until *after* its deposition was actually commenced to file a motion to "modify" the subpoena in such a way that it would gut the records production requirement, and force a major rescheduling and location change of the deposition.

The procedure for objecting to a subpoena is clearly set forth in Fed. R. Civ. P. 45. Under Rule 45(c)(2), "a person commanded to produce and permit inspection and copying may, ***within 14 days after service of the subpoena*** or before the time specified for compliance if such time is less than 14 days after service, serve … written objection to the inspection or copying… " *Id.* (emphasis added). Likewise, Rule 45 only allows for *timely* motions to quash or modify subpoenas. *See* Fed. R. Civ. P. 45(c)(3)(A) ("On ***timely*** motion, the court … shall quash or modify the subpoena if ….") (emphasis added).

In interpreting and applying these provisions of Rule 45, the federal courts have consistently held that a motion to modify or quash a subpoena that is not filed prior to the date set for compliance is not "timely" within the meaning of Rule 45, is invalid, and should be denied on the ground that the objections have been deem waived. *See Burroughs Corp. v. Datawire Sources, Inc.*, 1987 WL 10190 (D. Mass. April 28, 1987) ("When objections are not filed within the time provided by [Rule 45], the objections are waived.") (citing *Slauenwhite v. Bekum Maschinenfabriken GMBH*, 35 F. R. Serv. 2d 975 (D. Mass. 1983); *King v. Fidelity Nat'l Bank of Baton Rouge*, 712 F.2d 188, 191 (5th Cir. 1983) ("a motion to quash must be not only made but *granted* before the scheduled deposition to excuse compliance…. The motion to set aside the subpoena was thus ineffective to excuse the Kings from compliance with the subpoena. Further, since the time for the deposition has passed, it is too late to attack the validity of the subpoena."); *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996) ("a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of

ME1 6047701v.1

privilege *within fourteen days of service*, as required by Rule 45(c)(2)(B).") (emphasis added); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("The failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections."); *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (S.D.N.Y. 1991) ("This Court agrees that the witnesses' motion to quash made after the scheduled appearance date renders it untimely.").

The term "timely" for purposes of lodging objections to a subpoena is understood to mean "within the time set in the subpoena for compliance." *See United States v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270, 278 (D.C. Cir. 2002) ("In general, courts have read 'timely' to mean within the time set in the subpoena for compliance."); *Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (interpreting "timely" to mean "before the noticed date of the scheduled deposition"). *See also* Moore's Federal Practice - Civil § 45.50 ("Any motion seeking to quash or modify a subpoena must be 'timely' [meaning] … that the motion be made *before the date specified by the subpoena for compliance*.") (emphasis added).

Here, Avnet did not file its Motion to Modify until after its deposition was scheduled to (and if fact did) commence and four days *after* the date for it to produce documents. Under these circumstances, Avnet's objections to CSI's subpoena should be deemed waived and its Motion to Modify should be denied.

## CONCLUSION

For all of the foregoing reasons, Avnet's late Motion to Modify Subpoena should be denied, and Avnet directed to comply if possible by January 5, 2006.

        Respectfully submitted,

        COMPUTER SALES INTERNATIONAL, INC.
        By its attorneys,

        /s/ Robert J. Kaler
        Robert J. Kaler, BBO No. 542040
        rkaler@mccarter.com
        Edward W. Little, Jr., BBO No. 628985
        elittle@mccarter.com
        David Himelfarb, BBO No. 649596
        dhimelfarb@mccarter.com
        McCarter & English, LLP
        225 Franklin Street
        Boston, MA  0211
        Tel. (617) 345-7000

Dated:  December 20, 2006

### Certificate of Service

I, Robert J. Kaler, hereby certify that I caused a true copy of the foregoing pleading to be served on counsel for the other parties in this action electronically this 20th day of December, 2006.

        /s/ Robert J. Kaler
        Robert J. Kaler