UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) | C.A. No. 05-10017-RWZ |
| | ) | |
| Plaintiff and Defendant-in-Counterclaim, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT LYCOS, INC.'S** |
| LYCOS, INC., | ) | **MEMORANDUM IN SUPPORT OF ITS** |
| | ) | **OPPOSITION TO CSI'S** |
| Defendant and Plaintiff-in-Counterclaim, | ) | **MOTION TO DISMISS PORTIONS OF** |
| | ) | **LYCOS'S RECENT "ANSWER" TO CSI'S** |
| and | ) | **AMENDED COMPLAINT WHICH** |
| | ) | **PURPORTS TO SET FORTH "USURY" AND** |
| BANK OF AMERICA f/k/a FLEET BANK, | ) | **OTHER NEW COUNTERCLAIMS** |
| | ) | |
| Trustee Process Defendant | ) | |

## OVERVIEW

Having obtained leave from the Court to amend its complaint pursuant to Fed. R. Civ. P.

15(a) to add tort claims for fraud, abuse of process and violations of c. 93A to its "plain vanilla"

collection action for breach of contract, CSI now wants to deny Lycos the right to file a

counterclaim with new claims. The only decision in this jurisdiction addressing whether a

defendant may file new counterclaims without leave of court when a plaintiff amends its

complaint pursuant to Rule 15(a) has held that "[i]f plaintiffs' motion for leave to amend the

First Amended and Supplemental Complaint . . . was made pursuant to Rule 15(a), Fed.R.Civ.P.,

as is stated on the face of the pleading, the defendants *did not need leave* to serve new

counterclaims and to assert new defenses." *Refuse Fuels, Inc. v. Nat'l. Union Fire Ins. Co. of

Pittsburgh, PA.*, 139 F.R.D. 576, 578 (D. Mass. 1991) (emphasis added). The majority rule,

while somewhat more stringent, provides that "[w]hen a plaintiff files an amended complaint

which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint by the Plaintiff." *Brown v. E.F. Hutton & Co.*, 610 F.Supp. 76, 78 (S.D. Fla. 1985). Because CSI amended its complaint to add tort claims to its claims for breach of contract, CSI's Amended Complaint changed the theory and scope of its case. Thus, regardless of whether this Court adopts the *Refuse Fuels* view or the majority view, Lycos is entitled to file its new counterclaims as of right, regardless of whether it previously sought to add such counterclaims (Counts IX-XI and part of Count VIII) or not (Counts IV, V, VI, and part of VIII).

CSI nevertheless argues with respect to Counts VIII-XI that because Lycos sought to amend its counterclaim eight months ago to add usury claims and the Court denied that motion without decision, the law of the case doctrine somehow bars Lycos from adding its counterclaims for usury. CSI is wrong. The law of the case doctrine is inapplicable here because that doctrine applies only to disposition of the "same issue." The issue before the Court on Lycos's Motion for Leave to Amend to add usury claims was whether Lycos satisfied the requirements for adding an "omitted" counterclaim under the Rule 13(f); the issue before the Court now is whether Lycos may file a counterclaim as of right under the third sentence of Rule 15(a).[1] Accordingly, the issue before the Court now is *not* the same issue.

Additionally, and rather ironically, because this Court has twice held that Massachusetts law applies to determinations as to the validity of CSI's equipment schedules, it is CSI that is barred by the "law of the case" doctrine from arguing that Massachusetts law does not apply to Lycos's usury claims. Finally, Lycos's usury claims state claims upon which relief may be granted.

---

[1] The third sentence of Rule 15(a) reads as follows: "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever may be the longer, unless the Court otherwise orders."

## ARGUMENT

I.  **LYCOS IS ENTITLED TO ASSERT ITS NEW COUNTERCLAIMS AS OF RIGHT.**

A.  Because CSI Amended Its Complaint Pursuant to Fed. R. Civ. P. 15(a), Lycos May File New Counterclaims As of Right, Irrespective of the Nature of CSI's <u>Amendments to its Complaint.</u>

"An amended complaint supersedes the original complaint . . . ." *Intergen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). Because Rule 15(a) provides that a defendant "shall plead in response" to an amended pleading, Lycos *must* plead *in response* to CSI's Amended Complaint. As CSI's Amended Complaint was new, Lycos was necessarily responding to it for the first time. Rule 13(f), which requires leave of Court to set up a counterclaim "omitted" due to "oversight, inadvertence, or excusable neglect, or when justice requires," is thus inapplicable when a defendant is pleading for the first time in response to a superseding amended complaint. That is because a defendant, such as Lycos, could not have "omitted" a counterclaim when pleading in response to an Amended Complaint for the first time. Accordingly, courts, including the only court in this District to have addressed the issue, have held that "[i]f plaintiffs' motion for leave to amend the . . . [c]omplaint was made pursuant to Rule 15(a), . . . as is stated on the face of the pleading, the defendants did not need leave to serve new counterclaims and to assert new defenses." *Refuse Fuels,* 139 F.R.D. at 578[2] (citing *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 419 (D. Del. 1970) ("Since the amending pleader chooses to redo his original work, and receives the benefit of this *nunc pro tunc* treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading."); *accord, American Home Prod. Corp. v.*

---

[2]  Magistrate Judge Collings distinguished between a motion for leave to file an amended complaint pursuant to Rule 15(a)--which states that a "a party shall plead in response," from one to file a supplemental complaint pursuant to Rule 15(d)--which states that "[i]f the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order . . . ."

