UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> LYCOS, INC., <br><br> Defendant, <br><br> BANK OF AMERICA f/k/a FLEET BANK, <br><br> Trustee Process Defendant. | C.A. No. 05-10017- RWZ |

### COMPUTER SALES INTERNATIONAL, INC.'S
### MOTION FOR LEAVE TO FILE A REPLY MEMORANDUM
### IN SUPPORT OF CSI'S MOTION TO DISMISS PORTIONS OF LYCOS'
### RECENT "ANSWER" TO CSI'S AMENDED COMPLAINT WHICH
### PURPORT TO SET FORTH "USURY" AND OTHER NEW COUNTERCLAIMS

Plaintiff Computer Sales International, Inc., a/k/a CSI Leasing ("CSI"), respectfully moves this Court for leave to file the Reply Memorandum attached hereto as Exhibit A in support of its recent Motion to Dismiss Portions of Lycos' Recent "Answer" to CSI's Amended Complaint Which Purport to Set Forth "Usury" and Other New Counterclaims, dated December 15, 2000 (Docket Nos. 123, 124).

The grounds for this motion are that a short reply along the lines of the attached will assist the Court in deciding the motion, and CSI, as moving party, ought to have the opportunity to respond briefly to the mistaken arguments in the Lycos' opposition to that motion.

WHEREFORE, CSI prays that this motion be allowed, and that it be granted leave to file the attached Reply Memorandum of Computer Sales International, Inc. in Support of its Motion

ME1 953461v.1

to Dismiss Portions of Lycos' Recent "Answer" to CSI's Amended Complaint Which Purport to Set Forth "Usury" and Other New Counterclaims, dated December 15, 2000 (Docket Nos. 123, 124).

        COMPUTER SALES INTERNATIONAL, INC.

        By its attorneys,

        /s/ Robert J. Kaler
        Robert J. Kaler, Esq., BBO No. 542040
        rkaler@ghlaw.com
        Edward W. Little, Esq., BBO No. 628985
        elittle@ghlaw.com
        David Himelfarb, BBO No. 649596
        dhimelfarb@ghlaw.com
        Gadsby Hannah LLP
        225 Franklin Street
        Boston, MA 0211
        Tel. (617) 345-7000

Dated: January 10, 2007

## LOCAL RULE 7.1(A)(2) CERTIFICATION

I, Robert J. Kaler, counsel for CSI, hereby certify pursuant to Local Rule 7.1(A)(2) that I have conferred with counsel for Lycos to attempt to resolve or narrow the issues raised in this motion.

        /s/ Robert J. Kaler
        Robert J. Kaler

## CERTIFICATE OF SERVICE

I, Robert J. Kaler, hereby certify that I caused a true copy of the foregoing motion to be served on counsel for Lycos through the Court's ECF system and by mail, this 10th day of January, 2007.

        /s/ Robert J. Kaler
        Robert J. Kaler

ME1 953461v.1

UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LYCOS, INC., )<br>Defendant, )<br>)<br>BANK OF AMERICA f/k/a FLEET BANK, )<br>)<br>Trustee Process Defendant. )<br>) | C.A. No. 05-10017- RWZ |

**REPLY MEMORANDUM
OF COMPUTER SALES INTERNATIONAL, INC.
IN SUPPORT OF ITS MOTION TO DISMISS PORTIONS OF
LYCOS' RECENT "ANSWER" TO CSI'S AMENDED COMPLAINT WHICH
PURPORT TO SET FORTH "USURY" AND OTHER NEW COUNTERCLAIMS**

In response to plaintiff CSI's "Motion to Dismiss Portions of Lycos' Recent Answer to CSI's Amended Complaint Which Purport to Set Forth Usury and Other New Counterclaims" (Docket Nos. 123, 124) defendant Lycos, Inc. ("Lycos") has filed opposition papers (Docket Nos. 130, 131) which mistakenly argue a wide variety of issues, but miss the critical dispositive points, which are as follows:

**I.    LYCOS HAS NO USURY CLAIMS**

Lycos' current usury claims -- which are identical to the earlier usury claims that the Court refused to allow Lycos to bring[1] -- are simply not available to Lycos as a matter of law for the following specific legal reasons:

---

[1] CSI incorporates by reference its earlier Opposition to Lycos' Motion for Leave to Amend (Docket No. 64) as well as its Sur-reply (Docket No. 68), which address many of the same issues that are discussed herein.

