UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action #05-10017-RWZ

Computer Sales International, Inc. (CSI)
        Plaintiff and Defendant in Counterclaim


                v.


Lycos, Inc. (Lycos)
        Defendant and Plaintiff in Counterclaim



DISCOVERY MASTER REPORT # 6

December 3, 2007



In late November, CSI brought to the court's attention the parties' dispute
concerning whether Lycos was required to produce the document(s)
"considered" by one of its "co-Experts". With the consent of the parties, the
court appointed the undersigned, who had served as the Discovery Master
(fact-Discovery work had been completed more than a half-year earlier), to
hear and rule on that dispute.

More specifically, CSI has moved to require that Lycos produce the
document(s) created by Peter Daley, ASA, one of Lycos' co-Experts; it
reflects a higher, "in place"-value of the equipment Lycos had leased and
then purchased from CSI. Christopher Condon, ASA, Lycos' other co-
Expert, had testified in his deposition that he had "considered" Daley's "in
place" evaluation. Those co-Experts subsequently decided upon and reported

1

a lower "market value" for that equipment, implicitly rejecting that "in place" evaluation, and did not include it in their Report.

Following the conference call on Friday afternoon, November 30[th,] and after reflecting on the parties' several submissions and argument of counsel, CSI's Motion is Allowed.

Comment: Both sides have acknowledged that, in accordance with Fed R. Civ. P. 26(a) (2)(B), each is entitled to receive all materials "considered" by either side's Expert(s). Indeed, citing to its right of access under the Rule, Lycos' counsel had "demanded" in an email to CSI dated October 29th "'all data or other information' documents [CSI's Expert, Professor Johnson] considered in forming his opinions." See last page of attachments to CSI's initial letter-submission of November 29th.

Lycos claims that it is nonetheless shielded from that obligation with respect to what Lycos described during the course of that telephone conference as an "in place" analysis "spreadsheet" that Daley had prepared and Condon had considered, because the parties had agreed to limit document production to "basic materials specific to the case." (The quoted language is used in letters from CSI set out in Exhibits C,D,E, and F of Lycos' letter-submission, dated November 29, 2007. On p.1 of that submission Lycos uses the shorthand "basic case materials.")

2

Despite the obvious desirability of finally concluding Discovery in this now aging case, Lycos' view does not withstand required scrutiny. First, Lycos has not carried its burden of establishing that the noted Agreement was ever intended to have the sought-after effect of denying the other side access to data considered by each's Experts. Indeed, in response to the aforementioned Lycos "demand," CSI had provided Lycos with the sought-after Johnson "stock price regression." (See, top of last page of attachments to CSI's initial letter-submission of November 29th). Nor is Lycos' claim to a lesser disclosure requirement advanced by its invoking CSI's aforementioned references to "basic materials specific to the case." By their nature, those words do not touch on the issue at hand -- do data or other material considered by the Expert require production? In fact, in each of the instances in which CSI uses them (See Exhibits C,D,E and F of Lycos' letter-submission dated November 29th), the items thereafter listed include data or other material the Expert had "considered" that were in addition to those items of listed materials provided him.

As noted, the data or material at issue here – the Daley "in place" evaluation/analysis -- is said to have been considered but rejected. Lycos has not contended that rejected material is a category that either because of the Rule or Agreement requires no disclosure. Nor is there evidence or logic to support that possible distinction.

3

In sum, Lycos has not sustained its burden of establishing an agreement to deprive either side access to "all data or other information" considered – even if rejected – in an Expert's forming his opinion. If anything, the evidence leans heavily in the opposite direction – that neither party had given up its right of access to those data and other material.

What about the cited Agreement? It did in fact seek to and effected a reduction in document production that may otherwise have been considered desirable, even arguably required. Thus, "notes" and "drafts" were part of that deal. But CSI is not here seeking nor would it be entitled to Mr. Daley's notes or any "draft" of his "in place" evaluation/analysis. What CSI is seeking and is entitled to under the Rule is the Daley spreadsheet and every additional Daley "in place" evaluation document(s), including any email(s), that Condon in fact considered.

Respectfully submitted,

Herbert Hershfang

Discovery Master

4

5