# McDermott Will & Emery

Boston Brussels Chicago Dusseldorf Houston London Los Angeles Miami Munich
New York Orange County Rome San Diego Silicon Valley Washington D C

Strategic alliance with MWE China Law Offices (Shanghai)

Thomas O Bean
tbean@mwe com
617 535 4426

June 11, 2008

**By CM/ECF**

The Honorable Rya Zobel
John Joseph Moakley Courthouse
One Courthouse Way
Boston, MA 02210

    Re:    Computer Sales International, Inc v. Lycos, Inc., Case No. 05-10017-RWZ

Dear Judge Zobel:

    At the January 16 and May 28, 2008 oral arguments on the parties' motions for summary judgment, the Court asked multiple times why the existence of hidden fees and/or charges embedded in the monthly rent, admittedly undisclosed by CSI, mattered to Lycos, suggesting that "the rent was the rent." In this letter, Lycos makes three brief points in response to this question.

    1.    Refinancing a mortgage or lease is *not* just about the new rent or the amount of the new monthly payments. For any business, the *cost* of refinancing is also a factor in deciding whether to refinance. For example, in deciding whether to refinance a mortgage, any business would consider, among other things, the interest rate to be charged *and* any added cost of refinancing, i.e., any "fees" or "points" being charged. If those fees or points represent too high a cost to refinance relative to the reduction in the monthly rent payments, that business might decide either not to refinance or to negotiate a reduction in or elimination of those fees. If, however, the lessor or lender *fails to disclose* those fees and instead buries them in the monthly payments, the lessee or borrower may be stripped – as was the case here because of the number and complexity of the refinancings – of its ability to evaluate that added cost and decide whether and/or on what terms to refinance. Indeed, knowing that fees are material to a lessee's decision to enter into a lease, the former President of the Equipment Leasing Association ("ELA") – an expert retained *by CSI* in this case – testified that one of the reasons the ELA developed its Code of Fair Business Practices was that lessors were charging lessees undisclosed fees.[1]

    2.    When Lycos refinanced its leases with CSI, often to terminate 24-month leases well before the end of the lease term and enter into one or more 36-month leases, it expected its monthly rent payments to go down. Generally, they did. However, they did not go down as much as they should have because CSI embedded a hidden fee or mark-up in those rents.

---

[1] Affidavit of James Fraser, (Dkt No 191), Ex 6 at 42:21-43:1

U.S. practice conducted through McDermott Will & Emery LLP
28 State Street Boston, Massachusetts 02109-1775 Telephone: 617 535.4000 Facsimile: 617.535 3800 www.mwe.com

The Honorable Rya Zobel
June 11, 2008
Page 2

For example, if CSI had not charged Lycos a fee or mark-up, the rent on a certain lease schedule may have decreased from $1,000 per month to $600 per month as a result of spreading the lease payments over 36 months as opposed to 24 months. But, because of the mark-up CSI charged and embedded in the rent payments, the rent decreased to only $800 per month, resulting in a reduction of only $200 instead of $400 per month. Thus, the new rent was not "just the rent" – it was the rent *plus* a hidden fee that caused the amount of the monthly rent and thus the aggregate rent payments to be substantially higher than they otherwise should have been.

Given the number and complexity of the CSI-Lycos refinancings -- some of which CSI's co-CFO described as "complex and convoluted" -- and CSI's admitted failure to disclose those fees or mark-ups to Lycos, Lycos was deprived of its ability to evaluate the fees or mark-ups and decide whether to accept them as a cost of refinancing. Not surprisingly, each of the Lycos executives who signed the lease schedules have given unrebutted testimony that Lycos would not have entered into the refinancings on the terms that it did if CSI had disclosed the $13.708 million in fees and mark-ups.[2]

3.  The rent also was not "just the rent" because the impact of the hidden fees was compounded with each refinancing. As suggested above, each time Lycos refinanced, CSI rolled the undisclosed fees into the rent thereby increasing the rent over what it should have been. It was as if a corporate borrower refinanced the $1 million outstanding principal balance on a loan secured by its real estate, the lender charged it ten points to refinance but did not disclose the points, and the lender rolled the points into the new monthly mortgage payments. As a result, as of the moment after the refinancing, the borrower's outstanding principal balance was $1,100,000 instead of $1,000,000 as it should have been. If the borrower were to refinance *again* before the end of the term, as routinely happened between Lycos and CSI, the borrower would be refinancing $1,100,000 instead of $1,000,000. It would therefore, in connection with the second refinancing, pay interest on the $100,000 fee from the initial refinancing, plus the new fee, as part of its monthly payments on the refinanced loan. (Lycos uses this example not to suggest that its refinancings were as simple as the one described here, but to show the compounded effect of rolling undisclosed fees into monthly payments.)

Here, by rolling the admittedly undisclosed fees into Lycos's monthly rent, CSI effectively increased the terminating balances of the leases, i.e., the present value of the remaining rents plus the present value of the residual (equivalent to outstanding principal balance on a loan) on each lease, such that each time Lycos refinanced, it refinanced the undisclosed fee on the preceding lease *and* financed the additional undisclosed fee on the refinanced lease. Thus, the rent was not "just the rent." Instead, it included fees on the prior leases as well as the fee on the new lease.

Lycos hopes the foregoing is helpful in responding to the Court's question.

---

[2] Affidavit of Thomas O. Bean (Dkt. No. 149) Ex. 6, ¶ 4; Ex. 11, ¶ 9; Ex. 12, ¶ 4.

The Honorable Rya Zobel
June 11, 2008
Page 3

  While Lycos believes the Court should grant its motions for summary judgment, to avoid having a trial some time in 2009 on a case that was filed in early January, 2005, Lycos requests that the Court schedule a status conference at its earliest convenience to set a trial date in Fall, 2008 so that the parties have a trial date if the Court does not grant summary judgment.

  Lycos thanks the Court for its consideration of these matters.

Respectfully submitted,

*Thomas Bean*

Thomas O. Bean (BBO# 548072)
(Counsel for Lycos, Inc.)

cc: Robert Kaler, Esq. (counsel for CSI)