UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL INC., | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| LYCOS, INC., | ) | C.A. No. 05-10017- RWZ |
| Defendant, | ) ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) ) | |
| Trustee Process Defendant. | ) ) | |

**PLAINTIFF CSI LEASING'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE
DEFENDANT LYCOS, INC. FROM INTRODUCING CONFUSING,
<u>MISLEADING, AND UNFAIRLY PREJUDICIAL LOAN ANALOGIES</u>**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a
Computer Sales International, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

STATEMENT OF RELEVANT FACTS .................................................................................... 2

ARGUMENT ................................................................................................................................. 7

I.      THE COURT SHOULD EXCLUDE LYCOS' LOAN ANALOGY BECAUSE IT
        HAS BEEN RULED "INAPT," AND IS THEREFORE IRRELEVANT TO THE
        ISSUES IN THIS CASE ..................................................................................................... 7

II.     EVEN IF IT WERE RELEVANT, WHICH IT IS NOT, THE COURT SHOULD
        EXCLUDE LYCOS' LOAN ANALOGY BECAUSE IT WOULD BE
        INHERENTLY MISLEADING AND CONFUSING TO THE JURY, AND
        UNFAIRLY PREJUDICIAL TO CSI ................................................................................ 8

CONCLUSION ............................................................................................................................. 11

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Mesfun v. Hagos*, 2005 WL 5956611 (C.D Cal. Feb. 22, 2005)..................................................... 8

*Nationwide Tranport Finance v. Cass Information Sys., Inc.*, 523 F.3d 1051, (9th Cir. 2008) ................................................................................................................. 9

*People v. Ortiz*, 259 A.D.2d 271 (N.Y. App. Div. 1999) ................................................................. 8

*Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348 (1st Cir. 2005) ................................................. 9

*Security State Bank v. Baty*, 439 F.2d 910 (10th Cir. 1971) ......................................................... 10

*State v. Williams*, 804 So.2d 932 (La. Ct. App. 2001).................................................................. 10

*United States v. Andujar-Basco*, 488 F.3d 549 n. 1 (1st Cir. 2007) ........................................... 10

*United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992) ..................................................................... 10

*Williams v. Drake*, 146 F.3d 44 (1st Cir. 1998)............................................................................. 9

**STATUTES**

La. Code Evid. Art. 403 ................................................................................................................. 10

**RULES**

Fed. R. Evid. 402 ....................................................................................................................... 1, 7

Rule 403 of the Federal Rules of Evidence .................................................................... 1, 7, 9, 10

Plaintiff CSI Leasing f/k/a Computer Sales International, Inc. ("CSI") has respectfully moved this Court moves this Court *in limine*, pursuant to Fed. R. Evid. 402 and 403, to preclude defendant Lycos, Inc. ("Lycos"), at trial, from describing the leases or lease extensions at issue in this case (the "Leases") as loans, and from comparing or analogizing the Leases to loans, or using loan terminology or concepts to explain Lycos' claims about the Leases or its alleged damages -- because such references will assuredly confuse and mislead the jury about the nature of the parties' business relationship, and unfairly prejudice CSI in violation of Rule 403 of the Federal Rules of Evidence.

In its September 26, 2008 summary judgment decision, this Court ruled that **(1)** that the transactions at issue in this case were leases, not loans, rejecting as "inapt" Lycos's various loan analogies; **(2)** that the relationship between CSI and Lycos was one of lessor and lessee (not lender/borrower); and **(3)** that CSI could have a duty to disclose the financial implications of the Leases to Lycos only if Lycos demonstrated at trial that the parties were in a fiduciary relationship. *See* September 26, 2008 Summary Judgment Opinion (Docket No. 207), p. 11.

Throughout the course of this litigation, however, Lycos has repeatedly analogized the parties' Leases to loans, especially with respect to CSI's purported duty to disclose the financial implications of the Leases. Indeed, its summary judgment papers and the transcripts of the summary judgment hearings are replete with Lycos's arguments that to the purported "mark-ups" in the leases are similar to "points" on a loan that must be disclosed, and that the Leases were really "refinancings" of the original leases, suggesting that they were loans, not leases.

