**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL, INC., ) ) ) Plaintiff and Defendant-in- ) Counterclaim, ) ) v. ) ) LYCOS, INC., ) ) Defendant and Plaintiff-in- ) Counterclaim, ) ) and ) ) BANK OF AMERICA f/k/a FLEET ) BANK, ) ) Trustee Process Defendant ) | C.A. No. 05-10017-RWZ |

**MOTION *IN LIMINE* NO. 3:**
**TO EXCLUDE LEGALLY IRRELEVANT EVIDENCE CONCERNING WHETHER**
**SCHEDULES 93 AND 94 ARE LEASES OR LOANS**

In Counts XII and XIII of Defendant and Plaintiff-in-Counterclaim Lycos, Inc.'s ("Lycos") Amended Complaint, Lycos alleges that schedules 93 and 94 were installment sales contracts under section 1-201(37) of the Uniform Commercial Code. In its September 26, 2008 Memorandum of Decision (Dkt. No. 207; the "Memorandum of Decision"), this Court rejected CSI's arguments and held that Lycos could prove these schedules were installment sales contracts rather than leases by satisfying two requirements: (1) Lycos' obligation to pay under the schedules must not be subject to termination by Lycos, something the parties do not dispute; and (2) the original term of the lease must be equal to or greater than the remaining economic life of the goods. Mem. of Dec. 15. With respect to the latter requirement, this Court held that

whether the original term of schedules 93 and 94 is equal to or greater than the remaining economic life of the equipment on those schedules depends *solely* on the value of the equipment to Plaintiff and Defendant-in-Counterclaim Computer Sales International, Inc. ("CSI") on those schedules as of the end of the lease terms projected from lease inception after considering CSI's projected costs of disposition of that equipment. *Id*. at 16. Notably, the Court also expressly ruled that the parties' intent in entering into the schedules, subjective opinion of whether the schedules were leases or loans, and treatment of the schedules for tax and accounting purposes, were irrelevant and not to be considered. *Id.* at 17-18.

In light of the Court's decision, Lycos moves to exclude all legally irrelevant evidence concerning whether equipment schedules 93 and 94 are leases or loans, including (a) all evidence concerning whether Lycos and/or CSI (i) intended schedules 93 and 94 to be leases or loans, (ii) thought schedule 93 and 94 were leases or loans, and/or (iii) treated schedules 93 and 94 as leases or loans for tax or accounting purposes; and (b) all expert opinions on (i) whether schedules 93 and 94 were leases or loans, and (ii) the value of the equipment on schedules 93 and 94 *to Lycos* as of the end of the lease terms as projected from lease inception.

## I.   BACKGROUND

In discovery, CSI elicited testimony from witnesses concerning whether the parties intended and considered the schedules to be leases or loans. For example, CSI asked Thomas Guilfoile, a former executive at Lycos, whether Lycos reported the schedules as leases or loans in filings with the Securities and Exchange Commission or in its financial statements and whether Mr. Guilfoile considered the transactions to be leases or loans.[1] CSI used that

---

[1] Guilfoile Tr. at 203:4-204:6. A true and accurate copy of the relevant portions of Mr. Guifoile's deposition transcript is attached hereto as **Exhibit A**.

testimony, as well as affidavits submitted by its experts,[2] to respond to Lycos' assertion at summary judgment that schedules 93 and 94 were installment sales contracts as a matter of law, arguing that "CSI's experts as well as Lycos' own former officers agree that the transactions between Lycos and CSI were leases and ***not*** loans."[3] CSI also argued that "Lycos structured [schedules 93 and 94] as leases rather than installment sales contracts and received all of the accounting benefits of that structuring" and that Lycos' treatment of schedules 93 and 94 for tax and accounting purposes "belies its attempt to demonstrate that they were anything but true leases."[4]

Although not used by CSI at the summary judgment stage, during expert discovery Lycos' valuation expert Peter Daley produced a draft spreadsheet[5] containing tentative or preliminary valuations of the equipment at various points of time, including a preliminary valuation of the value of the equipment on schedules 93 and 94 to Lycos as of the end of the lease terms projected from lease inception (the "Preliminary Valuation"). Lycos believes that, notwithstanding the Court's unambiguous decision on summary judgment that the only relevant valuation is that *to CSI*, CSI intends to cross examine Mr. Daley with respect that Preliminary Valuation at trial.

---

[2] These affidavits parroted language contained in their expert reports.

[3] *Compare* Lycos' Local Rule 56.1 Statement at 14, ¶ 3 *with* CSI's Response to Lycos' Local Rule 56.1 at 17, ¶ 3 (emphasis in original). True and accurate copy of the relevant portions Lycos' Local Rule 56.1 Statement and CSI's Response thereto are attached hereto as **Exhibits B** and **C**.

[4] *See* CSI's Opp. to Lycos' Mot. for Partial Summ. J. (Dkt. No. 163) at 23, 27. A true and accurate copy of the relevant portions of CSI's Opposition is attached hereto as **Exhibit D**.

[5] During expert discovery, a dispute arose between Lycos and CSI concerning whether Mr. Daley needed to produce this spreadsheet. It was (and remains) Lycos' understanding that the parties had agreed not to exchange draft materials; CSI, apparently, had a different understanding (though it did not and has not produced any draft materials with respect to any of its experts). Although not the subject of the instant Motion, Lycos reserves its right to challenge the admissibility of the spreadsheet and any preliminary valuations contained thereon.

