UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL INC., | ) ) ) |  |
| Plaintiff, | ) |  |
| v. | ) ) |  |
| LYCOS, INC., | ) | C.A. No. 05-10017-RWZ |
| Defendant, | ) ) ) |  |
| BANK OF AMERICA f/k/a FLEET BANK, | ) ) |  |
| Trustee Process Defendant. | ) ) |  |

**PLAINTIFF CSI LEASING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE EVIDENCE CONCERNING TWO EMPLOYEE EVALUATION FORMS OF CSI'S ACCOUNT REPRESENTATIVE**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a Computer Sales International, Inc.*

ME1 8197781v.1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

SUMMARY OF ARGUMENT .....................................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................................3

ARGUMENT ..................................................................................................................................7

I.   THE EVALUATION FORM EVIDENCE SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT TO THE QUESTION OF WHETHER A FIDUCIARY RELATIONSHIP BETWEEN CSI AND LYCOS EVER EXISTED. .........................................................................................................................8

II.  THE EVALUATION FORM EVIDENCE, EVEN IF RELEVANT, SHOULD BE EXCLUDED BECAUSE IT WOULD BE UNDULY CONFUSING AND MISLEADING ON THE FIDUCIARY DUTY STANDARD .........................................10

CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Charter Township of Ypsilanti v. General Motors Corp.*, 506 N.W.2d 556 (Mich. Ct. App. 1993) .................................................................................................................. 8

*Collins v. Kibort*, 143 F.3d 331 (7th Cir. 1998) ................................................................. 9

*Fortier v. Ameritech*, 161 F.3d 1106 (7th Cir. 1998) ......................................................... 9

*Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210 (1st Cir. 1999) ..................................... 11

*Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40 (1st Cir. 1995) .......................... 2, 10, 11

*Irwin v. Marquette Medical Sys., Inc.*, 107 F. Supp. 2d 974 (S.D. Ohio 2000) ............................... 9

*KBQ, Inc. v. E.I. Dupont De Nemours and Co.*, 6 F. Supp. 2d 94 (D. Mass. 1998) ..................... 12

*Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693 (E.D. Pa. 2008) ............................................ 8

*McAdams v. Odom*, C.A. No. 99-30284, 2000 U.S. Dist. LEXIS 22068 (D. Mass. Dec. 13, 2000) ................................................................................................................ 12

*Millen Industries, Inc. v. Flexo-Accessories Co., Inc.*, 5 F.Supp.2d 72 (D. Mass. 1998) .................................................................................................................................. 8

*Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348 (1st Cir. 2005) ................................................ 9

*Starad, Inc. v. Lawson Software, Inc.*, C.A. No. 04-5554, 2004 U.S. Dist. LEXIS 18739 (S.D.N.Y. Sept. 16, 2004) at *5-6 ............................................................................. 8

*The Winer Family Trust v. Queen*, C.A. No. 03-4318, 2004 U.S. Dist. LEXIS 19244 (E.D. Pa. Sept. 27, 2004) at *29 ................................................................................. 8

**RULES**

Fed. R. Evid. 402 ............................................................................................................ 1, 7

Fed. R. Evid. 403 ........................................................................................................ passim

Fed. R. Evid. 403 advisory committee's note .................................................................... 9

Plaintiff CSI Leasing, Inc. f/k/a Computer Sales International, Inc. ("CSI") respectfully submits this memorandum of law in support of the accompanying *Motion in Limine to Exclude Evidence Concerning Employee Evaluations of CSI's Account Representative* (the "CSI Motion").

## SUMMARY OF ARGUMENT

CSI has moved, pursuant to Fed. R. Evid. 402 and 403, to exclude from the trial of this action evidence or argument concerning two employee evaluations of Paul Stenberg, the CSI account representative who worked with defendant Lycos, Inc. ("Lycos"), which gave him positive ratings in a series of pre-printed categories, including one which read:

> **Builds and Maintains Relationship Through Professional and Social Skills**:
>
> \*   Consistently stays in contact with customer through business appointments, lunches, dinners, and entertaining through social events of local interest or CSI-sponsored functions.
>
> \*   Develops an ongoing business and personal bond of camaraderie, trust, and dependency with decision maker.
>
> \*   Follows up on all customer requests and all promises to provide information.

