**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) <br> ) <br> ) |
| Plaintiff and Defendant-in-Counterclaim, | ) <br> ) <br> ) |
| v. | ) <br> ) |
| LYCOS, INC., | ) <br> ) <br> ) |
| Defendant and Plaintiff-in-Counterclaim, | ) <br> ) <br> ) |
| and | ) <br> ) |
| BANK OF AMERICA f/k/a FLEET BANK, | ) <br> ) <br> ) |
| Trustee Process Defendant | ) |

C.A. No. 05-10017-RWZ

**MOTION *IN LIMINE* NO. 6:**
**TO PRECLUDE CSI FROM OFFERING EXPERT OPINIONS CONCERNING (1) LYCOS' INTENT IN AND REASONS FOR ENTERING INTO THE EQUIPMENT SCHEDULES; (2) LYCOS' EXECUTIVES' UNDERSTANDING OF EQUIPMENT LEASING BASED SIMPLY ON THEIR EDUCATION AND EXPERIENCE; (3) WHAT LYCOS' INTERNAL BUSINESS POLICIES AND STRATEGIES WERE; AND (4) THE MERITS OF LYCOS' LEGAL CLAIMS**

During expert discovery, Plaintiff and Defendant-in-Counterclaim Computer Sales International, Inc. ("CSI") repeatedly attempted to use expert opinions as substitutes for factual evidence and as vehicles to proffer argument and opinion on issues that are not the proper subject matter of expert testimony. CSI's primary experts, all of whom are long-time industry insiders, speculate, without regard to whether evidence exists in the record to support their opinions or the boundaries of their own expertise, on such issues as: (1) Lycos' intent in and reasons for entering into the equipment schedules, particularly the refinancings; (2) Lycos and its executives'

sophistication, knowledge and understanding of equipment leasing based solely on their education and experience; (3) what Lycos' internal business policies and strategies were; and (4) the merits of Lycos' legal claims. Among other glaring deficiencies, expert testimony on these subjects exceeds the bounds of what is allowed under the Federal Rules of Evidence because it invades the province of the jury.

By way of example, CSI's insider-experts[1] render "expert" opinions on Lycos' desires and intent in entering into the lease transactions as follows:

- "Lycos wanted to manage earnings and its balance sheet in short term ways." Fleming Report, Ex. A, at 13.

- "[Lycos] clearly wanted to keep liabilities and assets off of their balance sheet and wanted to minimize their cash flow." *Id.* at 22.

- "Lycos determined that the cost of rolling up and extending many leases provided more attractive value than acquiring new equipment." Supplemental Report of Michael Fleming (Jan. 11, 2008) at 4.[2]

- "Lycos . . . appeared to be concerned about the impact on the income statement due to lease payments. The record also shows that Lycos was interested in 'rewriting' or extending the leases to reduce lease payments. This was motivated by a desire 'to achieve profitability.'" Schallheim Report, Ex. B, at 7.

CSI's experts also opine on the Lycos executives' knowledge of equipment leasing based solely on their education and experience, as follows:

---

[1] Mr. Fleming was the President of the industry's chief trade organization, the Equipment Leasing and Finance Association (the "ELFA") for 27 years, during which time he lobbied extensively before Congress on behalf of the industry. True and accurate copies of curriculum vitae and/or "personal background" materials for Messrs Fleming, Schallheim, and Bosco, as well as the relevant portions of their respective initial expert reports, are attached hereto as **Exhibits A** through **C**. Mr. Schallheim, whom Mr. Fleming contacted about serving as an expert for CSI in this case, testified that he has been working for "years" with the ELFA and that he had known Mr. Fleming through the ELFA since the early 1990s because they sit together on one of the ELFA's boards together. Schallheim Tr. at 31:1-33:14. A true and accurate copy of the relevant portions of Mr. Schallheim's transcript is attached hereto as **Exhibit D**. According to his curriculum vitae, Mr. Schallheim sat on the Equipment Leasing and Finance Foundation's board of directors for over ten years. Mr. Bosco has served as the Chairman of the ELFA's Accounting Committee for 9 years and has been an ELFA member for over twenty. Ex. C at 7-10.

[2] True and accurate copies of the relevant portions of Mr. Fleming's supplemental report are attached hereto as **Exhibit E**.

- "Based on this education and experience, decision makers at Lycos would easily understand all of the provisions and ramifications of leases with CSI." Fleming Report, Ex. A, at 16.

- "Lycos personnel understood leasing, they understood leasing's role and advantages for a rapidly growing technology company . . . ." *Id.* at 26.

In addition, CSI's experts rendered so-called expert opinions on what Lycos' internal policies and strategies were:

- "Lycos wanted to manage earnings and its balance sheet in short term ways. Lycos wanted low current cash outflow." *Id.* at 13.

- ". . . . Lycos' priority was to quickly build an operating company that could be offered to the public . . . . During this period of time, Lycos did not give the same level of attention to administration and operations as was given to selling services and preparing a public offering of the sale of the company." *Id*. at 26-27.

