# UNITED STATES DISTRICT COURT
## For the District of Massachusetts

| | |
|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL INC., <br> Plaintiff, <br> v. <br><br> LYCOS, INC., <br> Defendant, <br><br> BANK OF AMERICA f/k/a FLEET BANK, <br><br> Trustee Process Defendant. | C.A. No. 05-10017- RWZ |

**PLAINTIFF CSI LEASING, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF SUPPLEMENTAL MOTION *IN LIMINE* TO PRECLUDE
DEFENDANT LYCOS, INC. FROM ARGUING OR OFFERING EVIDENCE THAT
THE PROVISIONS OF THE PARTIES' MASTER LEASE AGREEMENT ARE
<u>PREDATORY, UNFAIR OR DECEPTIVE</u>**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
David Himelfarb, BBO 649596
dhimelfarb@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a
Computer Sales International, Inc.*

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ........................................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................................5

I.    LYCOS'S COUNTERCLAIM CHALLENGES THE EQUIPMENT
      SCHEDULES AND THE SALES AGREEMENT, NOT THE MLA ...............................5

II.   LYCOS MAKES CLEAR IN ITS INTERROGATORY RESPONSES THAT IT
      IS NOT CHALLENGING THE MLA ..............................................................................7

III.  ANY CLAIMS NOT ARTICULATED BY LYCOS AT THE MAY 28, 2008
      HEARING HAVE BEEN DISMISSED BY THE COURT *WITH PREJUDICE* .............10

IV.   LYCOS HAS CONTINUALLY CHARACTERIZED ITS CH. 93A CLAIM AS
      AN ATTACK ON THE EQUIPMENT SCHEDULES AND THE SALES
      AGREEMENT, NOT ON THE SPECIFIC TERMS OF THE MLA ...............................12

ARGUMENT ................................................................................................................................14

I.    BECAUSE LYCOS DID NOT ARTICULATE ANY CLAIMS ARISING
      UNDER THE MLA DURING THE MAY 28, 2008 HEARING, IT MAY NOT
      DO SO NOW ...................................................................................................................14

II.   LYCOS IS JUDICIALLY ESTOPPED FROM ARGUING THAT ITS
      CHAPTER 93A CLAIM IS BASED ON THE MLA WHEN IT HAS
      CONSISTENTLY TAKEN THE POSITION THROUGHOUT THIS
      LITIGATION THAT ITS 93A CLAIMS ARE SIMPLY DERIVATIVE OF ITS
      MISREPRESENTATION AND FRAUD IN THE INDUCEMENT CLAIMS ...............15

III.  LYCOS DID NOT CHALLENGE THE MLA IN ITS COUNTERCLAIM OR
      INTERROGATORY RESPONSES AND THUS SHOULD NOT BE
      PERMITTED TO DO SO NOW ....................................................................................17

IV.   EVIDENCE CONCERNING THE ALLEGEDLY "PREDATORY CLAUSES"
      OF THE MLA SHOULD BE EXCLUDED ON RELEVANCE AND UNFAIR
      PREJUDICE GROUNDS ................................................................................................18

V.    IF LYCOS WERE ALLOWED TO CHALLENGE THE SPECIFIC
      PROVISIONS OF THE MLA AS PART OF ITS CH. 93A CLAIM, THIS
      TESTIMONY SHOULD NOT BE PRESENTED TO THE JURY ...............................20

CONCLUSION ............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004) .................. 15, 16

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,  971 F.2d 272 (9th Cir. 1992) ............................................................................................................... 19

*Central Massachusetts Television, Inc. v. Amplicon, Inc.*, 930 F. Supp. 16 (D. Mass. 1996) ................................................................................................................ 19

*Chamberlain & Burnham v. Cohn*, 261 Mass. 322 (1927) ............................................................ 4

*Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp.*, 282 Mass. 367 (1933) ............................................................................................................................... 4

*Galarneau v. Merrill Lynch, Pierce, Fenner & Smith*, 504 F.3d 189 (1st Cir. 2007) .................. 18

*Hancock Bank and Trust Co. v. Shell Oil Co.*, 309 N.E.2d 482 (Mass. App. Ct. 1974) ............................................................................................................................... 4

*Hiller v. Submarine Signal Co.*, 325 Mass. 546 (1950) ................................................................ 4

*InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003) ................................................................ 15

*J.F. White Contracting Co. v. Massachusetts Bay Transp. Auth.*, 40 Mass. App. Ct. 937 (1996) .......................................................................................................... 4

*Leaf Financial Corp. v. Carroll*, 2009 WL 112567 (D. Mass. Jan. 16, 2009) .............................. 4

*Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49 (1st Cir. 2001) ........................................ 17

*Macaulay v. Anas*, 321 F.3d 45 (1st Cir. 2003) .......................................................................... 17

*Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208 (1st Cir. 1987) ........................... 16

*Professional Services Group, Inc. v. Town of Rockland*, 515 F. Supp. 2d 179 (D. Mass. 2007) ......................................................................................................... 20

*Torres-Rios v. LPS Laboratories, Inc.*, 152 F.3d 11 (1st Cir. 1998) ........................................... 17

## STATUTES

M.G.L. c. 249, § 71 ........................................................................................................................ 7

M.G.L. c. 271, § 49 ........................................................................................................................ 7

M.G.L. c. 93A ..................................................................................................................... passim

**RULES**

Fed. R. Civ. P 26 .................................................................................................................... 10

Fed. R. Civ. P. 33 ..................................................................................................................... 7

Fed. R. Civ. P. 37 ............................................................................................................... 17, 18

Fed. R. Evid. 401 ..................................................................................................................... 18

Fed. R. Evid. 403 ......................................................................................................... 3, 18, 19, 20

Local Rule 26.5 .......................................................................................................................... 9

**REGULATIONS**

940 C.M.R. 3.05 ....................................................................................................................... 13

940 C.M.R. 3.16 .................................................................................................................... 7, 13

Plaintiff CSI Leasing, Inc., f/k/a Computer Sales International, Inc. ("CSI") respectfully submits this Memorandum of Law in Support of its Supplemental Motion *in Limine* to Preclude Defendant Lycos, Inc. From Arguing or Offering Evidence That the Provisions of the Parties' Master Lease Agreement Are Predatory, Unfair or Deceptive.

