UNITED STATES DISTRICT COURT
For the District of Massachusetts

| | |
|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL, INC., <br><br> Plaintiff, <br> v. <br><br> LYCOS, INC., <br><br> Defendant, <br><br> BANK OF AMERICA f/k/a FLEET BANK, <br><br> Trustee Process Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.A. No. 05-10017- RWZ

**OPPOSITION OF PLAINTIFF CSI LEASING, INC. TO
"LYCOS' MOTION *IN LIMINE* NO. 8: TO EXCLUDE
ALL EVIDENCE NOT PRODUCED BY CSI IN DISCOVERY"**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a
Computer Sales International, Inc.*

ME1 8233361v.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................................... 2

ARGUMENT ............................................................................................................................ 8

I.      CSI IN FACT DID PRODUCE THE EVIDENCE THAT THE LYCOS MOTION
        CLAIMS WAS NEVER PRODUCED ........................................................................... 8

II.     THERE IS NO BASIS FOR THE ENTRY OF A PRECLUSION ORDER OF ANY
        KIND AGAINST CSI ..................................................................................................... 9

CONCLUSION ......................................................................................................................... 10

ME1 8233361v.1

# TABLE OF AUTHORITIES

**CASES**

*Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177 (E.D.N.Y. 2005)........................................ 10

*Jackson v. Harvard University*, 900 F.2d 464 (1st Cir. 1990)........................................................ 8

*R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, (1st Cir. 1991) .............................................. 9

*Taydus v. Cisneros*, 902 F. Supp. 288 (D. Mass. 1995).................................................................. 9

**RULES**

Fed R. Civ. P. 30(b)(6)................................................................................................................... 5

Fed. R. Civ P. 33 ........................................................................................................................... 9

Fed. R. Civ. P. 26(a) ..................................................................................................................... 9

Fed. R. Civ. P. 26(e) ..................................................................................................................... 9

Fed. R. Civ. P. 34.......................................................................................................................... 9

Fed. R. Civ. P. 37.................................................................................................................... 9, 10

Fed. R. Civ. P. 37(b) ..................................................................................................................... 9

Fed. R. Civ. P. 37(b)(2)................................................................................................................. 9

Fed. R. Civ. P. 37(b)(2)(A)(ii) ...................................................................................................... 9

Fed. R. Civ. P. 37(c)(1)(C) ........................................................................................................... 9

Fed. R. Civ. P. 37(d)(1)(A)(ii) ...................................................................................................... 9

ME1 8233361v.1

Plaintiff CSI Leasing, Inc. f/k/a Computer Sales International, Inc. ("CSI"), respectfully opposes Lycos' self-styled *Motion in Limine No. 8* (the "Lycos Motion") (Dkt. No. 228), which seeks to preclude CSI from offering evidence on four subjects as to which Lycos incorrectly claims CSI withheld evidence from production during discovery.

## SUMMARY OF ARGUMENT

The Lycos Motion inaccurately claims that evidence was supposedly "withheld" by CSI *when CSI actually produced it in discovery*, and it further badly misstates what actually happened during discovery.  The irony is that it was Lycos, not CSI, that persistently withheld relevant evidence during discovery, to the point where a series of orders from Judge Herbert Hershfang (the Court-appointed Special Master) were necessary to obtain the evidence, notably including one order that had to be enforced by application to the Court.

Specifically, the evidence which Lycos implies was never provided to it – (i) training materials, (ii) the prices at which CSI sold Lycos' returned equipment, and (iii) information concerning the draft Certificates of Acceptance which CSI sent to Lycos informing it of the aggregate equipment costs (information Lycos already admittedly had, in any event) – was either produced by CSI or no longer existed at the time this case commenced (or never did exist), and therefore could not have been provided.

