UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL INC., | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| LYCOS, INC., | ) | C.A. No. 05-10017- RWZ |
| Defendant, | ) ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) ) | |
| Trustee Process Defendant. | ) ) | |

**PLAINTIFF CSI LEASING, INC.'S OPPOSITION TO
DEFENDANT LYCOS, INC.'S "MOTION *IN LIMINE* NO. 3: TO
EXCLUDE LEGALLY IRRELEVANT EVIDENCE CONCERNING
WHETHER SCHEDULES 93 AND 94 ARE LEASES OR LOANS"**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
David Himelfarb, BBO No. 649596
dhimelfarb@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a
Computer Sales International, Inc.*

ME1 8206644v.2

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... i

SUMMARY OF ARGUMENT ...................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................3

I.      LYCOS'S MISREPRESENTATION CLAIMS.................................................................3

II.     LYCOS'S EQUITABLE CLAIMS ..................................................................................4

III.    LYCOS'S MASS. GEN. L. CH. 106, § 1-201(37) CLAIM .............................................5

IV.     THE LYCOS PORTFOLIO ANALYSIS.........................................................................5

ARGUMENT ...............................................................................................................................6

I.      THE EVIDENCE LYCOS SEEKS TO EXCLUDE IS RELEVANT TO CSI'S
        DEFENSE OF LYCOS'S MISREPRESENTATION CLAIMS .......................................7

II.     THE EVIDENCE LYCOS SEEKS TO EXCLUDE IS RELEVANT TO CSI'S
        DEFENSE OF LYCOS'S UNJUST ENRICHMENT AND MONEY HAD AND
        RECEIVED CLAIMS......................................................................................................10

III.    THE EVIDENCE LYCOS SEEKS TO EXCLUDE IS RELEVANT TO CSI'S
        DEFENSE OF LYCOS' M.G.L. CH. 106, § 1-201(37) CLAIM .....................................12

CONCLUSION...........................................................................................................................15

ME1 8206644v.2

**TABLE OF AUTHORITIES**

*American Computer Trust Leasing v. Boerboom International, Inc.*, 967 F.2d 1208 (8th Cir. 1992) ...................................................................................................................................1, 7

*Carlson v. Giacchetti*, 35 Mass. App. Ct. 57 (1993) ...................................................................15

*Cotuit Partners Ltd. Partnership v. Emery*, 2008 WL 2861671 (Mass. Land Ct. July 25, 2008) .................................................................................................................................11

*County Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 747 A.2d 600 (Md. 2000) ...............................................................................................................11

*Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410 (S.D.N.Y. 2007) .............11

*Fitzgerald v. Expressway Sewerage Const., Inc.*, 177 F.3d 71 (1st Cir. 1999) ..............................6

*Friedman v. Jablonski*, 371 Mass. 482 (1976) .............................................................................7

*General Exchange Insurance Corp. v. Driscoll*, 315 Mass. 360 (1944) ......................................10

*In re Hardy*, 146 B.R. 206 (Bankr. N.D. Ill. 1992) ......................................................................14

*In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148 (D. Mass. 2003) ....................................................................................................................................10

*In re Marhoeffer Packing Co., Inc.*, 674 F.2d 1139 (7th Cir. 1982) ...........................................15

*In re McCabe*, 345 B.R. 1 (D. Mass. 2006) ................................................................................10

*Lexington Insurance Co. v. General Acc. Insurance Co. of America*, 338 F.3d 42 (1st Cir. 2003) ....................................................................................................................................11

*Popponesset Beach Association, Inc. v. Marchillo*, 39 Mass. App. Ct. 586 (1996) ......................10

*Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 560 N.E.2d 942, 148 Ill. Dec. 345 (Ill. App. 1 Dist. 1990) .........................................................................................................................11

*Santagate v. Tower*, 64 Mass. App. Ct. 324 (2005) ....................................................................10

*Swajian v. General Motors Corp.*, 916 F.2d 31 (1st Cir. 1990) ...................................................10

*Super Fitness of Malden, Inc. v. WJG Realty Trust*, 2001 WL. 34038576 (Mass. Super. May 2, 2001) ..........................................................................................................................11

*U.S. v. Barrow*, 448 F.3d 37 (1st Cir. 2006) ...............................................................................6

i

ii

*United States v. Pitrone*, 115 F.3d 1 (1st Cir. 1997)..........................................................................6

*Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (Neb. 1996) ........................................................11

