UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| LYCOS, INC., | ) | C.A. No. 05-10017- RWZ |
| Defendant, | ) | |
| | ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) | |
| | ) | |
| Trustee Process Defendant. | ) | |

**OPPOSITION OF PLAINTIFF CSI LEASING, INC.
TO "LYCOS' MOTION *IN LIMINE* NO. 1: TO EXCLUDE ALL
ARGUMENT AND EVIDENCE CONCERNING A DEROGATORY PHRASE"**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a
Computer Sales International, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

SUMMARY OF ARGUMENT ...................................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................................................3

ARGUMENT ...............................................................................................................................7

A.     MR. RIPPS' DISPARAGING REMARK IS RELEVANT AND HIGHLY
       PROBATIVE ...................................................................................................................7

B.     THE PROBATIVE VALUE OF MR. RIPPS' REMARKS IS NOT
       "SUBSTANTIALLY OUTWEIGHED" BY THE RISK OF UNFAIR
       PREJUDICE ....................................................................................................................9

C.     OTHER AVAILABLE EVIDENCE IS NOT AS PROBATIVE OF MR. RIPPS'
       STATE OF MIND .........................................................................................................12

CONCLUSION...........................................................................................................................13

ME1 8204494v.1

## TABLE OF AUTHORITIES

**CASES**

*Cage v. Newland*, C.A. No. 98-3267, 1999 U.S. Dist. LEXIS 18553 (N.D. Cal. Nov. 24, 1999) at *21-22 ................................................................................................ 3, 12

*Cheng v. MINACT, Inc.*, 95-3946, 103 F.3d 128, 1996 WL 724372 *3-*4 (6th Cir. Dec. 16, 1996) ................................................................................................................ 8

*Daigle v. Maine Medical Center, Inc.*, 14 F.3d 684 (1st Cir. 1994) ................................. 10

*Ferrara & DiMercurio v. St. Paul Mercury Insurance Co.*, 240 F.3d 1 (1st Cir. 2001) ................................................................................................................................. 10

*Klingel v. State*, 518 So. 2d 853 (Ala. Ct. Crim. App. 1987) ..................................... 3, 12

*McElwain v. Harris*, C.A. No. 1:05-CV-93-JAW, 2006 WL 931920 (D.N.H. Apr. 6, 2006) .............................................................................................................................. 11

*Ohio v. Deir, No. 2005-L-117, 2006 Ohio App. LEXIS 6786 (Ohio Ct. App. Dec. 22, 2006)* .............................................................................................................. 3, 12

*Onujiogu v. United States*, 817 F.2d 3 (1st Cir. 1987) .................................................... 10

*Rubert-Torres v. Hospital San Pablo, Inc.*, 205 F.3d 472 (1st Cir. 2000) ...................... 10

*Tennessee v. Martin*, C.C.A. No. 299, 1990 Tenn. Crim. App. LEXIS 170 (Tenn. Ct. Crim. App. Mar. 1, 1990) ........................................................................................ 12

*United States v. Flemmi*, 402 F.3d 79 n.8 (1st Cir. 2005) ............................................. 11

*Verdana Beach Club L.P. v. W. Sur. Co.*, 936 F.2d 1364 (1st Cir. 1991) ...................... 11

**RULES**

Fed. R. Evid. 401 .................................................................................................................. 7

Fed. R. Evid. 402 .................................................................................................................. 7

Fed. R. Evid. 403 ....................................................................................................... 7, 10, 11

Plaintiff CSI Leasing, Inc. f/k/a Computer Sales International, Inc. ("CSI"), respectfully opposes *Lycos' Motion in Limine No. 1, Docket No. 217* ("Lycos' Motion") which seeks to exclude a derogatory – but telling and highly probative – remark made by a key Lycos officer who was a decision maker at Lycos during the period when Lycos claims that it had a fiduciary relationship with CSI, and was an employee of Lycos when he made the remark (contrary to the claim in Lycos' Motion).

