# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMPUTER SALES INTERNATIONAL, INC., | ) )  ) |
|     Plaintiff and Defendant-in-Counterclaim, | ) ) ) |
| v. | ) ) |
| LYCOS, INC., | ) ) ) |
|     Defendant and Plaintiff-in-Counterclaim, | ) ) ) ) |
| and | ) ) |
| BANK OF AMERICA f/k/a FLEET BANK, | ) ) ) |
|     Trustee Process Defendant. | ) |

C.A. No. 05-10017-RWZ

**LYCOS' OPPOSITION TO CSI'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MOTION *IN LIMINE* TO PRECLUDE LYCOS FROM ARGUING OR OFFERING EVIDENCE THAT THE PROVISIONS OF THE PARTIES' MASTER LEASE AGREEMENT ARE PREDATORY, UNFAIR OR DECEPTIVE**

Claiming that it was "particularly" surprised by a statement in one of Lycos, Inc.'s ("Lycos") motions *in limine*, Computer Sales International, Inc. ("CSI") has sought leave, after the Court-imposed deadline, to file yet another motion (Dkt. No. 213; the "Leave Motion"). Specifically, CSI has requested leave to file a motion to preclude Lycos from arguing or offering evidence that the provisions of the parties' Master Lease Agreement (the "MLA") are predatory, unfair, or deceptive (the "Proposed Motion to Preclude").[1]

---

[1] Leave Motion at 3.

CSI's Leave Motion should be denied for two reasons. First, CSI has not stated grounds sufficient to warrant the untimely filing of a motion *in limine*. That the onerous provisions of the MLA are relevant to Lycos' claims is neither new nor surprising. Second, contrary to CSI's assertion, Lycos does not intend to argue that the express provisions of the MLA are so onerous that, standing alone, they constitute an unfair business practice. Rather, the MLA's onerous provisions are *relevant* to Lycos' fraud, chapter 93A, and other claims that will be tried.

If, however, the Court grants CSI leave to file its Proposed Motion to Preclude, Lycos requests that it be allowed to file an opposition. Not only is CSI *not* entitled to the relief it is seeking in its Proposed Motion to Preclude, but CSI's proposed motion is confusing because the relief it seeks is different from the relief sought in the memorandum filed in support thereof,[2] and the relief sought in both is different from the concern that purportedly caused CSI to file the Leave Motion in the first instance.

In further support thereof, Lycos states as follows:

## I. FACTS AND ARGUMENT

### A. CSI Should Not be Allowed to File an Untimely Motion *in Limine* Because it Has Known About the Relevance of the MLA to Lycos' Claims For Well-Over a Year.

*Over eighteen months ago*, Lycos served on CSI the expert report of Charles Cross. In the "Conclusions" section of that report,[3] Mr. Cross opined that the "practical effect" of the "aberrant" provisions in the MLA and equipment schedules:

---

[2] The "Wherefore" clause of the Proposed Motion to Preclude seeks to bar Lycos "from offering evidence or argument that provisions of the Master Lease Agreement between the parties were somehow predatory, exorbitant or unfair and deceptive . . ." The conclusion of the memorandum, however, seeks "an Order precluding Lycos from arguing at trial that the MLA, or specific provisions of the MLA, are predatory, unfair or deceptive."

[3] Cross Report at 8-9. True and accurate copies of the relevant portions of Mr. Cross' report are attached hereto as **Exhibit A**.

was to compel Lycos to pay rent for the Equipment that far exceeded the original cost of the Equipment being financed plus the income that CSI expected to earn from the lease of the equipment when it was originally booked. They stripped Lycos of any real ability to exit the lease and of any bargaining power in successive rewrites or extensions of leases or negotiations of a fair market price, resulting in Mark-ups that far exceeded industry norms . . . . After Lycos entered into the structure and documentation proffered by CSI, its fate was basically sealed as it had no right to exit from its lease obligations and was therefore susceptible to rewrites, renewals and extensions that offered temporary relief but consigned it to economic serfdom.[4]

Mr. Cross' report explains the bases for the foregoing opinions and the interplay between the equipment schedules, which incorporated the provisions of the MLA by reference, and the MLA, at length in his report.[5] Among other things, he states that the MLA "provides the overall general terms and conditions applicable to all Equipment Schedules and each Equipment Schedule provides the specific business terms applicable to a particular transaction, incorporating by reference the general terms of the [MLA]"[6]—a statement that is irrefutably supported by the lease documents themselves.[7]

Moreover, Lycos deposed CSI's expert James Johnson (CSI's foil for its Leave Motion) on November 2, 2007, which means that CSI has had *more than sixteen months* to digest and

---

[4] Cross Report at 8-9 (emphases supplied).

