UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |  |
|---|---|---|
| CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL INC., | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| LYCOS, INC., | ) | C.A. No. 05-10017-RWZ |
| | ) | |
| Defendant, | ) | |
| | ) | |
| BANK OF AMERICA f/k/a FLEET BANK, | ) | |
| | ) | |
| Trustee Process Defendant. | ) | |

**PLAINTIFF CSI LEASING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE CONCERNING THE INACCURATE EXPENSE REPORTS OF ITS LYCOS ACCOUNT REPRESENTATIVE**

Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

*Counsel for CSI Leasing, Inc. f/k/a Computer Sales International, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

SUMMARY OF ARGUMENT ............................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................. 4

ARGUMENT ...................................................................................................... 6

I.    THE RISK OF UNFAIR PREJUDICE FROM EVIDENCE
      REGARDING THE EXPENSE REPORTS SUBSTANTIALLY
      OUTWEIGHS THEIR PROBATIVE VALUE ........................................... 7

II.   THE EXPENSE REPORTS ARE NOT RELEVANT FOR ANY
      PROPER EVIDENTIARY PURPOSE .................................................... 12

      A.    RULE 404(B) .............................................................................. 12

      B.    RULE 608(B) .............................................................................. 17

CONCLUSION ................................................................................................. 20

i

# TABLE OF AUTHORITIES

## CASES

*Bennett v. Longacre*, 774 F.2d 1024 (10th Cir. 1985) ..................................................... 19

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ......................................................... 19

*Donald v. Rast*, 927 F.2d 379 (8th Cir. 1991) ............................................................ 9

*J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259 (3d Cir. 1994) ...................................................................................................................... 14

*Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883 (9th Cir. 2002) ........................................ 9

*Jones v. Southern Pacific Railroad*, 962 F.2d 447 (5th Cir. 1992) ......................... 15, 16

*Knight v. Spencer*, 447 F.3d 6 (1st Cir. 2006) ........................................................... 19

*Lewy v. Southern Pacific Trans. Co.*, 799 F.2d 1281 (9th Cir. 1986) .......................... 19

*Martinelli v. Penn Millers Ins. Co.*, 269 Fed. Appx. 226 (3d Cir. Mar. 2008) ............. 14

*Rubert-Torres v. Hospital San Pablo, Inc.*, 205 F.3d 472 (1st Cir. 2000) ..................... 9

*S.E.C. v. Happ*, 392 F.3d 12 (1st Cir. 2004) ....................................................... 13, 16

*Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348 (1st Cir. 2005) ........................... 7, 8

*Security State Bank v. Baty*, 439 F.2d 910 (10th Cir. 1971) ...................................... 10

*Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835 (10th Cir. 1988) ............... passim

*Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 244 Fed. Appx. 522 (3d Cir. 2007) ................................................................................................... 11, 16

*U.S. v. Beauchamp*, 986 F.2d 1 (1st Cir. 1993) ........................................................ 17

*Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186 (10th Cir. 1997) ................. 15

*United States v. Aponte*, 31 F.3d 86 (2d Cir. 1994) .................................................. 17

*United States v. Frankhauser*, 80 F.3d 641 (1st Cir. 1996) ....................................... 13

*United States v. Greenwood*, 796 F.2d 49 (4th Cir. 1986) ......................................... 15

*United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992) .................................................. 10

*United States v. Johnson*, 893 F.2d 451 (1st Cir. 1990) ............................................ 14

ME1 7306571v.5

*United States v. Mangiameli*, 668 F.2d 1172  (10th Cir.) ................................................................ 2

*United States v. Martinez*, 76 F.3d 1145 (10th Cir. 1996) ............................................................... 2

*United States v. Moore*, 27 F.3d 969 (4th Cir. 1994) ..................................................................... 17

*United States v. Ortiz*, 5 F.3d 288 (7th Cir. 1993) ......................................................................... 2

*United States v. Pickard*, 211 F. Supp. 2d 1287 (D. Kan. 2002) .................................................... 2

*United States v. Riddle*, 193 F.3d 995 (8th Cir. 1999) ................................................................... 17

*United States v. Rodriguez-Estrada*, 877 F.2d 153 (1st Cir. 1989) ............................................... 15

*United States v. Townsend*, 31 F.3d 262 (5th Cir. 1994) .......................................................... 9, 20

*Williams v. Drake*, 146 F.3d 44 (1st Cir. 1998) .............................................................................. 7

## OTHER AUTHORITIES

28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND
    PROCEDURE § 6119. ........................................................................................................ 19

## RULES

Fed. R. Evid. 401 ................................................................................................................... 12

Fed. R. Evid. 402 ............................................................................................................... 1, 12

Fed. R. Evid. 403 ........................................................................................................... passim

Fed. R. Evid. 403 advisory committee's note .......................................................................... 7

Fed. R. Evid. 404(b) ................................................................................................. 7, 12, 15, 16

Fed. R. Evid. 608(b) ....................................................................................................... passim

Fed. R. Evid. 608(b) 2003 advisory committee's notes ........................................................ 18

Fed. R. Evid. 608(b) advisory committee's note ............................................................... 18, 20

Fed. R. Evid. 611 ................................................................................................................... 2

Fed. R. Evid. 611(a) ............................................................................................................. 19

Fed. R. Evid. 611(c) ............................................................................................................. 18

ME1 7306571v.5

Plaintiff CSI Leasing, Inc. f/k/a Computer Sales International, Inc. ("CSI") respectfully submits this memorandum of law in support of "Plaintiff CSI Leasing, Inc.'s Motion *in Limine* to Exclude Evidence Concerning the Inaccurate Expense Reports of Its Lycos Account Representative," filed February 28, 2009 (the "CSI Motion").

