UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10017-RWZ

CSI LEASING, INC. f/k/a COMPUTER SALES INTERNATIONAL INC.

v.

LYCOS, INC.

ORDER

August 27, 2009

ZOBEL, D.J.

CSI seeks attorney's fees and other litigation expenses pursuant to provisions in the Master Lease Agreement ("MLA") and Sales Agreement, the two governing contracts between the parties. Missouri permits an award of attorney's fees for a "prevailing party" when so provided by contract. E.g., Flamingo Pools, Spas, Sunrooms & More Store, Inc. v. Penrod, 993 S.W.2d 588, 590 (Mo. Ct. App. 1999). Pursuant to this court's directive, the parties have submitted briefs addressing CSI's entitlement to attorney's fees under each of the agreements.

CSI's complaint asserted six causes of action. (See Am. Compl. (Docket # 121).) Four were dismissed on summary judgment, leaving CSI with claims for breach of the MLA (Count I) and breach of the Sales Agreement (Count II). In turn, Lycos' counterclaims challenged the validity of rewritten equipment schedules and the Sales Agreement and sought equitable relief to recoup moneys already paid to CSI. As the fees CSI may obtain differ under each agreement, the court addresses them

separately.

## I.     The Master Lease Agreement

The MLA provides in relevant part that if an "Event of Default" occurs CSI may recover from Lycos "any and all damages or expenses, including reasonable attorneys' fees, which [CSI] shall have sustained or incurred by reason of the Event of Default or on account of [CSI's] enforcement of its remedies hereunder."  (MLA (Docket # 329, Ex. A) ¶ 15.1.)  The MLA sets forth actions that constitute "Events of Default." (Id. ¶ 14.) Pursuant to the MLA, if Lycos fails to pay an amount due or otherwise "fails to observe or perform any other term, condition, obligation, agreement or covenant set forth herein," such actions constitute Events of Default if "such failure[s] continue[] for a period of ten [10] days after receipt of written notice thereof from [CSI]."  (Id. ¶ 14[a], [c].)  CSI suggests that under the MLA it is entitled to costs incurred in pursuing its Count I and defending against Lycos' counterclaims challenging the validity of the rewritten equipment schedules.

### A.     Background

#### 1.     CSI's Count I (Breach of the MLA)

In its complaint CSI alleged that Lycos' refusal to pay amounts due under Equipment Schedules 100 and 200 constituted a breach of the MLA, as the Schedules incorporated by reference all the terms contained in the MLA.  (Am. Compl. (Docket # 121) ¶¶ 14, 21,34.)  CSI notified Lycos of its default as required by the MLA, and after Lycos failed to respond to its satisfaction CSI declared a formal "Event of Default" and filed suit seeking approximately $301,000, plus interest, which represents the value of

the remaining payments under the Schedules.  Lycos admitted that it had not paid the invoices at issue but asserted that it had "justification and legal excuse" for its actions, and denied that it had breached either the MLA or Sales Agreement.  (Answer and Counterclaim (Docket # 122) ¶ 19, 26, 32-41.)

After a protracted period of contentious discovery and motion practice spanning several years, Lycos suggested that it would be amenable to a stipulated judgment for CSI on Count I if the court were to find in its favor on all of the other claims asserted by the parties and "*provided* the Court offsets that [recovery from Count I] against the amount awarded to Lycos on its [counter]claims against CSI."  (Docket # 144, 3 (emphasis in original).)  This offer never came to fruition, as the court declined to grant Lycos all the relief it sought.  However, Lycos made several distinct and less contingent offers of judgment as the case progressed.  At a status conference on December 23, 2008, Lycos indicated its willingness to pay the $300,100 due under Equipment Schedules 100 and 200 pursuant to an offer of judgment.  (See Docket # 332, Ex. 2, 16-17.)  CSI rejected this new offer as both inconsistent with Lycos' counterclaims alleging fraudulent inducement of the Sales Agreement and because it felt that its claim for costs of collection presented a jury question.  (Id. at 17.)  On January 23, 2009, Lycos made a formal offer of judgment pursuant to which judgment would be entered against it on CSI's Counts I and II in an amount equal to $301,050.34, plus interest of 1.5% per month and $25,000 in attorney's fees and costs.  (Docket # 332, Ex. 7.)  CSI rejected this offer.