BST99 1526343-5.057077.0012

*Johnson & Johnson*, 111 F.R.D. 448, 453 (S.D. N.Y. 1986) (a defendant is entitled to respond to an amended complaint even with "eleventh-hour" additions).[3]

Here, CSI expressly stated in its Motion for Leave to File an Amended Complaint, and this Court observed in its Memorandum of Decision granting that motion, that CSI had sought leave to amend its complaint pursuant to Rule 15(a). *See* Relevant Procedural History at ¶¶ 6, 8.[4] Thus, because CSI's Amended Complaint superseded its original complaint, and the rules required Lycos to plead in response, Lycos was entitled under Rule 15(a) to plead its seven new counterclaims. Just as CSI chose to file this action in Massachusetts and subject itself to Massachusetts' functional choice-of-law rules,[5] CSI chose to subject itself to Lycos's new counterclaims by filing an Amended Complaint.

> B.    Because CSI's Amended Complaint Changed the Nature of its Claims from a Straightforward Collection Action for Breach of Contract to One Also Sounding in Tort, the Majority Rule Permits Lycos to Amend its Counterclaims as of Right.

Even the decisions that have adopted a stricter formulation of when a defendant may plead new counterclaims without leave of court in response to an amended complaint have held that "[w]hen a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint by the Plaintiff." *Brown*, 610 F.Supp. at 78.[6] These decisions reflect the predominant approach in the

---

[3]  *See* 27A Fed. Proc. L.Ed. § 62:267*; see also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000) ("[b]ecause a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses").

[4]  The Relevant Procedural History is set forth in Lycos's Opposition to CSI's Motion to Dismiss Portion of Lycos's "Answer" To CSI's Amended Complaint, filed herewith.

[5]  *See* Memorandum of Decision dated July 11, 2006 (Dkt. No. 73), at 5 ("And indeed, it was CSI who filed this lawsuit in Massachusetts, rather than Missouri.").

[6]  *See, e.g., Uniroyal Chem. Co. v. Syngenta Crop Prot., Inc.*, 2005 WL 677806, at *2 (D. Conn. 2005) ( "a defendant [may] respond to an amended complaint that changes the theory or scope of the case by adding counterclaims that similarly change the theory or scope of the case"); *Pereira v. Cogan*, 2002 WL 1822928, at *4 (S.D.N.Y. 2002) ("If the plaintiff expands it case by adding new theories or claims, it cannot complain if the defendant seeks to do the same by averring new counterclaims."); *Digital Privacy, Inc. v. RSA Security, Inc.*, 199 F.

case law.[7]  Many of them have adopted Prof. Moore's view that "when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of the court before the defendant could respond with appropriate counterclaims."  3 James W. Moore, *et al.*, *Moore's Federal Practice*, § 15.17[6] (3d ed. 1997).  These decisions have reasoned that "what is good for the goose is good for the gander."  *Uniroyal*, 2005 WL 677806 at *4.  *See Salomon, S.A. v. Alpina Sports Corp.*, 737 F.Supp. 720, 722 (D.N.H. 1990) ("It seems somewhat inequitable to allow Salomon to revise their theory of the case yet deny defendants the same opportunity.").  In addition, these decisions do *not* require that the new counterclaims to be substantively related to any of the new claims added in plaintiff's amended complaint.[8]

Here, CSI's original complaint was a two-count action for breach of contract.  Relevant Procedural History, ¶ 1.  Its Amended Complaint added approximately ten paragraphs of new factual allegations and four new counts sounding primarily in "tort" relating to the Sales Agreement including claims for fraud, abuse of process, and violations of c. 93A.  *Id.*, ¶ 6.  The Amended Complaint thus added new facts and claims that changed the theory and scope of CSI's case.  Under the third sentence of Rule 15(a), and in simple fairness, Lycos may do the same without leave of Court by filing a counterclaim with new claims, whether related or unrelated to CSI's new claims.

---

Supp.2d 457, 459 n.2 (E.D. Va. 2002) ("When a plaintiff files an amended complaint that changes the scope of the case, the defendant is allowed to answer the amended complaint anew as though it were the original complaint."); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 831-32 (N.D. Iowa 1997) (same), *aff'd*, 205 F.3d 1347 (8th Cir. 1997).

[7] *Elite Entm't, Inc. v. Khela Bros. Entm't,*, 227 F.R.D. 444, 446 (E.D. Va. 2005).