ME1 6070929v.1

A.  **The Question of Whether a Contract Is Usurious Is Determined By The Law Chosen By the Parties in That Contract**

The Federal Courts have consistently held that the question of whether a contract is "usurious" is determined *by the law chosen by the parties in that contract*, particularly when the transaction at issue is governed by the Uniform Commercial Code (as Lycos argues is the case here).[2] *See also Woods-Tucker Leasing Corp. of Georgia v. Hutcheson-Ingram Development Co.*, 642 F.2d 744, 746-47 (5th Cir. 1981) (enforcing choice-of-law provision in connection with a usury claim).

As the Supreme Court itself held in *Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403 (1927), this rule gives commercial entities the freedom to contract for higher interest rates to be paid than the law of some states will allow. *Id.* at 407-08 ("In support of policy upholding contractual obligations assumed in good faith, this court has adopted ... the rule [that] 'If the rate of interest be higher at the place of the contract than at the place of performance *the parties may lawfully contract in that case also for the higher rate.*'") (emphasis added).

B.  **The Law That Lycos Agreed Would Govern Its Contracts With CSI Does Not Allow Corporations to Claim Usury**

Whether Lycos wants to call them leases or loans, the contracts between CSI and Lycos admittedly specified that they would be governed by Missouri law. Specifically, the Master Lease provided that:

---

[2] *See, e.g., In re Integrated Resources, Inc. Real Estate Ltd. Partnerships Securities Litig.*, 851 F. Supp. 556, 564-65 (S.D.N.Y. 1994) (agreements which provided that they would be "governed by New York law" requires application of New York's usury laws); *Davidson Oil Country Supply Co., Inc. v. Klockner, Inc.*, 908 F.2d 1238, 1248 (5th Cir. 1990) ("Because the UCC governs this case, the choice of law provision contained in that Code must be applied.... Because DOCS has no usury defense under the applicable New York law ... we affirm the trial court's holding that Klockner prevails on the usury claim ...."). *Accord* 47 C.J.S. Interest & Usury § 172 ("...the parties' contractual stipulation of governing law will be given effect in determining whether the parties' contract is usurious, provided the state whose law is chosen has a sufficient connection with the contract...").

> **THIS MASTER LEASE AND ALL EQUIPMENT SCHEDULES AND ANY OTHER INSTRUMENT EXECUTED IN CONNECTION HEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED UNDER, *THE LAWS OF THE STATE OF MISSOURI*, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OR CHOICE OF LAW.**

*See* Amended Complaint at Exh. 1, p. 5 (Master Lease) at § 18.6 (all caps in original) (emphasis added), and the Sales Agreement similarly provided that:

> GOVERNING LAW: This Agreement, **including all matters of construction, validity, performance and enforcement, is governed by** *the laws of the State of Missouri*, without giving effect to principles of conflicts or choice of law.

*Id.* at Exh. 10, p. 3 (Sales Agreement) at § 10C (authenticity of documents admitted).

It is undisputed that Missouri law does not allow corporations to assert usury as a defense to contractual obligations.[3] *See Kroh Bros. Development Co. v. State Line Eighty-Nine, Inc.*, 506 S.W.2d 4, 13 (Mo. App. 1974) ("Since State Line was admittedly a corporation, ***the defense of claimed usury was unavailable to it***.") (emphasis added). *See also* Lycos' Answer to CSI's First Amended Complaint and Counterclaim ¶ 109 ("Missouri law does not permit a cause of action for usury in business-to-business transactions such as the transaction evidenced by Schedules 93 and 94 between Lycos and CSI.").