As this Court's summary judgment decision held, these comparisons are "inapt," and will serve only one purpose at what will already be a lengthy trial involving complex financial issues: to confuse and mislead the jury regarding CSI's duty to disclose--a duty this Court has ruled has

-1-

nothing to do with the nature of the transactions at issue, since CSI and Lycos were merely lessor and lessee, but will instead hinge upon whether a fiduciary relationship existed between the parties, notwithstanding the sophisticated nature of the parties and their arms' length business relationship.

For all of these reasons, this Court should preclude Lycos from describing the Leases as loans, from comparing or analogizing the Leases to loans, and from using loan terminology or concepts to explain Lycos' claims about the Leases or its alleged damages.

## STATEMENT OF RELEVANT FACTS

1.      Throughout the course of this litigation, Lycos has repeatedly attempted to characterize or, at the very least, analogize, its Leases with CSI to loans.  Initially, in its Answer to CSI's First, Amended Complaint and Counterclaim of Lycos, Lycos alleged that Schedules 93 and 94 were loans in the form of security agreements pursuant to § 1-201(37) of the UCC (Count VIII) and that CSI violated Massachusetts usury law (Count IX), and Chapter 93A (Count X), by imposing excessive interest in the loans.  *See* Answer to CSI's First Amended Complaint and Counterclaim of Lycos, Inc. (Dec. 14, 2006) (Docket No. 122).  Pursuant to CSI's Motion to Dismiss, however, the Court dismissed these loan-based counts, Counts VIII, IX, and X, of Lycos's counterclaim on August 29, 2007.  *See* Aug. 29, 2007 Endorsed Order.

2.      Undeterred by the Court declining to accept its various loan theories, Lycos continued to pursue these theories in its summary judgment papers.  Specifically, Lycos argued in its summary judgment papers, under the auspices of its unjust enrichment claim, that, Lease Schedules 93 and 94 were installment sales contracts under the UCC (a claim the Court essentially dismissed in Count VIII of Lycos's counterclaim when Lycos tried to argue that the leases were loans and security agreements), that Lycos therefore owned the equipment subject to what it said was a security interest held by CSI, and that Lycos therefore paid twice to purchase

it when it executed the Sales Agreement in the Summer of 2003.  *See* Lycos's Memorandum of Law in Support of Motion for Partial Summary Judgment on Certain Claims in Counts VII, XII, and XIII of its Counterclaim (Sept. 4, 2007) (Docket No. 148), pp. 26-30.

3.      Similarly, Lycos repeatedly referred to the rewrites of the initial Leases as "refinancings" as though the original leases were loans.  *See generally* Lycos's Memorandum of Law in Support of Motion for Partial Summary Judgment on Certain Claims in Counts VII, XII, and XIII of its Counterclaim (Sept. 4, 2007)(Docket No. 148).  In addition, during the January 16, 2008 and May 28, 2008 hearings on the parties' summary judgment motions, Lycos continued to compare the Leases to loans, particularly with respect to CSI's purported duty to disclose.  For example, Lycos made the following loan-related arguments at the January 16, 2008 hearing:

- "They [the lease payments] were payments on account – in effect, a loan." Transcript of January 16, 2008 Hearings on Motions for Summary Judgment, at 18:8-9 (attached hereto as <u>Exhibit A</u>).

- "Every single time a refinancing occurred--and there were 44 of them here.  Every single time CSI charged Lycos a fee, a premium, a markup, a cost for refinancing, a hidden fee that it did not disclose, and that's what this case is about.  They churned these leases so that we paid a fee for refinancing when Schedule 19 was refinanced onto Schedule 43, a fee that was not disclosed.  And, as I said, whether you call it a fee, premium, markup, points, it really doesn't matter.  It is a charge for refinancing."  *Id.* at 22:20-23:4.

- "What they did not tell Lycos was that buried within this new rent was a charge for refinancing, points, a premium, a markup.  And so, every single--so, here's

just--in applying *Kanavos*, the parties discussed the cost to Lycos of refinancing. As a result, CSI was bound to disclose to Lycos all material facts within its knowledge concerning that cost.  One of the facts that CSI knew was it was charging Lycos a premium, a fee, a markup, points, for the privilege of refinancing." *Id.* at 26:21- 27:5.