## II. ARGUMENT

Under Federal Rules of Evidence 401 and 402, evidence must relate to the determination of a fact that is of consequence to the matter to be tried.[6] As noted above, there are only two relevant issues with respect to whether schedules 93 and 94 were installment sales contracts or true leases: one that is not disputed by the parties and one that is disputed—i.e., whether, at the time the parties entered into those schedules, the equipment had an economic life longer than the lease term. This Court has already held that resolution of that issue depends solely on the value of the equipment on those schedules to CSI projected from lease inception to the end of the lease term after considering CSI's projected costs of disposition of that equipment. *Id.* at 16. Moreover, the "intent of the parties to create a lease or security interest" is not to be considered. *Id.* at 15.

Thus, whether the parties intended schedules 93 and 94 to be leases or loans, how Lycos treated schedules 93 and 94 for tax or accounting purposes, and the projected value of the equipment *to Lycos* are wholly irrelevant to this analysis. Furthermore, such evidence would not only waste valuable trial time, it would also confuse and mislead the jury as to the sole disputed fact issue in Counts XII and XIII. Fed. R. Evid. 403; *United States v. Nelson-Rodriguez*, 319 F.3d 12, 34-35 (1st Cir. 2003) (testimony that confidential informant had role in killings of drug traffickers excluded as "likely to confuse the issues, mislead the jury, or waste time" because murders were unrelated to charged drug conspiracy). That is particularly true here where the jury is going to be confronted with large amounts of information concerning complex

---

[6] *See* Fed. R. Evid. 401: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. 402: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. *Evidence which is not relevant is not admissible*" (emphasis added).

BST99 1612214-5.057077.0012

transactions over a three week trial. CSI should not be allowed to compound those inherent complexities by introducing evidence that the Court has already determined to be irrelevant.

Even if the foregoing evidence had some marginal relevance to other claims or defenses asserted by the parties in this case, any relevance is dwarfed by the prejudice it would cause to Lycos' Counts XII and XIII were this evidence shared with the jury.[7] Were CSI, for example, allowed to cross examine Mr. Daley with respect to his Preliminary Valuation—which is a preliminary valuation of the projected value of the equipment *to Lycos*—it would inevitably confuse the jury and taint their consideration of the only relevant value in Counts XII and XIII—the projected value *to CSI*. *See United States v. Schneider*, 111 F.3d 197, 201 (1st Cir. 1997) (expert medical testimony that defendant was depressed and had impaired judgment, while perhaps of limited relevance, was properly excluded because it could easily mislead jury into thinking that this medical condition amount to temporary insanity defense or otherwise ameliorated the offense). The same can be said for the other evidence that Lycos seeks to exclude. If, for example, CSI were allowed to argue that Lycos received tax or accounting benefits from treating schedules 93 and 94 as leases (it did not),[8] it may cause the jury improperly to conclude, as CSI advanced at summary judgment, that Lycos should not prevail on Counts XII and XIII because it "cannot have it both ways" (treating the schedules as leases but arguing now that these schedules are installment sales contracts)—an argument that this Court considered and rejected. As such, the foregoing evidence should be excluded.

---

[7] *See* Fed. R. Evid. 403 "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" *United States v. Adams*, 375 F.3d 108 (1st Cir. 2004) (Evidence must be excluded where its relevance is substantially outweighed by its prejudicial effect, that is, by its tendency to encourage jury to decide case on improper grounds).

[8] Because Lycos was not profitable during the relevant time period, it paid no income taxes; the treatment of these transactions as leases had no bearing on Lycos' profitability for income tax purposes. Moreover, Lycos' treatment of these transactions as operating rather than capital leases represented a more conservative approach from an accounting perspective.

## III. <u>CONCLUSION</u>

WHEREFORE, Lycos respectfully requests that this Court enter an order:

(1)   excluding (a) all evidence concerning whether Lycos and/or CSI (i) intended schedules 93 and 94 to be leases or loans, (ii) thought schedule 93 and 94 were leases or loans, and/or (iii) treated schedules 93 and 94 as leases or loans for tax or accounting purposes; and (b) all expert opinions on (i) whether schedules 93 and 94 were leases or loans, and (ii) the value of the equipment *to Lycos* on schedules 93 and 94 as of the end of the lease terms as projected from lease inception; and

(2)   granting Lycos such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

LYCOS, INC.

By its attorneys,

Dated: February 27, 2009

<u>/s/ Thomas O. Bean</u>
Thomas O. Bean (BBO# 548072)
Peter M. Acton, Jr. (BBO# 654641)
James M. Fraser (BBO# 664605)
McDERMOTT WILL & EMERY LLP
28 State Street
Boston MA 02109
(617) 535-4000
tbean@mwe.com
pacton@mwe.com
jfraser@mwe.com

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2009 the foregoing Motion was filed through the ECF system and was sent electronically to Counsel to CSI, Robert J. Kaler, McCarter & English, LLP, 265 Franklin Street, Boston, MA 02110.

/s/ Peter M. Acton, Jr.
Peter M. Acton, Jr.

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel for Defendant and Plaintiff-in-Counterclaim, Lycos, Inc., certifies that he has conferred with Edward Little, counsel for CSI, and attempted in good faith to resolve or narrow the issues raised in the foregoing Motion. The undersigned has been unable to resolve or narrow those issues.

Dated: February 27, 2009                        /s/ Peter M. Acton, Jr.
                                                Peter M. Acton, Jr.

BST99 1612214-5.057077.0012