(boldface in orig.). Lycos has given notice that it intends to seek to introduce these evaluation forms in an effort to try to prove a that fiduciary relationship existed between CSI and Lycos, but the forms do not mention CSI's relationship with Lycos, were written by third party consultant who had "no idea what the evaluation of a marketing rep was," Guilander Dep. at 25:5-26:9 (Exh. C), and date from periods of time, 1996-97 and 1999-2000, in which there is no evidence that any of the Lycos personnel signing contracts with Lycos ever reposed trust in Lycos.

Moreover, the manager at CSI who completed these forms testified in his deposition that the references to "trust" and "dependency" in them simply referred to such things as "…they trust us to pay their bills on time, they trust us when they return equipment that the asset's going to be cleaned and wiped…[etc.]," and would want to do business with CSI rather than another

ME1 8197781v.1

leasing company:

> Q: The question that I asked you was: This is an evaluation of Mr. Stenberg. you gave him the highest possible score for his ability to develop and ongoing business and personal bond of camaraderie, trust and dependency with the decision maker. What was your basis for giving Mr. Stenberg that score?
>
> A: Well, the trust and dependency, in my understanding, or my interpretation, would be, once he develops a new account, that *they think of CSI before they think of another leasing company*, and they would call Paul and do business with us over someone else.

(emphasis added). Under these circumstances, the forms have little or no probative value on the question of whether a fiduciary relationship actually ever existed between CSI and Lycos.

In this regard, the case law concerning the imposition of a fiduciary duty on an otherwise arms-length business transaction imposes a high burden on the proponent, and requires an analysis of the specific relationship between the specific parties involved. *See Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995) ("we cannot agree that the facts in this case establish that Sequoia occupied a fiduciary position with regard to Plastek").

A pre-printed internal evaluation form making general comments about employees developing a bond of "trust" with the customer, but containing no reference to CSI's relationship to Lycos, is not relevant to that inquiry. In fact, the forms that Lycos is seeking to offer cover the period July 1996-June 1997 and July 1999-July 2000, as to which there is no evidence that any of the Lycos officials who signed the Master Lease Agreement and subsequent equipment schedules ever reposed their trust in Lycos.[1]

---

[1] Ted Phillip and Tom Guilfoile, Lycos' Chief Financial Officer and VP of Finance, respectively, have testified that they never relied on Mr. Stenberg and new of no one at Lycos who did. The only witness who claims to have "trusted" Mr. Stenberg – Brian Lucy, according to an affidavit filed after litigation commenced in this case – became a decision-maker for Lycos in February 2001, when he assumed the position of Lycos' Chief Financial Officer. This was well after the period covered by two employee evaluation forms that Lycos seeks to introduce.

Moreover, even if one assumes that such forms would have a minimum probative value, the prejudice to CSI of taking language from this kind of this essentially stock employee evaluation form out of context, and suggesting that it evidences a fiduciary duty, would be substantial, and therefore should not be permitted prohibited under Fed. R. Evid. 403. For all of these reasons, the evidence should be excluded.

**STATEMENT OF RELEVANT FACTS**

**1.** The two employee review forms in question were prepared internally and CSI and never shared with Lycos. They relate to fiscal years 1997 and 2000 (July 1996-June 1997 and July 1999-June 2000, respectively). Copies of each are attached hereto as Exhibits A and B. The evaluations run for several pages each, covering topics from an account representatives written and verbal skills, to his personal appearance, interest in self-improvement, and a host of other categories. Each category has within it several points for the evaluator to consider; for example, under "[L]istening Skills," items to consider include "[l]istens to customers needs and concerns. Knows when to listen and when to talk," as well as "[s]hows perception and flexibility by adjusting ideas and suggestions to fit the customer's requirements as appropriate." *See* Exh. A at 1. These categories are not exclusive, and there are no guidelines stating that all points listed under a given category on the form must be applied to the subject of the evaluation.