CSI's experts even rendered opinions on the merits of Lycos' claims in this case:

- "In my opinion, the claims of Lycos have no merit." Fleming Report, Ex. A, at 8.

- "This claim has no merit and is another example of a failure to understand or use basic principles of leasing or finance." *Id.* at 12.

- Lycos' claim of fraud "is not supported by any specifics." *Id.* at 11.

- "[CSI] neither defrauded nor overcharged Lycos." *Id.* at 11.

- "I have seen no description by Lycos of an actual practice that is fraudulent or even outside the accepted practice in the Lycos claims." *Id.*

- "In my opinion, CSI did not engage in a pattern of misconduct of any kind." *Id.* at 12.

- "It is my opinion that CSI did not engage in a pattern and practice of misconduct, and did not take advantage of Lycos to obtain millions of dollars in undeserved profits . . . ." Schallheim Report, Ex. B, at 5.

- "In my opinion Lycos had to know the original cost of the equipment." Bosco Report, Ex. C, at 3.

Moreover, in a remarkable congruence of language (a congruence that appears in several places in CSI's experts' reports) that creates serious questions about the authorship and

- 3 -

independence of their reports, Messrs. Fleming and Schallheim wrote about the adequacy of CSI's disclosures:

Mr. Fleming's report states:

- "CSI made all the disclosures to Lycos that were required and necessary for Lycos to determine whether it was in Lycos' economic interest (a) to enter into initial schedules for the lease of new equipment from CSI, (b) to restructure schedules to extend the terms of its leases of certain equipment from CSI, and (c) to ultimately purchase equipment that it had previously leased from CSI in August of 2003." Fleming Report, Ex. A, at 16.

Mr. Schallheim's report states:

- "CSI made all the disclosures to Lycos that were required and necessary for Lycos to determine whether it was in Lycos' economic interest (a) to enter into initial schedules for the lease of new equipment from CSI, (b) to re-write schedules to extend the terms of its leases of certain equipment from CSI, and (c) to ultimately purchase equipment that it had previously leased from CSI in August of 2003." Schallheim Report, Ex. B, at 4-5.

While Lycos understands the reasons CSI has sought to use expert opinion as a substitute for actual evidence in presenting its case (because the record is devoid of such evidence), the Rules of Evidence simply do not permit CSI's experts to opine on the above matters and such testimony should therefore be excluded.

I. **ARGUMENT**

    A. **Lycos' Alleged Intent in Entering into the Equipment Schedules, What Lycos' Internal Policies and Strategies Were, and their Executives' Knowledge of Equipment Leasing Based on their Education and Experience Are Not Proper Subjects For Expert Opinion.**

Rule 702 of the Federal Rules of Evidence allows experts to offer opinions only when their "scientific, technical, or other specialized knowledge will assist the trier of fact." Fed. R. Evid. 702. Reasoning that expert opinion as to a parties' intent does not assist the trier of fact, this Court recently held that the "parties' 'intent' is not proper subject of expert testimony." *See SEC v. Goldsworthy*, 2008 WL 2943398, at *4 (D. Mass. Jan. 3, 2008) (citing *CMI-Trading, Inc.*

- 4 -

*v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996)).[3] A jury is perfectly capable of examining the factual evidence to assess what Lycos' motives, if any, were in entering into the equipment schedules or whether, for example, Lycos had a policy to lease equipment. Similarly, what Lycos' executives knew and did not know about equipment leasing based on their education and experience is a matter for the jury alone. CSI should not be allowed to usurp the role of the jury by offering expert opinions on these subjects. *See Goldsworthy*, 2008 WL 2943398, at *4-5.

Such testimony also falls far short of the reliability standard announced by the United States Supreme Court in *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1983) (expert testimony must be reliable to be admissible); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (court extended *Daubert* and held that the "gatekeeping" function of the trial judge applies not only to testimony based on scientific knowledge, but rather to all expert testimony ). In determining reliability, the Court must assess, among other things, whether (1) the reasoning or methodology underlying the witness's testimony is valid, and (2) the reasoning or methodology can properly be applied to the evidence or fact in issue. *Daubert*, 509 U.S. at 592-93. Here, CSI's experts provide *no* "methodology" to explain how they determined Lycos' intent or reasons for entering into the equipment schedules let alone a reliable one, or how they knew that Lycos executives were knowledgeable about equipment leasing. Instead, CSI has improperly used these experts simply to make speculative arguments its lawyers want to be able to make at closing. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (expert witnesses are not permitted to simply make the lawyer's arguments; proffered testimony must bring more to finder of fact than lawyers can offer in closing arguments).

---

[3] A true and accurate copy of the *Goldsworthy* decision is attached hereto as **Exhibit F**.

For the foregoing reasons, opinions on Lycos' intent in and reasons for entering into the equipment schedules should be excluded.