## <u>SUMMARY OF ARGUMENT</u>

Evidence or argument by defendant Lycos, Inc. ("Lycos") that the terms of the Master Lease Agreement (the "MLA") are predatory, unfair or deceptive should be excluded on the following grounds:

**1.** Lycos never challenged the propriety of the MLA in its Counterclaim or in its responses to CSI's contention interrogatories asking it to identify the basis for its claims, and any such theory was expressly dismissed *with prejudice* as a result of the Court's ruling, at the summary judgment hearing of May 23, 2008, *see* May 23, 2008 Hearing Transcript ("May 23 Tr.") (filed at Docket No. 205) (excerpts of which are attached hereto as Exhibit A), that any theories not identified by Lycos at that time (and this one was not identified) were "dismissed with prejudice." *Id.* at p. 4, lines 4, 23-25 ("THE COURT: … what is Lycos' theory? I assume that your representation as to what the theory is means that everything else is gone *with prejudice*.") (emphasis added). *Id.* at pp. 19-20 ("THE COURT: … we don't need to talk about anything else … because it is now gone *with prejudice*.") (emphasis added).

In fact, it was not until just this past week, when Lycos filed its *Motion In Limine No. 5: to Allow Lycos to Present the Expert Testimony of Professor James M. Johnson as Part of its Case-In-Chief at Trial* (the "Johnson Motion *in Limine*"), that Lycos revealed, for the first time, in a passing comment, that it will seek to challenge the MLA at trial as part of its M.G.L. c. 93A claim;

**2.**     Lycos's effort to challenge the specific provisions of the MLA as part of its Chapter 93A claim constitutes an improper attempt to inject claims into this case which Lycos expressly disavowed in arguing that the MLA's Missouri choice of law provision, which governs the interpretation and construction of the MLA, should not apply to its claims.  *See,* e.g.*,* Summary Judgment Transcript dated May 12, 2005 ("May 12 Tr."), at 37-40 (describing Lycos's Chapter 93A claim as being based on CSI's alleged misrepresentations and fraudulent inducement of the Sale Agreement).[1]

**3.**     As the Court may recall, CSI originally moved to dismiss Lycos's Ch. 93A claim on the ground that the MLA is governed by Missouri law and Missouri's Ch. 93A analogue only applies to consumer (rather than business-to-business) transactions.  Lycos responded that its claim was based on CSI's alleged misrepresentations and fraud, not on the express provisions of the MLA, and thus its Ch. 93 claim was not governed by the MLA's choice of law provision. The Court, in its December 6, 2005 Memorandum of Decision, accepted Lycos's argument.  In light of this record, Lycos could not, in any event, now base its Ch. 93A claim on the express terms of the MLA.

**4.**     Presenting such a theory to the jury would be inappropriate in any event as there is no legal basis for such a theory at common law other than unconscionability, and Lycos's unconscionability claim in this case was dismissed in the Court's December 6, 2005 Memorandum of Decision which found that Lycos cannot assert an unconscionability claim

---

[1]     During the hearing on CSI's Motion to Dismiss and Motion for Summary Judgment, Lycos explained to the Court:  "There are two components to our claim…  There's a claim for the roll-ups fraudulent misrepresentation, non-disclosure.  There's a claim in the purchase agreement for both non-disclosure and misrepresentation…."  Lycos says nothing about a claim arising under the MLA.  Later on during this hearing, when discussing its ch. 93A claim, Lycos explains, "We were induced not to investigate by virtue of the trusting relationship that we had with CSI … we are not required as a matter of law under 93A to prove reasonable reliance. Second, … we changed our position based on their failure to disclosure [*sic*] and the SJC said … when a party changes its position … that is actionable under Chapter 93A….  And the third basis for the 93A claim … is the Attorney General regulation …."  May 12 Tr. at 37-38.  Lycos also added to its ch. 93A claim during the hearing a "fraud in the inducement" component, which it argued put its claim outside the choice of law provisions of the MLA.  *See id.* at 40.  Not once did Lycos argue that its ch. 93A claim had anything to do with the allegedly strict provisions of the MLA.

against CSI as a matter of law because "[b]oth parties were business entities with considerable commercial experience," *id.* at 14.  As such, introducing arguments of this nature to the jury would inevitably create confusion and a serious risk of unfair prejudice to CSI.

5.     Because Lycos has repeatedly characterized this case as one based entirely on the alleged misrepresentations and omissions of CSI employee Paul Stenberg (who had no role in negotiating the MLA), and because the Court has held that CSI would have only had a duty to disclose if a relationship of trust and confidence was reposed and accepted *over time* (and thus logically could not have been in existence at the time the MLA was executed), *see* September 26, 2008 Memorandum of Decision and Order at 10-11, whether the MLA contains allegedly "unfair" or "predatory" provisions is not relevant to this case, and is unduly prejudicial to CSI.

6.     As to its M.G.L. c. 93A claim, Lycos has repeatedly asserted, as it did at the May 23, 2008 summary judgment hearing, that this claim is simply derivative of its misrepresentation and fraudulent inducement claims.  *See* May 23 Tr.  at p. 16 ("THE COURT:  VII is by virtue of the conduct -- the theory in counts I, II, and III.?  A:  Yes, Your Honor …").  It cannot fairly expand into new theories now; and

7.     Even if such claims were relevant to Lycos' Ch. 93A issue, it would not be appropriate for such claims to be tried to the jury in this case, as the Ch. 93A claim is not a jury issue, and evidence concerning alleged unfairness of the provisions of the MLA would inevitably confuse the jury as to the relevant issues concerning Lycos' fraud claims, and be unduly prejudicial to CSI on those claims.  *See* Fed. R. Evid. 403.