CSI employees, however, did testify as to these subjects in depositions, and cannot properly be precluded from testifying on those subjects at trial concerning them simply because CSI either could not find, or never possessed, some of the particular types of documents on those subjects sought by Lycos.  To the contrary, if Lycos wishes to make an issue of the lack of particular documents dealing with any particular question, it can take that matter up on cross-examination of the relevant witnesses.

More importantly, the central argument in Lycos Motion – that relevant information was

purposefully "withheld" from production by CSI – is a severe misstatement of the lengthy discovery in this case, and is demonstrably wrong. The Court will recall that it appointed Judge Hershfang as Special Master to oversee discovery in this case, and there were times when Judge Hershfang denied discovery requested by each side. There were many more occasions, however, when he had to compel Lycos to produce absolutely critical information that it was withholding.

In one of the most significance disputes, for example, Lycos tried to withhold calculations by its own expert establishing that the equipment it leased from CSI was worth *millions* of dollars at the end of the CSI-Lycos Leases (evidence directly undercutting Lycos' contrary claim). The Special Master properly compelled production of those materials by Lycos in a discovery order that CSI was then forced, in this Court's absence, to enforce by order of another District Judge to enforce, after Lycos refused to comply.[1]

To put it mildly, Lycos' claim that CSI was somehow not forthright or obstructionist in discovery is disingenuous in the extreme, and as the voluminous discovery record shows, it rings hollow given Lycos' own poor record during discovery. For all of the reasons, as more fully set forth below, the Lycos motion should be properly denied

## STATEMENT OF RELEVANT FACTS

There were a series of disagreements between the parties about discovery in this case. At one point, the Court appointed a Special Master to resolve those discovery disputes.[2] The Special Master, Judge Herbert Hershfang, made a series of rulings against Lycos withholding of information requested by CSI – including most prominently communications between Lycos' counsel and Leaseforum (the company of Lycos' contingently-compensated consultant and key

---

[1] *See* Docket No. 172 (CSI's emergency motion to adopt Special Master's report) and following order from Judge O'Toole requiring compliance by Lycos.

[2] On December 1, 2006, the Court appointed The Honorable Herbert Hershfang as Special Discovery Master. *See* Dkt No. 119.

ME1 8233361v.1

witness in this case) which Lycos' had withheld under erroneous claims of privilege and work product,[3] and calculations prepared by one of its testifying experts containing evidence highly damaging to Lycos' own case.[4]

Now, ironically, despite a demonstrable history of discovery recalcitrance on its part, Lycos now boldly claims that it requested four subject areas[5] of information which were supposedly "withheld" from production to it by CSI.  Those areas are:

- Materials used to train or educate CSI's employees

- Expense reports submitted by Paul Stenberg concerning non-Lycos expense reimbursement requests;

- Prices at which CSI sold any and all equipment that Lycos returned to CSI;

- Drafts of the Exhibits to Certificates of Acceptance sent by CSI to Lycos showing the aggregate totals of the original equipment costs on new equipment schedules.

Lycos' Motion at 2-3.  In fact, documents relating to these areas **were produced** early in discovery, and testimony **was provided** concerning these documents, and where appropriate explaining why further documents did not exist or could not be located.

---

[3]     *See Discovery Master Report # 2*, attached hereto as <u>Ex. A</u>.  Lycos' argument that its communications with Ms. Franklin and Leaseforum were privileged or protected as work product – despite Ms. Franklin's factual knowledge of the case and her 20% contingent interest in the outcome of the litigation – was rejected by the Special Master, who noted that Ms. Franklin's testimony "is at least as critical in CSI's defense of Lycos' Counterclaim, a condition further complicated by [Leaseforum's] contingent fee based on the success of that Counterclaim." *Id.* at 12.