**RULES**

Fed. R. Evid. 401 ..............................................................................................................................6

Fed. R. Evid. 402 ...........................................................................................................................6, 7

Fed. R. Evid. 403 ...............................................................................................................7, 9, 12, 13

Mass. Gen. L. ch. 93A .......................................................................................................................3

Mass. Gen. L. ch. 106, § 1-201(37) .......................................................1, 3, 4, 5, 13, 4, 5, 11, 12, 14

Mass. Gen. L. ch. 231, § 85J.............................................................................................................3

ME1 8206644v.2

Plaintiff CSI Leasing, Inc. f/k/a Computer Sales International, Inc. ("CSI") respectfully submits this opposition to defendant Lycos, Inc.'s ("Lycos") self-styled "Motion *in Limine* No. 3: To Exclude Legally Irrelevant Evidence Concerning Whether Schedules 93 and 94 are Leases or Loans" ("Lycos's Motion").

## SUMMARY OF ARGUMENT

Lycos's Motion seeks to exclude highly relevant evidence relating to how Lycos treated and valued its leases by arguing that: (a) such evidence is only relevant to the Mass. Gen. L. ch. 106, § 1-201(37) analysis; and (b) even then, is only relevant to the inquiry under § 1-201(37) as to the value *to CSI* of the computer equipment that Lycos leased.  Lycos is incorrect on both counts.

First, the evidence Lycos seeks to exclude is not just relevant to the § 1-201(37) issue, but rather is also relevant to a number of other issues in the case, such as whether CSI negligently failed to inform Lycos of the financial implications of the lease rewrites and roll-ups and whether Lycos is entitled to equitable relief.  At trial, CSI intends to argue that Lycos, as a pure lessee with no purchase option in its leases, was only interested in knowing the rent and term of its leases, which CSI undeniably disclosed, and that all the other information Lycos now claims should have been disclosed does not comprise the type of information that CSI could reasonably have expected Lycos to be interested in knowing.

In order to establish this defense, however, CSI must show that both it and Lycos always understood their relationship as purely one of lessor/lessee, and treated it as such.  Proving that both CSI and Lycos always treated their relationship as one of lessor/lessee is also necessary to defend against Lycos' argument that it somehow believed that it had a fiduciary relationship with CSI.  *See American Computer Trust Leasing v. Boerboom Int'l, Inc.*, 967 F.2d 1208 (8th Cir. 1992) ("Because [a lease for computer equipment and a contract for maintenance and software

licenses] were ordinary business transactions conducted at arm's length, neither ADP nor ACTL was under a fiduciary duty to disclose the terms of the royalty agreement.").

Evidence relating to Lycos's tax and accounting treatment of its leases is also relevant to CSI's defense that Lycos was not duped by CSI into continually renewing its leases based on any representations by CSI's employee, Paul Stenberg, but rather Lycos knowingly extended its leases in order to lower its monthly obligations, conserve cash, and keep its stock price up (thereby benefiting the Lycos executives who had substantial stock options), and that Lycos understood all along that it would end up paying more in rent than the original cost of the equipment, but was not concerned with this fact.

Second, it is a gross mischaracterization of both the law and the Court's September 26, 2008, Memorandum of Decision and Order ("September 26 Order")  (Docket No. 207) to argue, as Lycos does in its Motion, that the only relevant inquiry under § 1-201(37) is the value of the equipment to CSI.  The Court's September 26 Order, the relevant portions of § 1-201(37), and other caselaw make clear that what matters is not what one party subjectively values the equipment at, but the economic realities of the transaction - *i.e.*, could the equipment objectively be expected to have some value at the end of the leases.

In fact, although Lycos does not specifically say so in the Motion, what Lycos actually is attempting to accomplish through its Motion is to exclude a report prepared by one of its experts, Peter Daley ("Daley") (attached hereto as Exhibit A) which shows that at the end of Schedules 93 and 94, the computer equipment at issue in this case was worth between $284,000 and $1.3 million, and that the total value of all equipment sold to Lycos pursuant to the August 2003 Sales Agreement was, according to Daley, between $922,000 and $2.58 million.  This highly-relevant evidence makes clear that Equipment Schedules 93 and 94 were true leases, not security

2

agreements, because the equipment had significant value at the end of these leases.  *See* September 26 Order at 16 (noting that if the equipment "'had a significant resale value' at the end of the lease term" the transaction is a true lease) (citation omitted).   Furthermore, this valuation is relevant to CSI's defense of Lycos's unjust enrichment and money had and received claims because it shows that the equipment had significant value when purchased by Lycos under the Sales Agreement.  For all of these reasons, as more fully discussed below, Lycos's Motion should be properly denied.