This evidence bears directly on the alleged "trust and confidence" in CSI that Lycos has put squarely at issue in alleging that CSI became Lycos' "fiduciary," such that it owed CSI extraordinary levels of disclosure concerning all aspects of Lycos leasing decisions (despite the fact Lycos never asked CSI for such extraordinary assistance and guidance, and never opened its books to assist CSI in performing its alleged fiduciary duties), and any minimal prejudicial aspect of the evidence is not substantial in light of the high probative value of Mr. Ripps' unfortunate remarks.

## SUMMARY OF ARGUMENT

In its multimillion dollar counterclaim against CSI, its former equipment lessor, Lycos is alleging that it was defrauded by CSI into extending its equipment leases, supposedly by virtue of CSI failing to disclose the financial implications of those lease extensions to Lycos.  Because CSI, as a matter of law, had no duty to disclose such "financial implications" to Lycos absent a fiduciary relationship with Lycos, Lycos is trying to prove that it "trusted" CSI – and that CSI allegedly accepted that trust – to the point where a fiduciary relationship arose in which CSI owed Lycos a duty to advise Lycos regarding its leasing transactions.[1]

---

[1]     The Court has already held on summary judgment that the transactions at issue were arms-length and simply between a lessor and lessee and that no disclosure obligations were required absent the creation of a fiduciary relationship.  *See Memorandum of Decision and Order* ("SJ Order"), dated September 26, 2008 (Dkt. No. 207).

A central issue with respect to this claim is whether in fact Lycos trusted CSI.   The evidence that the Lycos Motion seeks to exclude, is a negative and telling comment by Lycos executive Michael Ripps, Lycos' Director of Finance from late 1997 until fall 2000 (and a key person at Lycos in connection with its leasing relationships during that time), about CSI sales representative, Paul Stenberg, Lycos' key point of contact with CSI.   The comment is directly relevant to the issue of whether in fact Lycos reposed trust and confidence in Mr. Stenberg, because common sense tells us that people rarely place trust and confidence in people they dislike and call "f'ing" anything.

In attempting to exclude Mr. Ripps negative description of Ms. Stenberg, the Lycos Motion again recites the facts inaccurately in an effort to minimize the relevance of this highly probative statement concerning the state of mind of a senior officer and decision maker of Lycos toward Mr. Stenberg.   Contrary to what Lycos claims in the Motion, for example, Mr. Ripps *was still an employee of Lycos*, on Lycos' payroll, and still under its control at the time he made the telling statement, as well as at the time the events in question occurred.   The evidence is highly probative that Mr. Ripps – who at the time he made the statement had known Paul Stenberg for more than two years while Mr. Ripps was the person at Lycos "responsible for [Lycos'] relationship with CSI" – fully agreed with Mr. Karol's statement that Mr. Stenberg was a "worthless liar," and was viewed by Ripps as what he described in his email (an "f'ing goy").

Though Lycos glosses over the probative value of this statement in favor of highlighting its allegedly unfair prejudicial effect, it ignores the fact that this statement – which is an admission by Lycos – is very relevant to the central issue in this case:   that is, whether there was "trust" reposed by Lycos, and accepted by CSI, sufficient to create a fiduciary relationship.   The vehemence of Mr. Ripps' attack on Mr. Stenberg of CSI is highly probative that, among Lycos'

decision makers, there was no trust reposed in Mr. Stenberg, and that in fact, they did not even like him personally.

As to Lycos' argument that the evidence of Mr. Ripps' statement is "diminished by other evidence available to CSI" or is somehow "cumulative," it clearly is not.  Though Mr. Ripps belatedly expressed remorse for his statement while being deposed -- after being prepared by Lycos, prior to the deposition, to address the issue -- there is no other evidence from Mr. Ripps which demonstrates so expressively and forcefully his dislike and mistrust of Paul Stenberg, who Lycos now claims it trusted so much that it had a fiduciary relationship with him, and this is significant, because Mr. Ripps was a key decision maker at Lycos concerning its equipment leasing policies from 1997 until the fall of 2000.