[5] *E.g., id.* at 10-20 (analyzing the onerous provisions in the MLA).

[6] *Id*. at 10.

[7] Paragraph 1 of the MLA states in pertinent part:

> Lessor hereby agrees to Lessee and Lessee hereby leases from Lessor all of the equipment and other tangible personal property described in each of the Equipment Schedules which are executed from time to time by Lessor and Lessee pursuant to this Master Lease. *Each Equipment Schedule shall constitute a separate lease on the terms and conditions stated therein and, to the extent not inconsistent with the Equipment Schedule, on the terms and conditions stated in the Master Lease which shall be incorporated by reference in the Equipment Schedule*." See ¶ 1 of MLA, a true and accurate copy of which is attached hereto as **Exhibit B**.

Each Addendum One to each equipment schedules contains the following language: "This Addendum One shall become part of the Lease and shall be read together with the Lease as one single document." A true and accurate copy of an Addendum One is attached hereto as **Exhibit C**.

understand the relevance of his testimony about the MLA to Lycos' claims in this case. For example, Prof. Johnson testified as follows:

> Q: Okay. So—[s]ummarizing, there's an automatic renewal clause, an interim rent clause, a perfect return clause and casualty value calculations. Based on the inclusion of those provisions in the CSI/Lycos lease it's your view that Lycos was unsophisticated when it came to equipment leasing; isn't that right?
>
> A: I don't know if they were unsophisticated or just didn't care.
>
> Q: One of those things would be true, right?
>
> A: Well, maybe a third that I can't think of right now.
>
> Q: Okay. You would teach—you teach people in your corporate seminars and your seminars for government employees to seek to avoid precisely the kind of provisions that were in the master lease agreement and equipment schedules between CSI and Lycos; isn't that right?
>
> A: These are some of the things that I tell them that they need to look at, yes.[8]

Notwithstanding the foregoing, CSI writes in its Leave Motion that it was "particularly" surprised[9] by the following statement in Lycos' "Motion *in Limine* No. 5: to Allow Lycos to Present the Expert Testimony of Professor James M. Johnson as Part of its Case-in-Chief at Trial" (Dkt. No. 223) (the "Johnson MIL"):

> Lycos has claims remaining in this case under Chapter 93A, based on CSI's unfair business practices. The unfair manner in which CSI constructed the Master Lease (with, among other predatory clauses, a perfect return provision and an exorbitant stipulated loss penalty), by including provisions in those agreements that rendered Lycos essentially helpless from inception, is *relevant* to those claims.[10]

---

[8] Johnson Tr. at 153:14–154:15. Please note that, in the interest of brevity, Lycos has omitted from the foregoing excerpt objections of counsel, requests to mark the transcript, and dialogue related thereto. True and accurate copies of the relevant pages of Mr. Johnson's deposition transcript are attached hereto as **Exhibit D**.

[9] Leave Motion at 3, ¶ 3.

[10] *Id*. (emphasis added).

If CSI were genuinely surprised by the foregoing statement, then it apparently failed to read Mr. Cross' report or the deposition transcript of its own expert witness, Prof. Johnson. CSI also apparently did not read, among other things, the Counter-statement of Facts (Dkt. No. 190) that Lycos submitted with its opposition to CSI's motion for summary judgment—a Counter-statement replete with references to Prof. Johnson's testimony concerning the MLA.[11] As is detailed in the Counter-statement and Lycos' opposition to CSI's motion to exclude the testimony of Charles Cross (Dkt. No. 237), the onerous provisions in the MLA are relevant to Lycos' chapter 93A claims for at least three reasons. First, that Lycos was willing to sign the MLA with these onerous provisions is evidence of its lack of sophistication with respect to equipment leasing. Second, because Lycos signed this onerous MLA, Paul Stenberg and CSI *knew* Lycos was unsophisticated, thus permitting them to launch a scheme to defraud Lycos. Third, because the MLA was incorporated by reference into every schedule the parties signed– including the refinancings that Lycos claims it was fraudulently induced to enter—it is clearly *relevant* to those refinancings. Accordingly, Lycos' assertion that the MLA is "relevant" to its claims is nothing new, and CSI has otherwise not set forth sufficient grounds to permit it to file its Proposed Motion to Preclude after the applicable deadline.