## SUMMARY OF ARGUMENT

CSI has moved, pursuant to Fed. R. Evid. 402 and 403, to exclude from the trial of this action any evidence or argument concerning certain inaccurate expense reports (the "Expense Reports") submitted to it by its own employee, Paul Stenberg, the CSI account representative who dealt with defendant Lycos, Inc. ("Lycos"), during the period 1997 through 2003.

The Expense Reports admittedly had no effect on Lycos, and were never submitted to, seen, relied upon, or paid by Lycos.  During his deposition in this case, however, Mr. Stenberg admitted that his descriptions of some of the expenses listed in the Expense Reports were inaccurate, and as a result he was disciplined by CSI in 2007, and ordered to repay approximately $60,000 of the expenses he had claimed.  The Expense Reports themselves also refer to the purchase of large quantities of alcohol, and visits to establishments that Mr. Stenberg admitted in his deposition were strip clubs.

Lycos has now given notice that it intends to try to introduce all these facts at trial, but under Fed. R. Evid. 402 and 403, such evidence is not properly admissible because it is both inflammatory and irrelevant to this case, in which a lessee, Lycos, alleges that it was fraudulently induced to enter into certain lease transactions with a lessor, CSI, but where nothing in the Expense Reports affected those lease transactions.  *See Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 839 (10th Cir. 1988), *cert. den.*, 490 U.S. 1021, 104 L. Ed. 2d 182, 109 S. Ct.

1

1745 (1989) (affirming the exclusion, in a similar lease fraud case, of evidence of embezzlement by a lessor's employee who allegedly made misrepresentations to the lessee).

As the court explained in *United States v. Pickard*, 211 F. Supp. 2d 1287, 1292 (D. Kan. 2002):

> Several things must be considered in applying Rule 608(b). First, Rule 608(b) seeks to minimize the dangers attendant on the use of character evidence for impeachment by limiting it to evidence that is relevant to the witness' character for truthfulness. Fed. R. Evid. 608(b). Second, Rule 608(b) is subject to the overriding protection of Fed. R. Evid. 403, which requires the exclusion of evidence ***whose probative value is substantially outweighed by the danger of prejudice***, confusion or waste of time. *See Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 839 (10th Cir. 1988), cert. denied, 490 U.S. 1021, 104 L. Ed. 2d 182, 109 S. Ct. 1745 (1989) (probative value of evidence showing that one of defendant's agents embezzled $40,000 in connection with plaintiff's lease was greatly outweighed by risk of unfair prejudice); *United States v. Mangiameli*, 668 F.2d 1172, 1175-76 (10th Cir.), cert. denied, 456 U.S. 918, 72 L. Ed. 2d 179, 102 S. Ct. 1776 (1982) (any probative value of the evidence substantially outweighed by danger of confusing issues with introduction of collateral matters). Third, Rule 611 bars harassment and undue embarrassment of witnesses. Fed. R. Evid. 611. Fourth, under both Rule 608(b) and the Federal Rules of Evidence in general, the trial court has considerable discretion to control the admission of character evidence. *See United States v. Ortiz*, 5 F.3d 288, 290-91 (7th Cir. 1993).
>
> One other important consideration for the application of Rule 608(b) is the policy against the use of extrinsic evidence. Specific instances of a witness' conduct, other than a conviction of a crime, that are offered to attack or support a witness' credibility may not be proved by extrinsic evidence. Fed. R. Evid. 608(b). Evidence is "extrinsic" if offered through documents or other witnesses, rather than through cross-examination of the witness himself or herself. This means that only cross-examination may be employed to expose dishonest acts. See *United States v. Martinez*, 76 F.3d 1145, 1150 (10th Cir. 1996)(if witness denies making particular statement on collateral matter, examiner may not introduce extrinsic evidence to prove that witness did in fact make statement).

(emphasis added).

This case began when in January, 2005, CSI filed suit against Lycos to recover approximately $310,000 that Lycos owes to CSI under a series of computer equipment leases

2

from 1996 to 2002 (the "Leases"), and under an August, 2003 sales agreement (the "Sales Agreement") wherein Lycos paid to CSI $3.7 million to own the equipment at the end of the Leases' terms, reaffirmed the validity of the Leases, and agreed to make all of its future lease payments.

In response, Lycos filed counterclaims seeking to recover portions of CSI's gross profit from the Leases, and the $3.7 million sales price from the Sales Agreement, due to alleged misrepresentations and non-disclosures by CSI.  More specifically, Lycos alleges that: (1) CSI fraudulently "marked-up" the Leases to generate a large profit; (2) CSI told a "half-truth" in failing to disclose to Lycos how much its payments would increase under the Leases; and (3) CSI misrepresented the original equipment cost of the equipment CSI rented to Lycos thereby inducing Lycos to enter into the Sales Agreement.