Lycos conceded liability on Count I on May 6, 2009, in the amount of

3

$301,050.34 plus interest and reasonable attorney's fees to be determined by the court. (Docket # 267.) Shortly thereafter, the court ruled that the amount due to CSI in attorney's fees was a matter reserved to the court and did not present a jury question. (See Docket # 269, 5-6.) It also ruled that Lycos could not concede liability on CSI's counts – thereby admitting the validity of the MLA and Sales Agreement – because such admissions would be inconsistent with its counterclaims. (Id. at 1-2.) Lycos then again reiterated that it did not dispute its liability on CSI's Count I, noting that judgment against it on Count I was not inconsistent with its counterclaims, and that Count I afforded complete relief to CSI. (Docket # 272, 4-5.)[1] At trial Lycos did not argue or adduce evidence in opposition to CSI's claim for the $301,000 owed on Equipment Schedules 100 and 200. When CSI moved for judgment as a matter of law ("JMOL") at the close of evidence, the court directed a verdict for CSI on its Count I, with Lycos' assent.

### 2. Lycos' Counterclaims Regarding Rewritten Equipment Schedules

In its counterclaims Lycos asserted that CSI fraudulently and/or negligently induced it to enter into "rolled up" and "rewritten" equipment schedules which contained undisclosed "mark ups" that had the effect of dramatically increasing the amounts due to CSI over time. It sought to recoup "overpayments" of approximately $14 million that it had allegedly made to CSI as a result of the rewritten schedules. At trial the jury

---

[1] In large part the sparring over whether Lycos could stipulate to liability on CSI's claims stemmed from both party's desire to present its version of events to the jury first; if the only claims to be tried were Lycos' counterclaims, then Lycos would step into the role of plaintiff.

found that CSI did not fraudulently or negligently induce Lycos to enter into the rewritten and rolled-up equipment schedules.

### B.     Discussion

The MLA entitles CSI to recover expenses it "shall have sustained or incurred <u>by reason of</u> the Event of Default or <u>on account of</u> [CSI's] enforcement of its remedies hereunder." (MLA ¶ 15.1 (emphasis added).)  Under Missouri law, "[w]here a party's claim to attorney fees is based upon a contract the court must adhere to the terms of the contract and may not go beyond it." <u>Trimble v. Pracna</u>, 167 S.W.3d 706, 714 (Mo. 2005).  In addition, the court must consider the "whole document" and use the "plain, ordinary, and usual meaning" of the words used.  <u>Teets v. Am. Family Mut. Ins. Co.</u>, 272 S.W.3d 455, 461-62 (Mo. App. 2008).  The dictionary defines "by reason of" as "because of," and in turn defines "because of" as "by reason of; on account of." <u>Webster's II New College Dictionary</u> 98, 923 (2001).  The court accordingly concludes that "by reason of" and "on account of" carry the same meaning.  The Court of Appeals for the Eighth Circuit, applying Missouri law, has concluded that the language "by reason of" sets forth a "cause-in-fact or 'but-for' causation test." <u>Spirtas Co. v. Ins. Co. of the State of Pa.</u>, 555 F.3d 647, 652 (8th Cir. 2009) (citing <u>Pac. Ins. Co. v. Eaton Vance Mgmt.</u>, 369 F.3d 584, 589 (1st Cir. 2004)).