[8] *DBSI Signature Place, LLC v. BL Greensboro, L.P.*, 2006 WL 1275394, at *6 (D. Idaho May 9, 2006) (defendant could "respond to more than just the specific amendments" in plaintiff's amended complaint); *Precision Replacement Parts Corp. v. Auto Glass Components, Inc.*, 2005 WL 2045837, *1 (W.D. Wash. Aug. 25, 2005) (allowing counterclaims that were substantively unrelated); *Synermed v. Int'l, Inc. v. Lab. Corp. of America Holdings*, 1999 WL 1939253, *1-2 (M.D.N.C. March 3, 1999) (allowing defendant to add counterclaims for breach of contract and unjust enrichment without leave of court in response to plaintiff's amended complaint adding claims for misappropriation and unfair trade practices).

C.     CSI Has Failed to Cite Any Authority Supporting the View that, Based on the Instant Procedural History, Lycos Required Leave of Court to Add New Counterclaims.

The authority CSI cites for the proposition that Lycos required leave of court to file its new counterclaims is either quoted out of context, inapposite, or incomplete.  Indeed, CSI neglected bring to the Court's attention the only decision on point in this District, *Refuse Fuels*. Exemplifying its selective approach to advising the Court of relevant authority, CSI quotes the first sentence of a paragraph from *Moore's Federal Practice*[9] but omits the next two sentences that state:

> [I]f a plaintiff files an amended complaint changing the theory or scope of the case, some courts hold that the defendant is entitled to plead as though it were responding to the original complaint.  This means that the defendant may add new counterclaims without requesting leave of court.

*Federal Practice*, § 15.17[6].  It also fails to advise the Court that *Moore's* posits this as "the better view."  *Id.*  And while it cites *Elite Entertainment, Inc. v. Khela Brothers Entertainment*, 227 F.R.D. 444 (E.D. Va. 2005), to support its position, it fails to tell this Court that the *Elite Entertainment* court (a) observed that allowing a defendant to add new counterclaims as of right when the plaintiff's amended complaint changes the scope or theory of the case is the "most sensible [] view" and "predominant in the case law," and (b) held that the defendants could not amend as of right because the plaintiffs' amended complaint did *not* expand the scope or theory of the case.  *Id.* at 446-47.[10]

Other cases cited by CSI are similarly unavailing.  For instance, in *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185, 1188-89 (3d Cir. 1979), the plaintiff did not amend its complaint under Rule 15(a) but instead filed a supplemental pleading under Rule 15(d); thus, it

---

[9]   CSI Memorandum, at 3.

[10]   In fact, the plaintiffs' amended complaint actually eliminated claims.  *Id.* at 447.

was within the judge's discretion whether to permit a response.  Fed. R. Civ. P. 15(d) (adverse

party may plead in response to a supplemental pleading "[i]f the court deems it advisable").  In

*Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706 (S.D.N.Y. 1982), the defendants sought to

add counterclaims *after* the close of discovery which did not relate to the underlying transaction

or occurrence, and even then the court rejected the claims only after concluding that they were

"insufficien[t] on the merits."  *Id.* at 713, n.2.  Here, Lycos filed its Counterclaim *before* the

close of discovery; moreover, all of Lycos's new counterclaims relate to the underlying

transactions, i.e., the equipment schedules and the Sales Agreement.  Finally, in *Nolan v. City of

Yonkers*, 1996 WL 120685, *4 (S.D.N.Y March 19, 1996), the plaintiffs did not amend their

complaint to add new claims, but instead simply substituted the names of defendant police

officers previously identified as "John Doe."  *Id.*, *12.  The defendants then served an answer

that asserted new counterclaims against certain of the plaintiffs for assault and battery.  The court

found that defendants' new counterclaims were unrelated to plaintiff's amendments.  *Id.*  In

contrast, CSI's amendments, like Lycos's new counterclaims, concern the parties' Sales

Agreement.  *See* Relevant Procedural History, ¶¶ 6, 11.

     In sum, CSI has rested its arguments on cases and authorities that do not support its

position.[11]  It has also failed to reconcile its position with the *Refuse Fuels* decision or the weight

of well-reasoned authority espousing the majority rule which holds that a party may add new

counterclaims as of right when the opposing party's amended complaint changes its theory or

---

[11] CSI quotes *Exchange National Bank of Chicago v. Abramson,* 45 F.R.D. 97, 105 (D. Minn. 1968) for the proposition that "[s]ince Rule 13(f) speaks specifically to the problem of 'omitted counterclaims', while Rule 15 is general with regard to amendments, the former controls."  CSI Memorandum, at 17.  This quote is entirely out of context.  In that case, the plaintiff never amended its complaint.  Rather, the counterclaim was filed by an intervening party who later joined the suit pursuant to Rule 24(a).  Similarly, in *Stoner v. Terranella*, 372 F.2d 89, 91 (6th Cir. 1967), the plaintiff never amended its complaint.  The court simply noted the distinction between Rule 13(f) and Rule 15(a) to conclude that a defendant who failed to file a counterclaim could not avail himself of the "relation back" rule in Rule 15(c) because his omitted counterclaim, which was not in response to any amendment by the plaintiff, should have been brought pursuant to Rule 13(f).  Thus, *Stoner*, like the other cases cited by CSI, does not apply here.