Thus, even if Lycos could credibly argue that its agreements with CSI were loans under the U.C.C. -- despite the fact that Lycos' own Chief Financial Officer has testified[4] that CSI was **not** loaning money to Lycos, and despite the fact that Lycos and its auditors have consistently reported, in its financial statements, that its contracts with CSI were ***leases, not loans*** (thereby

---

[3] *See* Mo. Rev. St. ch. 408.060 ("no corporation shall ... interpose the defense of usury in any such action, nor shall any ... contract or obligation of any corporation ... be set aside, impaired or adjudged invalid by reason of the rate of interest which the corporation may have paid or agreed to pay hereon.").

[4] *See* Exh. 1 hereto (Deposition Transcript of Kevin Baillie, December 21, 2006) at p. 6 ("Q: What's your position with Lycos? A: Chief financial officer."); at p. 31 ("***Q:...the relationship between Lycos and CSI was that CSI was leasing equipment to Lycos, correct? ... A: That's correct. Q: CSI was not loaning money to Lycos, correct? ... A: Correct.***") (emphasis added).

expensing the payments, and showing no loans or debts on the Lycos balance sheet) -- Lycos still could have no claim for usury because the Missouri law that Lycos agreed would govern its contracts with CSI does not allow corporations to plead usury.

### C.  This Court Has Never Held That a Usury Claim Would Not Be Subject to the Master Lease's Choice of Law Provision

This Court has never held, as Lycos erroneously claims, that a usury claim would not be subject to the Master Lease's choice-of-law provision. To the contrary, the Court simply held, in denying CSI's motion for summary judgment as to Lycos' fraud claim over a year ago, that Lycos' "fraud in the inducement" argument challenging the "validity of the formation of the contract" -- would not necessarily be governed by the contract's choice of law provision. *Computer Sales International, Inc. v. Lycos, Inc.*, 2005 WL 3307507 at *2. (D. Mass. Dec. 6, 2005). At the same time, though, this Court emphasized that the parties' own choice of law provisions would and did apply "to disputes arising out of the contracts" as well as to "'embroidered' contract claims or 93A claims essentially sounding in contract," *id* at *2, which a usury claim (and a c. 93A claim based on a usury argument) clearly does.

In this regard, because a usury claim only attacks one specific aspect of a contract -- its interest rate -- and does not invalidate the entire contract or the contract *ab initio*[5], there is no basis to hold that a usury claim goes to the validity of the formation of the contract, thereby allowing a Court to ignore the contract's choice of law provision. To the contrary, settled law requires that the choice-of-law provision in a contract be applied when adjudicating whether it is usurious. *See* pp. 1-3, *supra*.

---

[5]  *See, e.g., LBM Financial, LLC v. Edgewater Investment Limited Partnership*, 2004 WL 2075565, *4 (Mass. Super. Aug. 5, 2004) ("A usurious loan is not a nullity per se under the statute....").

D.  **Even If Massachusetts Law Were Applicable, Which It Clearly Is Not, Lycos Still Would Have No Usury Claim**

Even if Massachusetts law were applicable to the usury question, Lycos still would have no usury claim here because every Massachusetts court that has considered the issue has held that the Massachusetts Usury Statute ***does not apply to leases*** of equipment such as those in issue in this case. *See Human Resources Development Press, Inc. v. IKON Office Solutions Company, Inc.*, 2006 WL 149043 at *7 (D. Mass. Jan. 12, 2006) ("section 49 [Mass. usury statute] was not intended to protect leases of personal property."); *Allegheny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc.*, 21 Mass. App. Ct. 155, 159-61 (1986) (holding that the Massachusetts usury statute does not apply to leases); *Peck v. Coffman*, 1995 WL 809892 (Mass. Super. June 19, 1995) ("The usury statute, by its own language, does not apply to transactions other than loans....").