- "And they didn't break it down into rent and fees, although they booked it on their own books separately, ok? Here was the advantage of charging this fee: Like a bank, when you charge points, you can book that revenue immediately on your books and records.  Call it revenue.  The lease payments have to be amortized over the life of the loan." *Id.* at 28:7-14.

- "We're simply saying they had a duty to tell us in the same way that when you or anyone else or a commercial entity goes to a bank and the bank says, Well, we're going to charge you two points on this, they had a duty to tell us they were going to charge a fee because they discussed the issue of cost to us." *Id.* at 29:21-30:1.

- When CSI--ever time there was a refinancing that Mr. Stenberg approached--CSI contemplated about, the was given what was called a threshold, and the threshold was the present value of the remaining payments on the existing leases, plus the present value of the booked residual on those leases.  In other words, what was CSI's net investment in the lease? We call it loan balance.  They don't like loan terms, but, frankly, your Honor, they used terms 'interest' and 'principle.'" *Id.* at 31:9-18.

- "But the point is, it's not arbitrary in terms of how this markup, this fee, was calculated and how we're calculating and how they did it.  You look at what was

the--and I'm going to use a loan term here--the outstanding principle balance on a loan.  For a lease it's the present value of the remaining lease payments, plus the present value of the residual.  Call it the loan balance.  Let's say it's $100.  When we refinanced, now the present value of the residual was, say $120.  In other words, it's if you walked into a bank and your outstanding principle balance on your loan is $100, and you walk out and the outstanding principle balance is $120 because you've been charged a premium, a fee, a markup, that you haven't been told about . . . ."  *Id.* at 32:4-20.

- "The reason the new rent is lower--it's like if you got a 15-year mortgage and you go to a 30-year mortgage.  Your payments go down, but overall you pay more because you have interest.  You're borrowing the money for a longer period of time.  We're not complaining about paying the additional interest.  We're complaining abut the fact that buried within this new rent was not just additional interest because the lease term was being extended to 36 months.  We're complaining because there was a fee, which they--they knew about.  They calculated."  *Id.* at 34:4-14.

**4.**     Similarly, at the May 28, 2008 summary judgment hearing, Lycos again advanced the following arguments analogizing the Leases to loans and loan refinancings:

- "On Count 1, Lycos maintains that CSI had a duty to disclose to Lycos in connection with each of the refinancings, that it was embedding a fee or markup in connection with each refinancing aggregating about $13.7 million.  Thinking about this like a loan –"  Transcript of May 28, 2008 Hearing on Motions for Summary Judgment, 4:9-13 (attached hereto as Exhibit B).

- "It's simply the concept in Count I, that if CSI had disclosed to Lycos that it had been charging Lycos a fee for the refinancings, Lycos would never have paid additional moneys to purchase the equipment in Count III." *Id* at 11:21-25.

- "Now, why is there a duty to disclose? Whenever a company is considering refinancing, it's often thinking about two things in terms of the cost: What's my interest rate or with respect to a lease an imputed interest rate, and are there any fees or pints, to use the mortgage analogy.  And the person considering it says, Geez, I've got to consider the points or fees or mark-ups as well as the interest rate.  And so, that's why the--there's a duty--the parties consider it's [sic] very relevant, the decision on whether to refinance, to know whether there is a fee or a mark-up charge, and we know that in the consumer loan context, there's a statutory obligation to disclose" *Id.* at 42:5-18.

- "And the other thing is are you charging me anything for the privilege of refinancing, just as when you go to the bank to refinance.  Is there a point or a fee or a mark-up." *Id.* at 47:6-9.

**5.**     In its summary judgment decision, however, this Court ruled that Lycos's attempts to analogize these transactions to loans was not correct:

> Although Lycos attempts to analogize the financial arrangement to a loan and the equipment schedules to refinancings of the loan, this analogy is inapt.  The relationship between CSI and Lycos - as set forth in the [Master Lease Agreement] and equipment schedules - was simply one of lessor-lessee.