**2.** One of many points in these multi-page evaluations concerns a category titled "Builds and Maintains Relationships through Professional and Social Skills." *See* Exh. A at 4; Exh. B at 6. Lycos focuses on one of the points raised for consideration: "[d]evelops an ongoing business and personal bond of camaraderie, trust, and dependency with decision maker." *Id.* Richard Guilander, Mr. Stenberg's supervisor who filled out the evaluations, made clear at his deposition that this "trust," as he evaluated it, was not of a fiduciary nature:

3

> Q. So it was your belief that Mr. Stenberg's trust -- customers trusted him; isn't that correct?
>
> A. I don't know if they needed to trust him. The customers needed to trust CSI. In terms of the services we provide, again, they trust us to pay their bills on time, they trust us when they return equipment that the asset's going to be cleaned and wiped. I don't know what the trust would be in a marketing rep that they would have to trust.

Deposition of Richard Guilander ("Guilander Dep."), dated Nov. 1, 2006 at 137:14-22 (relevant portion attached as Exh. C).

    3.    Regarding his evaluation, Mr. Guilander stated only that the "trust" of which he spoke related to general trust that a customer has in its lessor to "pay their bills on time" and to take care of equipment at the end of lease. The evaluations also do not specifically mention any particular client, such as Lycos. Furthermore, Mr. Guilander recalled that CSI stopped using these evaluations – which had been created by an outside company that had "no idea what the evaluation of a marketing rep was" – sometime "in the early 2000s . . . maybe before that." Guilander Dep. at 25:5-26:9 (Exh. C).

    4.    During fiscal years 1997 and 2000, the primary decision makers at Lycos were Ted Phillip and Tom Guilfoile, the Chief Financial Officer and VP of Finance, respectively. During this time, they together signed all of the equipments schedules between CSI and Lycos, and Mr. Phillip himself signed the Master Lease Agreement (which occurred in the middle of the first of the two evaluation periods). Both men were candid in their depositions in this matter that they did not rely on or recall any representations or half-truths from Mr. Stenberg:

> Q. Okay. You did not receive or rely on any representations by Mr. Stenberg, did you?
>
> A. Not that I know of.

Deposition of Edward Phillip ("Phillip Dep."), dated Nov. 6, 2006, at 220:23-221:1 (attached

hereto as <u>Exh. D</u>).  Mr. Guilfoile likewise never relied on anything Mr. Stenberg told him:

> Q.  What fraudulent or negligent misrepresentations, if any, did CSI make to you?
>
> > MR. DOWDEN:  Objection.
> >
> > MR. BEAN:  Objection.
>
> Q.  You can answer.
>
> A.  I can't recall specifics, no.
>
> Q.  Okay.  In connection with the same document, on page 18, here's a statement at the bottom of the page that, quote, "Mr. Stenberg failed to make the foregoing disclosures at or shortly before Lycos executed each rolled-up or rewritten equipment schedule.  The individuals at Lycos who relied on one or more of CSI's half-truths described in subparagraph D above to the detriment of Lycos included," and then the first name listed is you, Tom Guilfoile.  Do you see that?
>
> A.  I do.
>
> Q.  What half-truths of CSI, if any, did you rely on to the detriment of Lycos?
>
> > MR. DOWDEN:  Objection.
> > MR. BEAN:  Objection.
>
> Q.  You can answer.
>
> A.  I'm not familiar enough with the information to be able to recall.
>
> Q.  Okay.  So as you sit here today, you don't know of any, correct?
>
> A.  I don't recall.

Deposition of Thomas Guilfoile ("Guilfoile Dep."), dated Dec. 7, 2006 at 124:3-125:4 (attached hereto as <u>Exh. E</u>).  The affidavits submitted by both Mr. Guilfoile and Mr. Phillip during the summary judgment phase – and which therefore could be viewed as self-serving – still did not

5

make mention of any "trust or confidence" reposed in CSI by Lycos while either of them were Lycos' decision makers.  *See* Affidavits of Guilfoile and Phillip, attached hereto as Exhs. F and G, respectively).