**B.      Expert Testimony on the Merits of Lycos' Claims is Inadmissible.**

CSI's insider-experts have improperly, and without any disclosed analysis, opined on the merits of Lycos' claims by stating summarily that such claims have no merit and that CSI's conduct was not fraudulent.  Again, CSI seeks to invade the province of the jury, which is vested with the task of weighing and assessing the evidence and deciding liability in this case.  The Advisory Committee Notes to Fed. R. Evid. 704(a) notes that Rule 702 "afford[s] ample assurances against the admission of opinions which would merely tell the jury what result to reach . . .." *Goldsworthy*, 2008 WL 2943398, at*4 ("expert evidence should not be permitted to usurp . . . the role of the jury in applying the law to the facts before it") (quotation omitted). Indeed, as a judge of this Court noted just last month, "a 'highly opinionated statement' amounting to a witness' general belief as to how the case should be decided is simply not helpful to the jury and is unduly prejudicial." *Tuli v. Brigham & Women's Hosp., Inc.*, 2009 WL 27303, at *2 (D. Mass. Jan. 6, 2009) (Gertner, J.) (quoting 1 Henry Brandis et al., *McCormick on Evidence* § 12 (6th ed. 2006));[4] *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (expert testimony that "undertakes to tell the jury what decision to reach . . . does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's").

Yet, that is precisely what CSI's experts have done in their reports and testimony in this case by stating what Lycos supposedly knew, that CSI's disclosures to Lycos were sufficient, that Lycos' claims have no merit, and that CSI did not commit fraud.  These opinions amount to nothing more than "a general belief as to how the case should be decided." *Id.*  Such "highly

---

[4] A true and accurate copy of *Tuli* decision is attached hereto as **Exhibit G**.

- 6 -

BST99 1613603-2.057077.0012

opinionated statement[s]" are not helpful to the jury and should not be allowed at trial. *Id.* While CSI's experts may testify about industry practices, they cannot instruct the jury on the merits of the case and how it should interpret the facts. *See id.* ("expert witness could testify about the customs and practices in the securities industry, but she could not testify to whether a party complied with legal duties under securities laws") (citing *Berkeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006)).

Such testimony also fails under a *Daubert* analysis. As a threshold matter, not one of these witnesses is qualified to testify on the merits of Lycos' claims as none has any specialized knowledge or demonstrated prior experience in the area of fraud, as that term is construed under the law. *Daubert*, 509 U.S. at 597 ; *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78-79 (1st Cir. 2006) (trial court reasonably limited expert's opinion on authenticity of antique furniture, which was beyond his expertise); *see Ramierez v. Debs-Elias*, 407 F.3d 444, 448-49 (1st Cir. 2005) (district court did not abuse discretion by striking defense's expert testimony concerning causation theory). Instead, these witnesses describe themselves as being "scholar[s] in equipment leasing,"[5] experts in leasing industry practices,[6] or, in the case of Mr. Bosco, an accounting expert.[7] Their respective resumes suggest that they specialize (only) in the foregoing areas and there do not appear to be cases in which any of them have testified on issues or claims such as fraud.[8] Moreover, there is nothing in their reports or testimony to suggest that that these experts are even aware of the legal elements of Lycos' claims, or whether they applied any

---

[5] Schallheim Report, Ex. B, at 1.

[6] Fleming Report, Ex. A, at 2-3.

[7] Bosco Report, Ex. C, at 1.

[8] *See generally* Exs. A through C.

analysis or appropriate methodology to reach the conclusions that they did.  As such, these opinions should be excluded.

## II.     CONCLUSION

WHEREFORE, Lycos respectfully requests that the Court enter an Order:

1.     Prohibiting CSI from offering expert testimony concerning (1) Lycos' intent in and reasons for entering into the equipment schedules, including the refinancings; (2) Lycos and its executives' sophistication, knowledge and understanding of equipment leasing based solely on their education and experience; (3) the merits of Lycos' legal claims; and

2.     granting Lycos such other relief as may be appropriate and just.

                                              Respectfully submitted,

                                              LYCOS, INC.

                                              By its attorneys,

Dated: February 27, 2009                        /s/ Thomas O. Bean
                                              Thomas O. Bean (BBO# 548072)
                                              Peter M. Acton, Jr. (BBO# 654641)
                                              James M. Fraser (BBO# 664605)
                                              McDERMOTT WILL & EMERY LLP
                                              28 State Street
                                              Boston MA 02109
                                              (617) 535-4000
                                              tbean@mwe.com
                                              pacton@mwe.com
                                              jfraser@mwe.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2009 the foregoing Motion was filed through the ECF system and was sent electronically to Counsel for CSI, Robert J. Kaler, McCarter & English, LLP, 265 Franklin Street, Boston, MA 02110.

/s/ Peter M. Acton, Jr.
Peter M. Acton, Jr.

## LOCAL RULE 7.1 CERTIFICATION

The undersigned counsel for Defendant and Plaintiff-in-Counterclaim, Lycos, Inc., certifies that he has conferred with Edward Little, counsel for CSI, and attempted in good faith to resolve or narrow the issues raised in the foregoing Motion. The undersigned has been unable to resolve or narrow those issues.

Dated: February 27, 2009     /s/ Peter M. Acton, Jr.
Peter M. Acton, Jr.

BST99 1613603-2.057077.0012