8.     Lycos's proposed new theory is that it entered into a computer equipment leasing contract with CSI which it now claims was extremely favorable to CSI.  The problem with this complaint, however, is that it does not amount to a legally cognizable claim.  Indeed, the case law is legion that a party is bound by its contractual obligations even if the bargain was not a

good one for it.  *See J.F. White Contracting Co. v. Massachusetts Bay Transp. Auth.*, 40 Mass. App. Ct. 937, 938 (1996) (enforcement of a contract "will not be denied because of hardship to one of the parties.") (internal quotation marks and citation omitted); *Hiller v. Submarine Signal Co.*, 325 Mass. 546, 550 (1950) (same).[2]  To circumvent this fact, Lycos has attempted to recast its "bad bargain" grievance into a misrepresentation and fraud in the inducement action based on certain statements Lycos claims CSI's employee, Paul Stenberg, either made or failed to make. But it has not challenged, in its pleading, the provisions of the MLA itself.

9.      In the Court's September 26, 2008, Memorandum and Order, Lycos's theory that CSI had a general duty to disclose under the law and based on its membership in the Equipment Leasing Association was rejected; instead, the Court found that CSI may have had an obligation to disclose the financial implications of certain rewrites and roll-ups of equipment schedules to Lycos, but only if CSI had become Lycos's fiduciary.  *See id.* at 10-11.  In light of this Order, Lycos's remaining claims in this case revolve exclusively around whether Paul Stenberg made certain alleged misrepresentations to Lycos or failed to disclose to Lycos the financial implications of the roll-ups and rewrites.

10.      In the Johnson Motion *in Limine*, however, Lycos has attempted to articulate a new theory of its case, that certain provisions of the MLA are "predatory clauses".  While the workings of the MLA, in the context of addressing Lycos' "failure to disclose" arguments, were the subject of the parties' expert reports and expert discovery, *Lycos never pled in its*

---

[2]      *See also Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp.*, 282 Mass. 367, 379 (1933) ("Agreements voluntarily made between such persons are to be held sacred and enforced by the courts, and are not to be lightly set aside on the ground of public policy or because as events have turned it may be unfortunate for one party."); *Leaf Financial Corp. v. Carroll*, 2009 WL 112567, *4 (D. Mass. Jan. 16, 2009) (same); *Hancock Bank and Trust Co. v. Shell Oil Co.*, 365 Mass. 629, 629 (1974) ("Once it appears that there was consideration to support a contract, and in the absence of statute … courts have traditionally declined to relieve a party from the terms of a contract merely because he made what he regards as a bad or uneven bargain"); *Chamberlain & Burnham v. Cohn*, 261 Mass. 322, 325 (1927) ("parties are bound by the terms of their own contract and cannot be relieved from a bad bargain because the agreement may be foolish and improvident.").

*Counterclaim or stated in its interrogatory responses* that it was challenging the provisions of the MLA in this lawsuit,[3] much less that its Ch. 93A claim was based on the MLA's allegedly "predatory" provisions. To the contrary, Lycos continually represented to CSI and to the Court that its Ch. 93A claim was simply derivative of its misrepresentation and fraud claims. *See*, *e.g.*, May 23 Tr. at p. 16 ("THE COURT: VII is by virtue of the conduct -- the theory in counts I, II, and III.? A: Yes, Your Honor …"). Lycos's attempt to inject a new claim into this case now, on the eve of trial, and after it expressly disavowed this claim, should be rejected.

## STATEMENT OF RELEVANT FACTS

In the Johnson Motion *in Limine*, Lycos states:

> "Lycos has claims remaining in this case under Chapter 93A, based on CSI's unfair business practices. The unfair manner in which CSI constructed the Master Lease (with, among other predatory clauses, a perfect return provision and an exorbitant stipulated loss penalty), by including provisions in those agreements that rendered Lycos essentially helpless from inception, is relevant to those claims."

*Id.* at 3 (emphasis added). In other words, Lycos seeks to argue that certain express provisions of the MLA are allegedly so onerous that they essentially constitute an unfair business practice.

When reviewing Lycos's Counterclaim, interrogatory responses, other pleadings, and representations to the Court, however, it is clear that this theory was never previously pursued by Lycos. In fact, during the course of this case, Lycos repeatedly stated, and both CSI and the Court understood, that Lycos's Ch. 93A claims were simply alternate theories of recovery for its misrepresentation and fraud in the inducement claims.

## I.  LYCOS'S COUNTERCLAIM CHALLENGES THE EQUIPMENT SCHEDULES AND THE SALES AGREEMENT, NOT THE MLA

In the Answer to CSI's First Amended Complaint and Counterclaim of Lycos, Inc. (the "Counterclaim") (a copy of which, without exhibits, is attached hereto as Exhibit B), Lycos

---

[3]     Lycos did challenge the Sales Agreement as being "unconscionable," but that claim was dismissed in the Court's December 6, 2005 Memorandum of Decision.

states, "[t]his counterclaim seeks to redress a pattern and practice of misconduct committed by [CSI] with respect to equipment leases it entered into with [Lycos].... CSI accomplished its ends using a method of *'rolling up' and 'rewriting' equipment leases in a fraudulent and deceptive manner*...." *Id.* at ¶¶ 1, 2 (emphasis added). Later, Lycos states that it is also challenging the Sales Agreement. *Id.*, ¶ 4. The Counterclaim further alleges that CSI made numerous misrepresentations, but does not identify any provisions of the MLA as part of its misrepresentation claim. *See id.*, ¶¶ 31-42.