[4]     *See Discovery Master Report # 6*, attached hereto as <u>Ex. B</u>.  Lycos' attempt to shield equipment valuation calculations created by Lycos' expert Peter Daley and considered (but rejected) by its valuation expert Christopher Condon, was rejected by Judge Hershfang.  When Lycos refused to comply with Judge Hershfang's order, CSI sought and succeeded in obtaining a court order from Judge O'Toole requiring immediate production. *See* Dkt. No. 172 and accompanying order.  That evidence demonstrates that Lycos' experts initially valued the CSI equipment at millions of dollars more than they ultimately opined in their expert report, thereby calling into question their methods and bias in rejecting these calculations and severely undermining Lycos' claim that the equipment was virtually worthless when Lycos paid $3.77 million to purchase it in 2003.

[5]     Though Lycos claims it is seeking to preclude evidence "***including but not limited to***" the four enumerated subject areas, it does not specify what that other "evidence" is.  CSI should not have to fence with shadows, nor should Lycos be allowed to move to exclude evidence without giving CSI reasonable notice of which specific documents or information it seeks to exclude.  CSI therefore reserves the right to seek to admit any document that is relevant to its existing claims or defenses in this lawsuit.

3

ME1 8233361v.1

**Information Concerning Training of Employees**

Early in depositions, CSI employees were asked about training efforts and, specifically,

training materials.  In September 2006, Phillip Cagney, CSI's co-Chief Financial Officer and

Executive Vice President, testified as follows:

> Q.   I believe you testified that you provided some, assisted in the
> preparation or prepared some training materials on the financial aspects of
> CSI's business.  Correct?
>
> MR. LITTLE:  Objection.  But you may answer.
>
> THE WITNESS:  Right.
>
> A.   Yes.
>
> Q.   And when did you prepare those materials?
>
> A.   I mean, at various times.  I mean, occasionally we would have new
> salespeople in to St. Louis for training, like I said, so that's somewhat
> haphazard.  And, you know, whenever that would happen, then I would
> put together, you know, a few pages.
>
> Q.   A few pages of training materials?
>
> A.   Sure.
>
> Q.   And what information was contained in those training materials?
>
> A.   Generally speaking -- or, not generally.  To the best of my
> recollection, I had the equity in matrix and then most of it was
> documentation.  We have something called a Schedule 1 request, which is
> what we ask our salesmen to fill out when they're looking at a new
> customer for the first time.  Then we have request for contract, a couple of
> different forms for that.  Then there's one other form that I give them that's
> sort of, for lack of a better word, a spreadsheet regarding, I'll call it, how
> much interim rent you might get on a quarterly install deal.
>
> Q.   Anything else you can recall that's in the training materials that
> you've been involved in preparing?
>
> A.   No, no, that's pretty much it.
>
> Q.   Do you have copies of those training materials at your offices?
>
> A.   At my office?  Yes.

ME1 8233361v.1

> Q.   Do you have copies of the training -- Are those the current versions
> of the training materials that are at your office?
>
> A.   Yes.[6]

These training materials referenced by Mr. Cagney were produced to Lycos the following month, on October 20, 2006.[7]   Discovery continued for many months thereafter, and Lycos had the opportunity to – and in fact did[8] – question CSI witnesses concerning training.

**Information Concerning the Price Received for Sale of Lycos' Returned Equipment**

Lycos did not return much in the way of equipment it leased from CSI – in fact, its Rule 30(b)(6) designee admitted that it could not locate one quarter of the equipment it was leasing from CSI (and which CSI owned).[9]   Lycos did not admit this to CSI and specifically kept it a secret from them for fear that CSI would charge it a much larger amount – which Lycos calculated at $34 million – than the $3.77 million purchase price at which CSI ultimately sold it to Lycos.[10]

In claiming that CSI withheld information "[c]oncerning . . . the price for which CSI sold any and all Equipment after Lycos returned it to CSI at the end of the term" of the leases – and in implying that Executive Personal Computers, Inc. ("EPC," CSI's wholly-owned equipment reseller subsidiary) refused to comply with a subpoena – Lycos apparently forgets documents

---

[6]   Deposition of Phillip Cagney ("Cagney Dep."), dated Sept. 27, 2006, at 76:7-77:24 (relevant portions attached as Ex. C).