**STATEMENT OF RELEVANT FACTS**

**I.      LYCOS'S MISREPRESENTATION CLAIMS**

Following the Court's September 26 Order, Lycos's remaining counterclaims in this case revolve around two main theories:   (1) that CSI, through its employee Paul Stenberg, made certain fraudulent and negligent misrepresentations and omissions to Lycos; and (2) that Lycos became the title owner of the computer equipment it leased from CSI by application of Mass. Gen. L. ch. 106, § 1-201(37), at the conclusion of the terms of Equipment Schedules 93 and 94, and therefore it was improper for CSI to later sell that equipment to Lycos because Lycos supposedly already owned it.[1]

As for Lycos's fraudulent and negligent misrepresentation by omissions claims, Lycos acknowledges that CSI fully disclosed the terms of each Equipment Schedule, including the amount of rent required to be paid and the term of each lease (*see* Lycos's Objections and

---

[1]       Specifically, Lycos's remaining claims are: (a) fraudulent and negligent misrepresentation in the inducement of rolled-up and rewritten equipment schedules (Counts I and II); (b) fraudulent misrepresentation in the inducement of the Sales Agreement (Count III); (c) fraud in the inducement of the Sales Agreement pursuant to Mass. Gen. L. ch. 231, § 85J (Count IV); (e) Mass. Gen. L. ch. 93A (arising from the alleged fraud in the inducement of the Sales Agreement and the "rewrites" and "roll ups") (Counts V and VII); (f) money had and received (Count XII); (g) unjust enrichment (Count XIII); (h) declaratory judgment as to whether Lycos owes any money to CSI (Count XIV); and (i) declaratory judgment as to whether Lycos can retain the equipment (Count XV). *See* Lycos's Counterclaim.  Count VI was dismissed from this case in the Court's September 26 Order, *id.* at 13, and Counts VIII-XI were dismissed pursuant to an endorsed Order of the Court dated August 29, 2007, in response to CSI's Motion to Dismiss.

3

Responses to CSI's First Set of Interrogatories, Response 2 (admitting that CSI "disclos[ed] to Lycos the amount of the proposed new monthly payment and lease term"))[2], but nevertheless argues that still more information should have been disclosed, such as:

(1)     that "Lycos would pay CSI considerably more than 100% of the original cost of the equipment as a result of the[] 'roll ups' and 'rewrites,' …" (Answer to CSI's First Amended Complaint and Counterclaim of Lycos, Inc., ¶ 22.A.) ("Counterclaim") (Docket No. 122);

(2)     that "Lycos had already paid amounts well in excess of the original equipment costs of some of the leased equipment;" (Counterclaim, ¶ 22.B.);

(3)     that "the net present value of the stream of lease payments Lycos would be making under the proposed rolled-up and rewritten equipment schedules included substantial, non-negotiated 'mark-ups' over the net present value of the amounts owed under the existing equipment schedule(s) …;" (Counterclaim, ¶ 22.C.; Int. Resp. 2 at p. 13);

(4)     "the fact that Lycos had already paid amounts well in excess of the cost and fair rental compensation for some of the leased equipment" (Counterclaim, ¶ 66); and

(5)     "the original acquisition cost of the equipment …" (Int. Resp. 2 at p. 15).

These alleged omissions form the basis of both Lycos's fraudulent and negligent misrepresentation claims.  *See* Lycos Int. Resp. No. 2 at 9.

## II.     LYCOS'S EQUITABLE CLAIMS

Counts XII and XIII of Lycos's Counterclaim assert claims for money had and received and unjust enrichment.  During the May 28, 2008 Summary Judgment Hearing, Lycos explained that these counts were based, in part, on Mass. Gen. L. ch. 106, § 1-201(37), but also had an

---

[2]     Lycos's Objections and Responses to CSI's First Set of Interrogatories ("Int. Resp.") are attached as Exhibit B to CSI's Memorandum of Law in Support of its *Daubert* Motion to Exclude the Testimony of Lycos' Expert Charles Cross (the "Cross Motion *in Limine*") (Docket No. 224).

independent component under general principles of equity. *See* Transcript of May 28, 2008 Summary Judgment Hearing at p. 18:9-17 (Docket No. 205) ("And the third theory [in addition to the 1-210(37) argument] is simply the equitable argument … which is Lycos paid $73 million to rent and an additional $3.775 million to purchase equipment that had an original cost of only $45 million…  So, we have an equitable claim there … for CSI receiving well in excess of any fair return.").