For all of these reasons, this evidence cannot fairly be excluded.  *See, e.g., Cage v. Newland*, C.A. No. 98-3267, 1999 U.S. Dist. LEXIS 18553 (N.D. Cal. Nov. 24, 1999) at *21-22 (recordings of "offensive language" in a telephone call concerning a defendants' threats against the complainant were not "unduly prejudicial" and were admissible); *Klingel v. State*, 518 So. 2d 853 (Ala. Ct. Crim. App. 1987) ("vulgar and belligerent language" were probative of intoxication and, despite obvious prejudice to defendant, were admissible); *Ohio v. Deir, No. 2005-L-117, 2006 Ohio App. LEXIS 6786 (Ohio Ct. App. Dec. 22, 2006)* at *9-10 (appellant's "abusive and vulgar language" held admissible, despite prejudicial impact of statements, because they tended to demonstrate appellant acted intentionally in kicking police officers).

## STATEMENT OF RELEVANT FACTS

The statement at issue – in which Michael Ripps, Lycos' director of finance, referred to Paul Stenberg with the derogatory term "fucking goy" – was made in an e-mail Mr. Ripps sent responding to an email sent by Peter Karol, an Associate General Counsel in Lycos' in-house counsel's office.  The email from Mr. Karol was expressing his extreme displeasure at having to

pay a bill for a dinner to which Mr. Stenberg had invited him and other Lycos employees but

which Mr. Stenberg could not ultimately attend.  Mr. Stenberg ultimately personally reimbursed

Mr. Karol, though he was unable to obtain reimbursement for the dinner from CSI.

### The Sequence Leading to Mr. Ripps' Disparaging E-Mail

The sequence of the e-mail correspondence is telling.  Mr. Ripps sent an email to Mr.

Stenberg on August 15, 2000, reminding him of the dinner and asking that he reimburse Mr.

Karol:

> Hello Paul,
>
> I hope all is well with you and you've had a good summer – I'm sorry I
> missed you n my last couple of weeks in Boston.  Before I left, we had a
> dinner at Morton's which you graciously offered to cover (even though
> you unfortunately couldn't make it); Pete Karol in our legal group picked
> up the tab, and I believe that I forwarded you the receipt a while ago for
> reimbursement.  Do you mind following up to see if you received the bill,
> and if you didn't please let me know (via e-mail)?  And if you did receive
> it, could you forward Pete [Karol] the money?  Pet has gambling debts to
> cover and would really appreciate the funds (joking), but seriously Pet did
> everyone a favor by picking up the check.
>
> Thanks in advance and drop me a note to let me know how everything is
> going; I can still be reached at my old e-mail address.
>
> Michael

*See* Lycos' Motion, Ex. A at 3.  Mr. Stenberg's response was cordial and brief:  "[h]ey, great

hearing from you.  Please, please, keep in touch.  Hope the family is adjusting fine.  I will call

him [Mr. Karol] shortly."  *Id.* at 2.

Using less cordial terms, Mr. Ripps privately forwarded the email to Mr. Karol, stating

that "[u]nfortunately, he [Mr. Stenberg] needs to be pushed; his number is 617-928-3535 if you

want to harass him."  Mr. Karol's subsequent private response to Mr. Ripps was candid and

blunt:

4

***The Guy [Stenberg] is a worthless liar!*** See below, he already responded to your prior email August 16! He's now acting like he just got it. He called me yesterday and introduced himself as a representative from my credit card company wanting to know why I didn't pay my bill yet. ***What an asshole.***

Brian [Lucy of Lycos] agreed last week to run this through Lycos, so I'll get reimbursed for the meal next paycheck (next Friday). The iron is that if his check really does get here today, I have to sign it over to Brian and lose another week's float.

***I hate Stenberg*** – he should offer me something for the inconvenience.

*Id.* at 1 (emphasis added). Rather than defending someone in whom Mr. Ripps and others at Lycos supposedly placed their trust and confidence, Mr. Ripps responded equally bluntly: "***[F]ucking goy! [T]ell him we'll pay CSI `shortly.***'" *Id.* (emphasis supplied).