### B.  Lycos is Not Asserting that the Provisions of the MLA, Standing Alone, Constitute an Unfair Business Practice.

CSI's Leave Motion should also be denied as futile because the evidence should be allowed at trial and the Motion is otherwise based on a false premise. Lycos has never asserted, and is not asserting now, that the provisions of the MLA are so onerous that, standing alone, they constitute an unfair business practice. That evidence is, however, *relevant* to Lycos' fraud,

---

[11] Counter-statement at 3-5, 7. True and accurate copies of the relevant pages of Lycos' Counter-statement are attached hereto as **Exhibit E**.

chapter 93A and other claims—which is precisely what Lycos said in the Johnson MIL.[12]  It is relevant to, among other things, Lycos' claims for fraud in the inducement of the refinancings because it shows Lycos was unsophisticated with respect to equipment leasing such that Mr. Stenberg knew as soon as Lycos signed the MLA that Lycos was unsophisticated.  Not only did Lycos' willingness to enter into an MLA containing onerous provisions signal to Mr. Stenberg and CSI that Lycos was unsophisticated, but those provisions further served as the underlying basis for his plan to defraud Lycos because they effectively "stripped Lycos of any real ability to exit the lease and of any bargaining power" and made it susceptible to refinancings.  Finally, that evidence is also relevant to Lycos' claim for fraud in the inducement of the Sales Agreement because it demonstrates why Lycos (a) could not simply purchase the equipment based on a reasonably discernible price, i.e., the lack of a end-of-lease purchase option, (b) could not simply return the equipment it had leased from CSI, i.e., the "perfect return" provisions, and (b) agreed to pay as much for the leased equipment as it did, i.e., the onerous stipulated loss penalty provisions.

If, notwithstanding the foregoing, the Court is inclined to grant CSI's Leave Motion, Lycos requests that it be given the fourteen days provided by Local Rule 7.1(b) to respond to CSI's Proposed Motion to Preclude in greater detail.

---

[12] Johnson MIL at 3 ("The unfair manner in which CSI constructed the Master Lease (with, among other predatory clauses, a perfect return provision and an exorbitant stipulated loss penalty), by including provisions in those agreements that rendered Lycos essentially helpless from inception, is relevant" to Lycos' fraud and chapter 93A claims).

BST99 1614788-5.057077.0012

## II.     CONCLUSION

WHEREFORE, Lycos respectfully requests that the Court enter an order:

1. Denying the Leave Motion; and

2. Granting Lycos such other relief as may be appropriate and just.

                                                                Respectfully submitted,

                                                                LYCOS, INC.

                                                                By its attorneys,

Dated: March 20, 2009                          /s/ Thomas O. Bean
                                                                Thomas O. Bean (BBO# 548072)
                                                                Peter M. Acton, Jr. (BBO# 654641)
                                                                James M. Fraser (BBO# 664605)
                                                                McDERMOTT WILL & EMERY LLP
                                                                28 State Street
                                                                Boston, MA 02109
                                                                (617) 535-4000
                                                                tbean@mwe.com
                                                                pacton@mwe.com
                                                                jfraser@mwe.com

BST99 1614788-5.057077.0012

## CERTIFICATE OF SERVICE

     I hereby certify that on March 20, 2009 the foregoing Opposition was filed through the ECF system and was sent electronically to Counsel for CSI, Robert J. Kaler, McCarter & English, LLP, 265 Franklin Street, Boston, MA 02110.

                                    /s/ Peter M. Acton, Jr.
                                    Peter M. Acton, Jr.

BST99 1614788-5.057077.0012