During the time he handled the Lycos account, CSI account executive Paul Stenberg submitted various expense reports to CSI for reimbursement.  Mr. Stenberg has admitted that some of those expense reports were inaccurate in the sense that he often named Lycos executives as the individuals whom he entertained when, in actuality, he entertained other customers or vendors for legitimate business purposes or simply engaged in personal activities.  Mr. Stenberg has also admitted that he was wrong in submitting the reports, and was disciplined for doing so.

In an effort to bolster its claims regarding Mr. Stenberg's alleged misrepresentations, Lycos has spent considerable time in various depositions questioning deponents about the inaccuracies in Mr. Stenberg's expense reports, the nature of various expenses, and CSI's handling of the investigation into the expense reports, and will attempt to introduce this evidence at trial to show Mr. Stenberg's alleged bad character and propensity to lie, as well as CSI's alleged tolerance of this behavior.  However, under Rule 403 of the Federal Rules of Evidence,

the risk of unfair prejudice from the expense reports substantially outweighs their, at best, minimal probative value.

As the Tenth Circuit recognized in a case very similar to this, where a lessee sought to introduce evidence of embezzlement by the lessor's employee who allegedly made misrepresentations to the lessee, the "inflammatory" nature of evidence regarding the employee's actions substantially outweighed the probative value of the evidence and its exclusion was warranted.  *See Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 839 (10th Cir. 1988), *cert. denied,* 490 U.S. 1021, 104 L. Ed. 2d 182, 109 S. Ct. 1745 (1989).  Similarly in this case, despite what Lycos may attempt to argue at trial, evidence as to Mr. Stenberg's inaccurate expense reports, which involved only his relationship with CSI and expenses that were never charged to Lycos or known by Lycos prior to Mr. Stenberg's deposition, is irrelevant to the issues in this case.

Accordingly, this Court should exclude all evidence regarding Mr. Stenberg's expense reports.

## STATEMENT OF RELEVANT FACTS

1.     During the course of discovery it was revealed that Mr. Stenberg submitted inaccurate expense reports to CSI and received reimbursement for those expenses.  *See generally* August 24, 2006 Deposition of Paul H. Stenberg, Jr. ("Stenberg Dep. I") and January 19, 2007 Deposition of Paul H. Stenberg, Jr. ("Stenberg Dep. II").  They are attached hereto as Exhibits A and B, respectively.[1]  Mr. Stenberg testified that he sometimes submitted expense reports to CSI for entertaining Lycos personnel, when in actuality the expenses were for personal activities or legitimate business expenses unrelated to Lycos, and that he submitted these inaccurate expense

---

[1]     In addition, several of the Expense Reports that are referenced in Mr. Stenberg's deposition testimony from August 24, 2006 are attached at the back of Exhibit A.

4

reports in order to recover the non-reimbursable costs of various entertainment and marketing expenses he incurred in attempting to meet Lycos's repeated requests for tickets, outings, dinners, and other activities.  *See, e.g.,* Stenberg Dep. I at 129:4-135:12; 153:19-157:2, 171:16-173:9; Stenberg Dep. II at 539:22-540:18, 639:13-640:6, 641:1-642:2.  CSI has since conducted an investigation of Mr. Stenberg's expense reports.  Upon finding that some were submitted for personal expenses or for events that did not involve Lycos personnel, CSI reprimanded Mr. Stenberg and required him to reimburse CSI for all of the expenses.

2.     None of the expense reports which referenced expenses for entertaining Lycos employees were ever submitted to Lycos and Lycos never paid those expenses.  *See* Stenberg Dep. II at 654:20-655:12; November 30, 2006 Deposition of Kenneth B. Steinback ("Steinback Dep. II") at 94:25-95:8 (attached hereto as <u>Exhibit</u> <u>C</u>).  Likewise, Lycos could not have relied on any of those expense reports in any way because it was not aware of them.  *See* Steinback Dep. II at 95:12-96:12.  Moreover, the expense reports did not affect the amount that CSI charged Lycos to lease the computer equipment.  *See* Steinback Dep. II at 95:9-96:12.  No facts demonstrate that the expense reports were related to Lycos, the leases, or the Sales Agreement other than the fact that Mr. Stenberg named Lycos executives on some of his inaccurate expense reports.

3.     Lycos has made it clear that it will attempt to offer testimony regarding the Expense Reports to portray CSI as a dishonest corporation.  *See* November 3, 2006 deposition of Kenneth B. Steinback ("Steinback Dep. I") at 197:24-199:17, 219:19-220:8, 220:18-222:10 (attached hereto as <u>Exhibit</u> <u>D</u>); February 22, 2007 Deposition of Jeffrey L. Rousseau, Esq. ("Rousseau Dep.") at 309:15-313:1 (attached hereto as <u>Exhibit</u> <u>E</u>).  Lycos has also made it clear from various depositions that it will attempt to argue, unsuccessfully CSI's believes, that the Expense Reports are somehow evidence of CSI's motive, intent, knowledge or plan to defraud

5

Lycos.  *See* November 14, 2007 Deposition of Michael J. Flemin*g* ("Fleming Dep."), at 297:18-301:10, 304:11-306:12 (attached hereto as <u>Exhibit F</u>); November 1, 2006 deposition of Richard E. Guilander ("Guilander Dep.") at 190:18-194:13 (attached hereto as <u>Exhibit G</u>).