CSI prevailed on Count I and is entitled to the costs incurred in preparing the complaint and engaging in discovery relating to this claim.  The parties disagree about whether Lycos throughout the course of the litigation maintained that Equipment Schedules 100 and 200 (which are not rewritten or rolled-up schedules) were

5

negligently or fraudulently induced. Whether Lycos asserted it or not is not dispositive; the question is what costs (if any) CSI incurred in investigating Lycos' (alleged) claims of tortious inducement of these particular schedules. Lycos suggests such costs are de minimis at best; whatever the ultimate amount, it falls within the scope of the provision.

However, CSI is not entitled to costs incurred in trying Count I before the jury. As of May 6, 2009, Lycos was willing to stipulate to judgment on Count I which would give CSI all of the relief it requested.[2] Although the court did not fully appreciate this point prior to trial, Count I is separable from the other claims in this lawsuit as evidenced by the fact that a jury verdict for Lycos on its claims would not have been inconsistent with judgment for CSI on its Count I.[3] CSI nonetheless persisted in going forward with Count I for strategic reasons. Under such circumstances, CSI did not incur its trial expenses "by reason of" or "on account of" Lycos' failure to pay amounts due under Equipment Schedules 100 and 200. Cf. O'Brien v. Ed Donnelly Enter., Inc., --- F.3d ---, Case Nos. 07-4553, 08-3184, 2009 WL 2382437, at *4 (6th Cir. Aug. 5, 2009) (defendant's offer of judgment for the amount due plus reasonable attorney's fees mooted plaintiff's claim); Greisz v. Household Bank (Ill.), N.A., 176 F.3d 1012, 1015 (7th Cir. 1999) (an offer of judgment that encompasses the relief claimed "eliminates a legal dispute" because "[y]ou cannot persist in suing after you've won").

---

[2] Lycos expressed willingness to stipulate to Count I earlier, but May 6, 2009, marked the first time Lycos agreed to also pay reasonable attorney's fees as determined by the court. Its previous attempts offered only "nominal" attorney's fees or fees of $25,000.

[3] As discussed infra, in this regard Count I differs from Count II.

CSI needlessly chose to litigate its Count I claim at trial; it cannot now collect the costs of doing so. Parties may not "foist their extravagances upon their unsuccessful adversaries." Next Day Motor Frieght, Inc. v. Hirst, 950 S.W.2d 676, 681 (Mo. App. 1997) (quoting King World Productions, Inc. v. Fin. News Network, Inc., 674 F. Supp. 438 (S.D.N.Y. 1987), aff'd, 834 F.2d 267 (2d Cir. 1987)). Any expenses incurred after May 6, 2009, for prosecution of Count I are not reimbursable.[4]

CSI is also not entitled to recover the costs of defending against Lycos' counterclaims alleging fraudulent and negligent inducement of the rewritten and rolled-up equipment schedules. As an initial matter, the MLA provides for reasonable attorney's fees only if an "Event of Default" occurs. (MLA ¶ 15.1.) CSI suggests that Lycos' counterclaims, which attempted to recoup money already paid, constituted a "failure to observe the Master Lease terms" and thereby an "Event of Default" under paragraph 14[c] of the MLA. (Docket # 329, 3-4, 6.) However, paragraph 14[c] provides that an "Event of Default" only occurs if Lycos "fails to observe or perform any other term, condition, obligation, agreement or covenant set forth herein, <u>and such failure continues for a period of ten [10] days after receipt of written notice therefore from [CSI]</u>." (MLA ¶ 14[c] (emphasis added).) There is no evidence in the record that CSI sent written notice to Lycos advising that its counterclaims constituted an "Event of Default" under the MLA. In any event, Lycos' counterclaims relating to the rewritten equipment schedules are completely distinct from CSI's claim for payment on

---

[4] Alternatively, even if such fees fell within the scope of the attorney fee provision they were not, in my view, reasonably incurred.

7

Schedules 100 and 200, which are not themselves rewritten or rolled-up schedules. When Lycos defaulted on Schedules 100 and 200, all of the rewritten equipment schedules had already been fully performed and terminated. One cannot say that CSI faced Lycos' counterclaims alleging tortious conduct and attempting to recoup moneys already paid under the rewritten equipment schedules "by reason of" or "on account of" CSI's breach of contract claim for payment on Schedules 100 and 200.