BST99 1526343-5.057077.0012

scope of the case.  Based on this authority, and the fact that CSI chose to broaden this case by amending its complaint to add several tort claims against Lycos, "[it] can hardly be heard to complain that claims filed against [it] are improper," especially when some of Lycos's new claims are based on facts learned during discovery.  *Joseph Bancroft & Sons Co.*, 50 F.R.D. at 419; Relevant Procedural History, ¶ 10.

> D.   Because Lycos May Assert New Counterclaims as of Right, None of Lycos's New Counterclaims Should be Dismissed.

The only argument CSI makes in support of its motion to dismiss Counts IV-VI and the part of VIII that is new is that Lycos has added new counterclaims "unrelated" to its recently amended complaint that could have been pled by Lycos before.  CSI Memorandum, at 15-18. This argument fails because, as set forth above, Lycos may file new counterclaims as of right.  In addition, those counts *are* related to the Amended Complaint because they concern the very Sales Agreement that is the subject of CSI's amendments.  *See* Relevant Procedural History, ¶ 11(A).

Further, CSI's suggestion that Lycos's new counterclaims would require "significant new analysis and discovery," misapprehends the nature of those claims.  CSI's claims for violation of c. 231, § 85J (Count IV), and 93A (Count V) are derivative of Lycos's claim for fraud in the inducement of the Sales Agreement, a claim Lycos asserted as Count II in its Amended Answer and Counterclaim filed in March, 2005.  *See Goldman v. Barnett*, 793 F. Supp. 28, 30 (D. Mass. 1992) (applying common law factors for deceit to assess claim under c. 231, § 85J); *Briggs v. Carol Cars, Inc.*, 407 Mass. 391, 395-96, 553 N.E.2d 930, 933 (1990) (same).  As such, the very same facts and issues relevant to Lycos's already-existing claims apply to these new Counts; no new analysis or discovery is required.  With respect to the claim for breach of the implied covenant of good faith and fair dealing (Count VI), that claim is based on either (a) facts

advanced in existing Counts CSI does not seek to dismiss (Counterclaim, ¶ 82) or (b) information already known by CSI. *Id.,* ¶ 83. Thus, there is no new discovery required by CSI.

With respect to Counts IX-XI and the part of Count VIII that was included in Lycos's proposed Second Amended Counterclaim, CSI argues that the law of the case doctrine bars those claims. CSI Memorandum, at 3-6. Lycos addresses this argument in Part II below. With respect to Counts VIII-X and the part of Count XI asserting that CSI's violation of the Massachusetts usury statute is a violation of c. 93A, CSI argues that those claims fail to state a claim upon which relief may be granted. *Id.*, at 6-15. Lycos addresses this argument in Part III below. CSI properly does *not* argue that Lycos's claim in Count XI that CSI's imposition of an excessive rate of interest violates c. 93A fails to state a claim upon which relief may be granted.[12]

II.    **THE LAW OF THE CASE DOCTRINE IS INAPPLICABLE TO CSI'S MOTION TO DISMISS BECAUSE LYCOS'S COUNTERCLAIMS DO NOT RAISE THE "SAME ISSUE" PREVIOUSLY DECIDED BY THIS COURT.**

The law of the case doctrine provides that once a court "decides upon a rule of law, that decision should continue to govern the *same issues* in subsequent stages in the same case." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005) (emphasis added). CSI argues that application of this doctrine bars Counts VIII-XI of Lycos's Counterclaim, i.e., those that are similar to counts in Lycos's proposed Second Amended Counterclaim. CSI Memorandum, at 3-6. CSI is in error. This doctrine does not apply to Counts VIII-XI for two reasons: first, Lycos is not asking the court to reconsider its ruling on whether Lycos could permissively amend its counterclaim pursuant to Rule 13(f). Rather, as noted above, the issue before the Court is whether Lycos may assert its counterclaims *as of right* under the third sentence of Rule 15(a) because CSI amended its complaint and, in so doing, expanded the scope and theory of the case.

---

[12]    In Count XI, Lycos asserts that CSI's (a) violation of the Massachusetts usury statute violates c. 93A and (b) regardless of whether CSI has violated the state's usury state, CSI's imposition of an excessive interest rate violates c. 93A. Relevant Procedural History, ¶ 11(B)(4).

- 9 -

Second, even if the law of the case doctrine were to apply, CSI's counterclaims fall within well-settled exceptions to that doctrine.

    A.    **The Law of the Case Doctrine Does Not Apply to Lycos's Counterclaims Asserted in the Portion of Count VIII, and Counts IX-XI, That are Similar to the <u>Allegations Presented in Lycos's Motion to Amend</u>.**

Subject to certain exceptions, "the law of the case is a discretionary doctrine, especially as applied to [an] interlocutory order"[13] such as Lycos's Motion for Leave to Amend, that "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Harlow*, 432 F.3d at 55; *In re Ludlow Hosp. Soc'y*, 124 F.3d 22, 26 n.8 (1st Cir. 1997) ("law-of-the-case doctrine applies only to sequential rulings on the *same* issue") (citing *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 72 F.3d 190, 197-98 (1st Cir. 1995). It does not apply, however, as CSI implicitly argues, to issues that are merely similar or related, or to rulings that call for the application of a different legal standard, as is the case here.[14]

For example, in *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994), the trial court denied a motion for summary judgment using a "reckless or callous indifference" standard. Subsequently, a judge of the same court granted summary judgment applying a "shocks the conscious standard." The Third Circuit held that the law of the case "posed no obstacle" because the second judge had applied a different legal standard and thus had not reconsidered the "same issue" as the first judge. *Id.* at 1290.[15] Similarly, in *Sowell v. Walker*, 755 A.2d 438, 444 (D.C.