In this regard, usury, by definition, is the wrongful charging of an excessive rate of interest under a loan agreement. *See* M.G.L. ch. 271, § 49(a) ("Whoever in exchange for either a *loan* of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned ... shall be guilty of criminal usury ....") (emphasis added). In this case, Lycos was not charged *any* rate of interest under its equipment leases, much less an excessive rate -- it was charged fixed monthly rental charges. Such charges cannot provide the basis for a manufactured usury claim. *See Human Resources Development Press, Inc. v. IKON Office Solutions Company, Inc.*, 2006 WL 149043, *7 (D. Mass. Jan. 12, 2006) ("section 49 ***was not intended*** to protect leases of personal property ... in which no loan terms are evident.... [T]he transformation of the lease into a loan would be patently untenable as a matter of law....") (emphasis added).

Lycos has admitted that its equipment leases with CSI were leases and not loans. *See* p. 3, Footnote 4, *supra*, and Exh. 1 hereto. It nevertheless seeks to argue that the usury statute applies to its leases because the statute discusses a loan of "other property" which, it posits, can include a commercial equipment lease. *See* Opposition at 13-14. This claim was expressly rejected, however, in *Human Resources Development Press, supra.* at *6 ("commercial leases for equipment which only addressed price, term, breach, assignment and remedies" and nowhere mention "a 'loan' or 'principal' or, for that matter, 'interest'" are not loans of "other property" under section 49") -- and for good reason. As the *Human Resources* court explained, since a commercial equipment lease has none of the characteristics of a loan, "mathematical contortions" are required to speculate as to what the relevant "principal" and "interest" would be, thereby making it "clear why ... section 49 ***does not apply*** to commercial leases." *Id.* at *7 (emphasis added).

    E.    **The Bankruptcy and Title Cases Cited By Lycos Are Inapposite Here**

Despite these clear holdings, Lycos persists with its own contorted arguments, urging the Court to rely on wholly inapplicable cases dealing with bankruptcy and creditor's rights situations, where courts occasionally recharacterize purchase option leases (which the CSI-Lycos leases were <u>not</u>, *see* Amended Complaint at Exh. 1) as loans where it appears that the parties always intended to enter into a secured loan agreement but mischaracterized the transaction as a lease in an effort to obtain priority creditor status. Those cases, however, are simply not applicable here -- especially where the leases at issue did not grant Lycos any right to title over the relevant equipment, but rather required it to return the units to CSI at the end of each lease

term.[6] *See, e.g.*, Amended Complaint, Exh. 1 (Master Lease) at ¶ 7 ("**Delivery and Return**:... Upon the termination of Lessee's right to possession of any Unit (by expiration of the term of the relevant Equipment Schedule or otherwise, Lessee shall ... return the Equipment).

Moreover, this is not a bankruptcy or title case, like the ones on which Lycos relies, in which the Court is called upon by statute to examine whether a debtor's lease obligations should be treated as priority administrative expenses (*i.e.*, leases), or as less senior secured debt (*i.e.*, loans), under the Bankruptcy Code for purposes of deciding the debtor's payment priorities based on certain accounting and valuation principles. This is a common law contract and fraud

---

[6] For instance, in *In re Standard Financial Management Corp.*, 79 B.R. 100 (Bankr. D. Mass. 1987), a case Lycos relies on its Opposition, the court discussed in detail that the lease at issue there "requires the debtor to purchase the leased equipment at 20% of Funding Corporation's acquisition costs at the end of the lease." *Id.* at 104. The court then held, "the most illustrative test to distinguish between a true lease and a lease intended as security is whether the 'lessee' is 'obligated to assent and pay for the property or [instead] is obligated only to return or account for the property according to the terms of the lease from which he may be excused if he exercises his privilege of purchasing it.'" *Id.* (citations and internal quotation marks omitted). Here, not only did the leases at issue not require Lycos to purchase the equipment at the end of the term, but the leases had no purchase option whatsoever. Under these circumstances, courts routinely hold that the agreements at issue are true leases, not loans (as the essential definition of a loan is the borrowing of money to obtain ownership over certain property).