September 26, 2008 Summary Judgment Opinion (Docket No. 207), p. 11.  The Court also declined to accept Lycos's argument that CSI had a general duty, absent a fiduciary relationship, to disclose the financial implications of the transactions to Lycos, and  rejected Lycos's attempts

to analogize Lease-related disclosures to the type of disclosures normally expected in a loan context:

> [T]he only material information required to be disclosed was the total amount of rent charged for use of the equipment.  CSI was not required to disclose how it calculated the rent.

*Id.*.  Rather, the Court found that whether CSI has a duty to disclose will be determined by whether there the parties' arm's length business relationship somehow evolved into a fiduciary relationship.  *Id.*

## ARGUMENT

Under Federal Rule of Evidence 402, "[e]vidence which is not relevant is not admissible," and evidence of an analogy that the Court has already ruled "inapt" is by definition not relevant.    In addition, under Federal Rule of Evidence 403, courts should exclude any relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,"  Fed. R. Evid. 403, and in this case, introducing the jury to an analogy that is legally inapt would necessarily confuse and mislead them, as well as severely and unfairly prejudice CSI.

**I.    THE COURT SHOULD EXCLUDE LYCOS' LOAN ANALOGY BECAUSE IT HAS BEEN RULED "INAPT," AND IS THEREFORE IRRELEVANT TO THE ISSUES IN THIS CASE**

This Court should exclude evidence and argument analogizing the CSI-Lycos leases to a loan, and the CSI-Lycos lease extensions to loan refinancings, because the Court has already held that this analogy is "inapt."  It is therefore irrelevant to the issue in this case, and cannot properly be admitted.  Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible").  In this regard, the Court has specifically held that "[t]he relationship between CSI and Lycos - as set forth in the [Master Lease Agreement] and equipment schedules - was simply one of lessor-lessee."  *See* September 26, 2008 Summary Judgment Opinion (Docket No. 207), pp. 11-12.

Under these circumstances, it would be inappropriate for Lycos to be allowed to analogize the Leases to loans at trial, to treat them as such, or to suggest that CSI had a duty to disclose purported "mark-ups" in the Lease rentals amounts to undisclosed "points" on a loan to a borrower, as Lycos so often argued before the Court prior to the summary judgment decision. *People v. Ortiz*, 259 A.D.2d 271, 272 (N.Y. App. Div. 1999) ("The court properly exercised its discretion when it precluded defendant from introducing medical records concerning the condition of his jaw.  These records contained no information relevant even as to defendant's ability to speak at the time of the drug transaction three weeks after his discharge.").

An appropriate order *in limine* should therefore enter ensuring that this does not occur, as it would inevitably suggest to the jury that the analogy to a loan is appropriate, when in fact, it is legally inapt.  *See Mesfun v. Hagos*, 2005 WL 5956611, *3 (C.D Cal. Feb. 22, 2005) ("…[B]ecause the involuntary servitude claim has been removed from the case, the court will not permit [plaintiff's expert] to refer to 'trafficking' in her testimony…[A]ny discussion of trafficking--which has inflammatory connotations that relate only to the non-dismissed involuntary servitude claim--would be prejudicial to defendant … [and] might also confuse the jury as to the substance of the issues it is being asked to describe").

## II.   EVEN IF IT WERE RELEVANT, WHICH IT IS NOT, THE COURT SHOULD EXCLUDE LYCOS' LOAN ANALOGY BECAUSE IT WOULD BE INHERENTLY MISLEADING AND CONFUSING TO THE JURY, AND UNFAIRLY PREJUDICIAL TO CSI

This Court should also exclude evidence and argument analogizing the CSI-Lycos leases to a loan, and the CSI-Lycos lease extensions to loan refinancings, because it would be inherently misleading and confusing to the jury -- as this Court has recognized in characterizing the analogy is "inapt."  *See* September 26, 2008 Summary Judgment Opinion (Docket No. 207), pp. 11-12.  The relationship between CSI and Lycos plainly was not one of lender-borrower; it

was one of lessor-lessee -- as Lycos' own officials repeatedly recognized in their testimony, and this Court recognized in its summary judgment decision.  *Id*. at pp. 11-12 ("[t]he relationship between CSI and Lycos - as set forth in the [Master Lease Agreement] and equipment schedules - was simply one of lessor-lessee").  Allowing the analogy to be introduced at trial would thus be very unfair to CSI, because of the inherent risk of the jury assuming that the analogy might be appropriate, when the Court has already held that it is not.