**5.** It is not until Brian Lucy's affidavit in support of Lycos' summary judgment papers (in August 2007) that the record shows Mr. Lucy stating that he "trusted Mr. Stenberg" and therefore "did not investigate the veracity of his statements" in a March 2002 e-mail message that Lycos now contends contained fraudulent statements made by Mr. Stenberg.  *See* Second Affidavit of Brian Lucy ("Lucy Second Aff.") ¶ 7 (attached hereto as Exh. H).  This is a statement directly at odds with his deposition testimony only eight months earlier in which he clearly stated that he did not recall any conversations with Mr. Stenberg and certainly provided no testimony that he "trusted" Mr. Stenberg in any fiduciary manner:

> Q. The e-mail marked H says, it appears to be an e-mail that you wrote back to Mr. Stenberg on March 18, 2002 in which you said, "Thanks a bunch for doing this. Kevin is out this week. When he gets back, we will take a look. Brian." Is that correct?
>
> A. That's right.
>
> Q. Do you recall sending that e-mail back to Mr. Stenberg?
>
> A. No.
>
> Q. Did you have any conversations with Mr. Stenberg at any time about this issue of the variance or difference between what Lycos had been obligated to pay under its leases with CSI prior to schedules 93 and 94 being executed on one hand and what it became obligated to pay in total to CSI after 93 and 94 was signed?
>
> A. I don't recall.
>
> Q. You don't recall whether you had any such conversations with Mr. Stenberg; is that right?
>
> A. That's right.

6

Deposition of Brian Lucy ("Lucy Dep."), dated Jan. 10, 2007 at 53:10-54:9 (attached hereto as Exh. I). It is critical to note, however, that Mr. Lucy did not become Lycos' Chief Financial Officer – and therefore its "decision maker" with respect to the CSI leases – until February 2001 (Lucy Second Aff. ¶ 1), which was eight months *after* the latest of the performance evaluations done internally at CSI for Mr. Stenberg.

## ARGUMENT

Under Federal Rule of Evidence 402, irrelevant information must be excluded. Under Federal Rule of Evidence 403, even relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

As explained below, the one or two phrases Lycos wishes to lift, out of context, from the multi-page evaluation forms filled out with respect to Mr. Stenberg do not mean what Lycos wishes them to mean, as stated without dispute by the person who filled out the evaluation form. The evaluations do not mention Lycos, and there is no dispute that Mr. Stenberg had other leasing customers besides Lycos. There is no evidence concerning what the creator of the evaluation forms meant by the phrase "personal bond of camaraderie, trust and dependency with decision maker."

More importantly, these evaluations were made at a time when the two decision-makers at Lycos (Phillip and Guilfoile) have testified that they cannot recall conversations they had with Mr. Stenberg and, even in recent litigation affidavits, could not say that they "trusted" Mr. Stenberg to make business decisions for Lycos. Under all these circumstances, evidence as to these forms is irrelevant and unduly prejudicial, and should not be admitted.

I.  **THE EVALUATION FORM EVIDENCE SHOULD BE EXCLUDED BECAUSE IT IS IRRELEVANT TO THE QUESTION OF WHETHER A FIDUCIARY RELATIONSHIP BETWEEN CSI AND LYCOS EVER EXISTED.**

Because Lycos has no evidence that decision makers prior to February 2001 (when Mr. Lucy became the CFO) arguably reposed any "trust" in Mr. Stenberg, the evaluations which occurred well before then are simply irrelevant. It does not matter that an internal, multi-page evaluation form used at Lycos years before the relevant period (and discontinued after a brief period) mentioned the phrase "camaraderie, trust, and dependency with decision maker."

In fact, the form itself does not mention Lycos – as Mr. Stenberg had other customers – and Mr. Guilander has already explained what he meant when he filled out this portion of the form (and it was ***not*** that Mr. Stenberg was establishing fiduciary obligations toward Lycos). The statements made on the evaluation forms – though not shared with Lycos or any third party – are akin to the "puffery" or "seller's talk" which is not actionable in a misrepresentation context. *See Starad, Inc. v. Lawson Software, Inc.*, C.A. No. 04-5554, 2004 U.S. Dist. LEXIS 18739 (S.D.N.Y. Sept. 16, 2004) at *5-6 (defendant's offer of "partnership" and distinction of its services from mere leases "transparently constitute commercial puffery rather than legal characterization"); *Charter Township of Ypsilanti v. General Motors Corp.*, 506 N.W.2d 556, 559 (Mich. Ct. App. 1993) (puffing statements such as "[w]e're partners" and "[w]e look forward to growing together" not actionable).[2]