As for the specific Counts in the Counterclaim, Lycos's Count I alleges "Fraudulent Misrepresentation *in the Inducement of Rolled-Up and Rewritten Equipment Schedules*." *Id.*, Count I (emphasis added). This Count alleges that CSI "fail[ed] to disclose facts basic and material to Lycos's decision to enter into the 'roll-ups' and 'rewrites' ...." *Id.*, ¶ 56. Count II, "Negligent Misrepresentation in the Inducement of Rolled-Up and Rewritten Equipment Schedules," espouses the same claim as Count I only under a negligence theory. *See Id.*, Count II. Count III alleges "Fraudulent Misrepresentation in the Inducement of the Sales Agreement," and Count IV alleges that the Sales Agreement violates Mass. Gen. L. Ch. 231, § 85J. *See* Counts III and IV. Count V alleges a violation of Mass. Gen. L. Ch. 93A, §§ 2 and 11, but makes clear this claim only relates to the Sales Agreement. *See id.*, ¶¶ 77-79.

Count VII, entitled, "Violation of G.L. c. 93A, §§ 2 and 11 in Entering into the Rewrites and Roll-Ups, and the Sales Agreement," also alleges a violation of Ch. 93A, but again fails to identify any provisions of the MLA that are being challenged as part of this claim. Rather, Count VII exclusively takes issue with the re-writes and roll-ups, CSI's alleged failure to disclose material information, and the Sales Agreement, never mentioning the MLA. As for the remaining Counts in the Counterclaim, Count XII (money had and received), Count XIII (unjust enrichment), Count XIV (declaratory judgment as to whether Lycos owes any money to CSI),

and XV (declaratory judgment as to whether Lycos can retain the equipment), all fail to make any reference to, much less any allegations arising under, the MLA.[4]  *See* Counterclaim, Counts XII-XV.

## II.   LYCOS MAKES CLEAR IN ITS INTERROGATORY RESPONSES THAT IT IS NOT CHALLENGING THE MLA

Seeking further guidance concerning exactly what Lycos is alleging in its case, CSI served contention (*i.e.*, "state the basis for") interrogatories on Lycos pursuant to Fed. R. Civ. P. 33, including the following interrogatory:  "State the basis for, including all evidence supporting, your claims that CSI has violated the Massachusetts Unfair Trade Practices Statute, M.G.L. c. 93A, Sections 2 and 11 -- explaining in your answer, *inter alia*, exactly what unfair or deceptive acts or practices were committed by CSI, who at CSI committed them and when, and what specific harm they caused Lycos."  *See* Lycos's Objections and Responses to CSI's First Set of Interrogatories, Interrogatory No. 4 (attached hereto as Exhibit C).  Lycos responded as follows:

> Subject to and without waiving its General Objections, Lycos refers to its answers to interrogatories 1 through 3.  Further answering, Lycos states that M.G.L. c. 231, § 85J and M.G.L. c. 249, § 71 are statutes designed to protect consumers and the public welfare.  As such, CSI's violations of c. 271, § 49, in connection with the Rewritten and Rolled-Up Equipment Schedules, and its violation of c. 231, § 85J, in connection with the Sales Agreement, are violations of 940 C.M.R. 3.16(3), and thus *per se* violations of M.G.L. c. 93A, §§ 2 and 11.

*Id.*  In turn, Lycos's Interrogatory Responses for Interrogatories 1 (relating to damages), 2 (relating to its misrepresentation claims) and 3 (relating to its unjust enrichment claim) focus entirely on the rewrites and roll-ups of equipment schedules and the Sales Agreement, and make no reference to any provisions of the MLA.  *See id.*

For instance, in its response to Interrogatory No. 2, Lycos makes clear that its misrepresentation claims relate solely to alleged representations and omissions of Paul Stenberg.

---

[4]      Count VI was dismissed in the Court's September 26, 2008 Memorandum of Decision and Order. *Id.* at 13.  Counts VIII-XI were dismissed pursuant to an endorsed Order of the Court dated August 29, 2007, in response to CSI's Motion to Dismiss.

*See id.* at 9 ("CSI, through Mr. Stenberg, made fraudulent and negligent misrepresentations in its dealings with several Lycos employees and/or representatives of Lycos ….").   A claim for misrepresentation, however, is obviously very different from a claim that the *prima facie* provisions of the MLA are somehow unfair and/or deceptive.   While Lycos identified a number of "schemes" in its interrogatory responses that it believes CSI allegedly engaged in, it never ties any of these "schemes" to any provisions of the MLA.

For example, in discussing the items it alleges Mr. Stenberg failed to disclose, Lycos includes the following: "It maintained a well-orchestrated and targeted *internal* scheme to manipulate the leasing process and cause Lycos to rewrite leases repeatedly, even though such rewrites caused damages to Lycos."   Int. Resp. at 2 at p. 15 (emphasis added).   In explaining the contours of this alleged "scheme," however, Lycos *never mentions the MLA*, instead focusing on the fact that CSI rewarded Mr. Stenberg each time he rewrote a lease.   *See id.* ("Specifically, CSI maintained Sales Commission Plans ….   These plans were designed to provide incentives to account executives such as Mr. Stenberg to cause CSI's customers to rewrite by not only making rewrites commissionable events, but also by rewarding account executives during certain years with greatly enhance commission percentages on rewrites of outdated personal computers.").   Thus, it is clear that this "scheme" is limited to Lycos's claim that CSI rewarded its employees for rewriting and rolling up equipment schedules.

Next, Lycos identifies "a scheme to cause Lycos to trust and depend on Mr. Stenberg for his expertise in leasing, and induced Lycos not to investigate Mr. Stenberg's intentional misrepresentations and 'half-truths' described herein."   *Id.* at p. 16.   Again, the description of this alleged scheme makes absolutely no reference to the MLA or any portion thereof, focusing instead entirely on the acts of Mr. Stenberg.