[7]   Under cover letter dated October 20, 2006, from Eileen Pellerin to Peter Acton (attached as Ex. D), the training documents referred to by Mr. Cagney were produced under numbers CSI045606 through 616 (attached as Ex. E).

[8]   See, for example, depositions of CSI witnesses Guilander (at 31:18-32:24), Ausubel (at 16:17-25), and Gillula (at 91:13-92:24; 130:13-131:24) (relevant portions attached hereto as Ex. F).  All of these occurred after Mr. O'Neal's deposition in  September 2006 and after production of Mr. O'Neal's training materials in October.

[9]   See Rule 30(b)(6) Deposition of Lycos (by Dean Batten) ("Lycos 30(b)(6) Dep."), dated Feb. 22, 2007, at 63:20-66:17 (relevant portions attached hereto as Ex. G).  Lycos' designee explained that it had been unable to locate approximately 25% of the equipment it leased from CSI and that the responsibility to return the equipment at the end of the leases was solely that of Lycos.  Id.

[10]   See Plaintiffs' Dep. Exs. 395, 396 (first pages of each, attached hereto as Ex. H).  In these exhibits, which are email communications, Lycos internally drafted and then forwarded to its Spanish parent company the justification for the parent's approval to let Lycos go forward with the $3.77 million buyout reflected in the 2003 Sales Agreement.  Again, there was no issue that the failure to be able to locate and return the equipment was due to any fault of CSI's and was not the result of Lycos' failure to internally track and account for the leased equipment.

EPC 00001 through EPC 00025, which were produced by EPC in this litigation in November 2006 with an explanatory cover letter.[11]   These records include Receiver Details showing computer equipment being returned to EPC from Lycos, as well as invoices for the resale of that equipment (where such information could be retrieved from the files).  Lycos questioned several CSI witnesses at deposition regarding EPC both before and subsequent to this production.

Thus, there is simply no basis for the claim in the Lycos motion that no information or records on this subject were provided in discovery.  It was provided.

**Information Concerning All Non Lycos-Related Expense Reimbursement Reports**

CSI has already moved *in limine* to exclude any mention at trial of the expense reports of its account representative Mr. Stenberg referring to Lycos, because they are irrelevant to the issues in this case in that the relevant expenses were never charged to Lycos.[12]   As noted in Lycos' letter to Judge Hershfang dated December 28, 2006 (attached as Exh. C to Lycos' Motion), however, CSI did produce all of the Stenberg expense reports that referred to Lycos – though it redacted the entries referring to non-Lycos customers – and even provided the signature page as well.[13]   Mr. Stenberg then testified concerning all of those expenses for which he listed "Lycos" as the reason for the expense, even though he stated that certain of those were "inaccurate" because they did not relate to expenditures on entertaining Lycos personnel.

Lycos then asked additionally, in a letter to the Special Master, for unredacted versions of these expense reimbursement reports on grounds that "Lycos is entitled to know the names of

---

[11]      *See* Letter dated Nov. 10, 2006 from Little to McSherry, including documents EPC 00001 through EPC 00025 (attached hereto as Ex. I)

[12]      CSI has served that motion on Lycos but moved for leave to file it on the docket under seal.  *See Motion for Leave to File Under Seal One of Its Motions in Limine, Memorandum of Law and Exhibits*, dated February 27, 2009 (Dkt. No. 212).

[13]      *See* Letter dated Dec. 28, 2006 from Tom Bean to The Honorable Herbert Hershfang ("Letter to Judge Hershfang") at 607 (attached as Ex. C to Lycos' Motion – Dkt. No. 228-4).