### III.   LYCOS'S MASS. GEN. L. CH. 106, § 1-201(37) CLAIM

As for the Mass. Gen. L. ch. 106, § 1-201(37) component of Lycos's Counts XII and XIII, Lycos argues that it is entitled to own the computer equipment it leased from CSI because the end date of Schedules 93 and 94 exceeded the remaining useful economic life of the equipment.  This theory also forms the basis for Lycos's declaratory judgment counts (Counts XIV and XV).  A critical issue in this case, therefore, is how much the computer equipment that Lycos leased from CSI was worth at the end of Schedules 93 and 94.

### IV.   THE LYCOS PORTFOLIO ANALYSIS

During the discovery phase of this case, Lycos was ordered to produce a document entitled "Lycos Portfolio Analysis" (attached hereto as Exhibit A).  This is a spreadsheet prepared by one of Lycos's experts, Daley, which shows his estimation of the value of the computer equipment at different points during the life of Equipment Schedules 93 and 94.  For instance, Daley found that at the time Schedules 93 and 94 commenced, the equipment was worth between $8 million and $14 million to Lycos, and between $3.5 million and $6.3 million to CSI.  Then, at the conclusion of Schedules 93 and 94, Daley estimates that the equipment was worth approximately $1.3 million to Lycos and $288,000 to CSI, and that at the time Lycos purchased this equipment pursuant to the Sales Agreement it was worth between $922,000 and $2.58 million.  While CSI's experts may take issue with some of these figures, the fact that

Lycos's own expert found that the equipment had significant value at the end of Schedules 93 and 94 is clearly relevant to show that the terms of Schedules 93 and 94 did not exceed the remaining economic life of the equipment.  Likewise, the fact that Lycos's own expert found that the equipment was worth as much as $2.58 million at the time of the Sales Agreement shows that Lycos's unjust enrichment and money had and received claims seeking to challenge the equities of the Sales Agreement have no merit.

## ARGUMENT

Evidence showing: (a) that the relationship between Lycos and CSI was always understood by both parties to be purely one of lessor/lessee; (b) that Lycos treated its transactions with CSI as leases and obtained certain tax and accounting benefits from that treatment; and (c) that the equipment retained significant value at the end of Schedules 93 and 94, is all highly relevant to this case.  *See* Fed. R. Evid. 402 ("[a]ll relevant evidence is admissible …." *Id.*); Fed. R. Evid. 401 (defining "relevant evidence" to mean, "evidence having *any tendency* to make the existence of *any fact that is of consequence* to the determination of the action *more probable or less probable* than it would be without the evidence.") (emphasis added).  As the First Circuit has noted, "[u]nder federal evidentiary standards, the relevancy hurdle is low."  *Fitzgerald v. Expressway Sewerage Const., Inc.*, 177 F.3d 71, 75 (1st Cir. 1999).

Moreover, while this evidence may be prejudicial to Lycos in the sense that it hurts Lycos's case, this is obviously not the relevant inquiry for exclusion.  *See U.S. v. Barrow*, 448 F.3d 37, 43 (1st Cir. 2006) ("While the testimony was harmful in the sense that it was relevant and probative, this does not make the testimony unduly prejudicial."); *United States v. Pitrone,* 115 F.3d 1, 8 (1st Cir. 1997) ("Virtually all evidence is prejudicial - if the truth be told, that is almost always why the proponent seeks to introduce it - but it is only *unfair* prejudice against which the law protects.").  To the contrary, all relevant evidence is admissible so long as its

ME1 8206644v.2

probative value is not substantially outweighed by the risk of unfair prejudice, and it is not merely cumulative, which this evidence is not. *See* Fed. R. Evid. 402, 403.