## Mr. Ripps Was a Salaried Lycos Employee At All Times

When he wrote the emails above, Mr. Ripps was employed and being paid by Lycos, and had just been assigned to a joint venture of Lycos in Asia referred to as "Lycos Asia." When confronted at his deposition with internal Lycos, Inc. documents showing not only that Lycos continued to pay his salary in 2002 and 2003 under the terms of his Lycos employment agreement while he was stationed in Asia,[2] but also that he continued as a participant in Lycos, Inc.'s Savings and Retirement 401(k) Plan,[3] Mr. Ripps claimed he "couldn't recall the exact way it happened," though he thought that this was correct.[4] Mr. Ripps testified that he left Lycos, Inc.

---

[2]      *See* Plaintiff's Deposition Exhibit ("Dep. Ex.") 345 at 2 (accountant worksheet produced by Lycos' auditor Deloitte & Touche, dated February 2003, indicating that Lycos "Corporate in Waltham pays the salary [of Mr. Ripps] and bills the amount back to Asia. [Lycos] Corporate pays his salary under the terms of the employment agreement") (attached hereto as <u>Ex. A</u>)

[3]      *See* Plaintiff's Dep. Ex. 346 ("Listing of Highly Compensated Employees as of December 31, 2002 – Lycos, Inc. – Savings and Retirement 401(k) Plan") (attached hereto as <u>Ex. B</u>)

[4]      Deposition of Michael Ripps ("Ripps Dep."), dated Nov. 14, 2006, at 21:21-24:8 (admitting he was paid by Lycos, Inc. while he was at its Asian division and was still, as of December 31, 2002, a participant in Lycos 401(k) plan, his name appearing on a "Listing of Highly Compensated Employees" of Lycos, Inc. Selected portions of Mr. Ripps' deposition are attached hereto as <u>Exhibit C</u>.

ME1 8204494v.1

much later on December 31, 2004 because his "contract ended and the company [Lycos] was being sold."[5]

Clearly, Mr. Ripps was not a low-level employee only tangentially related to Lycos' equipment leasing activities.  Between December 1997 and the fall of 2000, Mr. Ripps was the main officer at Lycos overseeing and handling the company's equipment leases.   When Mr. Ripps first joined Lycos in late 1997, he testified that "the relationship with the equipment lease companies was turned over to me," including Lycos' leases with CSI with which he worked and for whose leases he had responsibility.[6]  Mr. Ripps generally recalled that, from early 1998 until he left in the fall of 2000, it was the practice "for CSI to send the fully executed equipment schedules or leases to [Mr. Ripps'] attention after they were signed by CSI."[7]  In his job duties, he always had the opportunity to consult with Lycos' in-house counsel on any issues, and he did so on occasion though he did not like to as a matter of practice.[8]  He profited well from his work at Lycos, having received approximately $1 million in the exercise of his stock options in addition to years of six figure salaries.[9]

### Mr. Ripps' Relationship With Mr. Stenberg Was Admittedly a "Business Relationship"

Though Mr. Ripps testified he had worked with Mr. Stenberg for "almost two years . . . on and off, we retained a ***business relationship*** with CSI for my entire tenure there, so there was no reason to think I wouldn't trust him or like him."[10]  Despite Lycos' claim that it "trusted" Mr. Stenberg in a fiduciary way, Mr. Ripps – the manager of Lycos' equipment leasing relationships

---

[5]      Ripps Dep. at 29:23-30:5.
[6]      Ripps Dep. at 26:17-20; 33:24-34:3; 94:3-9.
[7]      Ripps Dep. at 34:23-35:12.
[8]      Ripps Dep. at 43:21-44:10; 47:9-18.
[9]      Ripps Dep. at 13:19-22.  As a stock option holder in Lycos, Mr. Ripps acknowledged that he had a "financial interest in the price of Lycos stock going up" and that he "would like to see my investment [in Lycos] increase."  *Id.* at 15:2-12.
[10]     Ripps Dep. at 69:24-70:6 (emphasis added).   Though Mr. Ripps here mentions he "liked" and "trusted" Mr. Stenberg – and Lycos undoubtedly will infer from this a fiduciary relationship – his relationship with Mr. Stenberg is simply, as Mr. Ripps said, a "business relationship."