4.      Some of the expense reports reference trips to the Foxy Lady, a strip club in Brockton, Massachusetts, and Lycos has repeatedly questioned Mr. Stenberg and other CSI personnel about those charges.  *See* Stenberg Dep. I at 183:14-185:7, 186:10-187:15; Guilander Dep. at 198:11-201:2; January 31, 2007 deposition of Brian Reale ("Reale Dep.") at 40:9-41:20, 43:15-44:13 (attached hereto as <u>Exhibit H</u>).  Similarly, some of the expense reports are for the purchase of significant amounts of alcohol, and Lycos has repeatedly questioned Mr. Stenberg and CSI personnel about those charges.  *See* Stenberg Dep. I at 188:8-190:3; Stenberg Dep. II at 541:10-542:10; Guilander Dep. at 201:5-202:17.   It has also elicited testimony from Mr. Stenberg, which it also plans to try to introduce at trial, that he did not report on his tax returns reimbursement for expenses not reimbursable under CSI's expense policy.  *See* Stenberg Dep. I at 398:17-399:18.

## ARGUMENT

Under Federal Rule of Evidence 403, courts should exclude any relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

In this case, there is an enormous risk of unfair prejudice from the admission of evidence concerning the expense reports, particularly because of the visits to strip clubs, the purchase of alcohol, and the significant amount of expenses that CSI required Mr. Stenberg to repay to the company.  The only arguments for introducing this evidence is to demonstrate motive, plan,

intent, or knowledge under Rule 404(b), or to demonstrate character for untruthfulness under Rule 608(b). However, as will be discussed below, there is simply no evidence that the expense reports are related to any plan, motive, knowledge, or intent that Mr. Stenberg or CSI had with respect to Lycos, and Lycos should not be able to question Mr. Stenberg on direct examination about the expense reports. In sum, evidence of Mr. Stenberg's expense reports are not relevant to the issues in this case, and therefore even the slightest bit of unfair prejudice outweighs the minimal probative value. Therefore, this Court should exclude all evidence pertaining to the expense reports.

I.      **THE RISK OF UNFAIR PREJUDICE FROM EVIDENCE REGARDING THE EXPENSE REPORTS SUBSTANTIALLY OUTWEIGHS THEIR PROBATIVE VALUE**

The admissibility of the expense reports is subject to the balancing of Federal Rule of Evidence 403, which empowers this Court to exclude any evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348, 355 (1st Cir. 2005)(Rule 403 provides courts with "ample discretion" to exclude unfairly prejudicial evidence). Rule 403 is "a tool that a trial judge can use to keep a jury's attention riveted on the dispositive issues." *Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998).

"Unfair prejudice" within the meaning of Rule 403 means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. Several aspects of the expense report evidence carry an enormous risk of unfair prejudice. For instance, several of the expense reports seek reimbursement for trips to Foxy Lady, a strip club in Brockton, Massachusetts, and for the purchases of significant amounts of alcohol. *See* Stenberg Dep. I at 183:14-185:7, 186:10-

7

187:15, 189:9-190:3; Stenberg Dep. II at 541:10-542:10; Guilander Dep. at 198:11-202:17; Reale Dep. at 40:5-41:20, 43:15-44:13.   Similarly, Mr. Stenberg testified during his deposition that he did not report the reimbursements from CSI on his tax returns.   *See* Stenberg Dep. I at 398:17-399:18.  Admission of these facts will likely elicit emotional reactions from the jury that warrant exclusion of the evidence under Rule 403.

Moreover, the expense reports create an enormous risk of confusing or misleading the jury about the relevant issues in this case.   The fact that Mr. Stenberg submitted certain inaccurate expense reports for entertaining Lycos executives may confuse the jury, leading it to believe that the inaccurate expenses were charged to Lycos through the leases or that Lycos paid for some of the expenses when, in actuality, Lycos only because aware of the expense reports through their production in discovery in this case, and CSI never charged any of Mr. Stenberg's expenses to Lycos.   *See Sailor*, 428 F.3d at 355 (affirming trial court's decision in negligence action for sinking of boat to exclude cross-examination of plaintiff, owner of boat, about whether he was involved in the sinking of two other ships, since there was no evidence that such prior sinkings were relevant to the facts in that case).

This confusion is particularly dangerous given Lycos's claims that it overpaid CSI for leasing the equipment.   The use of Lycos's name in the expense reports, for example, might cause the jury to believe that the expense reports were a part of the Leases or meant to induce Lycos to act in a particular way, when there is no evidence of this and the evidence instead suggests Mr. Stenberg used the names of Lycos employees as a means to ensure his reimbursement for certain expenses that were not ordinarily reimbursable.

In sum, the expense reports and any evidence regarding CSI's disciplinary action against Mr. Stenberg do not relate to a single issue in this case, let alone a central issue, and as such,

their admission at trial would likely confuse the jury about the genuine issues before the Court, and should therefore be excluded.  *Compare Rubert-Torres v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 479 (1st Cir. 2000) ("When proffered evidence relates to *the central issue* in a case, it is a difficult matter indeed to show that the prejudicial effect of that evidence substantially outweighs its highly probative nature, as Rule 403 requires.") (emphasis added).