## II.     The Sales Agreement

The Sales Agreement provides in relevant part:

> If [Lycos] refuses or is unable to timely perform its obligations hereunder, [CSI] may, following the delivery date, do any or all of the following: . . . (iii) recover from [Lycos] all damages and expenses, including reasonable attorney's fees, which [CSI] has incurred or may incur by reason of [Lycos'] failure to perform under this Agreement.

(Sales Agreement (Docket # 329, Ex. B) ¶ 9.)

CSI claimed in Count II of its complaint that Lycos' failure to pay amounts due under Equipment Schedules 100 and 200 breached the Sales Agreement, as in that document the parties agreed that Lycos would make all remaining payments required under Equipment Schedule 100 and 200. Lycos counterclaimed, on the ground, inter alia, that it had been fraudulently induced to enter into the Sales Agreement. Here Lycos' counterclaim is the "flip side" to CSI's claim, as CSI sought to enforce the Sales Agreement and Lycos sought to invalidate it. CSI could not prevail without defeating Lycos' claim, and vice versa. Accordingly, if CSI is a "prevailing party" with regard to its Count II, it is entitled to recover the costs of both prosecuting its claim and defending against Lycos' counterclaim of fraudulent inducement of the Sales Agreement. See

8

Yarborough v. Gage, 70 S.W.2d 1055, 1067 (Mo. 1934).

Of course, we must take a winding road to get to this point. CSI has not, as yet, obtained judgment on Count II. At trial the court reserved ruling on CSI's motion for JMOL with regard to this claim, and CSI opted not to put it before the jury. In its papers, CSI now seeks to renew its motion for JMOL on the claim. Lycos does not suggest that CSI abandoned Count II or otherwise waived its right to judgment on the claim by its failure to put the claim before the jury. Rather, it sets forth two separate reasons why the court should not grant JMOL to CSI on Count II.[5] First, it suggests that the Sales Agreement is not an enforceable contract because it simply "restated and in no way modified" Lycos' preexisting duty to make payments under Schedules 100 and 200. (Docket # 332, 18.) Lycos is correct that a promise to carry out an already-existing contractual duty does not constitute consideration sufficient to form an enforceable contract. (See id. (citing Hueseman v. Medicine Shoppe In'tl, 844 S.W.2d 128, 130 (Mo. App. 1993)).) However, the Sales Agreement was not simply a reiteration of previous promises. Instead, it restructured the equipment schedules into $1.00 buyout leases in exchange for a sales price of $3.775 million such that ownership of the equipment would transfer to Lycos upon payment of the remaining schedules. As such, the Sales Agreement was adequately supported by consideration. See Restatement (Second) of Contracts § 80(2) (1981) ("The fact that part of what is bargained for would not have been consideration if that part alone had been bargained

---

[5] Its brief sets forth three arguments, however, the third relates only to the question of whether CSI is entitled to attorney's fees for defending the counterclaim. (See Docket # 332, 17-18.)

for does not prevent the whole from being consideration.").[6]

Second, Lycos argues that Count II is moot because CSI has obtained judgment on Count I for the $301,000 and is not entitled to double recovery. This argument holds intuitive appeal, and, indeed, "[i]t is well-established that while a single transaction may invade more than one right and a plaintiff is entitled to proceed on numerous theories of recovery, he is not allowed to be made more than whole or receive more than one full recovery for the same harm." Horizon Mem'l Group, L.L.C. v. Bailey, 280 S.W.3d 657, 666 (Mo. App. 2009); see also Garshman Co., Ltd. v. Gen. Elec. Co., 176 F.3d 1, 5-6 (1st Cir. 1999). Nonetheless, a party must choose between theories of recovery only when they are inconsistent. See Trident Group, LLC v. Mississippi Valley Roofing, Inc., 279 S.W.3d 192, 198 (Mo. App. 2009) ("Theories are inconsistent and require an election only if, in all circumstances, one theory factually disproves the other.") (quoting Trimble, 167 S.W.3d at 710). If a party's theories of recovery are not inconsistent but the damages asserted under each claim are the same, the damage awards merge together to prevent double recovery. See BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 197 (Mo. App. 2007). CSI's claims for breach of the MLA and Sales Agreement are not inconsistent. Accordingly, the court allows CSI's motion for JMOL on Count II but merges the damages award with Count I, such that CSI recovers its $301,000, plus interest, only once. Having prevailed on Count II, CSI