---

[13] *In re Cabletron Sys.*, 311 F.3d 11, 21 n.2 (1st Cir. 2002).

[14] A logical extension of CSI's argument would bar courts from considering a motion for summary judgment if it had previously denied a motion to dismiss. This is not the law.

[15] *Accord Tacka v. Georgetown Univ.*, 193 F. Supp. 2d 43, 50 (D.D.C. 2001) ("Law of the case doctrine does not apply when issues asserted in a later motion are 'largely different' from the grounds asserted in the first motion.") (citing *Sherman v. District of Columbia*, 653 A.2d 866, 869, n.2 (D.C. 1995)); *Waste Conversion v. Sims*, 868 F. Supp. 643, 650 (D.N.J. 1994) (law of the case did not bar subsequent review of summary judgment motion based on different grounds).

2000), a motion judge had denied a pretrial motion to strike expert testimony. A trial judge later held that the testimony was not admissible at trial. On appeal, the court held that although the issue of whether the statement should be stricken was related to the question of admissibility at trial, they were nevertheless different issues and thus the law of the case did not apply. *Id.*

The issue currently before this Court on CSI's Motion to Dismiss is whether Lycos may assert new counterclaims under the third sentence of Rule 15(a) as of right because CSI filed an Amended Complaint or because that Amended Complaint changed the theory or scope of its case. *See* Part I, *supra*. In contrast, this Court's previous ruling on Lycos's Motion for Leave to File a Second Amended Counterclaim depended on a different legal standard; namely, whether Lycos "fail[ed] to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice require[d]." Fed. R. Civ. P. 13(f). Thus, because the legal standard applicable to determination of CSI's Motion to Dismiss is different from the legal standard the Court previously considered, the issues are necessarily different. Accordingly, the law of the case doctrine does not apply to CSI's Motion to Dismiss.

> B.    Even if the Law of the Case Doctrine Were to Apply to CSI's Motion to Dismiss as to Counts VIII-XI, That are Similar to the Allegations Presented in Lycos's Motion to Amend, those Counts Fall Within Well-Settled Exceptions to Law of the Case Doctrine.

This Court has observed that "the [law of the case] doctrine allows for reconsideration in certain limited circumstances, such as significant new evidence, a change in controlling law, or manifest injustice." *In re Stone & Webster, Inc. Sec. Litig.*, 2006 WL 1738348, *2 (D. Mass. June 23, 2006). At least two of these exceptions apply here.

First, the law of the case doctrine permits reconsideration of a prior decision based on newly discovered evidence. Lycos filed its Motion for Leave to File a Second Amended Counterclaim before it had taken a single deposition in this case. During depositions taken over

the past few months, Lycos has learned several facts that bolster its claim. For example, Lycos learned during the deposition of CSI's co-chief financial officers that the booked residual value of the equipment on Schedules 93 and 94 was approximately $1.5 million at the time those leases were signed, it was zero at the time the parties entered into the Sales Agreement, and that CSI set the residual value in accordance with Financial Accounting Standards Board 13; Lycos also learned that, after the parties executed the Sales Agreement, CSI believed that Lycos would automatically own the equipment upon making the "rent" payments required under the various equipment schedules and paying applicable taxes. *See* Counterclaim, ¶¶ 94, 102.

Second, because the Court allowed CSI leave to amend its complaint to add tort claims arising out of the parties' entry into Sales Agreement, it would be manifestly unjust to deny Lycos the right to include counterclaims that do the same. Here, while Lycos's usury claims allege that equipment schedules 93 and 94 were usurious loans and security agreements when they were signed, it has alleged that even if they were not, they became usurious loans and security agreements once the Sales Agreement was executed. *Id.*, ¶ 102. Accordingly, Lycos's usury claims clearly relate to the Sales Agreement in addition to schedules 93 and 94. Those counterclaims therefore fall within the well-established exception to the law of the case doctrine relating to manifest justice.

## III.  LYCOS'S USURY COUNTS STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.

In its Motion to Dismiss, CSI makes three arguments in support if its position that Lycos's claims based on CSI's violation of the Massachusetts usury statute (Counts VIII-XI) fail to state a claim upon which relief may be granted: (A) that leases are not subject to the Massachusetts usury statute (CSI Memorandum, at 7-10); (B) Schedules 93 and 94 are "true leases" (*Id.* at 10-11); and (C) Missouri law would apply to and bar Lycos's usury claims. *Id.* at

- 12 -

11-15.  None of these arguments has merit.  Indeed, quite ironically, the last of these arguments

is barred by the law of the case doctrine as the Court has twice decided that Massachusetts law

applies to Lycos's claims concerning the validity of the equipment schedules, and Lycos's usury

claims go to the validity of schedules 93 and 94.  *See* Relevant Procedural History, ¶ 3.

     A.    <u>Equipment Schedules 93 and 94 are Subject to the Massachusetts Usury Statute.</u>

CSI makes three points in the section of its Memorandum entitled, "Leases Are not

Subject to M.G.L. c. 271, § 49."  First, it admits that the statute permits this Court to void

equipment schedules 93 and 94, but claims that it does not permit Lycos to recover damages.

Whether Lycos's recovery is denominated "damages" or something else is unimportant.  The law

is that the Court may order CSI to "refund" or "credit" to Lycos the amounts paid by Lycos

pursuant to those schedules, or provide any other equitable relief.  *Beach Assocs., Inc. v. Fauser*,

9 Mass.App.Ct. 386, 401, 401 N.E.2d 858, 863-64 (1980) ("[it] was within the discretion of the

judge, based upon all the facts, circumstances, and condition surrounding the loan, to void it, to

rescind it, *to refund, to credit any excessive interest paid*, to reform the contract, or to provide

any other relief consistent with equitable principles.") (emphases added).

Second, CSI contends that there is no *per se* policy against usury in the Commonwealth,

as evidenced by c. 271, § 49(d)'s provision that allows usurious loans so long as a lender reports

its intent to charge an usurious interest rate to the Attorney General.  Whatever the merits of that

position, it is of no import because it is undisputed that CSI did not report to the Attorney

General its intent to make usurious loans.  Counterclaim, ¶ 116.

Finally, CSI claims that the Massachusetts usury statute applies only to "loans" and not to

"leases."  Even if that were true notwithstanding that c. 271, § 49(a) expressly refers to "either a

BST99 1526343-5.057077.0012

loan of money *or other property*,"[16] Lycos has alleged that equipment Schedules 93 and 94 were,
in fact, "loans." Counterclaim, ¶ 96. If a self-described "lease" is found to be a "loan," it may
be voided as usurious. *See* 4 White & Summers, *Uniform Commercial Code* § 30-3, at 8 n.13
(4th ed. 1995) ("White & Summers") ("if the court finds a disguised security agreement, the
creditor may suffer any defense available to a debtor on a usurious contract") (*citing Hill v.
Bentco Leasing, Inc.*, 288 Ark. 623, 708 S.W.2d 608, 611 (1986) ("lease" which, under 1-
201(37) was a disguised sale, was patently usurious and the transaction void)). Moreover, as set
forth more fully in Part B, *infra*, courts routinely determine whether "leases" are, in fact, "loans."
Application of the standards set forth in § 1-201(37) of the Uniform Commercial Code used for
making that determination to schedules 93 and 94 demonstrate that they, in fact, evidence loans
and security agreements.

    B.    Schedules 93 and 94 are Not "True Leases," But Loans and Security Agreements.

    White and Summers, perhaps the preeminent commentators on the Uniform Commercial
Code, have written,

> Whether a document is a security agreement as opposed to a lease . . . is
> dependent on certain factors extrinsic to the document and not capable of control
> by words in the document. Although many of these documents have language to
> indicate they are leases and not security agreements, each of them would be a
> security agreement, not a lease, if, for example, it were written for a term that
> exhausted the entire economic life of the goods leased.

2 White & Summers, at 565. In deciding whether a lease is, in their words, "truly not a lease but
an installment sale,"[17] courts in Massachusetts, Missouri, and elsewhere have applied § 1-
201(37) of the Uniform Commercial Code to resolve "one of the most frequently litigated issues

---

[16] (emphasis added).

[17] 4 White & Summers § 30-3, at 7.

under the entire Uniform Commercial Code."[18]  Thus, for example, in *Rocky River Condo Corp. v. F.D.I.C.*, 855 F.Supp. 489, 491 (D. Mass. 1994), the court observed:

> The language used by the parties to the Agreement is in the form of a lease agreement.  It is well settled, however, that Massachusetts courts look to substance over form when deciding if a transaction is a lease or a conditional sale.

It then found the Massachusetts version of § 1-201(37) of the Uniform Commercial Code (M.G.L. c. 106, § 1-201(37)), to be controlling in determining whether the documents evidenced a true lease or a conditional sale.  *Id.* at 492.  Similarly, the Massachusetts Appeals Court in *Carlson v. Giachetti*, 35 Mass.App.Ct. 57, 59, 616 N.E.2d 810, 811 (1993), wrote,

> We look to G.L. c. 106, §§ 9-102 and 1-201(37) to determine whether a contract, characterized by the parties as a lease, is a "true lease" or a security agreement.

Thus, the parties' intent or denomination of a document as a "lease" or a "conditional sale" is *not* dispositive of whether a lease is a "true lease."  *In re Fleming Cos.*, 308 B.R. 693, 696 (Bankr. D. Del. 2004) (applying Missouri law) ("In determining whether a lease is a true lease, the form or title chosen by the parties is not determinative.").

Section 1-201(37) sets forth several tests for determining whether a "lease" is a true lease or a security agreement.  That section, as adopted in both Massachusetts and Missouri, provides in part:

> Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and . . . the original term of the lease is equal to or greater than the remaining economic life of the goods . . . .

M.G.L. c. 106, § 1-201(37) and Mo. Rev. St. c. 400.1-201(37).  Accordingly, that CSI booked the equipment schedules as "sales" and Lycos booked them as "leases" are not even factors in

---

[18]  *Id.* at 8; *see* 2006 pocket part, § 30-3, at 8-20  (collecting cases).

determining whether the equipment schedules are leases or conditional sales. If the contrary were true, there would be no need for courts to conduct the analysis they did in *Rocky River*, *Carlson*, *Fleming*, and the dozens of cases collected by White and Summers.[19] Here, because Lycos has alleged, as required by § 1-201(37), that the Lycos's obligation to make the monthly payments on Schedules 93 and 94 was *not* subject to termination and that the length of the terms of those schedules exceeded the economic life of the equipment on them, Lycos has stated a claim in Count VIII upon which relief may be granted.

1. The consideration Lycos was required to pay CSI for the right to possession and use of the goods under Schedules 93 and 94 was an obligation for the term of those schedules not subject to termination by Lycos.

As to the first requirement under § 1-201(37), not only has Lycos alleged that it "did not have the right under the Schedules 93 and 94 to return the equipment under those schedules before the end of their terms without being obligated to make the monthly payments through the end of the terms,"[20] but the Master Lease Agreement makes it plain that Lycos was required to make the monthly "rent" payments under Schedules 93 and 94 for the full twenty-four or thirty-six month terms of those schedules:

Lessee's obligation to pay the Monthly Rental and all other sums due hereunder shall be unconditional and shall not be subject to any setoff, abatement, counterclaim, recoupment, defense, *cancellation*, repudiation, rejection of equipment, revocation of acceptance of equipment or any other right that Lessee may have against Lessor.

Counterclaim, Ex. A, ¶ 5 (emphasis added). This clause alone satisfies the first requirement under § 1-201(37). *In re Triplex Marine Maint.*, 258 B.R. 659, 669 (Bankr. E.D. Tex. 2000) (finding first requirement was satisfied where contract contained a "hell or high water" clause).

---

[19] *See supra,* note 18.

[20] Counterclaim, ¶ 95.

CSI admitted as much by arguing earlier in this case in its Memorandum in Support of its Motion

to Dismiss Lycos's Counterclaim:

> These types of clauses, known as 'hell or high water' provisions, are specifically enforceable under the Uniform Commercial Code and are critical to the equipment finance leasing industry, because *they require the lessee to make payments under the lease 'come hell or high water,' without regard to defenses that the lessee might wish to assert against the lessor, and without any right of recoupment*.

Mem. Of Law in Supp. of Plaintiff Computer Sales International, Inc.'s Mot. to Dismiss Def.

Lycos Inc.'s Countercl. (Dkt. Entry No. 16) at 3, ¶ 1 (emphasis added).

> 2. The original term of Schedules 93 and 94 is equal to or greater than the remaining economic life of the equipment on those schedules.

Lycos has also satisfied the second requirement under 1-201(37).  Lycos alleged in its

Counterclaim as follows:

> Pursuant to Schedules 93 and 94, Lycos agreed to make monthly payments to CSI for an initial term of 24 and 36 months, respectively.  Because the computer equipment had already been leased by CSI to Lycos for several years, the length of Schedules 93 and 94 exceeded the remaining economic life of the equipment.  Indeed, at some point during the life of Schedules 93 and 94, CSI booked the residual value of those schedules at zero.  Under Financial Accounting Standards Board 13, ¶ 5(h), the estimated residual value of leased property is to equal the estimated "fair value" of the leased property at the end of the lease term.  Paragraph 5(c) of FASB defines the "fair value" of leased property to be the "price for which the property could be sold in an arm's-length transaction between unrelated parties."  Thus, as CSI believed that the equipment had no value at the end of Schedules 93 and 94, CSI believed that the length of the term of Schedules 93 and 94 exceeded the economic life of the equipment on those schedules.

Counterclaim, ¶ 94 (emphasis added).  As such, because Lycos has alleged under 1-201(37) that

(a) it was required to make all payments through the end of the initial term of Schedules 93 and

94, and (b) the length of the terms of Schedules 93 and 94 exceeded the economic life of the

equipment on them, it has stated a claim that Schedules 93 and 94 were secured loans rather than

true leases.  CSI, apparently knowing that Schedules 93 and 94 might be found to be installment

sales contracts, filed UCC-1 financing statements with the Massachusetts Secretary of State

respect to them. *Id.*, ¶ 98.

> 3.   CSI's Suggestion that Even if Schedules 93 and 94 were Security
>       Agreements, There is Nothing in Section 1-201(37) That Suggests They
>       Should be Treated Further as "Loans," Misapprehends Section 1-201(37)
>       and the Relevant Law.

The purpose of conducting an analysis under section 1-201(37) is to determine whether a

document the parties may have denominated as a lease is in fact an installment or conditional

sales contract. *Rocky River*, 855 F.Supp. at 492 ("Massachusetts courts look to substance over

form when deciding if a transaction is a lease or a conditional sale."); *In re Standard Fin. Mgmt.*

*Corp.*, 79 B.R. 100, 101 (Bankr. D. Mass. 1987) ("This Court adopts the 16-part test . . . as an

aid in determining if a lease is a true lease or is actually intended as a security agreement. . . .

The 16-part test does not preclude the Court from looking at substance over form when deciding

if a transaction is a lease or conditional sale.").  In other words, if a document is a true lease,

lessors such as CSI remain the owners of the equipment and the lessees are obligated to pay

monthly rent.  If, however, the document is a loan/conditional sales agreement, then the "lessee"

is the owner of the property subject to the "lessor's" security interest in the equipment, with the

monthly "rent" payments being properly characterized as payments on an installment sales

contract.  In other words, once the equipment schedules are found to be security agreements

rather than true leases, the monthly payments can be nothing but "loan" payments on a

conditional sales agreement.

CSI's reference to *Human Resources Development Press, Inc. v. IKON Office Solutions,*

*Inc.*, 2006 WL 149043 (D. Mass. Jan. 12, 2006), provides it with little assistance.  The plaintiff

in that case did not allege (a) that the "lease" was a disguised secured loan, (b) the principal

amount of the loan, or (c) the amount of interest it had paid.  In contrast, as set forth above,

- 18 -

Lycos has alleged facts sufficient to state its claim that Schedules 93 and 94 were secured loans. Contrary to CSI's suggestion, it has also alleged the amount of principal and interest: "[a]s the value of the equipment at the time it rolled onto Schedules 93 and 94 was less than $2 million, the amount paid represented payment of *principal* of at most that amount plus at least $16.275 million in interest." Counterclaim, ¶ 107 (emphasis added). This allegation is supported by evidence obtained through discovery from CSI in this case showing that CSI booked the residual value of the equipment on Schedules 93 and 94 as *zero*. *Id.*, ¶ 94. Moreover, Lycos is not asking this Court to engage in the "contortions" requested by the plaintiff in *Ikon*. It has alleged facts sufficient to state a claim and will present documentary and testimonial evidence to support those factual allegations at the appropriate time.

      C.      This Court has Twice-Held that Massachusetts Law Governs Determination as to the Validity of CSI's Equipment Schedules with Lycos. Under the Law of the <u>Case Doctrine, this Court Should not Reconsider Those Determinations.</u>

As noted above, the law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Harlow*, 432 F.3d at 55. Here, this Court has twice held that determinations as to the "validity" of the contracts between Lycos and CSI would be governed by Massachusetts law. Specifically, in ruling on CSI's Motion for Summary Judgment, this Court quoted the First Circuit's decision in *Northeast Data Sys.., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609-10 (1st Cir. 1993), for the proposition that "where a claim 'concerns the validity of the <u>formation</u> of the contract, it cannot be categorized as involving the rights or obligations under the contract, and therefore is not subject to the contract's choice-of-law provision." Relevant Procedural History, ¶ 3. Similarly, in its Memorandum of Decision denying CSI's Motion for Reconsideration of the decision denying its Motion for Summary Judgment, the Court observed

BST99 1526343-5.057077.0012

that "giving effect to a choice-of-law provision before determining the validity of the entire agreement would be illogical." *Id.* As Massachusetts law permits a court to "void" an usurious loan under M.G.L. c. 271, § 49(c), Lycos's claim that Schedules 93 and 94 were usurious goes to the validity of those schedules. *See In re Rolfe*, 25 B.R. 89, 94 (Bankr. D. Mass. 1982) (finding unenforceable and voiding usurious provision in contract). As such, and because none of the exceptions to the law of the case doctrine is applicable, there is no reason for this Court to reconsider its prior decisions.

Indeed, the Court's two prior decisions were correct. To the extent further support is required, Lycos incorporates by references its arguments in its Reply to CSI's Opposition to Lycos's Motion for Leave to File Second Amended Answer and Counterclaim, at 8-13. (Dkt. No. 66).

## CONCLUSION

Because CSI amended its counterclaim to add new claims, CSI is entitled to assert new counterclaims as of right. This is especially true given that CSI's new claims changed the theory and scope of its case. Moreover, the "law of the case" doctrine is inapplicable to Lycos's usury claims because, among other reasons, the issues before the Court before and now are not the same. Finally, Lycos's claims state claims upon which relief may be granted, and therefore should not be dismissed. Accordingly, CSI's Motion to Dismiss must be denied.

- 20 -

Respectfully submitted,

LYCOS, INC.

By its attorneys,

Dated: December 28, 2006

/s/ Thomas O. Bean
Thomas O. Bean (BBO# 548072)
Peter M. Acton, Jr. (BBO# 654641)
McDermott Will & Emery LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4000

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for plaintiff, Robert J. Kaler, McCarter & English, LLP, 225 Franklin Street, Boston, MA 02110, by hand on December 28, 2006.

/s/ Thomas O. Bean
Thomas O. Bean

BST99 1526343-5.057077.0012