Similarly, in the *Rocky River Condo Corp. v. FDIC*, 855 F. Supp. 489 (D. Mass. 1994), case which Lycos further relies on, the court, citing *In re Coors of the Cumberland, Inc.*, 19 Bankr. 313, 316 (Bankr. M.D. Tenn. 1982), held, "The decisive factor in distinguishing a lease intended for security from a true lease is whether the instrument in question will ultimately result in the purported lessee gaining de facto ownership of the subject matter of the lease." *Id.* at 492. The Court then found that a contract with an option to purchase the property at the end of the lease term for $1 amounted to nominal consideration, rendering the agreement an installment sale contract creating a security interest rather than a lease. *Id.* Similarly, in *Carlson v. Giacchetti*, 35 Mass. App. Ct. 57 (1993), upon which Lycos also relies, the court found that because the lease in question "contained no option to purchase by the lessee" but rather afforded the lessor a reversionary interest, the agreement would be deemed a "true lease" not a security agreement. *Id.* at 64. *See also* 4 White & Summers, Uniform Commercial Code § 30-3 ("we are directed by revised 1-202(37) to search for a lessor's reversionary interest... In effect, the revised section 1-201(37) sends the lawyer on a search for that interest. If it can be found, the transaction is a lease; if none can be found, the transaction is a sale with a security interest.").

*Accord, RCA Corp. v. State Tax Comm'n*, 513 S.W.2d 313, 316 (Mo. 1974) (when an agreement provides "no absolute obligation ... to purchase, pay for, or assume title to the equipment at any time prior to exercise of the option to purchase" the agreement is to be deemed a true lease); *Carlson v. Tandy Computer Leasing*, 803 F.2d 391 (8th Cir. 1986) (applying RCA and finding that the "paramount attribute of a lease, [is] retention of title in the lessor"); *Giacchetti*, 35 Mass. App. Ct. at 63 ("if the lessor retains a reversionary interest in the goods, then the transaction is a true lease."); *Legends Gym v. ABCO Leasing, Inc.*, 383 F. Supp. 2d 911 (W.D. Tex. 2004) ("A contract that does not contain a purchase option will be considered a lease as a matter of law, not a purchase agreement.").

case in which Lycos is trying to use bankruptcy concepts to recast into a "loan" what its own financial statements recorded and reported as leases, and what its current CFO has admitted were leases.[7] Repeated decisions of this and other courts have held that this is not permissible, however. *See Human Resources Development Press, Inc., supra,* ("[T]he transformation of the lease into a loan would be patently untenable as a matter of law...."); *Allegheny Int'l Credit Corp., supra* (holding that the Massachusetts usury statute does not apply to leases).

### F.   Lycos' New Counterclaim Alleging a Violation of M.G.L. c. 93A Based on "Excessive Interest" Charges Similarly Does Not Exist Because No Interest Was Charged To Lycos Under the Leases

In a variation of the same theme pled in its "usury" counts, Lycos also argues that it has a further claim under M.G.L. c. 93A for what it calls "CSI's imposition of an excessive interest rate," *see* Lycos' Opposition Memorandum at 9, and it claims that CSI somehow "does not argue" that this count fails to state a legal claim. Lest there be any doubt, CSI is arguing that this count, which is derivative of Lycos' "usury" argument, also fails to state a legal claim and even if allowed would be a nullity, and therefore should be dismissed.

For all of these reasons, the usury and usury related counts that Lycos has inserted anew into its Answer to CSI's Amended Complaint (including the alleged "excessive interest" counterclaims under c. 93A, and the various declaratory judgment requests that Massachusetts usury law be applied) should be properly stricken and dismissed.

---

[7] Lycos argues, for example, that its leases were really loans because "CSI believed that the equipment had no value at the end of Schedules 93 and 94". *See* Opposition at 17 (citing Counterclaim, ¶ 94). Whether or not this is true, the argument fails for several reasons. First, as Lycos repeatedly argues in its Opposition, the parties' subjective beliefs are not determinative. Second, the relevant inquiry is what the value of the equipment was at lease *inception*, not at the end of the lease term. *See, e.g.*, M.G.L. c. 106, §1-201(37) (noting that the "remaining economic life of the goods" is "to be determined with reference to the facts and circumstances *at the time the transaction is entered into* ....") (emphasis added). Third, the equipment obviously did have value at the end of the lease term because Lycos agreed to purchase it for nearly $4 million. *See* Counterclaim ¶ 46.

II.  **LYCOS' REASSERTION OF PREVIOUSLY REJECTED COUNTERCLAIMS, AND OTHER CLAIMS THAT IT SIMPLY OMITTED TO PLEAD BEFORE NOW, CANNOT BE MADE "AS OF RIGHT"**

In arguing that this Court has no discretion to review the renewed "usury" and other new counterclaims that it has belatedly inserted into its response to CSI's 5-page amendment of the complaint herein, Lycos mistakenly argues that CSI's amendment so materially altered the "scope and theory" of this case that "the door was opened" for Lycos to plead whatever it wanted in a new counterclaim (*e.g.*, usury, breach of implied covenant, violation of M.G.L. c. 231, §85J). This is not correct. CSI's amendment simply pleaded with particularity a narrow point *which had already been part of this case* for some time -- that Lycos never intended to honor the Sales Agreement it signed with CSI on August 8, 2003, and instead planned at that time to pursue bogus claims against CSI in an effort to avoid its obligation under that Agreement.

As Lycos concedes in its opposition memoranda,[8] the majority rule on the issue of pleading new counterclaims in response to an amended complaint is that such pleading is allowed *"only in proportion to the changed scope of the case"* occasioned by the amended complaint. *See, e.g., Thomas D. Wilson Consulting, Inc. v. Keeley & Sons, Inc.*, C.A. No. 05-2115, 2006 U.S. Dist. LEXIS 73691 at *12 (E.D. Mo. Sept. 26, 2006) (emphasis added); *see also Elite Entertainment, Inc. v. Khela Bros. Entertainment*, 227 F.R.D 444 (E.D. Va. 2005) (noting that court denies counterclaims as they exceed the scope of the amended claims, and were asserted late in the case "leaving little time for discovery on these new claims"). Here, Lycos' amendments to its counterclaim are completely unrelated to the CSI amendment.

---

[8]  *See* Lycos' Memorandum in Support of Opposition to CSI's Motion to Dismiss Portions of Lycos' Recent "Answer" Which Purport to Set Forth "Usury" and Other New Counterclaims, dated December 28, 2006, at pp. 1-2, 5.

Moreover, in arguing that it may assert these new claims "as of right," Lycos misapplies Magistrate Collings' dicta in *Refuse Fuels, Inc. v. National Union Fire Ins. Co.*, 139 F.R.D. 576 (D. Mass 1991),[9] and fails to account for Rule 13(f)'s requirement that formerly omitted claims (let alone those already disallowed by the Court) be brought only with leave of Court. Also, none of the cases cited by Lycos dealt with a situation where a "new" counterclaim, such as Lycos' "usury" allegation, was previously considered and rejected by the court months before. *See* 3 James W. Moore, et al., Moore's Federal Practice, Civil, § 15.17[6] (3rd Ed. 1997); *Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706, 712-713 (S.D.N.Y. 1982) (where plaintiff filed supplemental and amended complaint adding new claim to enforce prepayment clause in parties' contract, defendant not entitled to assert counterclaims as of right in amended answer involving malicious prosecution and abuse of process, and court refused leave to add counterclaims when delay and prejudice to plaintiff existed).

Though a few courts have allowed counterclaimants to plead as of right whatever claims they wish in response to an amended complaint, this Court has not, and the more predominant, moderate rule is to allow "pleading anew [in a counterclaim] only in proportion to the changed scope of the case" occasioned by the amended complaint. *Thomas D. Wilson Consulting, Inc. v. Keeley & Sons, Inc.*, C.A. No. 05-2115, 2006 U.S. Dist. LEXIS 73691 at *12 (E.D. Mo. Sept. 26, 2006). *See also Elite Entertainment, Inc. v. Khela Bros. Entertainment*, 227 F.R.D 444, (E.D.

---

[9] The actual holding of *Refuse Fuels* was not, as Lycos asserts, that counterclaims in response to Rule 15(a) amended pleadings may always be brought as of right without need for review by and leave of the Court. Lycos Opposition Memorandum at 3-4. Rather, it was that "if the defendants were not permitted to set up counterclaims as of right in response to a pleading amended pursuant to Rule 15(a)..., they are hereby granted leave nunc pro tunc to file and serve the new counterclaims and affirmative defenses pursuant to Rule 13(g)." 139 F.R.D. at 579 (emphasis added). Moreover, Judge Collings determined that the counterclaimant did not, until later in discovery, have "evidence as to whether there was a good-faith reason" for plaintiff's actions, and, significantly, the Court determined that "there does not seem to be any dispute" that the new counterclaims and affirmative defenses being asserted "will not require additional discovery." *Id.* This is a far cry from the present case, where Lycos' earlier attempts to add these claims over eight months ago has already been rejected and where the case is now less than a month away from the close of discovery -- leaving CSI no time to pursue discovery it justifiably did not pursue based on the Court's earlier denial of these claims.

Va. 2005) (noting that "[n]o appellate court has squarely addressed" whether counterclaims in response to amended claims may be brought "as of right" and describing the "variant positions" of the trial courts; court denies counterclaims as they exceed the scope of the amended claims, were brought after unwarranted delay and caused "plain prejudice" to plaintiff by being asserted late in the case "leaving little time for discovery on these new claims").

This more moderate rule, where leave is required, is especially appropriate where factors such as delay, surprise and prejudice to the plaintiff would result:

> Normally, a party responding to an amended pleading must "plead in response" to the amended pleading, ***and must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading.*** However, if a plaintiff files an amended complaint changing the theory or scope of the case, some courts hold that the defendant is entitled to plead as though it were responding to the original complaint. This means the defendant may add new counterclaims without requesting leave of court. Other courts have found that a defendant ***may not add counterclaims as of right, even if the plaintiff's amended complaint expands the scope or theory of the case***, and that the defendant's right to add counterclaims must be evaluated ***under the court's discretionary ability to permit an amended answer, including a consideration of such factors as delay in bringing the counterclaim, surprise, and prejudice to the plaintiff.***

3 James W. Moore, et al., Moore's Federal Practice, Civil, § 15.17[6] (3rd Ed. 1997) (emphasis added); *see also* Fed. R. Civ. P. 15(b) (court has discretion to permit parties to amend pleadings); *Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706, 712-713 (S.D.N.Y. 1982) (where plaintiff filed supplemental and amended complaint adding new claim to enforce prepayment clause in parties' contract, ***defendant was not entitled to assert counterclaims as of right in amended answer*** involving malicious prosecution and abuse of process, and court refused leave to add counterclaims when delay and prejudice to plaintiff existed); *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1188 (3d Cir. 1979) (court explicitly refused to follow *Joseph Bancroft & Sons Co.*, 50 F.R.D. 415, and denied permission to add counterclaim because of prejudicial

delay); *Nolan v. City of Yonkers*, C.A. 92-6067, 1996 U.S. Dist. LEXIS 3221 at * 13 (S.D.N.Y. Mar. 19, 1996) (ruling that "defendant did not have a right to assert new counterclaims unrelated to the amendment" of plaintiff allowed by leave of court).

In this regard, Lycos cannot seriously contend that its multiple and expansive new counterclaims for usury, breach of implied covenant, violation of M.G.L. c. 231 § 85J, declaratory judgment, etc., are or were pled, in the words of Rule 15(a), "in response to" CSI's narrowly drawn amendments for fraud in connection with the parties' Sales Agreement. To the contrary, Lycos is seeking at the eleventh hour to severely prejudice CSI by reasserting previously rejected legal theories and asserting totally new claims as to which CSI has done no discovery. This is not fair or permitted under the rules.

## CONCLUSION

For all of the foregoing reasons, CSI's Motion to Dismiss Portions of Lycos' Recent "Answer to CSI's Amended Complaint and Counterclaim of Lycos. Inc." (Docket No. 122) should be allowed, and Lycos should be properly limited to its previously existing counterclaim (Docket No. 19).

In particular, the usury and usury-related counterclaims in Docket No. 122, which appear at pages 35-41 of that pleading as new Counts VIII, IX, X, and XI, and the other newly added claims, appearing at pages 31-33 of that pleading as new Counts IV, V, and VI (making new allegations of violation of M.G.L. c. 231, §85J, violation of M.G.L. c. 93A on account of supposedly violating c. 231, §85J, and alleged breach of implied covenant of good faith based on CSI's calculation of "stipulated loss values" in its leases with Lycos-- an issue never raised in Lycos' prior counterclaims) should be properly stricken and dismissed.

Respectfully submitted,

COMPUTER SALES INTERNATIONAL, INC.
By its attorneys,

/s/ Robert J. Kaler
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
David Himelfarb, BBO No. 649596
dhimelfarb@mccarter.com
McCarter & English LLP
225 Franklin Street
Boston, MA 0211
Tel. (617) 345-7000

Dated: January 10, 2007

## Certificate of Service

I, Robert J. Kaler, hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically this 10th day of January 2007.

/s/ Robert J. Kaler
Robert J. Kaler

ME1 6070929v.1

# **EXHIBIT 1**

ME1 2344245v.1

# O'BRIEN & LEVINE

Court Reporting Services



YOUR BOSTON CONNECTION...WORLDWIDE

## Computer Sales International, Inc. v. Lycos, Inc.

Transcript of the Testimony of:

## Kevin Cameron Baillie

## December 21, 2006

www.court-reporting.com
mail@court-reporting.com

195 State Street
Boston, MA 02109
(617) 399-0130   888.825.DEPO(3376)

ORIGINAL

James A. Scally   21972

Kevin Cameron Baillie 12-21-2006
Computer Sales International, Inc. v. Lycos, Inc.

6

```
1    Q.   And are you represented by counsel here today?
2    A.   Yes.
3    Q.   And who is that?
4    A.   Tom Bean.
5    Q.   And you are currently an officer of the defendant
6    Lycos, Inc. in this case?
7    A.   That's correct.
8    Q.   What's your position with Lycos?
9    A.   Chief financial officer.
10   Q.   Where have you testified under oath before?
11   A.   In an arbitration hearing.
12   Q.   For Lycos?
13   A.   For Lycos.
14   Q.   How long ago was that?
15   A.   That was many years ago.
16   Q.   Okay.  Anywhere else?
17   A.   No.
18   Q.   Have you ever been convicted of a crime?
19   A.   No.
20   Q.   Briefly describe, if you would, your educational
21   background by years beginning with your graduation from
22   high school.
23   A.   I graduated from Brockton High School in 1986.  I
24   graduated from the University of Massachusetts at Amherst
```

Kevin Cameron Baillie 12-21-2006
Computer Sales International, Inc. v. Lycos, Inc.

31

1   date that I asked Mr. Stenberg for those schedules;
2   however, I asked him in a conversation that I had with him
3   in either late 2001 or early 2002.
4       Q.   And what do you mean by amortization schedules?
5       A.   What I mean by amortization schedules was a
6   schedule showing the amount that was leased under the lease
7   obligation and how the payments that were made were
8   reflected as either a reduction in principal of the lease
9   obligation or as an interest component.
10      Q.   But this was not a loan. These were leases,
11  right?
12      A.   These were leases, but the same amortization
13  principle applies to them.
14      Q.   Well, leaving aside the opinion as to whether the
15  same amortization principle applies, the relationship
16  between Lycos and CSI was that CSI was leasing equipment to
17  Lycos, correct?
18           MR. BEAN:  Objection.
19      A.   That's correct.
20      Q.   CSI was not loaning money to Lycos, correct?
21           MR. BEAN:  Objection.
22      Q.   You can answer.
23      A.   Correct.
24      Q.   And in the conversations that you had with Mr.