Clearly, Fed. R. Evid. 403 provides this Court with "ample discretion" to exclude unfairly prejudicial, confusing, or misleading evidence, *see Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348, 355 (1st Cir. 2005), so as to keep "[the] jury's attention riveted on the dispositive issues" in the case.  *Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998).  In this case, the issues to be decided have nothing to do with whether the Leases were like loans, or whether the Lease extensions were like loan refinancings -- rather, they have to do with whether CSI made material misrepresentations to Lycos, or whether a fiduciary relationship existed between those two such that additional information about the "financial implications" of the Leases should have been disclosed by CSI, beyond what Lycos already knew or should have known.  Allowing a confusing analogy to loans into the case will not assist the jurors in deciding these issues.

In this type of situation, federal and state courts routinely exclude confusing or misleading terminology or principles that are erroneous and will not assist a jury in reaching a verdict.  *Nationwide Tranport Finance v. Cass Information Sys., Inc.*, 523 F.3d 1051, 9th Cir. 2008) ("We agree with the district court's conclusion that the probative value of any reference to *the erroneous legal principle* that Cass stands in the shoes of the account debtor was substantially outweighed by the risk of misleading or confusing the jury on the extent of Cass's

obligations as an agent of the account debtor.") (citing Rule 403).[1]  The same result is warranted here, particularly as this is an already complex financial case involving concepts likely to be new to many of the jurors.

In this regard, it is highly likely that the jury will be familiar with the ongoing economic crisis here in the U.S., including the impact that certain high-interest rate mortgages from lenders have had on consumers and businesses.  Any suggestion that CSI could be a lender who did not disclose everything it should have to Lycos will unfairly prey on the jury's fears and emotions about that situation.   Indeed, the Court, in responding to one of Lycos's earlier arguments in this case, remarked that "[t]he banks now with their sub-prime loans are going to be in serious trouble if you're right."  January 16, 2008 Summary Judgment hearing, 23:12-24:5.  This would be particularly unfair where the Court has already recognized that the transactions at issue were leases, not loans, and that the relationship between CSI and Lycos was one of lessor-lessee, not lender and borrower.

Accordingly, this Court should properly preclude the defendants from employing this analogy at trial.  *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of a very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." ).
*See also Security State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971) ("The court has not only

---

[1]   For instance, the First Circuit acknowledged, in *United States v. Andujar-Basco*, 488 F.3d 549, 554 n. 1 (1st Cir. 2007), that the district court had correctly determined "that any testimony referring to [a] co-defendant's 'cooperation' with law enforcement was overly prejudicial and misleading because [the co-defendant] ultimately chose not to cooperate and not to testify at [the defendant's] trial."  *See United States v. Andujar-Basco*, 488 F.3d 549, 554 n. 1 (1st Cir. 2007) (affirming conviction and denying defendant's argument that Court should have declared mistrial when federal agent testified that he tried to get defendant to cooperate); *see also State v. Williams*, 804 So.2d 932, 949 (La. Ct. App. 2001) ("… trial court arguably acted within its discretion in excluding defendant's psychiatric records" because  the records were replete with medical terminology and references that, without some explanation, may have confused or misled the jury") (citing La. Code Evid. Art. 403).

the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect.").

## <u>CONCLUSION</u>

WHEREFORE Computer Sales International, Inc. respectfully requests that this Court allow the foregoing Motion for In Limine and preclude Lycos, at trial, from describing the Leases or Lease extensions at issue in this case as loans, and from comparing or analogizing the Leases to loans, or using loan terminology or concepts to explain Lycos' claims about the Leases or its alleged damages.

Respectfully submitted,

CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL,

By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

Dated:  February 27, 2009

## <u>CERTIFICATE OF SERVICE</u>

I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically by CM/ECF notification, by e-mail and by first class mail, postage prepaid, this 27th day of February, 2009.

/s/ Edward W. Little, Jr._____
Edward W. Little, Jr.

-11-