Furthermore, the timing of these evaluation forms – coming, as they did, before Mr. Lucy's promotion to Chief Financial Officer of Lycos (a "decision maker" position) – warrants

---

[2]  In this regard, statements that commercial parties have a "strategic alliance" or are "strategic partners" have repeatedly been held to be nonactionable "promotional language" or "puffery." *See Majer v. Sonex Research, Inc.*, 541 F. Supp. 2d 693, 707 (E.D. Pa. 2008); *The Winer Family Trust v. Queen*, C.A. No. 03-4318, 2004 U.S. Dist. LEXIS 19244 (E.D. Pa. Sept. 27, 2004) at *29 (defendant's characterization of corporate parties as `"strategic partners" is immaterial puffery that is inactionable under the securities laws"); *Millen Industries, Inc. v. Flexo-Accessories Co., Inc.*, 5 F.Supp.2d 72, 74 (D. Mass. 1998) ("A statement which amounts to 'nothing more than a kind of self-directed corporate puffery' is not actionable.").

their exclusion on relevance grounds. As the Seventh Circuit has stated, timing of the performance evaluations is important to determine their admissibility. *Fortier v. Ameritech*, 161 F.3d 1106, 1113 (7th Cir. 1998) (previous employment history is of "limited utility"); *see also Collins v. Kibort*, 143 F.3d 331 (7th Cir. 1998) (noting timing of evaluations and ruling that subsequent performance evaluations not relevant to determination of whether plaintiff was terminated due to race); *Irwin v. Marquette Medical Sys., Inc.*, 107 F. Supp. 2d 974, 984 (S.D. Ohio 2000) (agreeing that employee evaluations are "of limited utility" and excluding evaluations which were not probative of plaintiff's performance at the relevant time period). Because these evaluation forms pre-date Lycos' evidence of any purported reliance on Mr. Stenberg, they are irrelevant to the inquiry whether Mr. Lucy reposed sufficient "trust and confidence" in Mr. Stenberg (and Mr. Stenberg accepted that) to turn a commercial relationship into a fiduciary one.

Even if the statements – despite being taken out of context – were deemed relevant, they must still be balanced against their prejudicial value. Fed R. Evid. 403 (Court empowered to exclude any evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."); *see also Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348, 355 (1st Cir. 2005)(Rule 403 provides courts with "ample discretion" to exclude unfairly prejudicial evidence).

"Unfair prejudice" within the meaning of Rule 403 means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. It would be improper for Lycos to be allowed to bolster its fiduciary duty claim by offering evidence that, without dispute, does not mean what Lycos

9

claims it to mean.  *See* Guilander Dep. 137:14-22 (attached as Exh. C).  For this reason, the evaluations also may tend to confuse jurors – also prohibited by Fed. R. Evid. 403 – in that they might be mislead to believe that these statements, taken out of context, refer to Lycos (they do not necessarily) or that they constitute a policy of CSI (they do not).

II. **THE EVALUATION FORM EVIDENCE, EVEN IF RELEVANT, SHOULD BE EXCLUDED BECAUSE IT WOULD BE UNDULY CONFUSING AND MISLEADING ON THE FIDUCIARY DUTY STANDARD**

In its summary judgment decision, the Court held that the Lycos-CSI relationship was simply one at arms-length, between lessor and lessee, unless a fiduciary duty could be proved by Lycos:

> However, the ***case law does not support extending this principle to require disclosure of all facts known by one party to an arms-length business transaction which the other party might be interested in knowing***.  Under the MLA [Master Lease Agreement] and subsequent equipment schedules Lycos paid rent in exchange for the use of equipment.  When it signed the equipment schedules Lycos knew how much it would pay to rent the equipment.  Although Lycos attempts to analogize the financial arrangement to a loan and the equipment schedules to "refinancings" of the loan, this analogy is inapt.  ***The relationship between CSI and Lycos – as set forth in the MLA and equipment schedules – was simply one of lessor-lessee.***  The agreements are not purchase agreements and neither the MLA nor the equipment schedules provide that the new rent price will be based on the original equipment cost or the original rent.  ***AS such, the only material information required to be disclosed was the total amount of rent charged for use of the equipment.  CSI was not required to disclose how it calculated the rent.***
>
> Although CSI did not, as a general matter, have a duty to disclose the financial implications of the equipment schedules to Lycos, ***a duty to disclose such information could be found if Lycos establishes that it trusted CSI and its agent Stenberg and CSI accepted this trust.  Though arm's length business transactions generally do not give rise to fiduciary relationships, "such a relationship can develop where one party reposes its confidence in another."*** *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995) (citation omitted).

10

SJ Order at 10-11 (emphasis added).  Therefore, to recover at trial on its misrepresentation claims, Lycos must prove the existence of, and acceptance of, a fiduciary duty using the *Industrial General* factors (though it has never articulated exactly when the fiduciary relationship actually arose), which are:  the defendant's knowledge of the plaintiff's reliance on defendant; the relation of the parties; the plaintiff's business capacity contrasted with that of the defendant, and the "readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant has specialized knowledge." *Indus. General*, 44 F.3d at 44.

The First Circuit has held that the factors relevant to a finding of fiduciary duty will be found where the party owed the duty "is often in a position of great disparity or inequality relative to the other party" and where the "relationship has been abused to the benefit of the more powerful party, particularly where unjust enrichment would result." *Id.* (citations omitted).  It is hard to see where Lycos – a large, public company with in-house and outside lawyers and accountants – could be said to be at a disadvantage with CSI, or where CSI could be said to have been unjustly enriched when Lycos enjoyed years of the use of CSI's computer equipment.

This is indeed a high burden for any plaintiff to meet, as the First Circuit noted the presumption that "business transactions conducted at arm's length generally do not give rise to fiduciary relationships" and that "courts have repeatedly cautioned that `the plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." *Indus. General*, 44 F.3d at 44.  In fact, the First Circuit reversed the trial court in finding that no fiduciary relationship existed.  *Industrial General*, 44 F.3d at 44-45.  Other decisions discuss the need to find a "ceding of control" of the weaker party to the stronger one, *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 216 (1st Cir. 1999), and state that a "`voice in the management of the affairs of another' may establish a fiduciary

relationship," but stress that "'disparity in bargaining power alone will not suffice to create a fiduciary obligation flowing to the party with superior bargaining strength.'" *KBQ, Inc. v. E.I. Dupont De Nemours and Co.*, 6 F. Supp. 2d 94, 100 (D. Mass. 1998) (cited in *McAdams v. Odom*, C.A. No. 99-30284, 2000 U.S. Dist. LEXIS 22068 (D. Mass. Dec. 13, 2000)).

Clearly, before a court in this Circuit should allow imposition of a fiduciary relationship on an otherwise arm's length business transaction, there must be more evidence than one line taken from a multi-page employment evaluation, where the author of that evaluation has testified – without contrary evidence – that the discussion of "camaraderie, trust and dependency with decision maker" means little more than a salesman's ability to ingratiate himself with a customer, which is what ever salesperson does and is similar to "puffery" and "seller's talk" in promotional materials.  Even assuming relevance of this evidence – and ascribing to it the meaning Lycos wishes – the probative value, if any, is greatly outweighed by the substantial and unfair prejudice to CSI in the event the jury misinterprets it to mean that CSI is setting for itself a fiduciary obligation (which it clearly is not).

## **CONCLUSION**

For the foregoing reasons, CSI Leasing, Inc. respectfully requests that this Court allow its Motion in Limine to Exclude Evidence Concerning Employee Evaluations of CSI's Account Representative and provide CSI such other and further relief as the Court deems just.

Respectfully submitted,

CSI LEASING f/k/a COMPUTER SALES INTERNATIONAL, INC.

By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

Dated:  February 27, 2009

## CERTIFICATE OF SERVICE

I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing to be served on counsel for the other parties in this action electronically by CM/ECF notification, by e-mail and by first class mail, postage prepaid, this 27th day of February, 2009.

/s/ Edward W. Little, Jr._____
Edward W. Little, Jr.

13

ME1 8197781v.1