ME1 8209506v.3

Lastly, Lycos alleges that CSI failed to disclose, "[that] it had perpetrated a scheme to put Lycos in the position of having to either rewrite equipment lease schedules indefinitely or buy-out the leased equipment at a price substantially in excess of the then fair market value of the equipment." *Id.* at p. 17.  Lycos does not contend, however, that this alleged scheme arose at the time the MLA was signed or was based on any provision of the MLA; rather, it alleges that:

> CSI implemented this scheme, in part, ***by inflating the Base Value***, as discussed above, ***and establishing Stipulated Loss Value Percentages which, if paid, would enable CSI to recover an exorbitant amount***, well in excess of not only the then reasonable value of the equipment, but any industry norm or reasonable profit as well.

*Id.* at 17 (emphasis added).  Importantly, because the Base Value and the Stipulated Loss value was negotiated at the time of executing each equipment schedule, and not at the time the MLA was signed, this allegation is not tantamount to an attack on the original provisions of the MLA. On the next page of its response, Lycos repeats that the alleged scheme referred to herein is, "CSI's scheme of establishing unreasonably high base values and stipulated loss value percentages …," *id.* at 18, again, two things which were not done in the MLA.

Lycos then states in its responses, "Mr. Stenberg failed to make the foregoing disclosures ***at or shortly before Lycos executed each Rolled-Up or Rewritten Equipment Schedule***." *Id.* (emphasis added).  Because Mr. Stenberg had no role in negotiating the MLA, and because the MLA was executed before any rolled-up or rewritten lease was executed, Lycos therefore makes clear that its counterclaim in this case *does not* arise out of any particular provision of the MLA.

Perhaps most tellingly, CSI's interrogatory 2 to Lycos asked it to "[s]tate the basis for, ***including all evidence supporting***, your claim that CSI engaged in fraudulent or negligent misrepresentation …." *See* Int. Resp. at p. 8 (emphasis added).  As the Court is aware, Local Rule 26.5(C)(8) further requires, in response to a "state the basis" interrogatory, that a party: "(c) state separately the acts or omissions to act on the part of any person (identifying the acts or

-9-

omissions to act by stating their nature, time, and place and identifying the persons involved) which form *any part of the party's information regarding the alleged facts* or legal conclusions referred to in the interrogatory" and (d) "state separately *any other fact which forms the basis of the party's information regarding the alleged facts* or conclusions referred to in the interrogatory." *Id.* (emphasis added).  Lycos's response to this interrogatory was over ten pages long, and yet Lycos never identified the MLA or a single provision of the MLA that it claimed formed the basis of its misrepresentation claims, despite its clear obligation to do so at this time. Nor did Lycos ever supplement its interrogatory responses, as required by Fed. R. Civ. P 26(e), to disclose any claim based on or even relating to the MLA.

## III.   ANY CLAIMS NOT ARTICULATED BY LYCOS AT THE MAY 28, 2008 HEARING HAVE BEEN DISMISSED BY THE COURT *WITH PREJUDICE*

During the May 28, 2008 hearing on motions for summary judgment, the Court ordered Lycos to explain all the elements of each of its remaining claims.  *See* May 28 Tr. at pp. 4:17 to 5:1 ("THE COURT:  Yes.  Because your brief points out that Mr. Kaler's brief doesn't meet your theory….  So I want to know what the theory is so that we can talk about the same case. MR. BEAN:  Very good, your Honor.  THE COURT:  *I assume that your representation as to what the theory is means that everything else is gone with prejudice.*  MR. BEAN:  *Okay.*) (emphasis added).

Lycos, through counsel, then explained that Lycos had the following claims in the case (excluding the discussion of Lycos's implied covenant of good faith and fair dealing count, which was subsequently dismissed):

(1)    omissions for failing "to disclose that [CSI] was charging Lycos a fee or mark-up in connection with every extension schedule …."  *Id.* at 5, lines 5-17 (Counts I and II of the Counterclaim);

(2)    failure to disclose and misrepresenting "that the base value with respect to refinanced schedules would not equal the original equipment cost."  *Id.* at p. 5, lines 21-24 (Counts I and II of the Counterclaim);

-10-

(3)     failure to disclose to Lycos "the original acquisition cost of the equipment …." *Id.* at p. 6, lines 10-12 (Counts I and II of the Counterclaim);

(4)     that CSI "perpetrated a scheme to cause Lycos to trust and depend on Mr. Stenberg for his expertise in leasing." *Id.* at p. 6, lines 13-14 (Counts I and II of the Counterclaim);

(5)     fraudulent commissions through the March 18, 2002 email. *See id.* at p. 7, lines 2-14 (Counts I and II of the Counterclaim);

(6)     misrepresentations related to the sales agreement made in the March 18, 2002 email and in a June 30, 2003 communication with Susan Franklin, and failing to disclose the original equipment costs. *See id.* at pp. 7:21 through 9:13 and p. 10:18 - 11:25 (Counts III, IV, and V of the Counterclaim);

(7)     for its first Ch. 93A claim (Count V), Lycos stated that those claims revolve around "rewrites in the sales contract" and violation of two Massachusetts regulations. *Id.* at p. 15, lines 17 to 24;

(8)     for its second Ch. 93A (Count VII), Lycos stated "VII is by virtue of the conduct, the theory in Counts I, II and III" and "the violations of the Attorney General regulations …." *Id.* at p. 16, lines 7 to 17;

(9)     Counts XII and XIII asserting claims to either rescind the Sales Agreement or to obtain damages in tort, for application of UCC Section 1-201(37), and for return of excess amounts of money allegedly paid to CSI. *Id.* at p. 16:18 to 19:9; and

(10)    Finally, Counts XIV and XV seeking declarations that Lycos "[does not] owe CSI any more money" and that Lycos "owns the equipment". *Id.* at p. 19:10-19.

After this recitation, the Court stated to CSI, "Now … this recitation of the theories of the various counts are the theories that we're now going to talk about and we don't need to talk about anything else that may be in your brief because it is now ***gone with prejudice***." *Id.* at 19:22 to 20:1 (emphasis added). Noticeably absent from the above recitation, however, is any mention of the MLA or any theory that the MLA contains predatory terms or was part of any scheme to trap Lycos. Indeed, the only reference to any "scheme" is to an alleged "scheme to cause Lycos to trust and depend on Mr. Stenberg for his expertise in leasing" -- a theory which has nothing to do with the terms of the MLA. *See id.* at p. 6:12 to 7:1.

**IV.    LYCOS HAS CONTINUALLY CHARACTERIZED ITS CH. 93A CLAIM AS AN ATTACK ON THE EQUIPMENT SCHEDULES AND THE SALES AGREEMENT, NOT ON THE SPECIFIC TERMS OF THE MLA**

In addition to its Counterclaim and interrogatory responses, Lycos's pleadings in the case have continually stated that its c. 93A claims are derivative of its misrepresentation claims (which in turn are based on alleged misrepresentations by Paul Stenberg, not on the allegedly onerous provisions of the MLA).   As the Court may recall, shortly after this lawsuit was commenced, CSI moved to dismiss Lycos's Ch. 93A claim on the ground that the claim was governed by Missouri law, and Missouri's consumer protection statute does not apply to business-to-business disputes.  *See* CSI's Memorandum of Law in Support of Motion to Dismiss Defendant Lycos, Inc.'s Counterclaim at 18 (Docket No. 16).

In Lycos's Opposition to CSI's Motion to Dismiss Lycos' Amended Counterclaim ("Opposition"), Lycos specifically argued to the Court that its Ch. 93A claim was not based on the MLA, but rather on matters outside the four corners of the contract, particularly CSI's alleged misrepresentations and fraud in the inducement.  The Opposition states, in pertinent part:

> As noted above, when a plaintiff's M.G.L. c. 93A claim involves ***fraudulent inducement in the formation of the contract*** in question, courts in Massachusetts (both federal and state) have held that the parties' contractual choice-of-law provision does not apply to such a claim…. Here, ***Lycos' Chapter 93A claim is tort-based – stemming from CSI's failure to disclose material information and CSI's affirmative misrepresentations***.

*Id.* at 17 (emphasis added) (Docket No. 18).

In the Court's December 6, 2005, Memorandum of Decision, the Court adopted Lycos's allegations, finding that its Ch. 93A claim, among others, "concern[s] allegations of fraudulent or negligent misrepresentation in the inducement of certain agreements …."  *Id.* at 5.  Indeed, the Court specifically found that the "bulk of [Lycos's] allegations involve conduct … ***unrelated to the contract's terms***."  *Id.* at 5 (citation and internal quotation marks omitted).  As a result, the Court declined to apply the MLA's choice of law provision.

As the case progressed, the parties and the Court continued to operate under the assumption that Lycos was not seeking to challenge the specific terms of the MLA, particularly as part of its Chapter 93A claim, in light of its earlier representations and the Court's holding in the December 6, 2005, Memorandum of Decision.   For instance, when Lycos moved for summary judgment on Count VII, it characterized the claim as follows:

> In Count VII, Lycos maintains that CSI violated M.G.L. c. 93A, §§ 2 and 11 by violating Attorney General regulations 940 C.M.R. 3.05(1) and 3.16(2) (together, the "Regulations").  CSI violated the Regulations by telling Lycos "half-truths" in connection with its "churning," i.e., the refinancing, refinancing again and, in some cases, refinancing again, of equipment lease schedules.  Specifically, CSI addressed the cost of refinancing by telling Lycos that its monthly payments would go down and its use of the equipment extended if it refinanced, but it did not tell Lycos that it was embedding "mark-ups" in the monthly payments that would cause Lycos to pay $13.7 million above and beyond the millions of dollars in additional lease interest it would pay on the refinancings.

*See* Lycos's Memorandum of Law in Support of Motion For Partial Summary Judgment on Certain Claims in Counts VII, XII, and XIII of its Counterclaim at 2 (Docket No. 148) (footnote omitted).   In Lycos's Opposition to CSI's Motion for Summary Judgment, Lycos states: "Lycos's claims in Count I for fraudulent misrepresentation survive summary judgment.  As such, to the extent Lycos's 93A claim ***is derivative of those claims***, it, too survives."  *See* Lycos's Opposition to CSI's Motion for Summary Judgment Dismissing Lycos's Remaining Counterclaims, at 22 (Docket No. 188) (emphasis added).  And in the May 28, 2008 hearing, the Court asked Lycos, "[Count] VII is by virtue of the conduct -- the theory in Counts I, II and III?" and Lycos responded, "Yes, your Honor.   And also the violation of the Attorney General regulations."  May 28 Tr. at p. 16, lines 8 to 17.

Again adopting Lycos's representations, in the Court's September 26, 2008, Memorandum of Decision and Order ("Order"), the Court, in denying summary judgment on Counts V and VII of Lycos's Counterclaim, held, "Counts IV, V and VII, which allege violations of Massachusetts statutes, are derivative of Count III [(fraudulent misrepresentation in the

-13-

inducement of the Sales Agreement)] (*and in the case of Count VII, also derivative of Counts I and II [(fraudulent and negligent misrepresentation in the Inducement of rolled-up and rewritten equipment schedules)])….*" *Id.* at 12 (emphasis added).

While Lycos never articulated why the MLA is relevant to any of its claims, it did inform CSI that its experts would be testifying that the MLA is not commercially reasonable, violates industry standards, and violates the guidelines of the Equipment Leasing Association. CSI therefore retained its own experts to review the MLA and to offer their own opinions on the reasonableness of the MLA. CSI did not do this because it recognized that this theory was legitimately in the case. To the contrary, CSI has affirmatively moved to exclude this expert testimony on the grounds that it is *not* part of this case. *See* CSI's Memorandum of Law in Support of its *Daubert* Motion to Exclude the Testimony of Lycos' Expert Charles Cross (the "Cross Motion *in Limine*") (Docket No. 224). Not knowing how the Court would resolve the issue, however, CSI was compelled to disclose testimony to counteract Lycos's expert's opinions in the event such testimony was not excluded.

## ARGUMENT

## I.   BECAUSE LYCOS DID NOT ARTICULATE ANY CLAIMS ARISING UNDER THE MLA DURING THE MAY 28, 2008 HEARING, IT MAY NOT DO SO NOW

The Court clearly informed Lycos, and Lycos agreed, that any claim not articulated during the May 28, 2008 Summary Judgment Hearing would be dismissed *with prejudice*. *See* May 28 Tr. at p. 4:23 to 5:1 ("THE COURT: I assume that your representation as to what the theory is means that *everything else is gone with prejudice*. MR. BEAN: Okay.") (emphasis added). Because Lycos did not articulate, during this hearing, any theories arising under the MLA or the allegedly predatory provisions of the MLA (indeed, Lycos did not even reference the MLA during this hearing), it should not now be permitted to bring these claims into the case.

-14-

II.   **LYCOS IS JUDICIALLY ESTOPPED FROM ARGUING THAT ITS CHAPTER 93A CLAIM IS BASED ON THE MLA WHEN IT HAS CONSISTENTLY TAKEN THE POSITION THROUGHOUT THIS LITIGATION THAT ITS 93A CLAIMS ARE SIMPLY DERIVATIVE OF ITS MISREPRESENTATION AND FRAUD IN THE INDUCEMENT CLAIMS**

"As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2004) (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003)) (internal citations omitted).

"The contours of the doctrine are hazy, and there is no mechanical test for determining its applicability.… Each case tends to turn on its own facts.  It is, however, widely agreed that, at a minimum, two conditions must be satisfied before judicial estoppel can attach….  First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive….  Second, the responsible party must have succeeded in persuading a court to accept its prior position."  *Id.* (citations omitted).  Other elements the Court should consider in determining whether judicial estoppel applies are whether "absent an estoppel, ... the party asserting the inconsistent position [would] derive an unfair advantage" and "whether judicial acceptance of a party's initial position conferred a benefit on that party."  *Id.*

 In *Alternative System Concepts, Inc.*, the Court affirmed the lower court's application of judicial estoppel based on ASC's inconsistent positions as to what it was claiming in the case.  In that case, ASC asserted, in its opposition to Synopsys's motion to dismiss, that it was not claiming that ASC breached an agreement to enter into a long term contract, but rather its contract claim was "that LEDA breached its agreement to negotiate in good faith."  *Id.*  In so arguing, ASC was able to avoid a statute of frauds defense.  Later, in opposing a summary

judgment motion, ASC claimed that its breach of contract claim arose under an alleged oral agreement.  Under these facts, the First Circuit found judicial estoppel to be applicable.

Similar facts exist here.  In order to avoid CSI's motion to dismiss its Ch. 93A claim, Lycos argued that the claim was not based on the provisions of the MLA, but on certain misrepresentations and fraud in the inducement.  The Court adopted this position and denied the motion to dismiss on the ground that Lycos's claims predominantly arose outside the MLA. Now Lycos seeks to argue that its Ch. 93A claim is based on the "predatory clauses" of the MLA.  Having disavowed the MLA for its Ch. 93A claim in order to defeat CSI's motion to dismiss that claim, Lycos is now judicially estopped from asserting that specific provisions of the MLA comprise the basis of that claim.  *See id.  See also Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214 (1st Cir. 1987) ("we recognize that holding a litigant to his stated intention not to pursue certain claims is different from the 'classic' case of judicial estoppel….  However, in recent years courts have also applied judicial estoppel to situations such as this, where a party declares an intention not to pursue a claim….   On reflection, representations … that a party will abandon a claim, present a stronger argument than do the classic cases for application of the doctrine.") (citations omitted).

Based on Lycos's prior successful arguments that its Ch. 93A claim does not arise from the specific provisions of the MLA, but rather from CSI's alleged misstatements and fraudulent inducements, Lycos is estopped from now arguing that CSI engaged in unfair and deceptive practices by allegedly hoisting upon it a contract with allegedly unfair provisions.[5]

---

[5]      If Lycos is allowed to modify its ch. 93A claim to include claims that specific provisions of the MLA are unfair and deceptive, in all fairness the Court should revisit its choice of law ruling based on these new facts.

### III. LYCOS DID NOT CHALLENGE THE MLA IN ITS COUNTERCLAIM OR INTERROGATORY RESPONSES AND THUS SHOULD NOT BE PERMITTED TO DO SO NOW

It is well-settled that a party may not introduce a new theory on the eve of trial that was not previously disclosed.  *See Macaulay v. Anas*, 321 F.3d 45, 52 (1st Cir. 2003) (affirming preclusion of new theory of liability, holding, "Common sense suggests that when a party makes a last-minute change that adds a new theory of liability, the opposing side is likely to suffer undue prejudice.  The case law reflects this understanding."); *Torres-Rios v. LPS Laboratories, Inc.*, 152 F.3d 11, 16 (1st Cir. 1998) (affirming the exclusion of a claim where plaintiff's complaint "gave a hint of a possible additional claim" in the complaint, but that claim was not developed until the Joint Case Management Memorandum was filed).  Likewise, it is appropriate to preclude evidence concerning a party's claim that was not previously disclosed in interrogatory responses.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (holding that Rule 37(c)(1) "clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.") (citation and internal quotation marks omitted).

Here, as discussed above, Lycos continuously characterized this case as being based on its claims that Paul Stenberg made certain misrepresentations relating to the rewrites and roll-ups of the equipment schedules and that CSI, through Stenberg, fraudulently induced Lycos to enter into the Sales Agreement.  Now, on the eve of trial, Lycos seeks to significantly recast its claims without providing any justification for its conduct (other than its unfair ploy to attempt to use one of CSI's former experts against it).  If Lycos is permitted to do this, CSI would be prejudiced in

-17-

that it would have to respond to a different theory of liability than the one Lycos has continually claimed it was pursuing.  Under these circumstances, preclusion of this evidence under Fed. R. Civ. P. 37 is appropriate.

## IV.   EVIDENCE CONCERNING THE ALLEGEDLY "PREDATORY CLAUSES" OF THE MLA SHOULD BE EXCLUDED ON RELEVANCE AND UNFAIR PREJUDICE GROUNDS

The Court further has authority to exclude evidence that is either irrelevant (Fed. R. Evid. 401, 402), or whose probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence (Fed. R. Evid. 403).  "The trial court employs a balancing test to determine whether Rule 403 applies, weighing the probative worth of the evidence against its potentially confusing effects."  *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith*, 504 F.3d 189, 205 (1st Cir. 2007).

Here, evidence that particular provisions of the MLA are "predatory clauses" and/or are not commercially reasonable are not relevant to the remaining issues in this case, which revolve around whether Paul Stenberg made certain misrepresentations to Lycos and whether CSI fraudulently induced Lycos to enter into the Sales Agreement.  Indeed, the only possible relevance of this evidence would be in the context of an unconscionability claim, but Lycos has never asserted such a claim related to the MLA.  While Lycos did claim that the Sales Agreement was unconscionable, this claim was dismissed in the Court's  December 6, 2005 Memorandum of Decision, which found that Lycos cannot assert an unconscionability claim against CSI as a matter of law because "[b]oth parties were business entities with considerable commercial experience," *id.* at 14.  Under the law of the case doctrine, that ruling would similarly apply to the MLA.  As such, introducing arguments concerning the alleged unfairness of the MLA to the jury would inevitably create confusion and a serious risk of unfair prejudice.

-18-

Moreover, even if Lycos could articulate some relevance for this testimony, it should nevertheless be excluded under Rule 403 because the evidence's probative value is outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, and because it would result in undue delay and a waste of time.  As argued in the Cross Motion *in Limine*, testimony concerning the propriety of the MLA does not address any of the remaining issues in the case, and using several days of trial to have both Lycos's and CSI's experts testify as to whether the MLA is "commercially reasonable" or comports with "industry standards" will not assist the jury in determining whether certain misrepresentations were made or whether certain information should have been conveyed to Lycos but was not.  To the contrary, such evidence will waste time and will confuse the jury or worse, may create the improper and highly-prejudicial inferences that because the MLA has certain onerous terms (assuming the jury credits Lycos's arguments), CSI is a "bad actor" that would be more likely to make a misrepresentation and/or that Lycos is somehow entitled to void the MLA because it is allegedly "unfair".  Likewise, attacking the provisions of the MLA as unfair would constitute an improper appeal to the jury to release Lycos from a bad bargain, something (as discussed at pp. 2-3 and note 2) it has no right to under the law.[6]  *See, e.g.*, *Central Massachusetts Television, Inc. v. Amplicon, Inc.*, 930 F. Supp. 16, 22 (D. Mass. 1996) (holding, in the analogous context of the parole evidence rule, that such testimony is prohibited to "'discourage[] sympathetic juries from releasing parties from bad bargains'") (citing *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*,  971 F.2d 272, 277 (9th Cir. 1992)).

---

[6]     As noted earlier, Lycos's Counterclaim originally alleged that the Sales Agreement was "unconscionable," but Lycos never argued the MLA was also unconscionable.  The Court dismissed that claim in its December 6, 2005 Memorandum of Decision and its reasoning would apply with equal force to the MLA.  *See id.* at 14.  Essentially, the Court ruled that the doctrine of unconscionability is "not typically applied to commercial dealings between business entities," *id.* (citation and internal quotation marks omitted), and that such a claim was unavailable in a case such as this where "[b]oth parties were business entities with considerable commercial experience."  *Id.*  This reasoning would apply with equal force to the MLA if Lycos were to attempt to argue that the MLA is unconscionable.

**V.     IF LYCOS WERE ALLOWED TO CHALLENGE THE SPECIFIC PROVISIONS OF THE MLA AS PART OF ITS CH. 93A CLAIM, THIS TESTIMONY SHOULD NOT BE PRESENTED TO THE JURY**

Because of the Fed. R. Evid. 403 concerns raised above, if Lycos is permitted to present its "predatory clauses" of the MLA argument at all, it should not be permitted to do so before the jury.  As the Court is aware, there is no right to a jury trial for a Ch. 93A claim.  *See Professional Services Group, Inc. v. Town of Rockland*, 515 F. Supp. 2d 179, 195-196 (D. Mass. 2007).  As the parties are already operating under an abbreviated trial schedule, there is good reason not to waste time presenting issues to the jury that only relate to claims that the jury will not decide, particularly if those issues could confuse the jury and prejudice CSI.  As such, to the extent such testimony comes in at all (over CSI's objections), the testimony should come in either after the jury trial concludes or during an afternoon session outside of the jury's presence.

<u>**CONCLUSION**</u>

For the foregoing reasons, CSI respectfully requests that this Court grant this Motion *in Limine*  and issue an Order precluding Lycos from arguing at trial that the MLA, or specific provisions of the MLA, are predatory, unfair or deceptive.

Respectfully submitted,

CSI LEASING, INC. f/k/a
COMPUTER SALES INTERNATIONAL, INC.

By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
David Himelfarb, BBO No. 649596
dhimelfarb@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street

ME1 8209506v.3

Boston, MA  02110
Tel. (617) 449-6500

Dated: March 6, 2009

## CERTIFICATE OF SERVICE

I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing pleading to be served on counsel for the other parties in this action electronically by CM/ECF notification, by e-mail and by first class mail, postage prepaid, this 6th day of March, 2009.

/s/ Edward W. Little, Jr.
Edward W. Little, Jr.

-21-

ME1 8209506v.3