ME1 8233361v.1

Mr. Stenberg's 'other customer' whom he allegedly took to events . . ."[14]  The Master disagreed,

however, ruling that Lycos' request for all of the expense reports, without redaction, was

"[d]enied, as the information Lycos seeks on other CSI customer is `remote.'"[15]

**Information Concerning Drafts of Exhibit A to Certificates of Acceptance**

Early in this case, before clear evidence to the contrary appeared, Lycos argued that it did

not – and could not – calculate the original cost of the equipment it was leasing from CSI, which

it claimed was relevant to determining whether to buy out the equipment from CSI in 2003.  As

the evidence developed, however, it became clear that Lycos itself priced and ordered the

equipment directly from vendors, and then assigned the purchase orders to CSI so that CSI (the

owner of the equipment) could pay for it.  Lycos has these purchase orders in its files and

admittedly could and did track the aggregate running original cost of all CSI equipment it had

under lease.

Once Lycos had ordered equipment for inclusion on its various leases with CSI, CSI

would confirm that order by preparing a "certificate of acceptance" for Lycos to confirm the

equipment.  These certificates contained and Exhibit A which listed each piece of equipment, its

price and the quantity of the items.  The drafts of Exhibit A also contained, in the upper corner of

the first page, a total aggregate equipment cost for all of the equipment Lycos had ordered for

that particular schedule.  Carolyn Simmons-Berry who prepared and sent these draft certificates

to customers, *testified* that she would fax a partial copy of the draft Exhibit A to customers and

then overnight a computer disk with the full Exhibit, using a copy of the fax as a cover page.[16]

Later, they began emailing the drafts to customers.

---

[14]     Letter to Judge Hershfang at 7.
[15]     *See* Letter dated Jan. 22, 2007, from Edward Little to Tom Bean/Peter Acton ("Little Ltr.") at 2D (attached
as Ex. F to Lycos' Motion -  Dkt. No. 228-7).
[16]     *See* Deposition of Carolyn Simmons-Berry, dated Feb. 6, 2007 ("Simmons-Berry Dep.") at 22:17-25:16
(relevant portions attached hereto as Ex. J).

ME1 8233361v.1

Where CSI was able to locate copies of these drafts, it produced them, and Lycos'

witness Michael Ripps could not deny receiving them.[17]  Copies of some of those draft Exhibit

A's which CSI could locate were used at Mr. Ripps deposition, and a copy of a fax version of a

draft sent to Mr. Ripps was authenticated at Ms. Simmons-Berry's deposition.[18]  Thus, Lycos

argument that no information on this subject was produce to it during discovery is palpably

untrue.  Lycos is simply flooding the Court with inaccurate accusations in the apparent hope that

it can persuade the Court, through the sheer volume of its submissions, to exclude whole subject

areas from consideration at trial even though they were the subject of ample discovery.

## ARGUMENT

A party cannot preclude another from presenting relevant evidence at trial by making

***demonstrably incorrect*** assertions of "failure to produce information" on those subjects in

discovery.  In fact, even where there is an actual failure to make discovery (which is not the case

here), the sanction of preclusion for a discovery failure is a "grave step" which is "by no means .

. . automatic."  *Jackson v. Harvard University*, 900 F.2d 464, 469 (1st Cir. 1990) (citation

omitted).  In this case,  Lycos simply has no basis for even seeking this remedy.

## I.     CSI IN FACT DID PRODUCE THE EVIDENCE THAT THE LYCOS MOTION CLAIMS WAS NEVER PRODUCED

As explained in detail in the Statement of Relevant Facts section of this memorandum,

*supra*, there has been no failure by CSI  to make discovery -- in fact, the main problems in

discovery resulted from Lycos' resistance to it.

In three of the instances where the Lycos motion claims CSI failed to produce

documents, for example, CSI in fact did produce documents on these subjects, which the Lycos

---

[17]     *See* Deposition of Michael Ripps, dated Nov. 14, 2006 ("Ripps Dep."), at 147:5-18 (relevant portions attached hereto as Ex. K).

[18]     See, for example, Plaintiffs Dep. Exs. 389, 390 (draft Exhibit A's to certificates of acceptance) (attached hereto as Ex. L); *see also* Simmmons-Berry Dep. Ex. 1 (fax cover page to Mr. Ripps enclosing draft Exhibit A to certificate of acceptance) (attached hereto as Ex. M)

ME1 8233361v.1

motion simply ignores.  In the fourth – concerning non Lycos-related expense reimbursement reports – the Special Master, Judge Hershfang, concluded that the information "on other CSI customers is "remote,'" meaning that it was not relevant and not required to be produced.  CSI's decision not to produce this expense report information on other customers, subsequently confirmed by the Special Master, cannot properly be mischaracterized as "willful withholding of information" that CSI should have produced.  It was not.

## II.     THERE IS NO BASIS FOR THE ENTRY OF A PRECLUSION ORDER OF ANY KIND AGAINST CSI

The analysis of Rule 37 in the Lycos motion is cursory, and omits to clarify that the sanction of preclusion is only allowed in any event for specific discovery abuses:  **(1)** violation of a discovery order (Rule 37(b)(2)(A)(ii)); **(2)** failure to include information in a party's automatic disclosures under Rule 26(a) or to supplement under 26(e) (Rule 37(c)(1)(C)); or **(3)** a party fails completely to "serve its answers, objections or written response" to written discovery requests under Rules 33 and 34 (Rule 37(d)(1)(A)(ii)).  "[U]nless the failure of discovery is absolute, or nearly so, Rule 37(b)(2) sanctions are unripe" *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, (1st Cir. 1991) (whether or not failure to produce can serve as the basis of Rule 37(b) sanctions "depends . . . on whether the refusal was in defiance of a sufficiently explicit court order").

Even Lycos' Motion acknowledges that there has been no discovery order violated by CSI (indeed, much of the information allegedly "withheld" was actually provided), no failure to comply with automatic disclosures, and no failure of CSI to serve written objections and answers to discovery requests.  Thus, the sanction of "preclusion" sought by Lycos would not be appropriate even if there had been some other failure by CSI to produce evidence, which there was ***not***.  *See also Taydus v. Cisneros*, 902 F. Supp. 288, 295-96 (D. Mass. 1995) (Bowler,

M.J.)(denying Rule 37 sanctions where none of the three situations was applicable).   In this regard,

> [a]lthough authorized under Federal Rule of Civil Procedure 37, "preclusion of evidence . .  [is a] harsh remedy and should be imposed only in rare situations. . . ."  Such a severe sanction is justified "when the ***failure to comply with a court order*** is due to willfulness or bad faith, or is otherwise culpable."

*Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (ruling against sanction of preclusion for violation of court order where location of some of responsive documents was unknown) (citations omitted; emphasis added).   Thus, even where there is violation of a court order (again, not an issue here), a court should not preclude evidence unless the violation was willful or in bad faith.

In this case, the draconian sanction of evidence preclusion would be particularly inappropriate here because Lycos has put forth no evidence of a failure to make any discovery, let alone a willful or bad faith violation of a court order.   In fact, it has misstated the facts, ***and was wrong when it claimed CSI "withheld" evidence at all*** or that "failed" to produce information on subject areas.   *See* Statement of Relevant Facts, *supra*.   CSI did not do that.

## CONCLUSION

For the foregoing reasons, plaintiff CSI Leasing, Inc. respectfully requests that the Court deny Lycos Motion *in Limine* No. 8, and grant CSI such other relief as the Court deems just and proper.

10

ME1 8233361v.1

Respectfully submitted,

CSI LEASING, INC. f/k/a COMPUTER SALES
INTERNATIONAL, INC.
By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

Dated:  March 13, 2009

## CERTIFICATE OF SERVICE

I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing pleading
to be serve on counsel for the other parties in this action electronically by CM/ECF notification,
by e-mail and by first class mail, postage prepaid, this 13th day of March, 2009.

/s/ Edward W. Little, Jr.
Edward W. Little, Jr.

11

ME1 8233361v.1