**I.      THE EVIDENCE LYCOS SEEKS TO EXCLUDE IS RELEVANT TO CSI'S DEFENSE OF LYCOS'S MISREPRESENTATION CLAIMS**

Lycos asserts in this case that CSI failed to disclose certain material information to it. *See* discussion at pp. 2-4, above.  In the Court's September 26 Order, however, the Court found that CSI had no general duty to disclose and that a duty to disclose can only be found if CSI was Lycos's fiduciary.  *See* September 26 Order at 10-11.  As a preliminary matter, therefore, CSI must be able to offer evidence at trial that the relationship between it and Lycos was always purely one of lessor/lessee - and that both parties understood this and acted accordingly - because the law is clear that a lessor-lessee relationship does not give rise to any fiduciary obligations. *See American Computer Trust Leasing v. Boerboom Int'l, Inc.*, 967 F.2d 1208 (8th Cir. 1992) ("Because [a lease for computer equipment and a contract for maintenance and software licenses] were ordinary business transactions conducted at arm's length, neither ADP nor ACTL was under a fiduciary duty to disclose the terms of the royalty agreement.").  *See also Friedman v. Jablonski*, 371 Mass. 482, 485 (1976) ("this case does not involve a fiduciary relationship between the plaintiffs and the defendants, because the defendants engaged in an arm's length transaction with the sellers and the sellers' broker").

If Lycos can somehow show that CSI was its fiduciary, however, the next inquiry will be what CSI was under an obligation to disclose.  The Restatement (Second) of Torts § 551 (Liability for Nondisclosure), states:

> (2)      One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them ….

*Id.*  Comment *c.* of the Restatement (Comment on Subsection (2)), explains, however, that:

ME1 8206644v.2

> A person under the duty stated in this Subsection is required to disclose *only those matters that he has reason to know will be regarded by the other as important in determining his course of action in the transaction in hand*. He is therefore under no duty to disclose matter that the ordinary man would regard as unimportant unless he knows of some peculiarity of the other that is likely to lead him to attach importance to matters that are usually regarded as of no moment.

*Id.* (emphasis added).

Here, CSI is entitled to present evidence that both it and Lycos always understood that the dealings between them were strictly those of lessor/lessee because it goes to what CSI should have disclosed (even assuming it is found to have been Lycos's fiduciary). For instance, CSI intends to argue at trial that the applicable standard of care would not have required CSI to disclose to Lycos the original cost of the equipment it was leasing to Lycos, or that its total lease payments were going to exceed the original equipment cost, because this is not information a lessee would be expected to be interested in knowing - particularly since Lycos never negotiated for a purchase option for any of its leases and Lycos already knew the original cost of the equipment because it selected and purchased it, and internally tracked its lease payments to CSI (indeed, it was required to do so for purposes of preparing its own financial statements), and thus fully understood that its total lease payments to CSI were going to exceed the original equipment cost.

Likewise, CSI will argue that it was not obligated to disclose to Lycos that it might pay more in rent than the original cost of the equipment if Lycos kept extending its leases because: (a) this is common knowledge that any reasonably intelligent lessor would understand; (b) Lycos did not originally express an interest in owning the equipment; and (c) Lycos's stated interest was lowering its monthly rental payments, not saving the greatest amount of money overall. Along these same lines, a lessee would not be expected to be concerned with knowing the net present value of the stream of lease payments on a rewritten lease versus the net present value of

8

its existing leases if the lessor's main concern was simply to lower its overall lease payments, which CSI intends to show at trial was what Lycos told it was its primary concern.

In fact, CSI will show at trial that Lycos fully understood all of the implications of the roll-ups and rewrites, but that Lycos knowingly chose to extend its leases anyways in order to lower its monthly expenses, keep the cost of the equipment off of its balance sheet, and avoid a large capital expense, all of which made Lycos appear more profitable on paper, thereby increasing its stock price.  This evidence is highly relevant because it shows that the *true* reason for Lycos's rewrites and roll-ups is not Lycos' claimed reliance on the statements and omissions of CSI employee Paul Stenberg, but Lycos's conscious decision to achieve its own internal objectives.

CSI will also argue at trial that it had no reason to disclose Lycos's invented concept of "mark-ups" to Lycos because a lessee would only be expected to be interested in knowing its monthly lease payments and the term of the lease, not *how the rent was calculated* or how much profit for CSI was built into the rent.  For instance, a person renting an apartment does not typically care what the profit margin built into the rent is for the landlord; he or she simply cares to know the monthly rent amount and the term of the lease.

In order to properly establish these defenses, however, CSI must be permitted to present evidence showing: (a) that the relationship between Lycos and CSI was always understood by both parties to be purely one of lessor/lessee; and (b) that Lycos treated its transactions with CSI as leases and obtained certain tax and accounting benefits from that treatment.[3]   For these reasons alone, Lycos' Motion should be properly denied.

---

[3]     Lycos also argues that this evidence should be excluded because it will confuse the jury in its § 1-201(37) analysis.  This concern, however, can be easily cured with proper jury instructions and/or a limiting instruction and is not a significant enough consideration to merit excluding the testimony.  *See* Fed. R. Evid. 403, Adv. Comm. Notes ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to

## II.      THE EVIDENCE LYCOS SEEKS TO EXCLUDE IS RELEVANT TO CSI'S DEFENSE OF LYCOS'S UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED CLAIMS

The evidence Lycos seeks to exclude is also relevant to CSI's defense of Lycos's unjust enrichment and money had and received claims.  The elements of a claim for unjust enrichment are: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law."  *In re McCabe*, 345 B.R. 1, 9 (D. Mass. 2006).  Similarly, "an action for money had and received will lie where the defendant has received money or its equivalent which in equity and good conscience belongs to the plaintiff."  *General Exchange Ins. Corp. v. Driscoll*, 315 Mass. 360, 365 (1944).

However, it is well-settled that actions for money had and received and unjust enrichment are not available when there was an express contractual arrangement between the parties.  *See In re McCabe*, 345 B.R. at 9 ("Where the relationship of the parties is governed by contract, 'the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies'.") (quotation omitted); *In re Lupron Marketing and Sales Practices Litigation*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) ("Where a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies…. This principle is simply an extension of the fifth element of the doctrine, that where a plaintiff has an adequate remedy at law, a claim of unjust enrichment is unavailable."); *Popponesset Beach Ass'n., Inc. v. Marchillo*, 39 Mass. App. Ct. 586, 593 (1996) (holding that unjust enrichment is not available when there is a "suitable remedy at law"); *Santagate v. Tower*, 64 Mass. App. Ct.

---

the probable effectiveness or lack of effectiveness of a limiting instruction); *Swajian v. General Motors Corp.*, 916 F.2d 31, 34-35 (1st Cir. 1990) (holding that it was error to exclude evidence of intoxication because, while prejudicial, "[t]he district court only has discretion to exclude evidence if the probative value is 'substantially outweighed by unfair prejudice.'").

10

ME1 8206644v.2

324, 329 (2005) ("An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law."). *See also Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 422 (S.D.N.Y. 2007) ("Because the parties entered into an express contract with respect to the issues before the Court, quasi-contractual claims, such as money had and received and unjust enrichment, cannot be maintained.").[4]

Lycos' unjust enrichment and money had and received claims, in addition to being based on Mass. Gen. L. ch. 106, § 1-201(37), make an equitable claim that Lycos essentially paid too much in rent and should get some of its money back. While Lycos has never provided any legal support for this dramatic re-writing of the law - *i.e.*, that it is permissible for a court to rewrite a contract between two commercial parties to make it more "fair" to one side - and indeed the law is to the contrary[5], this theory nevertheless remains in the case absent a contrary order from the Court and thus CSI is entitled to offer evidence to rebut it.

---

[4]        *See also County Com'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100-101, 747 A.2d 600, 610 (Md. 2000) ("Even if the County was enriched, such enrichment was not unjust because it was in strict compliance with the terms of their contract. ***To hold otherwise would turn the basic foundation of contract law on its ear***. 'This rule holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations.'") (citation and internal quotation marks omitted); *Prodromos v. Poulos*, 202 Ill. App. 3d 1024, 1032, 560 N.E.2d 942, 948, 148 Ill. Dec. 345, 351 (Ill. App. 1 Dist. 1990) ("As a rule, plaintiffs cannot pursue quasi-contractual claims where there is an express contract between the parties…. This rule holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore his expectations. Quasi-contract, thus, is available only in the absence of an express agreement and 'is not a means for shifting a risk one has assumed under contract.'") (citations omitted); *Washa v. Miller*, 249 Neb. 941, 950, 546 N.W.2d 813, 818-19 (Neb. 1996) ("The doctrine of unjust enrichment is recognized only in the absence of an agreement between the parties…. The doctrine does not operate to rescue a party from the consequences of a bad bargain…. In other words, the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract."). *See also* 66 Am. Jur. 2d Restitution and Implied Contracts § 24 ("an action for unjust enrichment cannot lie in the face of an express contract. ***The rule that an express contract bars a quasi-contract claim holds the contract parties to their agreement and prevents a party who made a bad business decision from asking the court to restore its expectations***.") (footnotes omitted) (emphasis added).

[5]        *See Cotuit Partners Ltd. Partnership v. Emery*, 2008 WL 2861671 (Mass. Land Ct. July 25, 2008) (noting that "equity 'follows the law'; it 'is not an all-purpose judicial tool by which the 'right thing to do' can be fashioned into a legal obligation" and on this basis refusing to modify an easement) (citation omitted); *Super Fitness of Malden, Inc. v. WJG Realty Trust*, 2001 WL 34038576, at *4-5 (Mass. Super. May 2, 2001) (refusing to "distort the plain language of the relevant [contract] provision[s] by interpreting them as giving [plaintiff] more than it bargained for [because] … the language of the relevant [ ] provisions does not grant such a significant and material right to [plaintiff]") (citations omitted); *Lexington Ins. Co. v. General Acc. Ins. Co. of America*, 338 F.3d 42, 50 (1st

An important component of CSI's defense to this claim will be that Lycos always understood itself to be a lessee, and further understood that by continually extending its leases it might eventually end up paying significantly more for the equipment than if it had purchased it outright, but it nevertheless made the conscious business decision to lease the equipment so as to derive numerous tax and accounting benefits.   Such evidence shows that Lycos was not defrauded or taken advantage of by CSI, but rather made a conscious business decision to act as it did, and thus equity would not be served by returning any money to Lycos.   The Daley valuation, discussed in greater detail below, which Lycos also seeks to exclude, is further relevant to CSI's defense of Lycos' unjust enrichment and money had and received claims because it shows that at the time Lycos purchased the equipment from CSI pursuant to the Sales Agreement it was worth, according to one of Lycos's own experts, between $922,000 and $2.58 million, and thus was far from an "unjust" transaction.

## III.   THE EVIDENCE LYCOS SEEKS TO EXCLUDE IS RELEVANT TO CSI'S DEFENSE OF LYCOS' M.G.L. CH. 106, § 1-201(37) CLAIM

Lycos further argues in the Motion that the Court should exclude expert testimony concerning "the value of the equipment on schedules 93 and 94 *to Lycos* as of the end of the lease terms as projected from lease inception," on relevance and Fed. R. Evid. 403 grounds. Lycos's Motion at 2.[6]   Later, Lycos explains that what it is primarily seeking to exclude is the Daley spreadsheet showing, among other things, that the equipment Lycos was leasing from CSI

---

Cir. 2003) ("absent some amphiboly, a court cannot, in the name of equity, rewrite the language of [a] … contract"). Even Mass. Gen. L. ch. 106, § 1-201(37) recognizes that it is perfectly appropriate for a lessor to collect a sum "substantially … greater than the fair market value of the goods at the time the lease is entered into …" and this does not create any ownership rights in the leased property. *See id.*

[6]   Evidence relating to Lycos's accounting treatment of its leases is also relevant to the §1-201(37) analysis. For instance, CSI intends to show at trial that Lycos treated its leases as operating leases, which it was prohibited from doing if the useful economic life of the lease exceeded 75%.   As discussed below, evidence that Lycos determined that Schedules 93 and 94 did not exceed the remaining useful economic life of the equipment is highly relevant to this case.

12

on Schedules 93 and 94 had significant value both at lease inception and at the end of the lease. *Id*. at 5.  This evidence is among the ***most important and most relevant*** evidence in this case, however, because it directly contradicts Lycos's contention that the terms of Schedules 93 and 94 were for the remaining useful economic life of the equipment (thereby entitling Lycos to own the equipment).  It is also highly relevant because it comprises calculations ***by Lycos's own*** ***expert*** showing that the equipment Lycos leased under Schedules 93 and 94 had a ***significant*** ***value*** when Schedules 93 and 94 terminated.  If the jury credits this testimony, Lycos's § 1-201(37) claim cannot succeed.

Lycos attempts to exclude this vital evidence by misrepresenting to the Court what the Court's September 26 Order holds.  Specifically, Lycos's Motion incorrectly argues that the September 26 Order holds that the only relevant inquiry is the value of this equipment at lease inception to CSI, and that the perceived value to Lycos is not relevant.  *See* Lycos's Motion at 3. *See also id.* at 4 (the projected value of the equipment *to Lycos* [is] wholly irrelevant.") (emphasis in original).  Based on this alleged lack of relevance, Lycos further argues the evidence should be excluded on Rule 403 grounds.

In its September 26 Order, however, the Court declined to accept Lycos' argument on this point, and expressly recognized that the legal standard requires the factfinder to evaluate the "economic realities" of the transaction including "objective economic criteria."  *See* September 26 Order at 17.  In so doing, the Court further held that "CSI's subjective belief that the equipment had no residual value for accounting purposes is therefore not conclusive, ***particularly because Lycos held a contrasting belief regarding the economic life of the*** ***equipment***."  *Id.* (emphasis added).

ME1 8206644v.2

Thus, the Court expressly held that, in objectively determining what the equipment's economic life was, it is relevant to determine *how Lycos valued the equipment*.  The Court expressed this view again in the Order when it held, "[t]he fact that Lycos was willing to pay nearly four million dollars for the equipment … *suggests that the equipment may have retained 'significant resale value' at the end of the lease term*."  *Id.* at 16 (emphasis added).  In fact, not only did the Court hold that the value of the equipment to CSI was not dispositive, and that the value of the equipment to Lycos was clearly relevant, the Court also emphasized that the analysis is ultimately an objective one.  *See id.* at 19 ("this theory depends solely on whether at the time the parties entered into Schedules 93 and 94 the equipment had an economic life longer than the lease term").

In sum, the Court never held what Lycos now claims: "that the only relevant valuation is that *to CSI*," Motion at 3, and this reading is further contradicted by the text of Mass. Gen. L. ch. 106, § 1-201(37)(a) itself, which says nothing about the value *to the lessor*, but rather simply states that the inquiry is whether "the original term of the lease is equal to or greater than the remaining economic life of the goods" which is to be "determined with reference to the facts and circumstances at the time the transaction is entered into."  *Id.*

Since the relevant inquiry is what the remaining economic life of the equipment was, objectively speaking, there can be little question that Daley's valuation, which assesses the value of the equipment to *both* CSI and Lycos, both at lease inception and at the end of the leases, is relevant to determining the objective worth of the equipment.  As the court found in *In re Hardy*, 146 B.R. 206 (Bankr. N.D. Ill. 1992), the analysis under § 1-201(37) is whether the lease "covers the total useful life of the" equipment, and if the equipment being returned "would have significant value in the real world," the agreement is a true lease.  *Id.* at 210.

14

Similarly, in *Carlson v. Giacchetti*, 35 Mass. App. Ct. 57 (1993), the court found that if "upon termination of the lease" the lessor "would … be entitled to a return of the equipment ***which still had a significant resale value***" this "establishes that [the lessor] reserved an economically significant reversionary interest in the lease goods" and further "requires the conclusion that the lease … is a true lease and was not intended as a security agreement." *Id.* at 64 (internal quotation marks omitted) (emphasis added) (cited in the September 26 Order at 16). *See also In re Marhoeffer Packing Co., Inc.*, 674 F.2d 1139, 1145 (7th Cir. 1982) ("An essential characteristic of a true lease is that there be something of value to return to the lessor after the term.") (cited in the September 26 Order at 16).

As Daley found that the equipment had a value of between $288,000 and $1.3 million at the end of Schedules 93 and 94, this evidence squarely addresses the question of whether the equipment had a significant resale value at the end of Schedules 93 and 94, and thus is highly relevant, and not unduly prejudicial.[7]

## CONCLUSION

For all of the foregoing reasons, CSI respectfully requests that this Court deny Lycos' self-styled *Motion in Limine No. 3: to Exclude Legally Irrelevant Evidence Concerning Whether Schedules 93 and 94 are Leases or Loans*.

---

[7]     As further discussed in Section II, above, the Daley valuation is also relevant to issues surrounding the Sales Agreement because it shows that the equipment had significant value at the time the Sales Agreement was executed.

Respectfully submitted,

CSI LEASING, INC. f/k/a
COMPUTER SALES INTERNATIONAL, INC.

By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
David Himelfarb, BBO No. 649596
dhimelfarb@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

Dated: March 13, 2009

## CERTIFICATE OF SERVICE

I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically by CM/ECF notification, by e-mail and by first class mail, postage prepaid, this 13th day of March, 2009.

/s/ Edward W. Little, Jr._____
Edward W. Little, Jr.

16

ME1 8206644v.2