6

– could not recall any specifics of conversations he had during his two-year relationship with Mr. Stenberg.[11]  Mr. Ripps further recalled generally that Lycos took "some steps to cut expenses" during the 1998-2000 time period, though he cannot recall more than that he possibly had "some involvement in taking some steps to cut expenses during this period."[12]  He further recalled that Lycos' monthly lease expenses to CSI were its biggest equipment lease expense in terms of dollar amount.[13]

## ARGUMENT

### A.    Mr. Ripps' Disparaging Remark is Relevant and Highly Probative

For admission at trial, evidence must be relevant in that it makes the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401, 402.  Though relevant, evidence is still excludable where its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

In its Motion, Lycos glosses over the probative value of Mr. Ripps' derogatory characterization of Mr. Stenberg and concentrates instead on prejudicial aspects of Mr. Ripps' statements.  Motion at 3-4.  This approach, however, ignores the fact that Mr. Ripps' remarks bear directly on, and are highly probative of, the central issue in Lycos' case – namely, did Lycos repose its trust and confidence in CSI, and did CSI accept that trust, sufficient to create a fiduciary relationship with disclosure obligations in favor of Lycos?  *See*, *e.g.*, *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987) (evidence that "tend[s] to add 'color' to the …

---

[11]        Ripps Dep. at 143:6-14.
[12]        Ripps Dep. at 168:2-16.
[13]        Ripps Dep. at 169:9-24.

ME1 8204494v.1

decision making processes and to the influences behind the actions taken with respect to the individual plaintiff" is relevant).

Lycos challenges the relevancy of Mr. Ripps' statement on two grounds: (a) that he was not an employee of Lycos at the time he made them and (b) that the use of the phrase in a private email between friends is something "of no consequence in this case" by virtue of its having been stated privately.  On the first point, whether Mr. Ripps was employed by Lycos at the time he made those statements goes more to whether they are admissions of Lycos or not, not whether they are relevant.

In fact, it is clear that when Mr. Ripps made these private, candid statements concerning Mr. Stenberg, he was still being paid by Lycos, operating under an employment agreement with Lycos which did not expire until four years later in December 2004, and was part of its 401(k) retirement plan with an annual base Lycos salary of $200,000.  That Mr. Ripps called Mr. Stenberg a "fucking goy" only weeks after he transferred to Lycos' affiliate in Asia (while still being paid by Lycos and under its control) does not affect its admissibility.  And the fact that this statement was made in private tends to promote the idea that Mr. Ripps was being candid and speaking his true opinion concerning Mr. Stenberg – not to negate its relevance.  *See Cheng v. MINACT, Inc.*, 95-3946, 103 F.3d 128, 1996 WL 724372 *3-4 (6th Cir. Dec. 16, 1996) (unpublished) (affirming denial of motion in limine seeking exclusion of comments concerning plaintiff's age made in private conversation where record showed that comments "coupled with other relevant evidence were not sufficiently isolated to be irrelevant or more prejudicial than probative").

Although the Lycos motion attempts to downplay Mr. Ripps's significance in its analysis of whether Lycos reposed "trust and confidence" in Mr. Stenberg sufficient to create a fiduciary

relationship, it is clear that from late 1997 until fall of 2000 – a critical period in which many of the lease extensions at issue were undertaken – Mr. Ripps was a key officer at Lycos responsible for the overseeing of Lycos' relationship with its equipment leasing companies, including CSI. His state of mind is not only relevant but critical to determining whether or not Lycos reposed its "trust and confidence" in Mr. Stenberg or CSI and whether that was accepted by CSI – in short, whether Lycos "trusted" CSI to provide leasing guidance and decisions.  Mr. Ripps was a decision maker and officer at Lycos whose evidence is highly relevant and probative.

The statement is also probative in what it implies.  When Mr. Karol, a Lycos in-house attorney, privately calls Mr. Stenberg a "worthless liar" and otherwise disparages him, and tells Mr. Ripps point-blank that he "hates Stenberg," how does Mr. Ripps respond?  Does he correct Mr. Karol, telling him anything to the effect that "I've known Paul for two years and think you're wrong – he's not a liar and I trust his judgment"?  In fact, Mr. Ripps implicitly adopts Mr. Karol's statements by not challenging them and also adding a derogatory statement of his own concerning Mr. Stenberg.  The jury may reasonably infer that neither of these senior officers at Lycos – one of whom has worked with Mr. Stenberg for more than two years and who oversees the CSI-Lycos leasing relationship – actually likes Mr. Stenberg and that certainly neither of them "trusts" Mr. Stenberg to make leasing decisions or provide key leasing advice to the company.

### B.   The Probative Value of Mr. Ripps' Remarks Is Not "Substantially Outweighed" By the Risk of Unfair Prejudice

CSI is not using the statement at issue to smear Mr. Ripps or Lycos, as Lycos claims, but simply to make its point that Lycos did not trust or even like Paul Stenberg.  In this regard, the evidence may be prejudicial, but it is not unfairly so.

9

The law is clear that where evidence is "fundamental to the central issues" in a case, exclusion of the evidence – even though prejudicial – is disfavored.  For example, where a plaintiff was suing for cerebral palsy allegedly caused to her daughter by medical malpractice, it was improper for the trial court to bar the minor plaintiff under Fed. R. Evid. 403 from appearing in court during trial because of potential prejudice to the defendant doctors.  *Rubert-Torres v. Hospital San Pablo, Inc.*, 205 F.3d 472, 479 (1st Cir. 2000).  In reversing, the First Circuit held that the plaintiff's presence at trial

> was fundamental to the central issue in the case: causation.  When proffered evidence relates to the central issue in a case, it is a difficult matter indeed to show that the prejudicial effect of that evidence substantially outweighs its highly probative nature, as Rule 403 requires.

*Id.* (citation omitted).  Similarly, the level of the animus of Mr. Ripps – who was responsible for the CSI-Lycos relationship from near its inception until the fall of 2000 – bears directly on the issue of "trust" reposed by Lycos in CSI, which is a central issue in Lycos' fraud claims based on an alleged failure to disclose.

Furthermore, the First Circuit is clear that relevant but prejudicial evidence, in itself, is not excludable due to its prejudicial impact.  Though the Rule 403 balancing is "a quintessentially fact-sensitive enterprise,"

> [t]he fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded.  If that were true, there would be precious little left in the way of probative evidence in any case.  The question is one of "unfair" prejudice – not of prejudice alone.

*Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987) (cited in *Ferrara & DiMercurio v. St. Paul Mercury Insurance Co.*, 240 F.3d 1, 6-7 (1st Cir. 2001) (upholding Judge Harrington's admission of prejudicial but probative information on motive and opportunity); *see also Daigle v. Maine Medical Center, Inc.*, 14 F.3d 684, 690-91 (1st Cir. 1994) (holding "[a]ll evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it. . . . [E]vidence

10

cannot be kept from the jury merely because it hurts a party's chances. . . . The element that triggers a need to exclude evidence under Rule 403 is not prejudice, but ***unfair*** prejudice") (emphasis in original; citations omitted).

"Unfair" prejudice – of the type which may lead to exclusion of minimally probative evidence – is that evidence having an "undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one."   Fed. R. Evid. 403 advisory committee's note.  Courts are quick to note that "trials were never meant to be antiseptic affairs," *Verdana Beach Club L.P. v. W. Sur. Co.*, 936 F.2d 1364, 1372 (1st Cir. 1991), and that evidence is "unfairly prejudicial if it `invites the jury to render a verdict on an improper emotional basis.'" *United States v. Flemmi*, 402 F.3d 79, 86 n.8 (1st Cir. 2005) (quotation omitted).  Even in matters of personal injury, where evidence such as photographs may lead to highly emotional reactions from jurors, the probative nature of the evidence trumps whatever prejudice may result.  *See, e.g., McElwain v. Harris*, C.A. No. 1:05-CV-93-JAW, 2006 WL 931920 (D.N.H. Apr. 6, 2006) at *2-3 (allowing into evidence accident scene photographs, evidence of cars' speeds and defendants' crossing of double line).

Mr. Ripps' statement about Mr. Stenberg does not rise to the level of "unfair" prejudice, and any prejudice does not "substantially outweigh" the remarks' high probative value on the issue of trust.  Courts generally do not exclude offensive language or derogatory statements as "unfairly prejudicial," especially where they are probative of an element of the case.  Even where evidence contains language which is "vulgar, dirty" and, in a particular case, "using a lot of f*** words," the prejudicial nature of the language was not undue and did not warrant exclusion because of relevance to the defendant's "state of mind and animosity toward the victim." *Tennessee v. Martin*, C.C.A. No. 299, 1990 Tenn. Crim. App. LEXIS 170 (Tenn. Ct. Crim. App.

Mar. 1, 1990) * 6-7.  Other decisions similarly do not exclude probative information simply because the jury may be exposed to foul or offensive language.[14]  The idea that Mr. Ripps' statement will "invite[] the jury to render a verdict on an improper emotional basis" says little of the court's jury venire and their ability to reach the merits of the issues.  This is not a case where horrific automobile accident photographs of traumatized victims – which would be of little probative value – might sway a jury to award a plaintiff damages against an insurance company, where the plaintiff is clearly at fault based on the overwhelming weight of other evidence.

### C.    Other Available Evidence Is Not As Probative of Mr. Ripps' State of Mind

Lycos misconstrues a footnote in CSI's summary judgment papers in stating that CSI's evidence of Mr. Ripps' derogatory remarks concerning Mr. Stenberg is unnecessary in light of other evidence of Lycos' dislike for and mistrust of CSI and Mr. Stenberg.  The other "ample evidence" cited by CSI in its summary judgment papers – while by no means meant to be an exhaustive recitation of all of its evidence on the issue – relates to statements made by Mr. Karol, a Lycos in-house lawyer, and not Mr. Ripps.

Again, Mr. Ripps was in a unique position as a senior officer of Lycos – its Director of Finance – who also had responsibility for Lycos' relationships with its leasing vendors including CSI.  Having known Mr. Stenberg for two years and having worked with him, Mr. Ripps' state of mind concerning Mr. Stenberg specifically and CSI in general is highly probative of the "trust" issue, and his regrettable comment – affirming Mr. Karol's "worthless liar" comment

---

[14]    *Cage v. Newland*, C.A. No. 98-3267, 1999 U.S. Dist. LEXIS 18553 (N.D. Cal. Nov. 24, 1999) at *21-22 (recordings of "offensive language" in a telephone call concerning a defendants' threats against the complainant were not "unduly prejudicial" and were admissible); *Klingel v. State*, 518 So. 2d 853 (Ala. Ct. Crim. App. 1987) ("vulgar and belligerent language" were probative of intoxication and, despite obvious prejudice to defendant, were admissible); *Ohio v. Deir*, No. 2005-L-117, 2006 Ohio App. LEXIS 6786 (Ohio Ct. App. Dec. 22, 2006) at *9-10 (appellant's "abusive and vulgar language" held admissible, despite prejudicial impact of statements, because they tended to demonstrate appellant acted intentionally in kicking police officers).

with his own statement that Mr. Stenberg was a "fucking goy" – is the most probative and direct evidence of Mr. Ripps' opinion of Mr. Stenberg.

Though he claims to regret now having made the statement after it came to light in his deposition in this case, depriving CSI of this key piece of evidence – an email message which Mr. Ripps, and not CSI, chose to create – withdraws key probative evidence from CSI in its defense of a multi-million dollar fraud claim.  The evidence is highly probative, minimally prejudicial (if at all), and goes to a central issue which Lycos has put at the forefront of this case – namely, did Lycos place trust and confidence in CSI such that a fiduciary relationship was formed?  Mr. Ripps' revealing remark suggests that it did not.

## CONCLUSION

For the foregoing reasons, plaintiff CSI Leasing, Inc. respectfully requests that the Court deny Lycos Motion *in Limine* No. 1, and grant CSI such other relief as the Court deems just and proper.

Respectfully submitted,

CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL, INC.
By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

Dated:  March 13, 2009

**<u>CERTIFICATE OF SERVICE</u>**

      I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically by CM/ECF notification, by e-mail and by first class mail, postage prepaid, this 13th day of March, 2009.

<u>/s/ Edward W. Little, Jr.</u>
Edward W. Little, Jr.

14