Finally, evidence of the inaccurate expense reports creates the risk that the jury will make the improper inference that since Mr. Stenberg submitted inaccurate expense reports to CSI and often named Lycos executives as the individuals he entertained, he would not hesitate to make misrepresentations to Lycos about its rent payments under the Leases.  This is an improper inference *highly prejudicial* to CSI, and the risk it will be drawn significantly outweighs the, at best, minimally probative value of the expense reports.  *See Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 886 (9th Cir. 2002) (affirming trial court's exclusion of evidence that plaintiff in wrongful termination suit was fired from a job eight years earlier for stealing cigarettes because of undue prejudice, since "jury may have concluded [plaintiff] a person of bad character and viewed his actions and testimony in the case with unwarranted suspicion"); *Donald v. Rast*, 927 F.2d 379, 381 (8th Cir. 1991) (trial court did not abuse discretion under Rule 403 in excluding as unfairly prejudicial evidence that police officer defendant in § 1983 case involving alleged wrongful arrest after motor vehicle accident was reprimanded in past for not being entirely truthful with superior regarding description of separate accident); *United States v. Townsend*, 31 F.3d 262, 268 (5th Cir. 1994) (affirming trial court's decision to limit Rule 608(b) cross-examination of executives of that company defendant allegedly defrauded because, *inter alia*, "admitting the evidence would only serve to mislead and confuse the jury, and prolong the trial").

"Where evidence is of a very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a *modest likelihood* of unfair prejudice or a *small risk* of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) (holding that trial court should have excluded photograph of defendant's machine gun, which was subject of indictment, surrounded by numerous uncharged firearms) (emphasis added); *see also Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971) ("the court has not only the discretion but also *the duty to exclude* evidence of little or no relevance or probative value which might have a prejudicial effect") (emphasis added).   Here, the *significant risk of unfair prejudice* due to possible confusion of the true issues in the case, and the emotional reaction that the nature of the expense reports and their inaccuracies may elicit, necessitates excluding this evidence from trial.

Recognizing the danger of unfair prejudice in this situation, the Tenth Circuit affirmed the total exclusion of any evidence of the embezzlement of a lessor's employee in a case very similar to this one.   In *Telum, Inc. v. E.F. Hutton Credit Corp.*, an oil rig lessee, Telum, brought suit to rescind its oil drilling lease, alleging that the lessor, Hutton, breached the lease and that Hutton's employee made fraudulent misrepresentations which induced Telum to enter into the lease.   859 F.2d 835, 836 (10th Cir. 1988) *cert. denied*, 490 U.S. 1021, 104 L. Ed. 2d 182, 109 S. Ct. 1745 (1989).   Telum cross-appealed after the verdict, arguing, *inter alia*, that the trial judge erred in excluding evidence that Hutton's employee embezzled $40,000 from Hutton in connection with the lease, arguing that the evidence was relevant to impeach the employee, to show the employee's intent and motive in making the misrepresentations, and to show that Telum was not responsible for the embezzled amount which was included as part of the equipment cost owed to Hutton.   *Id.* at 837.

ME1 7306571v.5

The Tenth Circuit affirmed the trial court's exclusion of the evidence for reasons that are particularly applicable in this case. *Id.* at 839. First, the embezzlement was not relevant to the amount that Telum owed Hutton under the lease because the parties did not dispute the payments agreed to and what payments Telum made. *Id.* So, too, in this case, the expense reports are not relevant to the amount that CSI charged to Lycos or that Lycos paid to CSI pursuant to the Leases or the Sales Agreement because the expenses were for CSI's internal purposes, and were never charged to Lycos at any time and were only made known to Lycos through the course of discovery. Second, the "inflammatory" nature of the embezzlement evidence warranted its exclusion under Rule 403 because the danger of unfair prejudice outweighed the probative value of the evidence, even where the evidence was minimally relevant to the employee's motive in making the misrepresentations. *Id.*

Similarly, the Third Circuit also excluded evidence of an employee's alleged fraud. In that case, a hotel franchisor company sued its franchisee for amounts due under a licensing agreement, and the franchisee counterclaimed alleging that one or more of the franchisor's salespeople made misrepresentations about the number of reservations available, thereby inducing the franchisee to enter into the agreement. *Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 244 Fed. Appx. 522, 523-25 (3d Cir. 2007). After a bench trial the court ruled in favor of the plaintiff franchisor, and the franchisee appealed alleging, *inter alia*, that the court should have admitted evidence that one of the franchisor's salesman who worked on the licensing agreement was fired for allegedly using his personal credit card to pay for another franchisee's business in order to meet his sales quotas. *Id.* at 528. The Third Circuit rejected the argument, finding that it was not relevant, and even if it had been relevant, it was unfairly prejudicial under Rule 403. *Id.*

11

Here, the evidence of Mr. Stenberg's expense reports, including the fact that some of them name Lycos executives and them some of them were for trips to strip clubs and for purchases of large amounts of alcohol, so greatly risks unfairly prejudicing CSI, and of distracting the jury from the real issues in the case, that the risk substantially outweighs any possible relevance of the evidence (relevance which CSI denies). Therefore, this Court should properly exclude all evidence of Mr. Stenberg's inaccurate expense reports.

## II.   THE EXPENSE REPORTS ARE NOT RELEVANT FOR ANY PROPER EVIDENTIARY PURPOSE

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The only two possible arguments for the admission of evidence regarding Mr. Stenberg's inaccurate expense reports are to demonstrate Mr. Stenberg and/or CSI's motive, plan, intent or knowledge to defraud Lycos under Federal Rule of Evidence 404(b), or to demonstrate Mr. Stenberg's propensity for untruthfulness under Rule 608(b). As discussed below, however, admission under either of these Rules is inappropriate, and even if the evidence were admissible, its limited probative value is clearly outweighed by the unfair prejudice to CSI that will result.

### A.   Rule 404(b)

Lycos' intent to offer evidence regarding the expense reports is obviously intended to reflect on Mr. Stenberg's character, but under Rule 404(b), "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith[,]" Fed. R. Evid. 404(b), and while such evidence can sometimes be admissible to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident," *id.*, it is not admissible for those purposes here.

This Court applies a two-part test to determine whether character evidence is admissible. Initially, the evidence must be "probative of an issue in the case, such as intent or knowledge, without including bad character or propensity in the inferential chain." *S.E.C. v. Happ*, 392 F.3d 12, 30 (1st Cir. 2004) (citing *United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996)). Second, the "probative value" of the evidence "must not be 'substantially outweighed by the danger of unfair prejudice.'" *Happ*, 392 F.3d at 30 (citing *Frankhauser*, 80 F.3d at 648-49 and quoting Fed. R. Evid. 403).

Lycos has given notice that it will attempt to offer evidence of Mr. Stenberg's inaccurate expense reports regarding entertainment of Lycos employees as proof of Mr. Stenberg's and/or CSI's motive, intent, knowledge or plan to defraud Lycos. *See* Guilander Dep. at 190:18-194:13; Fleming Dep. at 297:18-301:10, 304:11-306:12.  Lycos will also attempt to offer this evidence to show that CSI is a dishonest company.  *See* Rousseau Dep. at 309:15-313:1; Steinback Dep. I at 197:24-199:17, 219:19-220:8, 220:18-222:10.  However, there are no facts to demonstrate that Mr. Stenberg's expense reports, or CSI's handling of the investigation and discipline of Mr. Stenberg, is at all relevant to CSI's relationship with Lycos or its motive, intent, knowledge or plan under the Leases or Sales Agreement.

To the contrary, the evidence is that the expense reports sometimes inaccurately referenced outings and entertainment for Lycos executives because, as Mr. Stenberg testified at his deposition, it made it easier for him to receive reimbursement for the charges as Lycos was a large account.  *See, e.g.,* Stenberg Dep. I at 130:4-135:12; 153:19-154:22, 155:22-157:2, 171:16-173:9; Stenberg Dep. II at 539:22-540:18, 639:13-640:6, 641:1-642:2.   Mr. Stenberg also testified that he also named Lycos executives in some of the inaccurate expense reports because he had previously paid more than face value for tickets and other entertainment expenses for

13

Lycos out of his own pocket, and sought to recover those expenses through the inaccurate expense reports.  *See id.*  CSI never charged Lycos for any of the expenses, however, and never used the expense reports in any way whatsoever with respect to Lycos, the Leases, or the Sales Agreement.  In fact, Lycos did not receive copies of the expense reports until they were produced in discovery in this case, and therefore Lycos could not have relied on them during the relevant period.  *See* Stenberg Dep. II at 654:20-655:12; Steinback Dep. at 95:12-96:12; Steinback Dep. II at 94:25-95:8.

"To be admissible as pattern or plan evidence, the two acts must be connected, mutually dependent, and interlocking. . . ."  *Martinelli v. Penn Millers Ins. Co.*, 269 Fed. Appx. 226, 228-29 (3d Cir. 2008)  (internal quotations and citation omitted); *see also J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1269 (3d Cir. 1994) (because "when courts speak of common plan or scheme, they are referring to a situation in which the charged and the uncharged . . . [acts] are parts of a single series of events", district court abused its discretion in admitting testimony from other non-party franchisees that franchisor made similar misrepresentations to them as those alleged by plaintiff franchisees) (internal quotations and citations omitted).

In this case, no connection whatsoever exists between the inaccurate expense reports and the misrepresentations that Lycos has alleged that Mr. Stenberg made.  *Compare United States v. Johnson*, 893 F.2d 451, 453 (1st Cir. 1990) ("The evidence that Johnson submitted a W-4 form in 1987 claiming more allowances than he was entitled to and did not file an income tax return for 1987, was relevant to show Johnson's willfulness and absence of mistake in filing the Schedule C forms containing false information during the years 1982-86" *which were the subject of his indictment*) (emphasis added); *United States v. Greenwood*, 796 F.2d 49, 53 (4th Cir.

14

1986) (defendant's prior "attempt to cover up an erroneous FBI meal reimbursement" was properly admitted under Rule 404(b) since it "[wa]s clearly relevant to the absence of mistake in the closely related context of FBI rent and hotel reimbursements" *for which the defendant was indicted*) (emphasis added).   Accordingly, the expense reports evidence cannot be admitted for any of the legitimate purposes permitted under Rule 404(b).

Because the evidence regarding Mr. Stenberg's expense reports is not relevant to *any* issue or claim between the parties, or any possible motive, knowledge, plan, or intent that Mr. Stenberg or CSI had with respect to Lycos, the only possible use of the evidence under Rule 404(b) would be to try to demonstrate that Mr. Stenberg is a bad person who, having once lied to CSI about his reimbursable expenses, must have also lied or made misrepresentations to Lycos about its lease payments.   However, Rule 404(b) specifically prohibits Lycos from using the evidence "to prove the character of [Mr. Stenberg] in order to show action in conformity therewith."   Fed. R. Evid. 404(b); *see also United States v. Rodriguez-Estrada*, 877 F.2d 153, 155 (1st Cir. 1989) (to be admissible under Rule 404(b), "the district court must be satisfied that the proffered material has 'special' probative value, that is, that the evidence is relevant not to show a defendant's propensity toward evil, but to prove some controverted issue in the case").

This prohibition exists because "character evidence is of slight probative value and tends to distract the trier of fact from the main question of what actually happened on a particular occasion."   *Jones v. Southern Pacific Railroad*, 962 F.2d 447, 448 (5th Cir. 1992).   Courts routinely exclude evidence which can only be used to show an individual's propensity to act in a certain way.   *See Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186, 1194 (10th Cir. 1997) (". . . Enron's alleged breach of its contract with Sharp *would not be admissible* to prove that Enron typically breached contracts and, therefore, that Enron breached its contract with

15

Unit.")(emphasis added); *Jones*, 962 F.2d at 448-9 (affirming trial court decision excluding evidence of train engineer's previous safety violations since such evidence was not relevant to what happened on day that train collided with pickup truck and could not be admitted to show that the train engineer was negligent on day of accident).

In fact, the Third Circuit affirmed the exclusion of similar evidence under Rule 404(b) in *Travelodge Hotels, Inc.*, described above.  In that case, a franchisee alleged counterclaims of fraudulent inducement and argued on appeal that the trial court should have admitted evidence of the fact that franchisor's salesperson, who the franchisee alleged made some of the misrepresentations, was fired for using personal funds to pay for franchisee's business in order to elevate his sales quotas.  *Travelodge Hotels, Inc.*, 244 Fed. Appx. at 528.  The Third Circuit affirmed exclusion of the evidence under, *inter alia*, Rule 404(b), because the rule, as it said, is meant to "bar[] evidence of prior bad acts to show conformity with character."  *Id.*

Accordingly, because the expense reports are not evidence of Mr. Stenberg or CSI's plan, intent, motive or knowledge regarding the alleged misrepresentations to Lycos, and because the evidence will only foster improper inferences regarding Mr. Stenberg's alleged bad character, this Court should exclude all evidence of the expense reports under Rule 404(b).

Even if evidence of Mr. Stenberg's expense reports were somehow considered relevant to issues in this case, or even if the evidence could somehow be used to demonstrate motive, intent, knowledge or plan, all of which CSI strongly denies, its admission is still subject to balancing with unfair prejudice under Rule 403.  *See Happ*, 392 F.3d at 30.  As discussed above, there is a significant risk of unfair prejudice to CSI if the expense reports are admitted at trial because they will likely confuse the jury about the important issues and facts, as well as elicit emotional reactions to the strip club and alcohol expenses.  In contrast, the probative value of the evidence,

ME1 7306571v.5

if any, is minimal at best.   Accordingly, the risk of unfair prejudice clearly substantially

outweighs the minimal probative value of the evidence and it must be excluded.

### B.    Rule 608(b)

In some circumstances, questions regarding specific instances of conduct pertaining to

untruthfulness may be admissible.  Federal Rule of Evidence 608(b) states:

> Specific instances of the conduct of a witness, for the purpose of
> attacking or supporting the witness's character for truthfulness,
> other than conviction of a crime as provided in Rule 609, may not
> be proved by extrinsic evidence.   They may, however, *in the*
> *discretion of the court*, if probative of truthfulness or
> untruthfulness, be inquired into on cross-examination of the
> witness (1) concerning the witness's character for truthfulness or
> untruthfulness, or (2) concerning the character for truthfulness or
> untruthfulness of another witness as to which character the witness
> being cross-examined has testified.

Fed R. Evid. 608(b)(emphasis added).  This prohibition on admission of extrinsic evidence is

meant "to avoid holding mini-trials on irrelevant or collateral matters."  *U.S. v. Beauchamp*, 986

F.2d 1, 3 n. 1 (1st Cir. 1993).

In this case, the expense reports are extrinsic evidence and not admissible under Rule

608(b).  *See United States v. Riddle*, 193 F.3d 995, 998 (8th Cir. 1999) (affirming trial court's

decision to exclude personnel file as extrinsic evidence under Rule 608(b)); *United States v.*

*Aponte*, 31 F.3d 86, 88 (2d Cir. 1994) (trial court properly excluded sworn statements

government witness fabricated regarding description of alleged robbers because statements were

extrinsic evidence under Rule 608(b)); *United States v. Moore*, 27 F.3d 969, 975 (4th Cir. 1994)

("The court's refusal to admit the report [investigating tax returns and bankruptcy] for the

purpose of impeaching [the witness] by extrinsic evidence was wholly proper.").

Likewise, Rule 608(b) prohibits introducing any extrinsic evidence regarding CSI's

investigation and discipline of Mr. Stenberg.   *See* Fed. R. Evid. 608(b) 2003 advisory

committee's notes ("[T]he extrinsic evidence prohibition of Rule 608(b) bars any reference to the consequences that a witness might have suffered as a result of an alleged bad act.  For example, Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness.").

Under the specific language of Rule 608(b), questions regarding activities that pertain to one's character for truthfulness may be asked, at the discretion of the court, but *only* on cross-examination.  CSI, however,  may not call Mr. Stenberg in its case-in-chief if his testimony is not necessary, or would only be cumulative.   In that event, because Lycos will not have the opportunity to cross-examine Mr. Stenberg during CSI's case-in-chief, it will likely attempt to call him as an adverse witness in its own case-in-chief, and ask him leading questions about the expense reports in an attempt to demonstrate bad character and a propensity for untruthfulness.  Or it may seek to play portions of its direct examination of him in deposition concerning the inaccurate expense reports.

However, such direct examination, even of a hostile witness, is not permissible under Rule 608(b) because it contravenes the purpose of Rule 608(b), which is to promote effective cross-examination of another party's witness.  *See* Fed. R. Evid. 608(b) advisory committee's note ("Effective cross-examination demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial.").

As one leading treatise on the federal rules of evidence has explained:

> A [ ] situation in which specific instances might be offered during direct examination *probably should not be allowed*.  This the case where, under Rule 611(c), a direct examiner is permitted to conduct the questioning of adverse or hostile witnesses as if on cross-examination by using leading questions.  It may be argued that, where Rule 611(c) permits the direct examiner to employ

18

leading questions as if on cross-examination, it also makes sense to treat the direct like a cross-examination for purposes of Rule 608(b). But the reasons for permitting the direct examiner to ask leading questions of adverse or hostile witnesses have nothing to do with the policies underlying Rule 608(b). *In fact, those policies could be significantly undermined by permitting the direct examiner to introduce specific-instances evidence in this situation.* The direct examiner might call an adverse or hostile witness *merely for the purpose of producing the unfairly prejudicial effects of specific-instances evidence*. This could undermine accurate factfinding, waste time, and unnecessarily harass the witness.

28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6119 (emphasis added). The Tenth Circuit took the same view in affirming the preclusion of questions under Rule 608(b) on direct examination, holding that the trial court properly precluded plaintiff from introducing in its case in chief, through the plaintiff's testimony, the defendant's deposition testimony regarding prior drug use because, *inter alia*, such questioning is permissible "only on cross-examination of a witness in challenging the truthfulness of his testimony." *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985); *see also Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1299 n. 13 (9th Cir. 1986) (Rule 608(b) does not allow one witness to testify on his or her direct examination concerning another witness's alleged embezzlement in order to show the witness's lack of credibility).[2]

In this case, absent the *in limine* ruling sought by this motion, it is likely that Lycos will do precisely what Wright & Miller and the Tenth Circuit have recognized is inappropriate -- call Mr. Stenberg as an adverse witness (if CSI does not call him in its case in chief) "merely for the purpose of producing the unfairly prejudicial effects" from the questions regarding his inaccurate

---

[2]       Even if CSI did call Mr. Stenberg as a witness in its case-in-chief and Lycos cross-examined him regarding the expense reports, this Court should still appropriately limit that questioning. Courts "retain wide latitude to impose reasonable limits on cross examination based on concern about harassment, prejudice, confusion of the issues . . . or interrogation that is . . . only marginally relevant." *Knight v. Spencer*, 447 F.3d 6, 13 (1st Cir. 2006) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). *See also* Fed. R. Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witness and presenting evidence so as to … (3) protect witnesses from harassment or undue embarrassment.").

expense reports.  Lycos should not be permitted to ask Mr. Stenberg questions about the expense reports on direct examination, however, because Rule 608(b) and the policies behind it preclude such questioning.

Finally, even on cross-examination, "Rule 403 serves to temper the otherwise unreigned use of Rule 608(b)."  *United States v. Townsend*, 31 F.3d 262, 269 (5th Cir. 1994); *see also* Fed. R. Evid. 608(b) advisory committee's note ("the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury").  Thus, even if Lycos were to argue that this Court should exercise its discretion under Rule 608(b) to permit questions of Mr. Stenberg about the expense reports, the probative value of such evidence remains substantially outweighed by the danger of unfair prejudice.  For this reason, this Court should the expense reports evidence.

## CONCLUSION

WHEREFORE Computer Sales International, Inc. respectfully requests that this Court allow "Plaintiff CSI Leasing, Inc.'s Motion in Limine to Exclude Evidence Concerning the Inaccurate Expense Reports of Its Lycos Account Representative," and exclude all evidence concerning Mr. Stenberg's inaccurate Expense Reports.

Respectfully submitted,

CSI LEASING, INC. f/k/a COMPUTER SALES
INTERNATIONAL, INC.

By its attorneys,

/s/ Robert J. Kaler_____
Robert J. Kaler, BBO No. 542040
rkaler@mccarter.com
Edward W. Little, Jr., BBO No. 628985
elittle@mccarter.com
Kelly A. Gabos, BBO No. 666219
kgabos@mccarter.com
McCarter & English LLP
265 Franklin Street
Boston, MA  02110
Tel. (617) 449-6500

Dated:  February 27, 2009

21

## **CERTIFICATE OF SERVICE**

I, Edward W. Little, Jr., hereby certify that I caused a true copy of the foregoing pleading to be serve on counsel for the other parties in this action electronically by CM/ECF notification, by e-mail and by first class mail, postage prepaid, this 27th day of February, 2009.

/s/ Edward W. Little, Jr.
Edward W. Little, Jr.

22