---

[6] The illustration in the Restatement is on point: "A owes B $5. B promises to give A a book if A will pay the $5 and $1 in addition. A pays the $6. B's promise is binding, although A's payment of the $5 which he owed would not of itself have been consideration." Id. (Illustration # 3).

10

is entitled to its attorney's fees in bringing the claim and defending against Lycos' counterclaim for fraudulent inducement of the Sales Agreement.[7]

**III.    Conclusion**

CSI's motion for JMOL on Count II is ALLOWED.  As there are no outstanding claims remaining, judgment shall enter separately in accordance with the jury verdict and this court's prior rulings.

CSI may file a post-judgment motion for attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2) no later than thirty days after entry of the judgment.  Lycos shall have thirty days to oppose CSI's motion.  CSI is entitled to reasonable attorney's fees under the MLA (Count I) with respect to filing the claim, discovery related to the claim, and litigation of the claim prior to May 6, 2009.  It is entitled to reasonable attorney's fees under the Sales Agreement (Count II) with respect to bringing this claim and defending against Lycos' counterclaim of fraudulent inducement of the Sales

---

[7] An argument could perhaps be made that CSI is entitled to such fees only up to May 6, 2009, because after Lycos offered to stipulate to judgment on Count I and pay the amounts due under Schedules 100 and 200 there was no reason for CSI to insist upon litigating Count II.  See, e.g., ABN Amro Verzekeringen BV v. Geologistics Americas, Inc., 485 F.3d 85, 93 (2d Cir. 2007) ("Where a defendant has consented to judgment for all the relief the plaintiff can win at trial (according to the trial court's determination), the defendant's refusal to admit fault does not justify a trial to settle questions which can have no effect on the judgment.").  However, CSI did have a reason for insisting upon judgment in its favor on Count II – under Missouri law it is only entitled to attorney's fees if it is the "prevailing party" on its claim.  See, e.g., Hadley v. Burton, 265 S.W.3d 361, 369-71 (Mo. App. 2008) (plaintiff who did not prevail on his breach of contract claim was not entitled to attorney's fees under the contract even though he prevailed on another claim); Am. Property Maintenance v. Monia, 59 S.W.3d 640, 645-46 (Mo. App. 2001) (same).  CSI may not have been entitled to attorney's fees if it had simply dismissed Count II.  Cf. Sequa Corp. v. Cooper, 245 F.3d 1036, 1037-38 (8th Cir. 2001) ("a voluntary dismissal without prejudice means that neither party can be said to have prevailed").

Agreement. The court notes that CSI bears the burden of segregating and allocating fees which are recoverable from fees which are not recoverable. See State ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.3d 832, 836 (Mo. App. 1995). The parties should also bear in mind that "'[r]easonableness' encompasses at least two different concepts. One, obviously, is that the services provided were necessary for the presentation of the case and the charges are in keeping with the usual charges for such service. A second concept is that it is reasonable to engage in the litigation in the first place." Next Day Motor Freight, 950 S.W.2d at 680. Given the litigational history of this case including, in particular, the parties' excessive sparring over every issue and near total unwillingness to reach mutual accommodation or to accept the court's rulings, they are urged to take account of these concepts of reasonableness in their submissions.

The parties are expected to abide by Local Rule 7.1(B)(4) (concerning the allowable lengths of memoranda) when filing their briefs.

|   |   |
|---|---|
| August 27, 2009 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |